# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

| | | |
|---|---|---|
| **CLEER LLC (F/K/A GREENBACK BUSINESS SERVICES LLC) D/B/A CLEER TAX**<br>2885 Sanford Avenue SW #14713<br>Grandville, MI 49418 | : | **CASE NO.:  3:24-cv-1496** |
| | : | |
| | : | **JUDGE:** |
| | : | |
| Plaintiff, | : | **PLAINTIFF'S VERIFIED COMPLAINT** |
| | : | **FOR DAMAGES, TEMPORARY** |
| v. | : | **RESTRAINING ORDER, AND** |
| | : | **PRELIMINARY AND PERMANENT** |
| **CRYSTAL STRANGER**<br>5719 Mauer Road<br>Las Cruces, NM 88005-4693 | : | **INJUNCTION** |
| | : | |
| also serve at | : | |
| | : | |
| 30 N. Gould Street, Ste. 3088<br>Sheridan, WY 82801 | : | |
| | : | |
| also serve at | : | |
| | : | |
| 30 N. Gould Street, Ste. R<br>Sheridan, WY 82801 | : | |
| | : | |
| and | : | |
| | : | |
| **OPTIC TAX INC.**<br>30 N. Gould Street, Ste. 3088<br>Sheridan, WY 82801 | : | |
| | : | |
| also serve at | : | |
| | : | |
| 30 N. Gould Street, Ste. R<br>Sheridan, WY 82801 | : | **September 18, 2024** |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

Plaintiff Cleer LLC (f/k/a Greenback Business Services LLC) d/b/a Cleer Tax ("Cleer"), for its Verified Complaint against Defendants Crystal Stranger ("Stranger") and Optic Tax Inc. ("Optic Tax") (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      Cleer commenced this action because of the unlawful acts of its former employee and owner, Stranger, who, among other things, deliberately violated various restrictive covenants by poaching Cleer's current and prospective clients and employees, hijacked Cleer's domain name for use in a deceptive and misleading email campaign, stole Cleer's corporate identity, misused and tarnished Cleer's valuable trade name, trademark, reputation and goodwill to deceptively target consumers, and has caused and continues to cause significant irreparable harm to Cleer.

2.      Cleer brings this suit for injunctive relief and damages to redress Defendants' flagrant violations of contractual, common law, and statutory obligations owing to Cleer, including to stop Stranger's solicitation of Cleer's customers and contractors, stop Defendants' unfair competition, stop Defendants from further damaging Cleer's goodwill, to stop Defendants' improper control over and use of the domain name Cleer.tax that she has redirected to her own competing website, and to stop Defendants' improper control and use of the domain name in email (crystal@cleer.tax) that she is using to contact and solicit Cleer's clients.

3.      Defendants' conduct is causing Cleer irreparable harm, including, but not limited to, allowing Defendants to misappropriate for their benefit and the benefit of Optic Tax the goodwill, customer relationships, confidential information, and other assets of Cleer.

## PARTIES, VENUE, AND JURISDICTION

4.      Cleer is a Wyoming limited liability company with its principal place of business located in Michigan.

5.      Cleer has two members who both reside in Connecticut.

2

134951309v1

6.      Upon information and belief, Stranger is an individual residing in Colorado.

7.      Upon information and belief, Optic Tax is a Wyoming corporation with its headquarters in Wyoming.

8.      Upon information and belief, Stranger is a resident of New Mexico.

9.      Upon information and belief, Stranger is the sole shareholder, CEO, and President of Optic Tax.

10.     The amount in controversy exceeds $75,000.

11.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 28 U.S.C. §§ 1332 (diversity), 1338(a)–(b) (original jurisdiction to adjudicate federal trademark claims and accompanying claims of unfair competition), and 1367(a) (supplemental jurisdiction over all other related claims).

12.     This Court has jurisdiction over Optic Tax because its wrongful conduct inflicted damage on Cleer in Connecticut, and Stranger (who is subject to jurisdiction in this Court) is directing the wrongful acts of Optic Tax.

