UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| **CLEER LLC (F/K/A GREENBACK BUSINESS SERVICES LLC) D/B/A CLEER TAX,** : : : : **Plaintiff,** : : v. : : **CRYSTAL STRANGER, et al.,** : : **Defendants.** : | Case No. 3:24-cv-01496-MPS Judge Michael P. Shea PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR IMMEDIATE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF |

**I.   THE COURT SHOULD DISREGARD THE UNVERIFIED ASSERTIONS IN DEFENDANTS' OPPOSITION**

Argument of counsel is not a substitute for evidence. Defendants "cannot rely on factual representations in the parties' briefs to decide a motion for a preliminary injunction or temporary restraining order." *Amato v. Elicker*, 460 F. Supp. 3d 202, 214 n.6 (D. Conn. 2020). Cleer member and President David McKeegan verified and swore to the accuracy of the facts in Cleer's Complaint. (*See* Compl., Doc. 1 at 24). Those and the facts in Mr. McKeegan's attached Declaration are the only facts before the Court. ("D. McKeegan Dec." attached as Exhibit 1).

Defendants did not submit a declaration or any evidence with their Opposition. Instead, they rely solely on argument of counsel. For this reason alone, the Motion should be granted because the Court should only consider the sworn facts before it.

**II.   DESPITE STRANGER'S EFFORTS TO NOT COOPERATE, CLEER HAS PROPERLY COMPLETED SERVICE OF PROCESS**

   **A.   <u>Cleer has Properly Effectuated Service on Defendants.</u>**

Seeking to avoid the merits, Defendants spend much of their brief making procedural arguments. Defendants filed their Opposition eight days before the Court's deadline for Cleer to submit proof of service on Defendants; perplexingly attacking Cleer for not having served them

135342489v1

before the deadline. (*See* Opp'n, Doc. 20 at 13). On October 3, 2024, Cleer properly served a copy of the Complaint and summons on Optic Tax, and did the same for Stranger on September 30, 2024. (*See* Docs. 27, 27-1, 28, 28-1, 29, and 29-1). On October 8, Cleer filed proof of service on Optic Tax and Stranger. (*Id.*). Defendants concede that service has been effected on Optic Tax, but object to service on Stranger. (Doc. 30). That argument fails for two reasons.

First, service was effectuated on Stranger. Pursuant to Civ. R. 4(e)(1)(C), service on an individual can be effectuated by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." As shown by the proof of service on Stranger, it was sent by Certified Mail and signed by her "Agent":



Registered Agents, Inc., a registered agent service in Wyoming, is located at the 30 N. Gould Street – the address where Stranger was served.[1] Stranger's objection to service is not supported by a declaration or any evidence whatsoever. (Doc. 30).

Second, even if service has not been perfected on Stranger, it is without consequence because there is no dispute that Optic Tax, a corporation, has been properly served. "A corporation can only act through its directors and officers . . . and therefore a corporation can

---

[1] *See* https://www.wyomingagents.com/about

manifest its desires only through the acts of its agents." *United States v. Sullivan*, No. 23-6559, 2024 WL 4095659, at *31 (2d Cir. Sept. 6, 2024) (internal citation omitted). Accordingly, service on Optic Tax allows the Court to enter all of the relief requested by Cleer given that Stranger is the sole owner, shareholder, director, officer, and controlling party of Optic Tax. (Compl., Doc. 1 a 3, ¶ 9). A duty imposed upon the corporation by a court or by an order applies to the officers and employees of the corporation. *See*, *e.g.*, *Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, No. 90 C 1853, 1995 WL 472705, at *8 (N.D. Ill. Aug. 8, 1995) ("A rule which would allow a corporate officer to remain deliberately ignorant of the particulars of a court order, and thereby avoid a contempt citation, would defy common sense.").

