## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
## NEW HAVEN DIVISION

| | | |
|---|---|---|
| **CLEER LLC (F/K/A GREENBACK BUSINESS SERVICES LLC) D/B/A CLEER TAX** | : : : : | Case No. 3:24-cv-01496-MPS |
| | | Judge Michael P. Shea |
| Plaintiff, | : : | |
| v. | : : | **PLAINTIFF'S OPPOSITION TO DEFENDANT OPTIC TAX'S MOTION TO DISMISS** |
| **CRYSTAL STRANGER, ET AL.,** | : : | |
| Defendants. | : : | |

## I.      INTRODUCTION

Defendant Optic Tax, Inc. ("Optic Tax") has moved this Court to dismiss it from this lawsuit for lack of personal jurisdiction ("Motion").[1] The Motion should be denied because Optic Tax ignores the fact that it consented to personal jurisdiction in Connecticut as the alter ego of Defendant Crystal Stranger ("Stranger"). All of Optic Tax's illegal actions are being orchestrated by Stranger – founder and CEO of Optic Tax - for the benefit of Optic Tax. In short, under Connecticut law, Stranger's consent to Connecticut jurisdiction binds Optic Tax as well. Alternatively, although not addressed by Optic Tax, Optic Tax's conduct satisfies Connecticut's long-arm statute, and the Court's exercise of personal jurisdiction over Optic Tax comports with notions of due process for the reasons explained further below.

## II.      LEGAL STANDARD

---

[1] Optic Tax's Motion states that it moves to dismiss Cleer's Amended Complaint under "Rules 12(b)(2) and (6)." (Motion, Doc. 57 at 1) Yet, the Motion's caption and the caption of the Memorandum in Support ("Memorandum") of the Motion rely only on Rule 12(b)(2) as Optic Tax's basis for seeking dismissal of the Amended Complaint. (*See id.*; *see also* Memorandum, Doc. 57-1 at 1). Accordingly, Cleer maintains that it has satisfied any pleading standard to survive dismissal under Rule 12(b)(6) as to any of its claims against Optic Tax or Stranger.

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001)). In evaluating whether the requisite showing has been made, the pleadings and any supporting materials are construed in the light most favorable to the plaintiffs. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

Construing the facts in favor of Cleer, as the Court must, the verified allegations in Plaintiff's Amended Complaint and supporting materials more than establish a prima facie showing of personal jurisdiction over Optic Tax.

## III.    OPTIC TAX CONSENTED TO PERSONAL JURISDICTION IN THIS COURT AS THE ALTER EGO OF STRANGER

Personal jurisdiction is a waivable right, and a party may give "express or implied consent to the personal jurisdiction of the court." *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 703 (1982). For example, parties may stipulate in advance to litigate any possible controversies within a particular jurisdiction. *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court."). Ultimately, where such an agreement has been freely negotiated and is not "unreasonable or unjust," its enforcement does not offend due process. *Meribear Prods., Inc. v. Frank*, 340 Conn. 711, 727, 265 A.3d 870, 881 (2021). Similarly, a party may waive personal jurisdiction by participating in litigation in the selected forum. *See Roberts v. Bennaceur*, 658 Fed. App'x 611, 616 (2d Cir. 2016) ("[A] party may forfeit a right or defense by actively litigating other issues and

forgoing the opportunity to litigate that right or defense."); *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 101 (2d Cir. 2016) (finding that defendant, by moving to vacate and remand to the Southern District, forfeited its personal jurisdiction argument); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) ("Personal jurisdiction, unlike subject-matter jurisdiction, can . . . be purposely waived or inadvertently forfeited.").

