**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CLEER LLC | : | 3:24-cv-1496-MPS |
| | : | |
| v. | : | Optic Tax's Reply to Cleer's Opposition to |
| | : | Optic Tax's Motion to Dismiss |
| CRYSTAL STRANGER et al. | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID and CARRIE McKEEGAN | : | 2024-12-16 |

# Optic Tax is not an alter-ego of Ms. Stranger under Delaware law

Cleer asserts that, under Delaware law,

> "The alter ego theory [only] comes into play in piercing the corporate veil when one seeks to hold liable an individual owner who controls the [company]." *Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 333 n. 7 (3d Cir. 2000).

ECF 77 at 5 (emphasis omitted).

By contrast, here Cleer seeks to hold the *company* liable for the alleged owner's actions and to subject the company to the Court's personal jurisdiction based on the alleged *owner's* waiver. This is not veil piercing, but rather *reverse* veil piercing — so if Cleer wants to use this for a prima facia showing of personal jurisdiction, they must look to Delaware law, or at least anywhere outside Connecticut, whose statutes prohibit reverse veil piercing. *See* Conn.Gen.Stat. § 33-673c (2019).

Under Delaware law,

[a]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functions properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder. In addition, a court may disregard the corporate form "in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations among members of the corporation . . . are involved."

*Maloney-Refaie v. Bridge at School Inc et al.*, 958 A.2d 871, 881 (Del.Ch. 2008).

Here, Ms. Stranger is not a shareholder of Optic Tax (see Exhibit Q, Stranger Affidavit) and Optic Tax does not "function[] as a facade for the dominant shareholder". Optic Tax is adequately capitalized, keeps corporate records, its officer (Ms. Stranger) does her proper function as CEO, and generally the corporation observes its formalities.

Thus, Optic Tax is not an alter-ego of Ms. Stranger under Delaware law. Her acceptance of jurisdiction does not bind Optic Tax.

## Optic Tax has not conducted affairs in, and has no meaningful contacts with, Connecticut

Cleer alleges that the Optic Tax website establishes minimum contacts with Connecticut due to the website's article on Connecticut tax law and its interactive feature to schedule a consultation.

But there is a recurring theme in Connecticut cases (State and Federal) that hold a website sufficient to establish personal jurisdiction under Connecticut's long-arm statute: there must be sales through the website to render it an "active" website. *See, e.g., Broadcast Marketing International Ltd. v. Prosource Sales Marketing Inc.*, 345 F.Supp.2d 1053 (D.Conn. 2004); *Cousteau Soc'y, Inc. v. Cousteau*, 498 F.Supp.3d 287, 304 (D.Conn. 2020) (cited by Cleer, ECF 77 at 17, in conjunction with the opposite proposition); *On-Line Technologies v. Perkin Elmer Corp et al.*, 141 F.Supp.2d 246 (D.Conn. 2001).

An article on tax law is not even an exchange of information, a consultation is not a contract, and "the website is insufficient to establish personal jurisdiction over [Optic Tax] under the 'tortious conduct' prong of Connecticut's long-arm statute, Conn.Gen. Stat. § 33-929(f)(4), as the website primarily involves the exchange of information, additional avenues of communication must be utilized to accomplish a sale of a product, …, and there has been no showing that any Connecticut sales of the infringing [service] occurred." *On-Line Techn., supra*, at 266.

Cleer alleges that "Stranger conceded ... she used Cleer's list of 226 clients to send emails ... defaming Cleer in Connecticut[.]" Besides its falsity (Ms. Stranger never conceded that she defamed Cleer in Connecticut or anywhere), this statement about **Ms. Stranger's** behavior is inapposite to the question whether **Optic Tax** has minimum contacts with Connecticut — unless one presumes without proof, as Cleer seeks to have this Court do, that Optic Tax is an alter-ego to Ms. Stranger.

Alan Harrison – SANDOLLAR Law – Milford, CT

# Optic Tax has not committed any tortious act in Connecticut

Cleer asserts that "any tortious conduct committed on an *active* website subjects a defendant to the reach of Connecticut's long-arm statute". ECF 77 at 13 (internal markup omitted, emphasis added). But as discussed above, Optic Tax's website is not an "active" website as that term has been defined by courts. Cleer's argument presumes a point not proven.

Cleer asserts that "Optic Tax harmed Cleer in Connecticut". To support this allegation, at page 15 of ECF 77 (emphasis added) Cleer asserts that "Cleer's sole members, David and Carrie McKeegan, direct, control, and coordinate Cleer's activities *from Connecticut, where they reside in the United States*." But in fact, the McKeegans reside in Costa Rica and Bali, not in Connecticut. They recently attended a settlement videoconference from an apparently tropical location with a surfboard prominently displayed on the wall — definitely not Connecticut decor. Cleer goes on to assert that "it mistakenly listed Michigan as its headquarters when it began this action because its mail service is located there." But indeed, Cleer has and continues to use Michigan as its place of business for all of its work and correspondence. See Exhibits Q and P.

Ignoring the spurious assertion that Cleer has "headquarters" in Connecticut, rather than Bali or Costa Rica or Michigan, there is simply no connection between Connecticut and Optic Tax's alleged harms to Cleer.

## Cleer has not presented a prima facie case of personal jurisdiction

Optic Tax is not an alter-ego of Ms. Stranger, so her acceptance of jurisdiction does not bind Optic Tax. Optic Tax lacks minimum contacts with Connecticut, so imposing personal jurisdiction would not be consistent with due process. Optic Tax has not committed any tortious act with a nexus to Connecticut, and has not conducted affairs in Connecticut, so the long-arm statute does not reach it.

To the extent that the Court may find a material dispute whether facts exist to support personal jurisdiction, Optic Tax respectfully requests an evidentiary hearing.

Alan Harrison – SANDOLLAR Law – Milford, CT