

January 9, 2025

The Honorable Michael P. Shea
By Email Only c/o Amy Constantine (Amy_Constantine@ctd.uscourts.gov)

**Re:    Case No. 3:24-cv-01496-MPS – Stranger's Waiver of Attorney-Client privilege**

Dear Judge Shea:

Ms. Stranger concedes that she has explicitly waived the attorney-client privilege as to Ms. Stranger's restrictive covenants and alleged ownership of the email domain, cleer.tax. This is not an issue of inadvertent disclosure. Instead, Ms. Stranger claims she can selectively waive the privilege as to certain attorneys on **the same subject matter**. Plaintiff's counsel certifies that he has complied with his good faith discovery conference obligations under the Federal and Local Rules.

In response to an interrogatory, Ms. Stranger stated that she had consulted with two attorneys about the enforceability of her restrictive covenants and they advised her that the agreements were "conflicting" and provided other legal advice about the enforceability of the contracts.

Cleer then sent a discovery request for the production of all communications with all of her attorneys about her restrictive covenants. Ms. Stranger responded:

> RESPONSE:
> Defendant objects to this request with reference to the communications with Alan Harrison and Zalesskey Law Group, as it seeks information subject to attorney-client privilege. Ms. Stranger refers Cleer to her attached communications with the two attorneys mentioned in ROG 3, as to whom she has waived privilege.

Having waived the privilege, Ms. Stranger also produced many emails (available for inspection by the Court) that include legal advice from her prior counsel. For instance, Ms. Stranger produced a communication with her counsel that advised her on the relevant provisions of the relevant contracts, including providing legal advice by responding to her questions in red:

1. What rights do I have to partnership interests? No per the specific terms of the Vesting Agreement.
2. Do I have any additional rights here if we can prove he is mismanaging the company? Any mismanagement does not directly give you that right. However, since he is attempting to sell the Company, any formal claims of mismanagement by you would cause serious problems.
3. Do I have ownership of the domain? And if not, when do I have to release it? Sadly, this one if "grey" as no specific references are made in the documentation. See comments above. I will do some research later and get back to you.
4. With the non-solicit clause- would this apply to partners? It says clients and suppliers, so I would think partners may not be included as they are neither. I do not understand this question. Why are partners relevant?
5. And is the language in the non-solicit "accept business from" wouldn't be a restraint, for example, if prior clients find me without me soliciting them, right? That language causes you some real problems. We need to discuss the implications.
6. There is the restriction on hiring employees, would that apply to independent contractors? What about team members Dave fired or who already don't work for Cleer? The language does not cover contractors or people who no longer work for Cleer.

Mr. Harrison, Ms. Stranger's current counsel, stated in an email: "**Regarding waiver of ACP, she waived privilege as to the communications that she has produced**." (Emphasis added). Even so, Ms. Stranger claims that "[s]he did not waive privilege as to communications with [Mr. Harrison] or whoever Zalessky might be." Ms. Stranger cannot selectively waive the privilege for only some of her attorneys and shield the remaining communications on the same subject matter.

January 9, 2025
Page 2

"The widely applied standard for determining the scope of a waiver of attorney-client privilege is **that the waiver applies to all other [attorney-client] communications relating to the same subject matter**." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (emphasis added); *Ghio v. Liberty Ins. Underwriters, Inc.*, 212 Conn. App. 754, 770 (2022) ("The subject matter waiver rule provides that the voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.").

Thus, "[p]etitioners may not selectively assert and/or waive the attorney-client privilege because voluntary disclosure of otherwise privileged material will likely lead to compelled disclosure of the remainder." *Long-Term Cap. Holdings v. United States*, No. 3:01 CV 1290 (JBA), 2003 WL 1548770, at *7 (D. Conn. Feb. 14, 2003). "[A] client cannot selectively waive the privilege only for certain purposes or against certain opponents. Connecticut courts have consistently refused to give credence to the concept of selective waiver of the attorney-client privilege." *Feinstein v. Keenan*, No. FSTCV106007235S, 2012 WL 2548331, at *3 (Conn. Super. Ct. June 6, 2012); *Gebbie v. Cadle Co.*, 49 Conn. App. 265, 274 (1998) ("This result [waiver of the privilege] is reached because once the confidence privilege has been breached, the privilege has no valid continuing office to perform." (internal citation and quotation marks omitted)).

Moreover, "[a] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). Thus, "[t]he waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Fort James*, 412 F.3d at 1349 (emphasis added).

Ms. Stranger cannot use the attorney-client privilege on a lawyer-by-lawyer basis. *Nye v. Sage Prods., Inc.*, 98 F.R.D. 452, 453 (N.D. Ill. 1982) ("disclosure of privileged documents can waive privilege as to the client's communications with other attorneys"); *Fonar Corp. v. Johnson & Johnson*, No. CIV.A. 82-2751-K, 1985 WL 186693, at *1 (D. Mass. Aug. 20, 1985) ("There is a single privilege between the client and the firm; there are not numerous privileges between each of the firm's attorneys and the client. . . . One waiver thus waives the privilege as to all the lawyers working jointly on the matter.").

The same rational applies here - once the privilege is waived for one attorney, the privilege on the same subject matter has "no valid continuing office to perform" and is waived for all attorneys.

Sincerely,

*/s/ George B. Musekamp*

George B. Musekamp