

2025-01-09

Chambers of the Hon. Michael P. Shea, USDJ

Re: dispute about attorney-client privilege

Your Honor:

In a discovery response, Ms. Stranger fully and honestly answered the question what she had done to attempt to comply with the restrictive covenants she thought she might be subject to before August 8, 2024. One thing she did was to consult two attorneys (in **January** and **March** 2024) about the scope of those covenants. She could not have given an honest answer without mentioning those consultations. She went further: she divulged details of those consultations.

Cleer correctly asserted that Ms. Stranger had waived privilege as to those consultations, which occurred by e-mail. Ms. Stranger now has produced the entirety of her e-mail consultations with the two attorneys mentioned in her discovery response. Those e-mails are relevant to Ms. Stranger's state of mind and behavior during the period addressed by the complaint in this case. She mentioned those e-mails and intentionally waived privilege as to her communications with those counsel.

But Cleer wants to go further. They want unlimited access into all Ms. Stranger's communications with any counsel regarding the restrictive covenants — including **current** communications with trial counsel about litigation and settlement strategy. This is a question of attorney-client privilege, which is a State law creature within the Court's discretion (subject to in camera inspection and an evidentiary hearing, *see Ghio v. Liberty Ins. Underwriters, Inc.*, 212 Conn.App. 754, 276 A.3d 984 (2022), *infra*).

"[I]f admitting that one relied on legal advice in making a legal decision put the communications relating to the advice at issue, such advice would be at issue whenever the legal decision was litigated. If that were true, the at issue doctrine would severely erode the attorney-client privilege and undermine the public policy considerations [on] which it is based." *Woodbury Knoll, LLC v. Shipman & Goodwin, LLP*, 305 Conn. 750, 781, 48 A.3d 16 (2012). The

consideration here is whether a party deliberately revealing **earlier** communications on which the party relied in making a decision puts at issue **later** communications, **following** that decision, on which the party could not possibly have relied in making that decision.

Cleer counsel has cited *Ghio* for the proposition that "the voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Ghio* references *Harp v. King*, 835 A.2d 953, 266 Conn. 747 (2003), which disparages "the strict test …, [under which] any document produced, either intentionally or otherwise, loses its privileged status with the possible exception of situations [in which] all precautions were taken. Once waiver has occurred, it extends to all other communications relating to the same subject matter[.]" Instead, the Connecticut Supreme Court in *Harp v. King* endorsed "the moderate approach, [under which] the trial court has discretion to determine if a waiver of the attorney-client privilege has occurred and the scope of that waiver."

Further to *Harp v. King*, *Ghio* requires a trial court, before waiving the privilege, to conduct an in camera inspection of the allegedly privileged communications and an evidentiary hearing. *Ghio* sets the central question for the court: whether the disclosed and undisclosed communications "ought in fairness to be considered together."

There is no "fairness" in requiring Ms. Stranger to disclose her communications with current counsel about the restrictive covenants, which have no relation to her prior communications or previous decision making about the restrictive covenants.

Current counsel in October 2024 or at present might have advised Ms. Stranger the same or differently than the attorneys whom she actually consulted in January 2024 and March 2024. But current counsel **did not** advise Ms. Stranger in January 2024 or March 2024. Communications between current counsel and Ms. Stranger in the three months since October 2024 have **no bearing** on her decision making six to nine months before October 2024, and should not "in fairness … be considered together" with the earlier communications.

Counsel have conferred in good faith, do not agree, and seek the Court's guidance. We apologize for the immediacy of the question posed, greatly appreciate the expedient referral to a Magistrate Judge, and look forward to further conferral.

Respectfully,

s/*Alan Harrison*

Counsel for Ms. Stranger