# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF CONNECTICUT

    - - - - - - - - - - - - - - - - x
    CLEER LLC (FORMERLY KNOWN AS
    GREENBACK BUSINESS SERVICES LLC)   No. 3:24-CV-1496 (MPS)
    DOING BUSINESS AS CLEER TAX,
              Plaintiffs,              OCTOBER 22, 2024
    vs.
                                       1:01 P.M.
    CRYSTAL STRANGER AND
    OPTIC TAX INC.,                    TELEPHONIC MOTION HEARING
                                       CONFERENCE
              Defendants.
    - - - - - - - - - - - - - - - - x


                         450 Main Street
                       Hartford, Connecticut

          BEFORE:  THE HONORABLE MICHAEL P. SHEA, U.S.D.J.


    APPEARANCES:

    FOR THE PLAINTIFF:

             TAFT STETTINUS & HOLLISTER LLP
                 425 Walnut Street, Suite 1800
                 Cincinnati, Ohio 45202
             BY: GEORGE MUSEKAMP, ESQ.
             BY: EVAN COHN, ESQ.

             OGLETREE, DEAKINS, NASH, SMOAK & STEWARD P.C.
                 281 Tresser Boulevard, Suite 602
                 Stamford, Connecticut 06901
             BY: MICHAEL SEAMUS O'MALLEY, ESQ.

    FOR THE DEFENDANTS:

             SANDOLLAR LAW
                 6 West River Street #112
                 Milford, Connecticut 06460
             BY: ALAN HARRISON, ESQ.


    COURT REPORTER:  Julie L. Monette, RDR, CRR, CRC
                         (860) 212-6937

       Proceedings recorded by mechanical stenography, transcript
```

1   And we've heard a lot of information since we actually
2   filed the Complaint, Your Honor, that's not actually in our
3   Complaint.  And we're probably going to be forced to amend
4   that.  For example, we learned that Optic Tax is sending out
5   blast e-mails.  You might have seen a little bit of that in our
6   reply.
7   THE COURT:  Yeah.
8   MR. MUSEKAMP:  She has clearly some sort of mailing
9   list that she took from us and is using it.  So that -- and
10  actually that's where the personal jurisdiction issue comes in.
11  Optic Tax, from our reference, what we've seen, it has -- it's
12  going after at least -- I made a list this morning -- let's
13  see, one, two, three, four five different companies that are
14  located in Connecticut that are current or at least as far as
15  we know are current and customers of Cleer Tax.  And those
16  blast e-mails are going out to those customers located in
17  Connecticut.  So she is -- Optic Tax is doing business in
18  Connecticut.
19  THE COURT:  Okay.  Mr. Musekamp, let me stop you for a
20  second there.  So, you know, maybe you're correct.  Maybe the
21  Court will have personal jurisdiction over Optic Tax.  But that
22  strikes me as something I'll need to decide.  I'll need to see
23  affidavits.  I'll need to see your response.  I'll see -- you
24  know, I mean, based on what you're saying that recent activity
25  would give jurisdiction, well, does that provide the Court

1  there's broad language in it.
2           And so it seems to me the burden is on her to say
3  "Well, wait a minute. Wait a minute. This is one that I
4  really didn't have any contact with and I think I should be
5  allowed to contact them." And then if Cleer disagrees, you can
6  bring it to the Court's attention and we'll figure it out.
7           But I think that's -- you know, again, this is a
8  temporary -- let me emphasize any restraining order I issue is
9  temporary subject to an evidentiary hearing. I'll set the
10 hearing down for as soon as we can do it. I think there should
11 be some discovery first. But, you know, a few months out, I'll
12 set the hearing down.
13          But in the meantime it seems to me fair to say "Okay,
14 just stop it. Stop. Let's figure this out. Stop reaching out
15 to anybody who might have been a customer of the company until
16 the Court has a chance to hear this matter because, otherwise,
17 there's a serious risk that you're violating this agreement."
18          What's wrong with that chain of reasoning, Mr.
19 Harrison?
20          MR. HARRISON: Well, a few things, Your Honor. First
21 of all, you know, the drafter of a contract is responsible for
22 its clarity. And if it's not clear, it's construed against the
23 drafter --
24          THE COURT: Well, what's unclear about direct or
25 indirect contact? What's unclear about that?

1  Well, that might be an issue, Mr. Musekamp.  In other
2  words, I'm not going to -- it wouldn't be within -- it wouldn't
3  be a reasonable construction of the nonsolicitation provision
4  to say, Well, she can't reach out to anybody at all.  And so I
5  guess there is -- it is worth discussing, you know, if she
6  doesn't have the list.  Now, you say she has the list.  Okay.
7  Mr. Harrison, I think you deny that she has the list?
8  MR. HARRISON:  Your Honor, it's a little more nuanced
9  than that.  At some point she had a list.  She doesn't know if
10 the full list, and it got merged into her larger list of
11 potential customers.  So she's trying to back it out.
12 THE COURT:  Oh.  Well, that's kind of ugly.  So she
13 had a list of Cleer customers that she merged into her own
14 list.  That's a problem.
15 MR. HARRISON:  That's my understanding.  And she's
16 trying to back it out, which is why she wants the list from
17 Cleer so she can strike those.
18 THE COURT:  Well, gee, I would have thought she'd be
19 able to do that on her own; right?  She's the one who merged
20 it.
21 MR. HARRISON:  I don't know, Your Honor.
22 THE COURT:  Well, gosh, Mr. Musekamp, do you have any
23 thoughts on that?
24 MR. MUSEKAMP:  Yeah.  Your Honor, it goes back to
25 common sense here.  Your point is a good one.  This isn't an

