UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| CLEER LLC (F/K/A GREENBACK BUSINESS SERVICES LLC) D/B/A CLEER TAX, | : : : : | Case No. 3:24-cv-01496-MPS  Judge Michael P. Shea |
| Plaintiff, | : : | **PLAINTIFF CLEER LLC'S REPLY IN SUPPORT OF MOTION FOR FINDING DEFENDANTS IN CONTEMPT OF COURT'S TEMPORARY RESTRAINING ORDER [DOC. 34]** |
| v. | : : | |
| CRYSTAL STRANGER, et al., | : : | |
| Defendants. | : | |

## I. INTRODUCTION

By their own admissions, Defendants Crystal Stranger and Optic Tax have violated this Court's October 22, 2024 Temporary Restraining Order ("TRO"). They do not deny that they created a list of 226 clients belonging to Plaintiff Cleer LLC ("Cleer") and merged it into a roughly 14,000 person mailing list for the purpose of soliciting clients – 5,448 of which overlap with Cleer's mailing prospective and current client and referral list. They do not deny that they sent at least three different "blast" emails to Cleer's current and prospective clients from Optic Tax's domain after the Court's TRO was entered. They do not deny that they did nothing to stop the "blast" emails from going to Cleer's current and prospective clients and suppliers. They do not deny that those "blast" emails contain Optic Tax branding, direct links to Optic Tax's website with offered services and pricing information, and invitations to contact Optic Tax with any questions.

1

They do not argue that the Court's TRO is unambiguous, that the proof of noncompliance is clear and convincing, or that they diligently attempted to comply in a reasonable manner.

To make matters worse, Ms. Stranger knew that she would be cross-examined on her continued solicitation of Cleer's clients following entry of the TRO on the second day of the preliminary injunction hearing. Instead of answering further questions on her contempt of the TRO, Ms. Stranger fled this Court's jurisdiction and refused to appear for further cross-examination on the second day of trial. In short, Defendants are in contempt of the Court's TRO and sanctions are appropriate.

## II.     LEGAL ARGUMENT

### A.     Defendants are in Contempt of the Court's TRO

Defendants first argue a "lack of intent" to try and explain away their civil contempt. (Opposition, Doc. 123 at 1). Defendants argue that they "understood that . . . 'contacting' must mean something similar to 'soliciting.'" That argument is unavailing for several reasons.

First, "[i]t is not necessary to find willfulness to adjudge a party in contempt." *Egri v. Connecticut Yankee Atomic Power Co.*, No. 3:02CV400, 2003 WL 23645255, at *3 (D. Conn. June 30, 2003) (*Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 39 (2d Cir. 1989)). The argument fails for this reason alone. To the extent intent is relevant for determining appropriate sanctions, Defendants intended to contact and solicit Cleer's current and prospective customers and suppliers. Defendants admit that they did not even attempt to remove any of Cleer's contacts from Optic Tax's mailing list before sending out three more blast emails to 5,448 of Cleer's contacts, including the 226 person client list that was created for the very purpose of

soliciting Cleer's clients. Thus, to the extent intent is relevant, it proves that Defendants' actions were willful.

Second, other than providing argument of counsel, Defendants have not provided the Court with any evidence to explain why or how their actions were allegedly unintentional, accidental, or how they could have possibly misconstrued the Court's unambiguous TRO. Defendants' refusal to provide a Declaration to support their position is telling.[1]

Third, Defendants' argument that "contacting" is somehow synonymous with "soliciting" is disingenuous. The Court's TRO is unambiguous that Defendants are not permitted to solicit ***or*** contact Cleer's current or prospective customers or suppliers. Indeed, Defendants intentionally ignore the portion of the Court's TRO which states: "**Absent conferral and agreement, Stranger may not contact any customers or suppliers or prospective customers or suppliers of Cleer LLC or its predecessors**." (TRO, Doc 34 at 4 (emphasis added)). The Court included this language for the very purpose of making it clear to Defendants that they should not send out blast emails to Cleer's contacts.

The Defendants cannot unilaterally rewrite the Court's TRO to omit the prohibition on "contacting" Cleer's current and prospective clients and suppliers regardless of whether they though contacting and soliciting meant the same thing. Defendants also know that "contacting" and "soliciting" do not mean the same thing–*they cited case law in their own Opposition noting "a narrow definition of 'soliciting.'"* (Opposition, Doc. 123 at 2). These are not complicated words with confusing definitions. Thus, this argument should be rejected.

---

[1] For example, Defendants have provided no explanation for why they did not rely on the definition of "contacting" to the extent they truly believed the two terms to be synonymous.

