# Exhibit H

```
                   UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF CONNECTICUT
- - - - - - - - - - - - - - - - - x
                                  :
CLEER LLC,                        :  No. 3:24CV1496(MPS)
                                  :
              Plaintiff           :
                                  :
        v.                        :
                                  :
CRYSTAL STRANGER, et al.,         :
                                  :  New Haven, Connecticut
              Defendants          :  January 29, 2025
                                  :
- - - - - - - - - - - - - - - - - x


        HEARING ON MOTION FOR PRELIMINARY INJUNCTION
                   AND MOTION TO DISMISS

                         VOLUME I



B E F O R E:

       THE HONORABLE MARIA E. GARCIA, U.S.M.J.


A P P E A R A N C E S:

    FOR THE PLAINTIFF:

           TAFT STETTINIUS & HOLLISTER LLP
               425 Walnut Street, Ste. 1800
               Cincinnati, Ohio 45202
           BY: GEORGE MUSEKAMP, ESQ.
               EVAN COHN, ESQ.

    FOR THE DEFENDANTS:

               ALAN HARRISON, ESQ.
               6 West River, Ste. #112
               Milford, Connecticut 06460



                                    Diana Huntington, RDR, CRR
                                    Official Court Reporter
```

1 | Well, I live in Cape Town, South Africa.
2 |
3 | DIRECT EXAMINATION
4 | BY MR. MUSEKAMP:
5 | Q. Good afternoon, Ms. Stranger. My name is George
6 | Musekamp. We met via video during your deposition. I
7 | appreciate you coming in person to testify today.
8 | You claim to be a founder of Cleer, correct?
9 | A. Yes.
10 | Q. And you also recognize yourself to be the face of
11 | Cleer when you were employed there?
12 | A. Yes, I was.
13 | Q. And you're now the CEO of Optic Tax?
14 | A. Yes.
15 | Q. Optic Tax is located here in the United States,
16 | right?
17 | A. Incorporated in Delaware.
18 | Q. And you are the president and CEO of Optic Tax?
19 | A. Yes.
20 | Q. And you are also one of the founders of Optic Tax?
21 | A. Yes.
22 | Q. Your dad is the other cofounder?
23 | A. Technically, he's the owner, yes.
24 | Q. He invested $100,000 with the company?
25 | A. Yes.

1   member from Optic Tax -- I'm sorry, of Cleer?
2   A.   Yes.
3   Q.   Let me make that clear for the record.
4        Within three weeks of you being removed from Cleer,
5   you started actively competing against Cleer, right?
6   A.   Yes.
7   Q.   You also accepted business from Cleer's clients
8   within a year of your resignation?
9   A.   Yes, including clients that Cleer sent me.
10  Q.   Again, your counsel can give you some redirect if he
11  wants to.
12       And you actually accepted business from 49 of Cleer's
13  clients, didn't you?
14  A.   Yes.
15  Q.   And you created a separate list of 226 Cleer clients?
16  A.   I didn't create that list.
17  Q.   You had your bookkeeping team create that list?
18  A.   They gave me a list they created.  I didn't have them
19  create it.
20  Q.   You knew they were creating it?
21  A.   I didn't know they were creating it.
22  Q.   Well, they handed it to you, didn't they?
23  A.   They gave it to me after they created it.
24  Q.   After you got the list of Cleer clients, did you say,
25  "What are you guys doing?  I can't have a list of Cleer's

1  Q.  You contacted them for purposes of moving their
2  business from Cleer to Optic Tax?
3  A.  No.
4  Q.  Let's take a look at --
5         THE COURT:  I have a question about Optic Tax
6  before we move on from that.
7         Does Optic Tax have employees?
8         THE WITNESS:  No.
9         THE COURT:  Does it also treat its bookkeeping
10 folks as independent contractors?
11        THE WITNESS:  Yes.
12 BY MR. MUSEKAMP:
13 Q.  You actually hired 23 -- of the 24 bookkeepers that
14 Cleer employed, you hired 23 of them away to Optic Tax?
15 A.  I don't know if Cleer had 24 bookkeepers.
16 Q.  So this may make my question clearer.  You hired 23
17 or 24, you're not sure which, of Cleer's former
18 bookkeepers?
19 A.  I hired -- the team members were unhappy.  And I
20 hired some of them that were former Cleer team members,
21 independent contractors.
22 Q.  I just want to nail down the number.
23     Of the Cleer bookkeeping team that previously
24 existed, you hired 23 or 24 of them away to Optic Tax?
25 A.  I don't think the bookkeeping team was that big.

```
 1   Q.   Well, maybe not just the bookkeeping team.
 2        How many individuals from Cleer did you hire to work
 3   at Optic Tax?
 4   A.   Our team is a total of 23, including me.  So it's not
 5   that many at Optic Tax.
 6   Q.   Is the entire team of Optic Tax former Cleer
 7   employees or independent contractors?
 8   A.   In general, yes.
 9   Q.   So back to my question:  If your team is only 23
10   people, that's 23 people you hired away from Cleer to
11   Optic Tax?
12   A.   Well, no.  Because I'm one of those.  And a lot of
13   those people had previously either quit Cleer or had been
14   fired from Cleer well before I hired them.  So I didn't
15   hire them away from Cleer.  It's incorrect.
16   Q.   Is it fair to say that 23 of the individuals you
17   hired had previously worked at Cleer?
18   A.   Yes.
19            THE COURT:  And I think had immediately before
20   working for Optic Tax worked or been an independent
21   contractor for Cleer?
22            THE WITNESS:  Not all of them were immediately
23   before.
24   BY MR. MUSEKAMP:
25   Q.   Most of them were actually still working at Cleer
```