FEB 5 2025 PM 12:25
FILED-USDC-CT-NEW HAVEN

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLEER LLC | : | 3:24-cv-1496-MPS |
| | : | |
| v. | : | CRYSTAL STRANGER PRO SE |
| | : | MOTION FOR MISTRIAL |
| CRYSTAL STRANGER et al. | : | |
| | : | |
| | : | |

COMES NOW, Crystal Stranger, the individual Defendant in the above-captioned

matter, proceeding pro se, and respectfully moves this court to declare a mistrial in the

Preliminary Injunction hearing held on January 29th and 30th of 2025 in New Haven,

Connecticut. In support of this motion, I state as follows:

### I.  INTRODUCTION

A mistrial is warranted in this case due to the extraordinary circumstances

surrounding the Preliminary Injunction hearing. My former attorney, Alan Harrison, was

severely ill with COVID-19 during the hearing and was physically and mentally unable

to provide competent representation. Despite his request for a continuance, the Court

denied this motion, resulting in a hearing where almost none of the evidence prepared

as exhibits were introduced to support my defense. Furthermore a substantial amount of

hearsay and unauthenticated evidence, lacking in any personal knowledge of witnesses

at trial, was introduced by the Plaintiff and not objected to due to the fact that my former

attorney was suffering from "Covid Brain Fog" and incapable of understanding the actions during the proceedings. Thus he did not object to the admission of this evidence, which should not have been admitted under the Federal Rules of Evidence.

Thus the failure to allow a continuance created a situation where my former attorney was unable to effectively advocate on my behalf. This deprived me of my right to a fair hearing and due process under the law.

## II. FACTUAL BACKGROUND

### 1. Attorney's Illness and Inability to Represent Me

When we met up on the morning on the 29th of January, Mr. Harrison arrived late to meet up, arriving after 9:30 AM when court was scheduled to start. He explained that he had been getting over a flu and he was so foggy from this that he had left all of his notes, exhibit binders, and case materials at home, so he had to turn around half way to the courthouse and return to get them. He apologized that in the days before the trial he could not meet up with me by phone to review the exhibits, but that he was so sick over the weekend and that week that he was unable to talk on the phone even. He thought he had the flu, and that his condition was improving, and that he had taken cold medication to be able to appear.

When the first day of the Preliminary Injunction hearing started, my former attorney appeared in person, but was visibly ill. The transcript of the hearing shows the

2

court asking Mr. Harrison if he needed water, trying to ask him to do the examination using a microphone as he could not be heard by the court reporter, and documented a monumental struggle on his part to find and show exhibits. He experienced frequent and uncontrollable coughing fits, could not speak clearly, and was unable to present arguments or evidence effectively.

During the hearing my former attorney failed to introduce critical evidence necessary to support my case. In a subsequent conversation, he admitted that he was uncertain what evidence, if any, was actually submitted into the record.

Furthermore, he did not object to evidence which was clearly hearsay and unauthenticated, such as an email that allegedly was sent to a test account held by an IT person at Cleer, but without any attestation or testimony from this IT person. Even the name of this person who allegedly set up this account and received this email has not been produced by the Plaintiff.

At a couple points during the hearing Honorable Judge Garcia was kind to explain basic procedural aspects wherein my former attorney needed to to establish a foundation in questioning prior to producing impeachment evidence, and later about the process for the expedited hearing where both direct and cross examination were supposed to be handled in the same period of witness testimony. The record shows that attorney Harrison seemed unable to form questions to ask the Plaintiff's witness at all, and apparently forgot the train of his questions once he did bring up the evidence.

After the hearing on the 29th, when my former attorney had returned home, he texted me that he had COVID. He advised me that the court rule is that he may attend if his symptoms were improving overall. He said he would check how he was feeling in the morning and consult with the Clerk before he came in.



## 2. Request for Continuance Denied.

The following morning I had confronted my former attorney on his lack of performance on the 29th, and he wrote me back in agreement, and said "I was feeling pretty bad by the end of the day yesterday. Having trouble putting thoughts together this

morning. I think I will get with opposing counsel and call the Court to ask for a continuance to next week while you're still in the country."



He went on to write me, "So do you want to continue the hearing to next week, or do you want to go pro se today?" Then I responded about continuing to the next week, and we set up a call for the following day to discuss what happened and get organized for the next week. I took that as a confirmation that the continuance was agreed upon, and while I was not happy about the idea about continuing to the next week and possibly having to extend my trip, I left New Haven, resolved that it was better than



trying to represent myself Pro Se without time to organize my notes, or to have my attorney incompetently represent my interests at trial that day, as on the prior day.

