IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLEER LLC | : | 3:24-cv-1496-MPS |
| | : | |
| v. | : | Ms. Stranger's Proposed Findings of |
| | : | Fact and Conclusions of Law |
| CRYSTAL STRANGER et al. | : | |
| | : | |
| v. | : | |
| | : | 2025-02-12 |
| DAVID and CARRIE McKEEGAN | : | |

Defendant Crystal Stranger, representing herself Pro Se, notwithstanding having filed a motion for mistrial, also that the court did not approve the Pro Se appearance and electronic filing request for a week after submission until the day before these findings are due, and that the court changed the original due date from the 18th of February up to the 12th of February, files these Proposed Findings of Fact & Conclusions of Law, and states as follows:

## Proposed findings of fact

Cleer has not produced a list of Cleer clients whom Ms. Stranger had directly or indirectly been in contact with during the two years preceding termination of her employment with Cleer. Without this list, Cleer could not possibly show that Ms. Stranger, after leaving her employment with Cleer, solicited or accepted business from

1

any Cleer Client whom she had directly or indirectly contacted or whom she solicited on behalf of Cleer in the two years preceding termination of her employment with Cleer, pursuant to the MVA section 12(a)(i).

Ms. Stranger had attempted to download her Google data to create a list of the clients she had direct and indirect contact with prior to leaving Cleer, but her data download was turned off and she was never provided a list in order to comply with the MVA provisions.

Cleer took special care to ensure that its Philippines-based bookkeepers and tax preparers were classified as "independent contractors" not as "employees". This included entering into "independent contractor agreements" with each of the Philippines-based personnel beginning in June 2024. *See, e.g.,* Cleer's Preliminary Injunction Hearing Exhibit ("Cleer Exhibit") 131. *See, also*, Preliminary Injunction Hearing Transcript ("Transcript"), at 254, 255.

Cleer has not shown that Ms. Stranger solicited or hired any Cleer employee (as distinct from an independent contractor). *See, e.g.,* Cleer Exhibit 131 (independent contractor agreement for Jan Katria Magpayo, one of Cleer's examples of a person whom Ms. Stranger hired).

Entry of a preliminary injunction that prohibited Ms. Stranger from offering tax accounting or bookkeeping services would adversely affect the public's ability to retain the practitioner of its choice in a very specialized area of international corporate tax preparation.

Entry of a preliminary injunction that prohibited Ms. Stranger from offering tax accounting or bookkeeping services would interfere with Ms. Stranger's ability to pursue her occupation as an Enrolled Agent and provide for her family.

The information in Cleer's client list, including client e-mail addresses, could have been obtained by Ms. Stranger by means other than from her employment at Cleer.

Ms. Stranger's use of e-mail addresses, which could have been independently obtained, for sending e-mail blasts, was not per se unfair or unethical.

The MVA includes a merger clause under Section 13 stating that it superseded any final agreement. Thus the OA Non-Competition provision under OA Section 9.1 is superseded by MVA Section 11, which is not relevant in this case, as Ms. Stranger was not terminated for cause; Non-Solicitation provision under OA Section 9.2 is superseded by MVA Section 12; Confidential Information provision under OA Section 9.4 is superseded by MVA Section 8.

The Non-Solicitation provision under MVA Section 12 was to run for a 12 month period commencing on February 1st, 2024 and ending on January 31st, 2025.

Cleer made no effort to notify Ms. Stranger of the special meeting held on August 8th, 2024 to expel Ms. Stranger from Cleer LLC. Additionally, Cleer fraudulently valued the capital account of Ms. Stranger and provided an intentionally incorrect date range and financials to their CPA for preparation of the valuation. *See* Transcript, at 117, 145

Furthermore, Cleer did not seek judiciary approval of the expulsion of Ms. Stranger from Cleer, LLC under the OA section 6.5, and thus was in prior breach of the OA, prior to any alleged breach by Ms. Stranger of the OA or MVA provisions.

Ms. Stranger never contributed cleer.tax to Cleer LLC, and still owns cleer.tax. *See* Transcript, at 168.

Ms. Stranger purchased cleer.tax prior to signing the OA or MVA and while she was domiciled outside the U.S. (in Costa Rica).

## Proposed conclusions of law

The preliminary injunction hearing was limited to consideration of counts 1–3 in the Amended Complaint (Docket 55): breach of the MVA, breach of the OA, and unfair competition.