13.     Venue is proper in this Court because of the damage inflicted on Cleer in Connecticut, and Stranger and Cleer agreed that any case or controversy arising between them would be exclusively filed in any federal or state courts located in Fairfield County, Connecticut.

## BACKGROUND FACTS

14.     In 2016, David and Carrie McKeegan, husband and wife, founded Greenback Business Services ("Greenback") (which later changed its name to Cleer) with a focus on helping start-ups and early stage entrepreneurs with tax preparations and filings.

15.     In 2022 and 2023, Cleer earned a spot on the coveted Inc. 5000 list of fastest growing private companies in the United States.

3

16.     Today, Cleer has over 50 contractors worldwide and is a global provider of tax preparing, bookkeeping, and has provided consultation services to more than 5,000 startup, small, and growing domestic and international businesses seeking individualized solutions for compliance with the United States tax system.

### Cleer's Trademark Rights and Domain Name

17.     Cleer is the owner of the CLEER® (word mark) and CLEER.TAX (design mark) trademarks.

18.     CLEER® is registered with the United States Patent and Trademark Office as Reg. No. 7356779. The CLEER® Trademark claims a first use date of October 28, 2022.  (Exhibit A – Registration For CLEER®)

19.     Cleer has also filed a United States trademark application for CLEER.TAX (Design Mark), Ser. No. 98128324 (collectively with CLEER®, the "CLEER Trademarks"). The CLEER.TAX design mark is pictured below.



(Exhibit B – Application For CLEER.TAX)

20.     The CLEER Trademarks cover a variety of goods and services, including business consulting services; bookkeeping; business development services, namely, providing start-up support for businesses of others, and regulatory compliance. Cleer has extensively used the CLEER Trademarks and promoted them at considerable expense.

21.     Cleer is also the owner of the "cleertax.com" domain name, which was registered on May 26, 2022. Cleer uses the "cleertax.com" domain name as the URL of its email address (Hello@Cleertax.com), and to advertise and promote its business through its website.

4

134951309v1

**Cleer Hires Stranger as an Employee**

22.     In January 2020, Cleer hired Stranger as a Lead Accountant.

23.     In that role, Stranger was tasked with preparing and reviewing tax returns, advising clients, and performing marketing services.

24.     At that time, Mr. and Mrs. McKeegan each held 50% membership interests in Cleer.

**Stranger Becomes a Member of Cleer and
Agrees To Be Bound By Several Restrictive Covenants**

25.     In May 2022, Mr. and Mrs. McKeegan awarded Stranger an initial 6% membership interest in Cleer.  (Exhibit C – Operating Agreement at Ex. A).

26.     The McKeegans required Stranger, as a new Member of Cleer, to execute the Operating Agreement.

27.     The Operating Agreement imposed restrictions on Stranger in her capacity as a member.

28.     In her capacity as a Member, Stranger agreed to the following provisions under the Operating Agreement:

> 9.1     The Members hereby acknowledge that they are familiar and will help develop the Company's trade secrets and other confidential information.  The Members agree that while a Member of the Company and for twelve (12) months following the withdrawal for any reason as a Member, he shall not, directly or indirectly, either for himself or for any other individual own any interest in, manage, control, consult with, render services for or participate in (whether as an officer, director, employee, partner, agent, representative, or otherwise) or in any other manner engage anywhere in the Protected Areas in any business competitive with business of the Company or any affiliated entity (the "Protected Business").  The term "Protected Territories" shall mean the entirety of the United States of America. The Members agree that the geographic restrictions set forth above are reasonable and necessary to protect the goodwill of the Company's business or any affiliated entity.

5

9.2     Further, so long as a Member owns Membership Interest in the Company and for a period equal to twelve (12) months following withdrawal for any reason as a Member, the Member shall not directly, or indirectly through another person or entity, (i) induce or attempt to induce any employee of the Company or any affiliated entity to leave the employ of the Company or any affiliated entity, or in any way interfere with the relationship between the Company and any employee thereof; (ii) hire any person who was an employee of the Company or any affiliated entity at any time during the six (6) month period immediately prior to the date on which such hiring would take place (it being conclusively presumed by the Parties so as to avoid any disputes under this Paragraph that any such hiring within such six (6) month period is in violation of clause (i) above), or (iii) call on, solicit, or service any customer, supplier, licensee, licensor or other business relationship of the Company or any affiliated entity.