Stranger cannot on one hand argue that she has not been served, but then use her company (that has been properly served) to conspire against Cleer to unfairly compete, interfere with Cleer's contracts and customers, solicit Cleer's customers and employees in breach of contract, and misappropriate Cleer's trademark rights. "Indeed, such a theory ignores the reality that [the Connecticut Supreme Court] has recognized that the fact that [an owner of a corporation] acted on behalf of [the corporation] is no more than a reflection of the reality that all corporations act through individuals." *Joseph Gen. Contracting, Inc. v. Couto*, 317 Conn. 565, 577, 119 A.3d 570, 579 (Conn. 2015) (quotation omitted).[2]

### III. STRANGER IS BOUND BY THE APPLICABLE RESTRICTIVE COVENANTS IN THE OPERATING AGREEMENT AND MEMBERSHIP VESTING AGREEMENT AND BREACHED THOSE RESTRICTIVE COVENANTS

#### A. The Covenants in the Operating Agreement Restrictive Apply to Stranger.

---

[2] Cleer requested that Defendants waive service but they refused. To the extent the Court finds that Stranger has not been served and that it cannot proceed without service on Stranger, good cause exists to allow additional time to complete service and limited expedited discovery in light of the emergency relief requested, Stranger's refusal to cooperate, and her undisclosed whereabouts.

135342489v1

Stranger claims that she is not bound by the restrictive covenants in the Operating Agreement ("OA") because she was removed by Cleer's other members for cause and did not voluntarily "withdraw." (Opp'n, Doc. 20 at 13). That argument fails for many reasons.

The OA is governed by Wyoming law. (Compl. Ex. C, Doc. 1-3 at 15). The Wyoming Supreme Court has explained a court's role in interpreting a contract:

> Our basic purpose in construing or interpreting a contract is to **determine the true intent and understanding of the parties**. . . . **Common sense and good faith are leading precepts of contract construction**. . . . We have also recognized that **the language of a contract is to be construed within the context in which it was written**. . . . **The court may look to the surrounding circumstances, the subject matter, and the purpose of the contract to ascertain the intent of the parties at the time the agreement was made**.

*Polo Ranch Co. v. City of Cheyenne*, 969 P.2d 132, 136–37 (Wyo. 1998) (emphasis added). Courts must also give meaning to all language in a contract without rendering any language meaningless. *See*, *e.g.*, *Pope v. Rosenberg*, 2015 WY 142, ¶ 24, 361 P.3d 824, 831 (Wyo. 2015) ("We do not construe contracts in a fashion that renders any provision of them meaningless").

The operative language in the OA is identical for the non-competition and non-solicitation provisions, they both apply: "following **withdrawal for any reason as a Member** . . . ." (Compl. Ex. C, Doc. 1-3 at 11–12 (emphasis added)). "Withdrawal" means "the act of taking back or away something that has been granted or possessed."[3] That is exactly what happened here - Stranger obtained a membership interest in Cleer that was taken back pursuant to paragraph 6.5 of the OA.

Moreover, Stranger asks the Court to ignore the language "for any reason" that appears in the same sentence – "for any reason" must be given meaning and read in context with the entire contact – that the restrictive covenants apply regardless of the reason for separation from Cleer.

---

[3] https://www.merriam-webster.com/dictionary/withdrawal.

4

Stranger's reading of the OA also conflicts with other provisions of the contract. In fact, the OA does not allow a member to voluntarily withdraw from Cleer:

> 6.1.1. Except as hereinafter expressly provided, **the Members shall not sell, assign, transfer, pledge, hypothecate, or otherwise dispose of any of their Membership Interest in the Company** by operation of law or otherwise without the prior written consent of the Managers of the Company. The term "dispose of" as used in this paragraph shall include the sale, assignment, transfer, conveyance, gift, exchange, devise, encumbrance, pledge, hypothecation, and any other disposition of Membership Interests, **whether voluntary, involuntary or otherwise**, including any distribution by an administrator or personal representative or trustee

(OA, 6.1.1) (emphasis added). The only way to disassociate as a member is via a sale to a third-party (OA, ¶6.3) or be terminated for cause (OA, ¶6.5). Thus, Stranger's interpretation renders the restrictive covenants meaningless because a voluntary withdrawal is not permitted by the OA.