It is also well established in the Second Circuit that the exercise of personal jurisdiction over an alter ego corporation does not offend due process. *See Transfield ER Cape Ltd. v. Indus. Carriers, Inc.,* 571 F.3d 221, 224 (2d Cir.2009). "In general, alter-egos are treated as one entity for jurisdictional purposes." *Id.* at 224 (internal quotation marks and citation omitted). When a plaintiff can establish its alter ego claims, the alter ego entities are subject to the Court's personal jurisdiction by way of the defendant being subject to personal jurisdiction. *Essar Steel Algoma Inc. v. S. Coal Sales Corp.*, No. 17MISC360ATRWL, 2018 WL 6332900, at *3 (S.D.N.Y. Oct. 29, 2018); *S. New England Tel. Co.*, 624 F.3d at 138 (2d Cir. 2010) (allegations of corporate alter ego status "if established, would clearly support a finding of personal jurisdiction. It is also well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process."); *Okapi Partners, LLC v. Holtmeier*, No. 18-CV-6381 (PKC), 2019 WL 1517553, at *6 (S.D.N.Y. Apr. 8, 2019) ("Because Rx consented to New York jurisdiction and the Complaint adequately alleges that Rx is defendants' alter ego, Okapi has adequately demonstrated, at the pleading stage, that defendants are subject to personal jurisdiction in New York"); *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09CIV6148VMMHD, 2012 WL 12932049, at *26 (S.D.N.Y. July 17, 2012), *report and recommendation adopted sub nom. Cardell Fin. Corp. v. Suchodolksi Assocs., Inc.*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012) (exercising personal jurisdiction

over a defendant because it was the alter ego of party that consented to personal jurisdiction in New York).

Cleer has pled sufficient facts to pierce the corporate veil based on Stranger's conduct, and this Court has already concluded that Stranger consented to personal jurisdiction through the forum selection clause in the Membership Vesting Agreement ("MVA"). (Amended Compl. Ex. D, Doc. 55-4). And, she has otherwise consented to personal jurisdiction in this forum through her participation. Thus, as explained further below, Optic Tax has also consented to personal jurisdiction in this Court as the alter ego of Stranger.

### A.    Optic Tax is the alter ego of Stranger under Delaware law.

Connecticut courts have held that the law of a corporation's state of incorporation is applied to determine whether the corporate veil is pierced. *Deutsche Bank AG v. Sebastian Holdings, Inc.*, No. X08FSTCV135014167S, 2021 WL 4482154, at *27 (Conn. Super. Ct. Sept. 7, 2021), *aff'd*. 346 Conn. 564, 294 A.3d 1 (Conn. 2023) (citing *Weber v. U.S. Sterling Sec., Inc.*, 282 Conn. 722, 730, 924 A.2d 816, 823 (Conn. 2007) (noting that "the state of incorporation has the greater interest in determining when and if that insulation [which protects corporate employees] is to be stripped away." (quoting *Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y.1991))). Optic Tax is incorporated in Delaware (Amended Compl. ¶ 6, Doc. 55 at 2; Answer ¶ 6, Doc. 65 at 2), so the Court should apply Delaware law to analyze alter ego.

Delaware law permits a court to pierce the corporate veil of a company "where [it] is in fact a mere instrumentality or alter ego of its owner." *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del.Ch.1992). "A court may disregard the corporate form 'in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations among members of the corporation . . . are involved.'" *Maloney-Refaie v. Bridge*

*at Sch., Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008) (quoting *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 43 Del. Ch. 516, 521, 239 A.2d 629, 633 (1968)); *see also Gadsden v. Home Pres. Co.*, 2004 WL 485468, at *4 (Del. Ch. Feb. 20, 2004, *revised* Mar. 12, 2004) ("A court of equity will disregard the separate legal existence of a corporation where it is shown that the corporate form has been used to perpetrate a fraud or similar injustice."). Alternatively, "traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim—the so-called 'alter ego' factors that include insolvency, undercapitalization, commingling of corporate and personal funds, the absence of corporate formalities, and whether the subsidiary is simply a facade for the owner." *Manichaean Capital, LLC v. Exela Techs., Inc., 251 A.3d 694, 714, 2021 Del. Ch. LEXIS 100, *29-30, 2021 WL 2104857; United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988) ("[N]o single factor could justify a decision to disregard the corporate entity, but . . . some combination of them [is] required, and . . . an overall element of injustice or unfairness must always be present . . . ."). "The alter ego theory [only] comes into play in piercing the corporate veil when one seeks to hold liable an individual owner who controls the [company]." *Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 333 n. 7 (3d Cir. 2000) (emphasis added).