```
 1   IBM.  She knows who the clients are.
 2           If you look at page 41 of our Complaint, we embedded
 3   an entire solicitation e-mail where she literally begins the
 4   e-mail with "You are probably aware of the loss of the entire
 5   bookkeeping team at Cleer."  She is going after Cleer clients
 6   that she knows work at Cleer, trying to say "Cleer can't
 7   service you anymore because I've taken all their employees, so
 8   you might as well come with me."  She knows exactly who they
 9   are.
10           I guess what I would ponder is, if there's a question,
11   counsel and I can work amicably and he can ask "Is this one of
12   your clients?"  And I'll let him know.
13           THE COURT:  What about that, Mr. Harrison?  What about
14   that, Mr. Harrison?
15           Mr. Musekamp, I have that e-mail in front of me.  And
16   you know samuel@funbers.com is, in fact, a customer?
17           MR. MUSEKAMP:  Correct, Your Honor, yeah, that is a
18   client.
19           THE COURT:  Okay.  Okay.
20           So, Mr. Harrison, what about that?  Why wouldn't we
21   say, all right, well, counsel can work together to sort out
22   individual situations where she wants to contact somebody if
23   she has, you know -- what about that?
24           MR. HARRISON:  Your Honor, I think Ms. Stranger would
25   be amenable in principle to that.
```

1       THE COURT:  Okay.  I mean, because at the end of the
2  day, Mr. Harrison, I hate to say it, but it sounds to me like
3  the difficulty here was kind of created by her; right?  She
4  took their list.  She merged it with her own.  And now she's
5  having trouble remembering what she merged.  You know, with all
6  due respect, why should that be their problem?
7       So -- so, you know, I'm thinking that the way to deal
8  with this is, as Mr. Musekamp suggested, see if counsel can
9  work things out with regard to -- but she's going to have to be
10 very careful here.  I think the days of blast e-mails are over
11 because -- unless, you know, she's willing to take a risk of a
12 contempt order.  Because once I issue an order, it becomes an
13 order of the Court.
14      And I'm not -- I'm not making threats here, Mr.
15 Harrison.  I'm just -- let me take a step back.  I'll be candid
16 with you and tell you at least -- maybe it's because I haven't
17 heard from her yet.  You haven't submitted evidence on the
18 merits, and this could go very differently for Cleer at an
19 evidentiary hearing.  Their claims may be all wet.  And I don't
20 foreclose that possibility.
21      But the way things look now, given the evidence they
22 submitted, I have to say it doesn't look like she's taking her
23 obligations under the MVA or the Operating Agreement very
24 seriously.  And so I don't think you can simply sign an
25 agreement and turn around and start violating its provisions