Fourth, even if contacting is synonymous with soliciting (which it is not), the blast emails are solicitations. This is not a case of a billboard that can be seen by everyone. The blast emails were intentionally sent directly to the personal email accounts of Cleer's current and prospective clients from a list created by Ms. Stranger for the very purpose of soliciting Cleer's clients. (Ex. A – Deposition Transcript of Crystal Stranger at 222:1-25, 223:1-23). The blast emails sent by Ms. Stranger also contain several "weblinks" embedded in the emails. For example, clicking on the "Services" tab contained in the December 5 blast email takes a prospective client directly to Optic Tax's website containing all of the services offered by Optic Tax and invites clients to "sign up." (Preliminary Injunction ("PI") Hearing Exs. 127, 138).[2] Clicking on "Read More" at the end of the December 5 email takes prospective clients directly to Optic Tax's website which provides an overview of "BOI requirements," and tells clients that "Optic Tax is here to help, we have a package for filing FinCen VOI for just $199." (PI Hearing Ex. 125).[3]

Defendants sent another "blast" email later in December 2024 – after the Court's TRO. (PI Hearing Ex. 146).[4] That email also went to the Cleer 226 person client list and the 5,448 overlap with Cleer's mailing list, and contains the same Optic Tax branding and the same link to all of Optic Tax's "Services." (*See* PI Hearing Ex. 138). At the end of that email, prospective clients are told that "Optic Tax can help you with determining the value of still filing, or determining other complex rules for your company." (PI Hearing Ex. 146). Clicking on the embedded weblink, "Learn More," takes prospective clients directly to Optic Tax's website where clients are once

---

[2] True and accurate copies of PI Hearing Exs. 127 and 138 are attached hereto as Exs. B and C for the Court's convenience.
[3] A true and accurate copy of PI Hearing Ex. 125 is attached hereto as Ex. D for the Court's convenience.
[4] A true and accurate copy of PI Hearing Ex. 146 is attached hereto as Ex. E for the Court's convenience.

again offered a BOI package "for $199" and for any questions to "Schedule a Call Today." (PI Hearing Ex. 143).[5]

Defendants sent another "blast" email in January 2045. (PI Hearing Ex. 147).[6] That email also went to the Cleer 226 person client list and the 5,448 overlap with Cleer's mailing list, and contains the same Optic Tax branding and the same link to all of Optic Tax's "Services." (*See* PI Hearing Ex. 138). Clicking on "Learn More" on page two of that email takes prospective clients directly to Optic Tax's website, and clients are reminded, "[i]f you have any questions you can always feel free to reach out." (*Id.*).

**B.      Sanctions are Appropriate**

Defendants have not challenged the proposed award requested by Cleer. They merely argue that Ms. Stranger is "financially drained by the ongoing litigation and simply can't make a full immediate payment of Cleer's attorney fees." (Opposition, Doc. 123 at 2). Ms. Stranger should have considered that before she decided to violate the Court's TRO on multiple occasions. Moreover, neither Ms. Stranger nor Optic Tax have provided any evidence to support their argument. *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 658 (2nd Cir. 2004) ("A contemnor may be excused from the burden of a civil contempt sanction if it lacks the financial capacity to comply; but the contemnor bears the burden of production in raising such a defense."). In fact, Ms. Stranger testified at the preliminary injunction hearing that she hired and is paying at least 23 people that previously worked for Cleer, took at least 49 clients away from Cleer, and received a $100,000 payment from her father as an

---

[5] A true and accurate copy of PI Hearing Ex. 143 is attached hereto as Ex. F for the Court's convenience.
[6] A true and accurate copy of PI Hearing Ex. 147 is attached hereto as Ex. G for the Court's convenience.

investor in her competing company. (Ex. H – PI Hearing Transcript at 176:22-25, 209:12-13, 211:13-25, 212:1-18). And she continues to fight Cleer at every turn all the while causing Cleer to continue to incur substantial attorney's fees. Thus, her unsupported argument that she is "financially drained" should be given no consideration.

### III.     CONCLUSION

Based on the foregoing, Cleer respectfully requests that the Court find Defendants to be in contempt of the Court's TRO and that appropriate sanctions be awarded.

Respectfully submitted,

*/s/ George B. Musekamp*
George B. Musekamp (PHV)
Evan H. Cohn (PHV)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Tel:  (513) 381-2838
Fax: (513) 381-0205
gmusekamp@taftlaw.com
ecohn@taftlaw.com

Michael S. O'Malley, Esq. (CT31784)
Ogletree, Deakins, Nash,
Smoak & Stewart P.C.
281 Tresser Boulevard
Stamford, CT 06901
Tel: (203) 969-3109
Fax: (203) 969-3150
Michael.O'Malley@ogletree.com

*Attorneys for Plaintiff*

171098864v1

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that on February 3, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all counsel of record.

                  */s/ George B. Musekamp*

171098864v1