I assumed Mr. Harrison would file a motion for a continuance based on this conversation, and that, based on his incapacity, I would not be required in court that morning. It was only when I read the transcript that I was surprised to learn that a motion for continuance had not been filed with the court.

At 9:32 AM I received a text message from Mr. Harrison saying just, "Crystal did you see my email at 9:05?" I wrote him back, "I'm driving, we're near Danbury, what

email?" I didn't receive a response right away, and we were going to the Apple Store in

Danbury for me to buy a new mobile phone as mine had been freezing up. While we

were in the store my phone was out of service due to the process of transferring data to

the new phone, and then waiting for my cellular service provider, Google Fi, to transfer

the eSim to my new phone.



This phone update was completed around 11:36 AM, and at that time I saw

Attorney Harrison's subsequent messages that according to him the court had decided

to go ahead with the hearing after all, and decided to go ahead without me. According to

his message, they were on a short break because he had a coughing fit, and that is

when he wrote me to inform me that the continuance was not granted, during the middle of the hearing.

I wrote him a response right away, ending in "Should we go back to NewHaven?" And I was informed that the hearing was over and ended around 11 AM.

After reading the transcript it appears that Mr. Harrison was only able to admit one piece of evidence, a printout from a website, and then he had a coughing fit which caused him to take a break. After the break he came back and asked one question which was objected to by the Plaintiff as a line of questioning asked on the day before, and then he stopped by saying, "I've got a little bit of a brain fog going on." Clearly he was unable to form the types of thoughts needed to ask relevant questions that an attorney in litigation would normally ask.

Furthermore, the case docket text stated that my counsel stated I was no longer in the District of Connecticut, but this was not correct. I had not actually left the state until around 1PM on January 30th, and I was unaware of the case proceeding with my ill attorney who could not even communicate the status of the hearing continuing, let alone capably represent me during the hearing. But I am surprised upon reading the transcript of the hearing that Mr. Harrison did not tell the court that he was unable to competently represent me due to his COVID, which he had seemed to believe when he gave me the option to either ask for a continuance or represent myself Pro Se. Although he did state in the transcript that he was unable to drive, which would seem to indicate that if he was

impaired to the point where he could not drive, then perhaps he also was unable to competently represent his client.

### 3. Prejudice to my Case

As a result of my former attorney's illness and the denial of a continuance, I was deprived of the opportunity to present evidence, cross-examine witnesses, and make legal arguments. The hearing proceeded without any meaningful representation, without me being present, and due to this the outcome is likely to be fundamentally unfair.

Evidence which should have been presented but was not introduced includes evidence which shows that: 1. Cleer waived the MVA clauses 12(a)(i) and (ii) non-solicit provisions by in February of 2024 allowing me to hire independent contractors of Cleer's and sending clients in April of 2024 to Optic Tax to work specifically with me for tax services. 2. Contradicting statements made in the deposition of David McKeegan related to his hearing testimony surrounding the failure to comply with fiduciary duties related to the OA including calculation of the capital accounts under the agreements which would show fraud and a material breach of the OA, and the MVA as well, as a dependent covenant. Near the end of the second day transcript Mr. Harrison asked about the deposition, thinking it had been introduced as evidence, but the court replied it had not. 3. Documents showing that Cleer did not use reasonable safeguards to protect any proprietary information they may have had with the number of admin users and lack of security protocols. 4. That I was refused in my request to obtain a list of the clients I had contacted in the past two years prior to resigning from Cleer, and without that list I

could not possibly comply with the terms of the MVA. 5. The contract I was under prior

to signing the OA and MVA which would govern any IP ownership at the time I

purchased the Cleer.tax domain on May 26th, 2022.

At the end of the hearing my former attorney admitted had been so ill that he was

uncertain what evidence, if any, he was able to have admitted. But after reviewing the

transcript it appears that none of this evidence was admitted.



Without introducing any of this evidence, the Plaintiff has told a story that the evidence does not support when viewed as a whole. However, due to my former attorney's illness-related incompetence and inability to present my case at trial, and failure to object to the evidence selectively produced by the Plaintiff, including the leading questions asked of me that could not be corrected on direct testimony due to the sequence of events, this has painted a picture that is a perversion of the truth and will likely lead to a substantial miscarriage of justice.