As to breach of the MVA, Michigan law applies. *See* MVA, Docket 1-4, clause 16.

Michigan law disfavors global non-competes, disfavor non-competes that prohibit an employee making use of their general skill and knowledge in their trade, and disfavors non-competes that exceed a reasonable scope or duration. *See, e.g., Follmer Rudzewicz Company P.C. et al. v. Roche et al.*, 420 Mich. 394, 362 N.W.2d 676 (Mich. 1984) (to the extent a non-compete "goes beyond what is reasonably necessary for the protection of confidential information, it is unenforceable."), *cited by Teachout Security Services Inc., v. Thomas et al.*, LC No. 08-089041-CK (Mich. App. 2010, unpublished) ("an employee is entitled to the unrestricted use of general information acquired during

the course of his employment or information generally known in the trade or readily ascertainable").

As relevant to the preliminary injunction hearing, the Amended Complaint (Docket 55) alleges breach of the MVA as follows:

a. The Confidentiality and Trade Secret provisions under Sections 8 and 9;

d. The Non-Solicitation provisions under Section 12.

To the extent that Ms. Stranger reasonably could have obtained client information, including client e-mail addresses, by means other than her employment at Cleer (such as, for example, clients signing up to her webinars), such client information is not "Trade Secret" under Michigan law or the MVA.

The MVA prohibited Ms. Stranger soliciting or accepting business from Cleer clients with whom she "had direct or indirect contact or solicited on behalf of Company in the two (2) years prior to Employee's termination" from employment with Cleer. See MVA, clause 12(a)(i). However, without a client list provided to Ms. Stranger, as she had attempted to obtain prior to leaving Cleer, but was denied, there was no possibility of complying with this section.

Michigan law defines "indirect contact" between people as "communication" through an intermediary. *See, e.g., In re Estate of Greiff*, No. SC 161535 at 2–3 (Mich. 2022). Thus, indirect contact with a client includes communicating with the client through another person. It does not include supervising another person's work for the

client. As Ms. Stranger's role was primarily supervisory in nature, there would be few clients of Cleer which would be restricted for her to contact under this definition.

The Michigan Court of Appeals has found that the "scope of [a] geographical limitation as defined in the restriction is unreasonable" when the geographical limitation applied only to Southern Illinois. *See General Medicine Of Illinois Physicians P.C. v. Ampadu*, No. 361260 (Mich. App. 2023, unpublished). Therefore, the unlimited (global) geographic scope of the client non-solicit in the MVA is presumptively unreasonable.

As to breach of the OA, Wyoming law applies. *See* OA, Docket 1-3, clause 12.5.

As relevant to the preliminary injunction hearing, the Amended Complaint (Docket 55) alleges breach of the OA as follows:

a. The Non-Competition provision under Section 9.1;

b. The Non-Solicitation provision under Section 9.2;

d. The Confidential Information provision under Section 9.4.

Provisions 9.1 and 9.2 of the OA are applicable only "while a member of the Company and for twelve (12) months following withdrawal for any reason as a Member".

Under the Wyoming Limited Liability Company Act, "(a) A person has the power to dissociate as a member at any time, rightfully or wrongfully, by withdrawing as a member by express will under W.S.17-29-602(a)(i)." W.S. 17-29-601. Further, "[a] person is dissociated as a member from a limited liability company when: (i) The company has notice of the person's express will to withdraw as a member …; (ii) An

event stated in the operating agreement as causing the person's dissociation occurs; [or] (iii) The person is expelled as a member pursuant to the operating agreement[.]" W.S. 17-29-602. While the Wyoming statute lists eleven other ways in which a person may be dissociated from an LLC, it clearly distinguishes "withdraw" from "expelled". Ms. Stranger did not "withdraw" from Cleer LLC; she was "expelled" by a vote of the other members.

Therefore, provisions 9.1 and 9.2 of the OA do not apply to Ms. Stranger (although they also should not apply because of the integration clause in the MVA, which was the final documents between the parties, and should render 9.1, 9.2 and 9.4 superseded by MVA provisions 11, 12 and 8, respectively.)