9.3     <u>Technical Development and Improvements</u>.   The Members acknowledge and agree that the Company or any affiliated entity shall have the exclusive ownership, title and possession of any information, plans, products, data, inventions, training programs, or instructional materials discovered, devised, developed, implemented, improved, or otherwise identified or capable of identification regarding the business or any affiliated entity.  The Members shall report and promptly make available any and all technical developments and improvements.  Except as expressly approved by the Company's Members, the Members shall disclose, use and release such technical developments solely in the name and on behalf of the Company or any affiliated entity.

. . .

9.5     <u>Enforcement</u>.

            (a) If, at the time of enforcement of the covenants contained above ("Protective Covenants"), a court shall hold that the duration, scope or area restrictions stated are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope or area reasonable under such circumstances shall be substituted for the stated duration, scope or area and that the court shall be allowed to revise the Protective Covenants to cover the maximum duration, scope and area permitted by law. Member has consulted with legal counsel regarding the Protective Covenants and based on such consultation has determined and agrees that the Protective Covenants are reasonable in terms of duration, scope and area restrictions and are necessary to protect the goodwill of the

6

Company's businesses and agrees not to challenge the validity or enforceability of the Protective Covenants.

(b) If a Member breaches, or threatens to commit a breach of any of the Protective Covenants, the Company and its affiliates shall have the following rights and remedies, each of which rights and remedies shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available to the Company or its affiliates at law or in equity:

(i) the right and remedy to have the Protective Covenants specifically enforced by any court or competent jurisdiction, it being agreed that any breach or threatened breach of the Protective Covenants would cause irreparable injury to the Company and its affiliates and that money damages would not provide an adequate remedy to the Company or its affiliates; and

(ii) the right and remedy to require Employee to account for and pay over to the Company or its affiliates any profits, monies or other benefits derived or received by Employee as the result of any transactions constituting a breach of the Protective Covenants.

The invalidity or unenforceability of any provision hereby of, or parts hereof shall in no way effect the validity or enforceability of any other provision or parts hereof. The parties agree that the part or parts of this Agreement to be held invalid or unenforceable shall be deemed to have been modified to provide the maximum protective covenant possible by law.

(Exhibit C – Operating Agreement at Sections 9.1–9.3, 9.5).

## **Stranger Agrees to Additional Restrictive Covenants in Her Capacity as an Employee**

29.     In conjunction with Stranger becoming a member of Cleer and execution of the Operating Agreement, Stranger was promoted to the position of International Tax Director/General Manager.

134951309v1

30.     In that role, Stranger was responsible for overseeing the tax, bookkeeping, and CSA Team; steering tax policy and general guidance; providing tax strategy consultations for clients; giving webinars and media interviews; and coordinating the development of technology and tools.

31.     In June 2022, Stranger executed a Membership Vesting Agreement ("MVA"), that, assuming she remained employed with Cleer, Stranger's initial 6% membership interest mentioned above upon execution, 12% vested one year from the MVA's effective date, then a maximum 20% would vest two years from the MVA's effective date.  (Exhibit D – MVA at Section 6)

32.     Section 8 of the MVA states: "[W]hen Employee's employment with Company ends, **Employee will promptly return** all originals and copies of all documents, records, software programs, media, and other materials concerning Confidential Information, as well as **any and all equipment, files, software programs, and other personal property belonging to the Company**." (*Id.* at Section 8 (emphasis added))

33.     Section 12 of the MVA states:

    a.     During the time that Employee is employed with the Company, and for a period of twelve (12) months following the termination of Employee's employment for any reason (whether such termination is voluntary or involuntary), Employee agrees that, in the absence of prior written approval by a duly-authorized officer of Company, Employee will not:

        i.     Directly or indirectly contact, solicit, accept business from, or communicate the fact or circumstances of Employee's resignation from or termination of employment with Company to any of Company's customers or suppliers, or prospective customers or suppliers, with whom Employee had direct or indirect contact or solicited on behalf of Company in the two (2) years prior to employee's termination, for the purpose of selling or soliciting products or services of Company; and

        ii.     directly or indirectly contact, solicit, recruit or hire any employees of the Company with whom Employee worked or had contact for the purpose of causing, inviting, or

8

> encouraging any such employee to alter or terminate his or
> her employment or business relationship with Company.