### B. Stranger Violated the Non-Competition Provision in the OA.

The only defense Stranger raised to the non-competition provision in the OA is that it does not apply to her. As explained above, it does. Stranger does not dispute that she has violated the non-competition provision in the OA by operating Optic Tax. (*See* Opp'n, Doc. 20 at 14).

### C. Stranger Violated Non-Solicitation Provisions in the OA and MVA.

Cleer does not claim that Stranger is bound by the non-competition provision in the Membership Vesting Agreement ("MVA"). (*See* Opp'n, Doc. 20 at 14). She is, however, bound by the non-solicitation provisions in the MVA and OA, which is not disputed.

Stranger does not deny that she has violated the non-solicitation provisions. Instead, she claims that Cleer has no evidence to prove she violated the provisions because Cleer "fails to identify any specific customer or supplier with whom Ms. Stranger had contact or solicited on behalf of Cleer" in the two years before she separated from her employment with Cleer. (*Id.* at 15). That is false.

As a member and high-ranking employee of Cleer, Stranger had access to and at least indirect contact with *all* of Cleer's clients. She knows exactly who Cleer's clients are, which is how she is not so coincidentally targeting all of them. In its Complaint, Cleer identifies Funbers Telecom Corp. as one specific client whom Stranger had at least indirect contact with during the two years before she resigned from Cleer and that she then solicited in violation of the OA and MVA non-solicitation provisions on September 6. (Compl., Doc. 1 at 11, ¶ 48). At this early stage, Cleer is not required to identify every single customer and Defendants do not provide any case law stating as much. There is sufficient evidence to establish that Defendants are soliciting Cleer's clients using knowledge gained by Stranger while she was employed and an owner of Cleer.

Since filing the Complaint, Cleer learned that Stranger is using Cleer's contact list to improperly send blast solicitation emails to Cleer's clients. On September 30 (six days after Cleer filed its Motion for TRO), Stranger sent a blast email from Optic Tax to many of Cleer's clients, including, for instance, Tachyon. (D. McKeegan Dec. at ¶ 12, Ex. H). **She sent exactly the same message to a "dummy" email account used by Cleer for testing and previewing communications, which Stranger would only know if she had access to Cleer's mailing list** and was sending out blast-emails to everyone on Cleer's mailing list.[4]

For the employee non-solicit provisions, Stranger claims "Cleer's bookkeepers terminated their employments with Cleer and **then** reached out to Ms. Stranger." (Opp'n, Doc. 20 at 15 (emphasis in original)). That is false. Stranger was and continues to directly solicit currently employed Cleer employees as shown by the attached emails. (D. McKeegan Dec. at ¶ 11, Ex. G).

## IV.   CLEER IS LIKELY TO PREVAIL ON ITS TRADEMARK CLAIMS

### A.   Cleer Owns the Cleer.tax Domain and Trademarks, Not Stranger.

---

[4] Stranger refused to return a company laptop to Cleer upon her resignation which must also be returned to Cleer and Stranger enjoined from any further use of Cleer's mailing list. (D. McKeegan Dec. at ¶ 12).

Stranger claims she "owns the 'cleer.tax' domain name and has owned it at all times since she registered it in May 2022." (Opp'n, Doc. 20 at 16). Though Stranger may have registered the cleer.tax domain in her name on May 26, 2022, she did so in while employed and in her capacity as an employee of Cleer for its rebranding from GBS to Cleer. (Compl., Doc. 1 at 9, ¶ 36).

While Stranger represents to the Court that she registered "Cleer" for her own purposes and her alleged "Clear"-related companies that she had been working on for years, she did not provide any sworn testimony to corroborate that false statement.