At this stage, Cleer is not required to prove a theory of piercing the corporate veil. In fact, the "standard for piercing the corporate veil for purposes of personal jurisdiction . . . is a less stringent one" than the standard for imposing liability. *Cardell Fin. Corp.*, 2012 WL 12932049, at *14 (internal quotation marks and citation omitted); *Bank of Am. v. Apollo Enter. Sols., LLC*, No. 10 CIV 5707 DLC, 2010 WL 4323273, at *4 (S.D.N.Y. Nov. 1, 2010) (noting that courts apply a "less onerous standard" when evaluating personal jurisdiction under an alter ego theory than the standard required for piercing the corporate veil for liability purposes (internal quotation marks omitted)). Cleer has pled sufficient facts to support such a theory.

Stranger is the sole shareholder/owner, CEO, and President of Optic Tax. (Amended Compl. ¶ 12, Doc. 55 at 3). Indeed, counsel for Stranger admitted that Stranger controls Optic Tax during the Status Conference on December 5, 2024, and the Optic Tax website lists Stranger as the "the visionary force and owner of Optic Tax" who "is dedicated to steering Optic Tax towards innovation, client-centric solutions, and sustained financial success."[2] Optic Tax is Stranger, and Stranger is Optic Tax.

Since forming Optic Tax, Stranger has steered Optic Tax in a direction of boundless unfair competition, injustice, fraud, and wrongdoing, including tortiously interfering with Cleer's contracts and business relationships, hijacking and redirecting Cleer's website domain to Optic Tax, sending solicitation emails to Cleer's contact list using its own Cleer.tax email domain for the benefit of Optic Tax, stealing Cleer's trade secret client list to solicit clients for Optic Tax's benefit, poaching many employees and independent contractors to leave Cleer for Optic Tax and convincing them to upload their Cleer client contact information to the Optic Tax database, and defaming Cleer and its members to redirect clients to Optic Tax. (*Id.* ¶¶ 56–73, Doc. 55 at 12–18). Stranger alone directed all of Optic Tax's illegal activities and the company appears to be nothing more than a façade for Stranger to conduct her illegal activities. Optic Tax has had no independence from Stranger since she formed it in early 2024. (*Id.* ¶¶ 56–73, Doc. 55 at 12–18). To allow Optic Tax, as the economic entity directly deriving revenue from Stranger's misconduct on her behalf, to evade liability on the basis of personal jurisdiction would only defeat justice and equity. *See Adtile Techs. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 522 (D. Del. 2016) (permitting personal jurisdiction under an agency theory based on the "degree of control which the

---

[2] https://optictax.com/about/ (last viewed Dec. 10, 2024).

parent exercises over the subsidiary" such that the "independence of the separate corporate entities is disregarded").

Stranger's control over Optic Tax has actually and proximately caused the injuries and unjust losses Cleer has suffered and continues to suffer. Optic Tax has thus also consented to this Court's jurisdiction as Stranger's alter ego under Delaware law.

**B.       Optic Tax is the alter ego of Stranger under federal common law.**

Optic Tax is also Stranger's alter ego under federal common law's alter ego personal jurisdiction doctrine. *See*, *e.g.*, *S. New England Tel. Co.*, 624 F.3d 123 at 139 (noting personal jurisdiction proper under either Connecticut or federal common law veil piercing theory). "Federal common law allows piercing of the corporate veil where (1) a corporation uses its alter-ego status to perpetrate a fraud *or* (2) where it so dominates and disregards its alter-ego's corporate form that the alter-ego was actually carrying on the controlling corporation's business instead of its own." *Status Int'l S.a. v. M & D Mar. Ltd.*, 994 F. Supp. 182, 186 (S.D.N.Y.1998) (emphasis in original). "With respect to the second prong, a plaintiff demonstrates that an entity is the alter ego of another entity for jurisdictional purposes when one entity exerts greater than normal control over the other . . . ." *In re Lyondell Chem. Co.*, 543 B.R. 127, 141–42 (Bankr. S.D.N.Y. 2016) (citing cases; internal quotation marks omitted).