### III. LEGAL ARGUMENT

#### 1. Right to Competent Representation

The Sixth Amendment to the U.S. Constitution guarantees the right to effective assistance of trial. While this case is civil, the principles of fairness and due process under the Fifth Amendment still apply.

"'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have.' The special value of the right to the assistance of counsel explains why '[I]t has long been recognized that the right to counsel is the right to the effective assistance of counsel.'" *United States v. Cronic, 466 U.S. 648 (1984)* quoting *Schaefer, Federalism and State Criminal Procedure, 70 Harv.L.Rev. 1, 8 (1956),* and *McMann v. Richardson, 397 U. S. 759, 397 U. S. 771, n. 14 (1970).*

11

My former attorney's severe illness rendered him physically incapable of providing competent representation, and the denial of a continuance exacerbated the issue. If the Preliminary Injunction is decided in the Plaintiff's favor I will be deprived of my ability to earn income, depriving me of my liberty and property without due process of law.

**2. Failure to Grant a Continuance**

The Federal Rule of Civil Procedure 6(b) allows for the extension of time in exceptional circumstances. My former attorney's COVID-19 illness constituted such a circumstance, and if he indeed requested a continuance of the court prior to the trial, then the denial of a continuance was an abuse of discretion.

Courts have consistently held that continuances should be granted when an attorney's illness prevents them from effectively representing their client. "Although a continuance might have mildly inconvenienced the court, the prosecution and some of the witnesses, that consequence was hardly appellant's fault. The motion for leave to withdraw was not forthcoming until the trial date was virtually at hand, and the court granted it, effectively negating appellant's opportunity to satisfy an understandable desire for comfort and confidence in his trial representation." *United States v. Burton, 584 F.2d 485, 508-9 (D.C. Cir. 1978)* The case goes on to state that, "Sitting en banc in *United States v. Mardian*, we held that the trial court had erred in requiring the accused to proceed with only one of his counsel after his lead counsel became ill two weeks into

the trial." Here my counsel was coerced to move forward with the trial in a state where he admittedly could not even drive, let alone give capable representation.

### 3. Prejudice to My Case

Admissions of certain evidence by the court which was not authenticated and not known as accurate by any parties to the case is an error that has occurred which cannot be cured by any remedial action of the parties or the court. The irremediable bias caused by this inadmissible evidence presented by the Plaintiff's attorney is so prejudicial that there is no possibly way for me to move forward and obtain a fair trial.

While *Strickland v. Washington, 466 U.S. 668 (1984)* was a criminal case, it established the standard of ineffective counsel which includes the failure to introduce critical evidence. Here my former attorney was so ill that not only did he state that he failed to introduce evidence, but he was so ill that he does not remember which of the evidence he had created as exhibits in advance of trial were actually admitted as evidence. Per *Strickland*, "Counsel may not exclude certain lines of defense for other than strategic reasons."

As evidenced by the correspondence between Mr. Harrison and myself, if I had been aware that the court was intending to go ahead with the hearing despite Attorney Harrison telling me he was unable to represent me, I would have made the motion to represent myself Pro Se at that time. Not providing a continuance and instead forcing Mr. Harrison to represent me when he was ill and unable to talk due to coughing fits, and I was not even present at the hearing, was a violation of my constitutional rights. In

13

*Evitts v. Lucey, 469 U.S. 387 (1985)* the court opined "nominal representation at trial -- does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all."

Furthermore, as I am a key witness in the case and the case was allowed to continue without my presence, I was deprived of my ability to correct the record and provide crucial testimony related to the facts in the case. These failures resulted in actual and substantial disadvantage to the course of my defense.

The failure to introduce evidence and present arguments during the Preliminary Injunction hearing has caused irreparable harm to my case. Without the court granting a mistrial, I will be unable to remedy this prejudice.

### IV. RELIEF REQUESTED

WHEREFORE, I respectfully request that this Honorable Court:

1. Grant this Motion for Mistrial and declare the Preliminary Injunction hearing held on January 29th and 30th null and void.

2. Schedule a new hearing on the Preliminary Injunction, allowing me more adequate time to secure new counsel or prepare to proceed pro se.

3. Schedule the new hearing as a remote hearing via Zoom for the new Preliminary Injunction hearing, as I am financially unable to travel again to Connecticut to attend court when I reside in South Africa.

4. Grant any other relief the Court deems just and proper.

Respectfully submitted,

Crystal Stranger

Pro Se Litigant

Date: February 5th, 2025