As to unfair competition, Connecticut law applies. A statutory claim, such as one brought under CUPTA, cannot be brought when there is a contractual claim for the same breach. As the Supreme Court held 16 years ago in *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, a tortious interference claim fails unless the party bringing it proves a wrong distinct from a contract breach and that this wrong caused the plaintiff to lose a business opportunity it otherwise had a " reasonable prospect" of winning. Not only does this mean that the opportunity has to be real but it must be frustrated by something like what the Supreme Court in 1999 described in *Daley v. Aetna Life & Casualty Co* .: " proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." *National Waste Associates, LLC v. Scharf*, No. HHDX07CV126034817S, (Conn. Super. Ct. May. 9, 2016)

Wherein Cleer allegedly may have had any confidential information to protect under Section 9.4, to the extent that Ms. Stranger reasonably could have obtained client information, including client e-mail addresses, by means other than her employment at Cleer (such as, for example, clients signing up for her webinars), such client information is not "Confidential Information" under Wyoming law or the OA.

Related to all of the contractual claims, Wyoming 17-29-602(a)(iv) defines the ways in which a member of an LLC in Wyoming can be expelled from the company by unanimous consent of the other members and this only applies with "(A) It is unlawful to carry on the company's activities with the person as a member; [or] (B) There has been a transfer of all of the person's transferable interest in the company, other than: (I) A transfer for security purposes; or (II) A charging order in effect under W.S.17-29-503." ((C) and (D) only apply to entities and thus would not be relevant). As Ms. Stranger did not act in a way in which Cleer could not have continued operations without expelling her, and did not transfer all her interest voluntarily, there were no grounds under Wyoming law for the McKeegans to expel Ms. Stranger from Cleer without judicial order as defined under Wyoming 17-29-602(a)(v).

The law in Wyoming differs from the case law in *Duke v. Graham*, 158 P.3d 540 (Utah 2007) wherein under Utah law there are provisions that allow modification to supersede statute, however Wyoming does not contain similar modification provisions, and the non-judicial removal provisions in Wyoming are substantially more narrow. Thus under Wyoming law, Cleer should have obtained judicial authority for expelling Ms.

Stranger under the OA Section 6.5, and for the court to determine if Ms. Stranger committed any "First Level Offenses" pursuant to Section 6.5 prior to expelling her from the LLC membership, of which Cleer has provided any evidence to support.

Furthermore, under section 7.3 of the OA, "Notice of a meeting shall be given to the Members not less than ten (10) or more than sixty (60) days before the meeting date." Additionally, the Capital Accounts were admittedly not calculated in a manner pursuant to Section 3.2 of the OA.

As Cleer expelled Ms. Stranger without judicial approval, did not notify Ms. Stranger in advance of the meeting held to expel her from the LLC, and intentionally undervalued her capital accounts, Cleer was in breach of the OA on August 8th, 2024, prior to any alleged violation of the OA by Ms. Stranger. "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform."   Michaels v. Amway Corp., 206 Mich.App. 644, 650, 522 N.W.2d 703 (1994), quoting Flamm v. Scherer, 40 Mich.App. 1, 8-9, 198 N.W.2d 702 (1972).

"However, under generally accepted principles of contract law, if there is a substantial breach of a material, mutually dependent covenant in a bilateral contract, the injured party is excused from further performance. " Ringwood Assocs., Ltd. v. Jack's of Route 23, 153 N.J. Super. 294, 306 (Law Div. 1977) As the OA is a dependent covenant of the MVA, when Cleer breached the OA provisions, the MVA restrictions on Ms. Stranger were voided as well.

As for the domain name, there is a split in the courts of what type of property domain names are. In *re Paige*, 413 B.R. 882, 918 (Bankr. D. Utah 2009) the court determined that domain names are a type of tangible property. Whereas in *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) the court came to the decision that domain names were an intangible, although the court did emphasize the well-defined property interest inherent: "Like a share of corporate stock or a plot of land, a domain name is a well-defined interest. Someone who registers a domain name decides where on the Internet those who invoke that particular name — whether by typing it into their web browsers, by following a hyperlink, or by other means — are sent. Ownership is exclusive in that the registrant alone makes that decision."

Furthermore, the situs of intangible property is wherever the owner is located or domiciled. (*Union Refrigerator Transit Co. v. Lynch*, 177 U.S. 149 (1900)) and Ms. Stranger was domiciled in Costa Rica at the time of purchase. Thus the domain property is property of Ms. Stranger in Costa Rica, and is not subject to jurisdiction by this court.

Respectfully submitted,

Crystal Stranger

Pro Se Litigant

Date: February 5th, 2025