(*Id.* at Section 12).

**Stranger Created The Domain "Cleer.tax" For Cleer During Her Employment**

34.    In or around January 2023, Greenback transitioned to Cleer for purposes of rebranding.

35.    All aspects of Greenback and Stranger's role with the company remained the same; the only change was in name.

36.    During Stranger's employment with Cleer, she secured the domain name "Cleer.tax" for Cleer to use for business reasons as part of the rebranding.  This is evidenced by Stranger's registration of "Cleer.tax" on May 26, 2022, prior to Cleer's claimed first use of the CLEER Trademarks of October 28, 2022

37.    Mr. McKeegan obtained the email domain @cleertax.com for use by the company. Both "cleertax.com" and "cleer.tax" were registered on May 26, 2022.

38.    Stranger was assigned the email address crystal@cleer.tax for her employment related activities on behalf of Cleer.

39.    Upon information and belief, Stranger used her personal debit or credit card to secure Cleer.tax for Cleer's business use, but she renewed the domain on May 26, 2023 using her Cleer credit card.

40.    The Cleer.tax domain names is and always has been Cleer's property.

**Stranger's Violations of the MVA and Operating Agreement**

41.    Upon information and belief, Stranger purchased the domain "OpticTax.com" on January 22, 2024, while she was still employed by Cleer.

42.    On February 1, 2024, Stranger resigned from Cleer.

134951309v1

43.     At that time, upon information and belief, Optic Tax provided only non-competing services, including certain consulting and advising.

44.     However, beginning on September 1, 2024, Cleer discovered that Optic Tax expanded its business to begin competing directly against Cleer by providing services for tax preparing, bookkeeping, and consultation to startup, small, and growing domestic and international businesses seeking individualized solutions for compliance with the United States tax system.

45.     In September 2024, Stranger and Optic Tax began soliciting Cleer's contractors, clients, and prospective clients.

46.     Since the end of Stranger's employment with Cleer and prior to expiration of the restrictive covenants, she has solicited many of Cleer's clients and poached at least ten contractors from Cleer, who, upon information and belief, now work for Optic Tax.

47.     Optic Tax's employees are directly soliciting Cleer's clients at Stranger's direction:

Continuing Our Partnership at Optic Tax   External   Inbox ×

Evangeline Cubelo <evan@optictax.com>                    11:42AM (2 hours ago)
to bcc: me

Hello there,

I hope you have been great.

I just wanted to let you know that I have left Cleer effective immediately. I am now working for OpticTax.com with Crystal Stranger who used to run Cleer, and is one of the top international tax experts. It would be an honor to work with you again moving forward.

Optic Tax is willing to match the pricing and package. Please let me know if you are interested in continuing to work with me and making the switch. If you aren't interested in changing, I fully understand that. Either way, I am always here for you if you need any help or have any questions.

Thank you and have a great day!

Sincerely yours,

Evangeline Cubelo
Junior Bookkeeper
evan@optictax.com

Optic Tax



48.     In fact, on September 6, 2024 (nearly 7 months following her separation from Cleer), Stranger used Cleer's "cleer.tax" domain to solicit Cleer's clients:

134951309v1

From: "Cleer.tax" <crystal@cleer.tax>
Date: Sep 6, 2024 21:32
Subject: Important News: Changes to Bookkeeping
To: samuel@funbers.com
Cc:

Hi,

You are probably aware about the loss of the entire bookkeeping team at Cleer, and I understand this may have put you in a challenging situation. In full transparency, I want to share some background, so you can understand what happened. As a cofounder of Cleer, I brought both the clients from my prior business and the domain Cleer.tax into the partnership, and I have over 20 years of international and complex tax experience that I used to lead the company and develop the current offerings.