The same day Stranger registered Cleer.tax, Mr. McKeegan personally registered the "cleertax.com" domain name for Cleer. (*Id.* ¶ 37). That was no coincidence. Both Mr. McKeegan and Stranger were collaborating on the rebranding, including registering Cleer-related domain names. For example, in one email, Stranger stated: "What do you think? Is it worth going ahead? Was really hard to find one name **we** agreed on, and now **we** have the logos and all." (D. McKeegan Dec. at ¶ 8, Ex. E (emphasis added)).

Stranger is also aware that certain meetings between the members were recorded and transcribed. During those meetings, the members discussed rebranding and obtaining Cleer-related domain names for the company. (D. McKeegan Dec. at ¶ 6, Ex. C) (*e.g.*, Stranger stating "I like clear, I like clear path. Clear path. That's a nice ring to it. I was like that all inclusive solution"; "So I think that I think we move on the trademark and we move forward on the rear of rebranding. Because, you know, even if we can't get the dotcom, I think if we get the trademark and we get it strong and we'd build up with that . . . . Because, I mean, if we all like the name and we're in agreement on it, I mean, we've been searching for a name for like almost six months at this point. And nothing stuck until this that . . . So I think if you get a good name, like that shouldn't be the hold up these days, but if we can get the.com like even better. . . . Anyway, you look at it to do a

7

rebranding"). Stranger was also included on a Cleer internal, interactive to-do list, on which she and other Cleer employees discussed obtaining the Cleer.tax domain and trademarks **for the company**. (*Id.* at ¶¶ 3, 5, 7, Exs. A, B, D) (*e.g.*, action item for the team to "get Trademark[s] for Cleer, CleerPath, and CleerTax"). Once obtained, Stranger even renewed the Cleer.tax domain on May 26, 2023, while still employed by Cleer and using her Cleer credit card. (Compl., Doc. 1 at 9, ¶ 39).

Stranger has fabricated a story for purposes of this litigation. On **January 23, 2024**, more than a year and a half after Stranger purportedly was creating Cleer for her other "Clear"- related businesses and granting an oral trademark license to Cleer, she emailed Mr. McKeegan: "**Since you have been pressuring me so hard**, **I have done some research into it, and as I actually purchased the domain, and I hold it in my account, technically I own it**." (D. McKeegan Dec. at ¶ 10, Ex. F). In other words, Stranger asks the Court to take her at face value that on May 26, 2022, she owned, and had personal reasons to own, Cleer.tax and granted some unevidenced oral trademark license for its use to Cleer. **Yet she did not even form the belief that she owned Cleer.tax until she could use it as a pressure point years later when the relationship soured**.

There is absolutely no evidence to support Stranger's representation that she was pursing "Cleer" trademarks for her own endeavors – the only evidence is that her position is disingenuous. There should be no dispute that she registered the domains while employed by Cleer and in her capacity as a Cleer member and employee. Thus, the trademarks belong to Cleer. *See Vogster Ent., L.L.C. v. Mostovoy*, No. 09-CV-1036 RRM/RER, 2009 WL 691215 (E.D.N.Y. Mar. 16, 2009) (court granting TRO on plaintiff's cybersquatting claim against former employee that would not return website credentials, observing that "[u]nder the circumstances here, it is unlikely that Defendants can advance any legitimate purpose for their current ownership or control of [the] websites and domain names.").

### B. Stranger Never Had the Right to and Did Not Grant Cleer an Oral License to Use the Cleer.tax Domain.

Stranger claims that she "orally offered GBS a license to use the 'cleer.tax' domain name and the CLEER trade name, and based solely on that oral license, GBS changed its name to Cleer LLC." (Opp'n, Doc. 20 at 16). Cleer is the rightful owner of Cleer.tax, rendering this point moot (Stranger could not have licensed out something that was not hers).

Regardless, Stranger does not offer a shred of evidence - not a single email, text message, a MOU, or even a sworn statement under oath - to support her story. As shown above, all of the evidence shows that Stranger never had any intent of offering an oral license to Cleer for the trademarks because the only intent in registering the domain names was for Cleer's business.