For the same reasons analyzed above in analyzing veil piercing under Delaware law, this Court should disregard Optic Tax's corporate form under federal common law because it is a mere instrumentality or alter ego of Stranger, who has manipulated Optic Tax to contravene law and commit tortious acts against Cleer. (Amended Compl. ¶¶ 56–73, Doc. 55 at 12–18). Stranger's steering of Optic Tax to conduct illegal activity far exceeds any limit that one might construe as acceptable.

### C.    Optic Tax waived the defense of personal jurisdiction as Stranger's alter ego.

When Stranger agreed to jurisdiction in Connecticut through the MVA, Optic Tax also waived its defense as to lack of personal jurisdiction. *See Compagnie Des Bauxites De Guinee*, 456 U.S. at 703 (finding personal jurisdiction is a waivable right, and a party may give "express or implied consent to the personal jurisdiction of the court."). Moreover, when Stranger accepted service of the Amended Complaint and filed her Answer to the Amended Complaint with "counterclaims"[3] against Cleer and the McKeegans, Optic Tax, as Stranger's alter ego, waived the defense of personal jurisdiction. Alter egos are treated as one entity for jurisdiction purposes. *Wm. Passalacqua Builders Inc. v. Resnick Dev. So., Inc.*, 933 F.2d 131, 142–43 (2d Cir. 1991). And personal jurisdiction exists over a party where its alter ego has "participated fully in the proceedings . . . ." *Kidder, Peabody & Co. v. Maxus Energy Corp.,* 925 F.2d 556, 562 (2d Cir. 1991). In other words, "[s]ince an alter ego is considered to be an indistinguishable entity, jurisdiction over the [a]nswering [d]efendant[] establishes jurisdiction over [her] alter ego[]." *N. Tankers (Cyprus) Ltd. v. Backstrom*, 901 F. Supp. 72, 77 (D. Conn. 1995). Because Cleer has made a prima facie showing under Delaware and federal common law that Optic Tax is Stranger's alter ego, Optic Tax has waived the defense of personal jurisdiction.

For this reason, Optic Tax has consented to the personal jurisdiction of this Court as Stranger's alter ego and no further analysis is necessary.

### IV.    ALTERNATIVELY, OPTIC TAX'S CONDUCT SUBJECTS IT TO PERSONAL JURISDICTION IN THIS COURT UNDER CONNECTICUT'S LONG-ARM STATUTE AND NOTIONS OF DUE PROCESS.

---

[3] The claims Stranger asserts against the McKeegans are not "counterclaims"; they are third-party claims against third-party Defendants David and Carrie McKeegan.

While the Court need not analyze Optic Tax's conduct because it agreed to jurisdiction in Connecticut as Stranger's alter ego, "[a] defendant's conduct is sufficient for the exercise of personal jurisdiction if (1) the conduct satisfies the requirements of the [Connecticut] long-arm statute . . . and (2) the conduct satisfies the 'minimum contacts' requirement of the Due Process Clause of the Fourteenth Amendment." *Ensign–Bickford Co.*, 817 F. Supp. 1018, 1026 (D.Conn.1993).

For the reasons below, Optic Tax's conduct satisfies both prongs of this analysis, and Optic Tax is subject to the personal jurisdiction of this Court.

### A.    Optic Tax's Conduct Falls Under Connecticut's Long-Arm Statute.

In relevant part, Connecticut's long-arm statute provides that

> [e]very foreign corporation shall be subject to suit in [Connecticut], by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . . (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; . . . or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

C.G.S.A. § 33–929(f). Optic Tax's conduct satisfies subsections (f)(2) and (4).

### 1.    *Optic Tax has actively solicited business in Connecticut.*

A federal district court in Connecticut can exercise long-arm jurisdiction under C.G.S.A. § 33-929(f)(2) over a foreign business if the business has repeatedly solicited business in Connecticut, whether or not the orders or offers were accepted within or outside the state. *Id.* Optic Tax's conduct on its website is enough for this Court to exercise personal jurisdiction over it under C.G.S.A. § 33-929(f)(2).