Due to a culture shift that prioritized profit above all else, I left in February to start Optic Tax, focusing on complex international tax consulting. When I left, I did everything in my power to keep the team together, help the company succeed, and turned down business that would be a conflict. I even tried to buy the remainder of Cleer and had an agreement on price but was stuck on terms. In August, in bad faith, I was removed from the business partnership, with no justification or real explanation. Almost immediately, the team began messaging me about changes that were making their work untenable, and telling me the entire bookkeeping team was planning a walk-out.

The team had been ordered to install screen tracking software on their personal computers that would take a picture of their screen every three seconds. They felt this not only justified their own privacy and web safety, as it could screenshot their passwords, but it would also expose personal financial data of their clients. It was a free account, and they didn't see that it had any data safeguards in place, but they received an ultimatum that they must install this by September 1st.

Things compounded, and the team started to really panic when the former head of HR was fired, and an email was sent out to the whole team falsely stating that she quit. A week later the head of the bookkeeping team was terminated, and told to transition her work to a VA staffing company. I had been exploring legal options of regaining my value in the partnership, but hearing what the team was telling me, it seemed that there would be no company left if I waited. But I can tell you, two weeks ago I never thought I would be sending this email now, it all just deteriorated there so fast.

When the team wanted to leave, they all reached out to me with concerns about who would help the clients if they left. While they told me they felt abused and couldn't handle even a day more, they were loyal to you as being wonderful clients and were worried who would help you. Many team members had stayed in a bad situation because they didn't want to burden you, and while many team members had quit since I left, nobody new had been hired to replace them. So at their request, I expanded Optic Tax to provide tax and bookkeeping services, to give the team a safe place to do their excellent work.

Team members may have reached out to you, as we want to offer you assistance in this transition time, as seamlessly as possible, so there is no disruption to your business. We are here to help whether you choose to work with us going forward or not. I am making myself personally available if you have any questions, you can schedule a call with me here: https://calendly.com/optictax/complimentary-consultation Again, I am happy to help you in any way I can, whether you choose to work with us in the future or not, so please let me know if there is anything I can do to help. Wishing you all the best.

Sincerely,

Crystal Stranger

Founder & CEO

Optic Tax Inc.

http://optictax.com

30 N Gould St. Ste 3088

Sheridan, WY 82801

Unsubscribe Now

49.     Stranger has also improperly retained and refused to relinquish control over the

domain Cleer.tax and email domain crystal@cleer.tax.

50.     Since the end of Stranger's employment with Cleer and prior to expiration of the restrictive covenants, Stranger has deliberately redirected Cleer's clients and potential clients who type Cleer.tax into a web browser to OpticTax.com.

### Cleer Repurchased Stranger's Cleer Shares For Cause

51.     Stranger's employment with Cleer ended on February 1, 2024, which was before the three-year anniversary of the MVA.  As such, she only vested a 12% membership interest in Cleer when she left.

52.     In August 2024, because Stranger refused to return Cleer.tax and a company laptop with client information on it to Cleer, Cleer Members voted to terminate Stranger's 12 Cleer Units for cause and repurchase them under the Operating Agreement due to her "flagrant dishonesty," "intentional acts detrimental to the conduct of the Company's business," and "multiple and continuing violations of the Company's Operating Agreement."   (Exhibit E – Cleer's Letter Terminating And Repurchasing Stranger's Membership Units; *see also* Exhibit C – Operating Agreement at Section 6.5)

53.     Stranger is no longer a member of, nor does she hold any membership interest in, Cleer.

54.     Under the Operating Agreement, when a Member's Units are terminated for cause and repurchased, "[t]he purchase price shall be equal to the credit balance in the Member's Capital Account . . . ." (Exhibit C – Operating Agreement at Section 6.5)

55.     When Cleer terminated Stranger's 12 Units for cause and repurchased them, Stranger's Member Capital Account for Cleer was -$70,743.   (Exhibit E – Cleer's Letter Terminating And Repurchasing Stranger's Membership Units)

56.     Despite demands, Stranger has not paid Cleer the amount owed.

## COUNT I
### STRANGER: BREACH OF CONTRACT (MVA)

57.    Cleer repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

58.    The nonsolicitation provision in the MVA is a valid, enforceable obligation necessary to protect Cleer's legitimate business interests and prevent unfair competition by its former employee, Stranger.