This argument also fails because of the Connecticut Statute of Frauds. As the court in *Roberto Coin, Inc. v. Goldstein*, No. 18-CV-4045(EK)(ST), 2021 WL 4502470 (E.D.N.Y. Sept. 30, 2021) explained, "[b]ecause the alleged perpetual [trademark] license agreement could not 'be performed within one year from the making thereof,' *see* New York General Obligations Law § 5-701," which is identical in all material respects to the Connecticut Statute of Frauds, "it is subject to the Statute of Frauds' requirement that it be reduced to (or evidenced by) a signed writing." *Id.* at *14. Stranger purportedly registered Cleer.tax for herself on May 26, 2022 and granted Cleer an oral license for its use until revoked. Assuming that were true (it is not), the supposed oral trademark license Stranger allegedly granted Cleer was for an indefinite duration and was not terminated within one year, so it violated the Statute of Frauds. *See* C.G.S.A. § 52-550(a)(5).

### D. The *Polaroid* Factors do not Weigh in Defendants' Favor.

Defendants' Opposition claims that Cleer is unlikely to prevail on its trademark claims because many of the *Polaroid* factors weigh in their favor. (Opp'n, Doc. 20 at 17–20). These factors are used to determine the likelihood of confusion among consumers as to the source of

goods based on the similarly of two trademarks. The factors are inapplicable here because Stranger has stolen Cleer's trademark and is passing it off on her own. Regardless, the factors favor Cleer.

Defendants claim that the Cleer Trademarks are unprotectable because "'Clear', or its homonym 'cleer', in context of any type of consulting services, is a descriptive mark. (*Id.* at 18). Perhaps that would be true if Cleer's name were Clear.tax. But, the name is Cleer.tax, or Cleer, which is not a recognized word. And, under trademark law "[a] fanciful mark is a made-up term." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995). Because fanciful marks are inherently distinctive, *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 385 (2d Cir. 2005), the trademarks are protectable.

Defendants further assert that the good-faith use *Polaroid* factor tips in their favor because "Ms. Stranger has used CLEAR to identify tax consulting businesses since as early as 2006," and "CLEAR is an anagram of Ms. Stranger's middle name, 'Clare' . . . ." (Opp'n, Doc. 20 at 19). However, the issue before the Court is use of "Cleer" not "Clear." And, no evidence was submitted to the Court to support this argument and it is disproven by the actual evidence before the Court.

Defendants also wrongly contend that the "quality factor" favors their position. Defendants think that Optic Tax provides "competent and timely tax advice and tax preparation services to diverse clients" at a "high level of quality . . . ." (*Id.* at 20). Even if true, Optic Tax's services does not mean this factor favors Defendants. In this case, the services create a likelihood of confusion because Optic Tax is profiting from Cleer's goodwill when Cleer's clients and prospective clients click the Cleer.tax link and are redirected to Optic Tax and are receiving emails from Optic Tax that appear to be from Cleer.

Respectfully submitted,

*/s/ Evan H. Cohn*
George B. Musekamp (pro hac vice)
Evan H. Cohn (pro hac vice)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202
Ph: (513) 381-2838
Fx: (513) 381-0205
gmusekamp@taftlaw.com
ecohn@taftlaw.com

Michael S. O'Malley, Esq. (ct31784)
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
281 Tresser Boulevard
Stamford, CT 06901
Ph: (203) 969-3109
Fx: (203) 969-3150
Michael.o'malley@ogletree.com

*Counsel for Plaintiff Cleer LLC (f/k/a Greenback Business Services LLC) d/b/a Cleer Tax*

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 11, 2024, the foregoing Plaintiff's Reply In Support Of Plaintiff's Motion For Immediate Temporary Restraining Order And Preliminary Injunctive Relief was electronically filed with the Court's CM/ECF system and the system will send electronic notice to all counsel of record.

*/s/ Evan H. Cohn*

135342489v1