Courts in this District distinguish between active and passive websites when assessing personal jurisdiction. *The Cousteau Soc., Inc. v. Cousteau*, 498 F. Supp. 3d 287, 303–04, 306 (D. Conn. 2020). Active websites, which support personal jurisdiction, are those "where individuals can directly interact with a company over their Internet site, download, transmit or exchange information, and enter into contracts with the company via computer." *On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 265 (D. Conn. 2001). On the other hand, "[p]assive websites that require a potential customer to initiate contact with the foreign corporation by telephone, mail, or email, rather than allowing them to order directly over the Internet, cannot support personal jurisdiction." *Kun Shan Ge Rui Te Tool Co. Ltd. v. Mayhew Steel Prods., Inc.*, 821 F. Supp. 2d 498, 503 (D. Conn. 2010).

There is no question that Optic Tax's website is active and specifically solicits Connecticut customers. Optic Tax has a "portal login" that allows Connecticut residents to interact with Optic Tax over the Internet, download and transmit data, and exchange tax information:



The website also includes a calendar that allows anyone to book and pay for tax consultation services directly with Crystal Stranger, owner of Optic Tax, online, with pricing information available:



In addition, Optic Tax's website **specifically targets Connecticut residents or anyone doing business in Connecticut** by providing a Connecticut Business Tax Guide - a treatise on Connecticut tax laws:



By clicking on "more information," a comprehensive 13-page treatise[4] on Connecticut tax law appears. And at the end of that treatise, Optic Tax invites Connecticut[5] businesses to book a consultation for Optic Tax to help them file taxes:

## What is the corporate income tax rate in Connecticut?

The corporate income tax rate in Connecticut is 7.5%. It is applied to the net income base tax.

## Can you help with state taxes?

If you have questions about Alaska or any state taxes, book a consultation today. View our services page for more information on the various types of consultations and tax optimization services available at Optic Tax.

---

[4] *See also* Ex. A, available online at https://optictax.com/connecticut-business-tax-guide/. (last viewed Dec. 10, 2024).
[5] Though it says "Alaska," Optic Tax must have intended to write "Connecticut" by putting this at the end of its long Connecticut-specific treatise.

Optic Tax is thus subject to long-arm jurisdiction under C.G.S.A. § 33-929(f)(2) because it maintains an active website that specifically and continuously targets Connecticut customers.

### 2.    *Optic Tax has committed tortious acts in or directed tortious acts at Connecticut.*

Optic Tax has committed tortious acts in Connecticut and directed its tortious acts to Connecticut, satisfying C.G.S.A. § 33-929(f)(4). "False representations emanating from out of state into Connecticut have consistently constituted tortious acts of conduct in Connecticut for purposes of invoking § 33–929(f)(4)." *Collinsville Baking Co. v. Master Chef Rest. Equip., Inc.*, No. LLICV146010236S, 2014 WL 7739152, at *12 (Conn. Super. Ct. Dec. 11, 2014) (citing *Teleco Oilfield Services, Inc. v. Skandia Ins. Co.*, 656 F. Sup. 753, 757–58 (D.Conn.1987); *David v. Weitzman*, 677 F.Sup. 95, 97–99 (D.Conn.1987); *McFaddin v. National Exec. Search, Inc.*, 354 F.Sup. 1166, 1171 (D.Conn.1973); *Knipple v. Viking Communications, Ltd.*, 236 Conn. 602, 610–11, 674 A.2d 426 (1996)).

In *Indiaweekly.com, LLC v. Nehaflix.com*, No. CIVA 3:07-CV-194VLB, 2008 WL 687268 (D. Conn. Mar. 10, 2008), this Court found a plaintiff claiming trade secret theft and unfair trade practices established personal jurisdiction over a defendant foreign corporation under C.G.S.A. § 33-929(f)(4) by alleging the defendant gained unauthorized access to its computer system and took and used its customer lists and pricing information to solicit the plaintiff's clients and undercut its pricing. *Id.* at *1, *3. This Court held that "any tortious conduct committed on [an active website subjects a defendant] to the reach of Connecticut's long-arm statute pursuant to section 33–929(f)(4)," and because the plaintiff "allege[d] that the pricing and sale of items on the site constitute an unfair trade practice . . . section 33–929(f)(4) applie[d] to" the defendant. *Id.* at *3.