59.    Cleer has complied with all of its obligations under the MVA.

60.    Based on the facts stated above, Stranger has breached the MVA.

61.    As a result of Stranger's conduct, and unless Stranger is enjoined from continuing such conduct, Cleer has suffered and will continue to suffer irreparable and incalculable harm for which it can never be compensated. No adequate remedy at law exists for such a breach.

62.    Cleer is entitled to immediate and permanent injunctive relief against further breaches by Stranger.

63.    As a direct and proximate result of Stranger's breaches of contract, Cleer has suffered substantial monetary damages in excess of the jurisdictional minimum of this Court, which will be established at trial.

64.    Under the MVA, and as a direct and proximate result of Stranger's breaches of contract, Cleer is entitled to recovery of its attorneys' fees and costs.

## COUNT II
### STRANGER: BREACH OF CONTRACT (OPERATING AGREEMENT)

65.    Cleer repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

134951309v1

66.     As a Member, Stranger was subject to additional contractual duties under the Operating Agreement, including the duty not to compete with Cleer.

67.     Cleer has complied with all of its obligations under the Operating Agreement.

68.     Based on the facts stated above, Stranger has breached the Operating Agreement.

69.     As a result of Stranger's conduct, and unless Stranger is enjoined from continuing such conduct, Cleer has suffered and will continue to suffer irreparable and incalculable harm for which it can never be compensated.  No adequate remedy at law exists for such a breach.

70.     Cleer is entitled to immediate and permanent injunctive relief against further breaches by Stranger.

71.     As a direct and proximate result of Stranger's breaches of contract, Cleer has suffered substantial monetary damages in excess of the jurisdictional minimum of this Court, which will be established at trial.

## COUNT III
## STRANGER AND OPTIC TAX: UNFAIR COMPETITION

72.     Cleer repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

73.     Defendants are competing with Cleer.

74.     Defendants have made a strategic decision to try to maliciously target and take away Cleer's customers and clients to gain an unfair advantage.

75.     Defendants have made a strategic decision to try to maliciously target and hire away Cleer's contractors to gain an unfair advantage.

76.     Defendants are improperly controlling, refusing to relinquish, and using Cleer.tax to divert and funnel Cleer's current and prospective clients to OpticTax.com.

134951309v1

77.     Defendants are improperly controlling, refusing to relinquish and using Cleer.tax email domain to divert and funnel Cleer's current and prospective clients to OpticTax.com.

78.     Defendants' conduct constitutes unfair competition.

79.     This unfair competition has been willful, deliberate, and malicious.

80.     Defendants have benefitted from their acts of unfair competition.

81.     As a direct and proximate result of Defendants' acts of unfair competition, Cleer has suffered and continues to suffer damages in an amount that is not now ascertainable in excess of the jurisdictional minimum of this Court, which will be established at trial.

82.     Cleer will further be irreparably harmed unless this Court enjoins the activities of Stranger.

### COUNT IV
### STRANGER AND OPTIC TAX: TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONSHIPS

83.     Cleer repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

84.     As a result of her employment with Cleer, Stranger was intimately familiar with, and had detailed knowledge concerning, the business relationships that existed between Cleer and its customers.

85.     Upon information and belief, Stranger and Optic Tax intentionally, with malice, and without privilege or justification, have interfered with and will continue to interfere with Cleer's business relationships with certain clients and prospective clients using unfair and improper means, and/or with the intent to interfere with such relationships for their benefit.

86.     Defendants have engaged in the conduct complained of in a willful and malicious manner, with an improper motive and through improper means, entitling Cleer to an award of punitive damages.

87.     Stranger and Optic Tax had and have actual notice of Stranger's post-employment contractual obligations to Cleer.

88.     Cleer possesses a protectable interest in its contracts and relations with clients and prospective clients, in that it has a reasonable expectation of new or continued association with Cleer.