That is precisely what happened here. On September 6, 2024, Optic Tax sent an email from the Cleer.tax domain to solicit Cleer's clients and disparage Cleer in Connecticut. (Amended

Compl. ¶ 65, Doc. 55 at 14–15). Cleer has alleged on information and belief that Stranger and Optic Tax sent this and other communications to all of Cleer's clients from a client list Stranger stole from Cleer. (*Id.* ¶ 67, Doc. 55 at 17). Stranger confirmed that belief in her response to an Interrogatory Cleer propounded to her:

> The addresses that Ms. Stranger sent the email from the cleer.tax domain to and
> one email from the optictax.com domain was a list of 226 bookkeeping clients
> that was provided to Ms. Stranger by the bookkeeping team who requested Ms.
> Stranger reach out to them in order to support them after David McKeegan had
> sent an email to the clients.

In its solicitations, Optic Tax harmed Cleer in Connecticut by publishing false statements to individuals and entities on Cleer's client list, including that Cleer lost "its entire bookkeeping team," that "there may be no company left," that Cleer "stole" Stranger's "interest" in Cleer, that there had been "lapses in service," that clients could be "left without services," and other remarks about Cleer's business. (Amended Compl. ¶¶ 65, Doc. 55 at 14–16). Optic Tax intended for these communications to reach (and they did reach) Cleer, which is headquartered in Connecticut. (*Id.* ¶ 65, Doc. 55 at 16 ("You may have received another email from my former business partner. I am sorry that he has sunk so low as to make this a public argument. **But now I feel I must defend myself by countering these allegations**, that really should be saved for the courts to decide who owns what." (emphasis added))). Though Optic Tax has made many defamatory remarks directed at Cleer and Connecticut, one single act of defamation directed into a state is all it takes. *David v. Weizman*, 677 F.Supp. 95, 99 (D.Conn.1987) (finding personal jurisdiction where defendants' sole contact with Connecticut was to send into it by mail and telephone fraudulent misrepresentations); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328 (5th Cir.1982), *cert. denied*, 460 U.S. 1023 (1983) (finding a single defamatory telephone call from outside state conferring long-arm jurisdiction

meets due process requirements); *Froess v. Bulman*, 610 F.Sup. 332, 336-37 (D.R.I.1984) (finding a single defamatory letter sufficient to comply with due process requirements). By sending these emails, Optic Tax has engaged in tortious unfair trade practices, tortious interference with Cleer's business relationships, expectancies, and contracts, and defamation, harming Cleer in and directed at Connecticut.

To circumvent a finding that its false representations made their way to Connecticut, Optic Tax states in its Memorandum that "[p]urportedly and within the past month" Cleer moved its headquarters from "Michigan to Connecticut (as in the First Amended Complaint), solely for the purpose of alleging that Cleer suffered harm in Connecticut as part of an attempt to establish personal jurisdiction over Optic Tax," which Optic Tax thinks "smells a bit gamey." (Memorandum, Doc. 57-1 at 5). The principal place of business or headquarters for a LLC like Cleer, similar to a corporation, is generally where the entity's officers or managers direct, control, and coordinate its activities, often called the "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 80, 130 S. Ct. 1181, 1186, 175 L. Ed. 2d 1029 (2010); *see also Ventimiglia v. Tishman Speyer Archstone-Smith Westbury, L.P.*, 588 F. Supp. 2d 329, 336 (E.D.N.Y. 2008) (applying the nerve center test to a LLC). Cleer is an online business with no physical locations. But Cleer's sole members, David and Carrie McKeegan, direct, control, and coordinate Cleer's activities from Connecticut, where they reside in the United States. (Amended Compl. ¶¶ 4–5, Doc. 55 at 2). Cleer has always been headquartered in Connecticut, but it mistakenly listed Michigan as its headquarters when it began this action because its mail service is located there.