89.     As a direct and proximate result of Defendants' acts of tortious interference with Cleer's business expectancies, Cleer has suffered and continues to suffer damages in an amount that is not now ascertainable, but exceeds the jurisdictional minimum of this Court, which will be established at trial.

90.     Defendants will continue their acts of tortious interference with Cleer's business expectancies, and Cleer will be irreparably harmed thereby unless the Court enjoins such activities.

## COUNT V
## STRANGER AND OPTIC TAX: CIVIL CONSPIRACY

91.     Cleer repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

92.     Defendants, as described above, maliciously conspired and acted with intent of depriving Cleer of its property, intending to damage Cleer's business.

93.     As a direct and proximate result of the wrongful conduct of Defendants, Cleer has suffered and continues to suffer damages in an amount that is not now ascertainable, but exceeds the jurisdictional minimum of this Court, which will be established at trial.

94.     Upon information and belief, Defendants will continue to conspire to harm Cleer, such that it will be irreparably harmed unless such activities are enjoined by this Court.

## COUNT VI
## STRANGER: BREACH OF DUTY OF LOYALTY

95.     Cleer repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

96.     Stranger, as an employee and member of Cleer, owed an undivided duty of loyalty to Cleer not to use her position at Cleer for her own personal benefit or the benefit of another, or to hinder Cleer's ability to succeed in its business operations.

97.     As described above, during her employment with Cleer and without its knowledge, Stranger breached her duty of loyalty by, among other things, purchasing the domain name "OpticTax.com" on January 22, 2024 and taking actions in favor of Optic Tax.

98.     As a direct and proximate result of the wrongful conduct of Stranger, Cleer has suffered and continues to suffer damages in an amount that is not now ascertainable, but exceeds the jurisdictional minimum of this Court, which will be established at trial.

99.     By breaching her duty of loyalty to Cleer, Stranger acted with malice, wantonness, bad faith, and with the specific intent to cause harm to Cleer, which conduct entitled Cleer to punitive damages in an amount to be determined at trial.

## COUNT VII
## STRANGER AND OPTIC TAX: FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

100.     Cleer realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

101.     The CLEER Trademarks and name are a protectable mark identifying the source or origin of the Cleer.

102.     Cleer has a protectable interest in the CLEER Trademarks and name.

18

134951309v1

103.    Defendants' unauthorized use in commerce of the CLEER Trademarks as alleged above, including Defendants' use of the "cleer.tax" domain name, is likely to confuse, cause mistake, or deceive consumers as to the origin, source, sponsorship, or affiliation of its services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Cleer or that Defendants are in some way affiliated with or sponsored by Cleer.

104.    Defendants' unauthorized use in commerce of the CLEER Trademarks as alleged above constitutes use of a false designation of origin and a misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

105.    Upon information and belief, Defendants' conduct as alleged above is willful and is intended to, and is likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants with Cleer.

106.    The conduct of the Defendants as alleged above constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

107.    Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Cleer, and its goodwill and reputation, and will continue to both damage Cleer and confuse the public unless enjoined by this Court. Cleer has no adequate remedy at law.

108.    Cleer is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

134951309v1

## COUNT VIII
## <u>STRANGER AND OPTIC TAX: ANTICYBERSQUATTING</u>

109.     Cleer realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

110.     Defendants have registered, trafficked in, and are using a domain name, "cleer.tax," that includes and is virtually identical to Cleer's Trademarks CLEER and CLEER.TAX. Defendants' domain name encompasses the CLEER mark, name and identity in its entirety. The Domain Name is also identical to Cleer's CLEER.TAX mark.

111.     The CLEER and CLEER.TAX marks are distinctive and were known to Defendants at the time they registered and/or acquired the "cleer.tax" domain name.

112.     Defendants had and continue to have a bad faith intent to profit from use of the "cleer.tax" domain name.

113.     Defendants have no valid trademark rights in the CLEER and CLEER.TAX name and mark or any other mark incorporating or comprising the name "CLEER."

114.     Defendants have used the domain name to cause confusion and to exploit the goodwill of Cleer's CLEER and CLEER.TAX mark for Defendants' commercial gain.