Thus, the Court's exercise of personal jurisdiction over Optic Tax is also proper under C.G.S.A. § 33-929(f)(4).

**B.**    **Asserting Personal Jurisdiction Over Optic Tax Does Not Violate Due Process.**

"The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). "First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State." *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 272 (2017) (Sotomayor, J., dissenting)). "Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct." *Id.* (quoting *Bristol-Myers Squibb*, 582 U.S. at 272 (Sotomayor, J., dissenting)). Third, "the exercise of jurisdiction must be reasonable under the circumstances." *Id.* (quoting *Bristol-Myers Squibb*, 582 U.S. at 272 (Sotomayor, J., dissenting)).

For the reasons below, all three of these conditions exist for the Court to exercise personal jurisdiction over Optic Tax in accordance with due process.

**1.**    ***Optic Tax has sufficient minimum contacts with Connecticut.***

"A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the 'quality and nature,' of the defendant's contacts with the forum state under a totality of the circumstances test." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985)). "[M]inimum contacts necessary to support [specific personal] jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).

"[C]ourts in this district use the sliding scale developed in *Zippo Manufacturing* to determine if a website constitutes purposeful availment of the privilege of conducting activities within Connecticut or purposefully directing conduct into Connecticut." *Cousteau*, 498 F. Supp. 3d at 306. "Evidence that Connecticut residents accessed the defendant's site, that they purchased products from the website, **or that the website targeted Connecticut residents** is necessary to find purposeful availment." *ICG Am., Inc. v. Wine of the Month Club, Inc.*, No. 3:09-CV-133 (PCD), 2009 WL 2843261, at *6 (D. Conn. Aug. 28, 2009) (emphasis added). Connecticut courts have held that satisfaction of the long-arm statute in the context of an "active" website also satisfies due process. *See Indiaweekly.com, LLC v. Nehaflix.com*, 2008 U.S. Dist. LEXIS 18056, *9 (D. Conn.) ("[T]he application of Connecticut's long-arm statutes to the defendants is based solely on their active website. Therefore the court's exercise of personal jurisdiction over them does not offend due process."); *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 114-15 (D. Conn. 1998) (noting that websites which specifically target Connecticut residents under long-arm statute also support an exercise of personal jurisdiction). For the same reasons discussed above in analyzing Optic Tax's website under subsection (f)(2) of the long-arm statute, Optic Tax has used its website to purposefully avail itself of the privilege of conducting activities in Connecticut, or purposefully directed its conduct into Connecticut. Among other things, Optic Tax has a detailed Connecticut tax filing treatise on its site, which concludes by inviting viewers to book a consultation with Optic Tax to discuss filing in Connecticut.

As also discussed, Stranger conceded in her response to one of Cleer's Interrogatories that she used Cleer's list of 226 clients to send emails soliciting Cleer's clients and defaming Cleer in Connecticut, which is enough to satisfy due process. *Weitzman*, 677 F. Supp. at 99; *Flowers Industries, Inc.*, 688 F.2d at 328; *Bulman*, 610 F. Supp. at 336–37; *Jane Doe One v. Oliver*, 2003

Conn. Super. LEXIS 1498, *3 (Conn. Super May 19, 2003) (due process requirements satisfied where a foreign defendant purposefully sent an email into Connecticut to "get even" with a plaintiff); *Margolis v. Gillam*, 1995 Conn. Super. LEXIS 621, *4 (Conn. Super. Feb. 22, 1995) (citing cases in which a single defamatory communication was sufficient to comply with due process requirements); *Delcath Sys. v. Enney*, 2006 U.S. Dist. LEXIS 33803, *12 (May 25, 2006) (communications sent into Connecticut sufficient to demonstrate that defendant "purposefully directed her actions towards Connecticut such that she has sufficient contacts to satisfy due process standards, and it would not be unreasonable for the court to exercise jurisdiction over her."). *See also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2nd Cir. 2012) ("Deiter purposefully availed herself of the privilege of conducting activities within Connecticut because she was aware 'of the centralization and housing of the companies' e-mail system and the storage of confidential proprietary information and trade secrets' in Waterbury, Connecticut, and she used that email system and its Connecticut servers in retrieving and emailing confidential files . . . And in addition to purposefully availing herself of the privilege of conducting computer activities in Connecticut, she directed her allegedly tortious conduct towards MacDermid, a Connecticut corporation.").