115.     Defendants' acts constitute cybersquatting in violation of 15 U.S.C § 1125(d).

116.     As a result of Defendants' cybersquatting, Cleer has suffered detriment to its goodwill, business, reputation and profits – all of its damages in an amount yet to be determined, and subject to a treble damages award pursuant to 15 U.S.C. § 1117.

117.     Alternatively, upon information and belief, Cleer believes that the Defendants have derived and will continue to derive unlawful gains and profits as a result of their unlawful acts. Alternatively, Cleer is entitled to recover statutory damages.

134951309v1

118.    This case is an exceptional case and Cleer is entitled to recover its attorneys' fees pursuant to 15 U.S.C. § 1117.

119.    Cleer is entitled to a transfer of the "cleer.tax" domain name.

120.    If Defendant's are permitted to continue the foregoing acts, Cleer will sustain further loss and damage and irreparable injury, for which Cleer has no adequate remedy at law. Injunctive relief against Defendants continued conduct should be granted pursuant to this Court's authority under 15 U.S.C. §§ 1116 and 1118.

**WHEREFORE**, Cleer respectfully prays for the following relief:

1)    immediately restraining and enjoining Stranger, her agents, and all other persons acting in concert with her from using Cleer.tax email and website domains for any reason and directing her to relinquish control over the domain to Cleer;

2)    restraining and enjoining Stranger, her agents, and all other persons acting in concert with her from soliciting any of Cleer's current or prospective clients, employees, and contractors, and from further breaching the Operating Agreement and MVA;

3)    Restraining and enjoining Stranger, her agents, and all other persons acting in concert with her from competing against Cleer in violation of the noncompetition and nonsolicitation restrictive covenants;

4)    Restraining and enjoining Stranger, her agents, and all other persons acting in concert with her from using the CLEER and CLEER.TAX marks in the future;

5)    Compensatory damages against Defendants in the amount of all actual damages that Cleer is determined at the trial of this action to have sustained, together with pre-judgment interest;

21

134951309v1

6)      Punitive damages;

7)      Cleer's attorneys' fees and other litigation costs and expenses;

8)      Attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117;

9)      Transfer of the cleer.tax domain name to Cleer;

10)     An accounting of and payment to Cleer of all revenue, profits, or any other financial gain attributable to Stranger and Optic Tax's unlawful acts as alleged herein; and

11)     granting the injunctive relief described above and such other and further relief as may be just and proper.

## **JURY DEMAND**

Cleer demands a trial by jury on all triable issues.

22

Respectfully submitted,

*/s/ Michael S. O'Malley*
Michael S. O'Malley, Esq. (ct31784)
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
281 Tresser Boulevard
Stamford, CT 06901
Ph: (203) 969-3109
Fx: (203) 969-3150
Michael.o'malley@ogletree.com

PRO HAC VICE FORTHCOMING:

George B. Musekamp (0087060)
Evan H. Cohn (0100407)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Ph: (513) 381-2838
Fx: (513) 381-0205
gmusekamp@taftlaw.com
ecohn@taftlaw.com

*Counsel for Plaintiff Cleer LLC (f/k/a*
*Greenback Business Services LLC) d/b/a*
*Cleer Tax*

23

## VERIFICATION

I, \_\_David McKeegan\_\_\_, being first duly cautioned and sworn, hereby depose and state upon personal knowledge that the factual allegations contained in the foregoing Verified Complaint for Monetary Damages, Temporary Restraining Order, and Preliminary and Permanent Injunctive Relief ("Complaint") are true and correct to the best of my knowledge, information and belief. Where the allegations in the Complaint are made upon information and belief, I am informed of the information contained in such allegations and believe such information to be true. The documents attached to the Complaint are true and correct copies of those documents as described in the Complaint.

David McKeegan

Subscribed and sworn by _David McKeegan_ before me, a Notary Public, on this _16_ day of September, 2024.

Notary

CHIP KEATING
NOTARY PUBLIC - CONNECTICUT
MY COMM. EXPIRES 12/31/2026

134951309v1