Evaluating the quality and nature of Optic Tax's contacts with Connecticut under the totality of the circumstances, Cleer has adequately alleged that Optic Tax purposefully availed itself of the privilege of conducting activities in Connecticut, or purposefully directed its conduct into Connecticut, and could reasonably foresee being haled into court here.

Cleer thus satisfies the first prong of the due process analysis.

### 2. <u>*This action arises out of and relates to Optic Tax's contacts with Connecticut.*</u>

"In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers Squibb*, 582 U.S. at 272

(alterations in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Cleer's claims against Optic Tax include unfair competition, tortious interference with existing and prospective business relationships, tortious interference with the restrictive covenants against Stranger under the MVA and Operating Agreement, intellectual property right violations, and defamation (Amended Compl. ¶¶ 80–201, Doc. 55 at 20–34), all of which arise out of or relate to Optic Tax's false statements and tortious conduct directed at Cleer and Connecticut.

Cleer thus satisfies the second prong of the due process analysis.

### 3.  *It is reasonable for the Court to exercise personal jurisdiction over Optic Tax.*

Even if sufficient minimum contacts exist, exercising personal jurisdiction over the defendant must be reasonable to satisfy due process. *Cousteau*, 498 F. Supp. at 307. To assess reasonableness, courts in the Second Circuit ask "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Courts evaluate these factors when assessing reasonableness:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Int'l Shoe*, 326 U.S. at 316 (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113-14 (1987)).

First, the Court's exercise of personal jurisdiction over Optic Tax will impose little (if any) burden on Optic Tax. Stranger is already a party to this litigation, and counsel for Stranger also represents Optic Tax. On the other hand, forcing the parties to litigate the same claims in multiple jurisdictions will impose significant burdens on all parties. Second, Connecticut has an interest in adjudicating this case because Optic Tax has consented to its jurisdiction as Stranger's alter ego and engaged in tortious harm in and directed at Connecticut. Third, it would be convenient and effective for the Court to exercise personal jurisdiction over Optic Tax, as Stranger—its owner, President, and CEO—is a party to this litigation. Fourth, it would be inefficient and a waste of resources for Cleer to refile this action against Optic Tax in another forum. And fifth, as for the states' shared interest in furthering substantive social policies, the redress of tortious and unlawful conduct that took place in Connecticut favors litigating the case here.

For all of these reasons, Cleer has thus made a prima facie showing that Optic Tax is subject to personal jurisdiction in Connecticut, and the Motion should be denied.[6]

## V.    CONCLUSION

For these reasons, Cleer requests that this Court deny Optic Tax's Motion.

---

[6] If the Court finds Cleer has not made a prima facie showing of personal jurisdiction (it has), Cleer requests leave to conduct jurisdictional discovery. *See Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F. Supp. 3d 287, 298 (S.D.N.Y. Feb. 21, 2023).

Respectfully submitted,

*/s/ George B. Musekamp*
George B. Musekamp (pro hac vice)
Evan H. Cohn (pro hac vice)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202
Ph: (513) 381-2838
Fx: (513) 381-0205
gmusekamp@taftlaw.com
ecohn@taftlaw.com

Michael S. O'Malley, Esq. (ct31784)
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
281 Tresser Boulevard
Stamford, CT 06901
Ph: (203) 969-3109
Fx: (203) 969-3150
Michael.o'malley@ogletree.com

*Counsel for Plaintiff Cleer LLC (f/k/a*
*Greenback Business Services LLC) d/b/a*
*Cleer Tax*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 10, 2024, the foregoing Plaintiff's Opposition To Defendant Optic Tax's Motion To Dismiss was electronically filed with the Court's CM/ECF system and the system will send electronic notice to all counsel of record.

*/s/ George B. Musekamp*
George B. Musekamp (pro hac vice)