**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CLEER LLC | : | 3:24-cv-1496-MPS |
| | : | |
| v. | : | OPPOSITION TO CLEER LLC'S |
| | : | SECOND MOTION FOR CONTEMPT |
| CRYSTAL STRANGER et al. | : | OF |
| | : | COURT'S TEMPORARY |
| | : | RESTRAINING ORDER |
| | : | |

    Cleer has controlled the narrative in this case- making it look like I'm hellbent on stealing their clients and mocking the TRO. But the truth is Cleer is simply manipulating the court to try and put their only competitor out of business. Since my prior legal counsel didn't introduce supporting evidence, and was afraid of raising strong arguments for how the court would think of him, Cleer was able to build a false narrative on loosely laced together evidence and strong wording.

    But ultimately, Cleer is just acting like a whiny toddler upset that their puppy ran away, and their Second Motion for Contempt is a perfect example. Here they are claiming a client was solicited, but there is no factual basis to support this, as this particular email was sent by a client who had contacted Optic Tax first, not the other way around.

    Marcos Sanchez signed up on Optic Tax's website on February 7th through the self-service button that leads to signup forms (Exhibit A), and the emails he received on February 8th were automated bot responses. (Exhibit B). The team at Optic Tax did not

1

respond with pricing until February 12th, after Cleer had already filed this Motion with the court, on February 10th. Once Mr. Sanchez identified himself as a Cleer client, another team member, Alexandra Limin, saw this and removed him from the system. (Exhibit C).

Because of my former attorney not advising me of the motion, I only learned about this yesterday, February 13th, when I first figured out how to view the docket in Pacer. Thus all of this occurred prior to me being made aware that this client had signed up at all. I was not on any email thread, the client did not mention me by name. And yet Cleer intends to place this on my individual shoulders by saying, "True to her word, Ms. Stranger has still done nothing to ensure that Defendants comply with the Court's Order."

They are claiming this based on hearsay evidence from an email sent by Marcos Sanchez to Danielle Reyes, unauthenticated as the attachment was signed by David McKeegan, who was not in the email thread. Based on this email, and the timeline of the automated responses from Optic Tax's website, Mr. Sanchez must not have been satisfied with Cleer's services, and was seeking out alternatives. He was obviously trying to entice Cleer into offering him discounted pricing, prior to even receiving pricing from Optic Tax.

This is not uncommon client behavior, as many are looking for the best value they can get from the few companies in the industry which offer these services specifically to foreign-owned LLCs. David McKeegan even admitted in his deposition that Optic Tax is Cleer's only competitor:

2

BY ATTORNEY HARRISON:

Q.  As the CEO, are you familiar with the competitive landscape?

A.  Somewhat, yeah.

Q.  Who are your main competitors?

A.  Well, at the moment, it's just Optic Tax.

(Exhibit D- lines 12-18)

If a random client signing up on a website and receiving a bot response is deemed a solicitation then you will essentially will be shutting Optic Tax down and putting me out of work, as the company can't keep the website open if this is a violation of the TRO. Just because the client wrote Cleer and said Optic Tax wrote them first does not make it true, and without any further investigation Cleer decided to make a motion for sanctions and waste everyone's time. Cleer blames me in their motions for wasting the court's time, but it seems like Cleer is now planning on bringing the court every email from any client trying to price shop for a $799 tax package.

Is this the purpose of the court system? To allow a high-priced law firm to crucify me based on hearsay evidence from unauthenticated sources. All of this to allow a small tax firm, who can't keep their own clients happy, build a court-ordered monopoly.

**Client-Initiated contact does not constitute solicitation under Connecticut law.**

Clients have a right to seek services voluntarily, without businesses being penalized for mere accessibility. In *Bates v. State Bar of Arizona* the court explained the rights of the public when stating, "Of particular interest here is the opinion of Mr. Justice

Holohan in dissent. In his view, the case should have been framed in terms of 'the right of the public, as consumers and citizens, to know about the activities of the legal profession,' id. at 402, 555 P.2d at 648", 433 U.S. 350 (1977)

A client signing up on a website is the furthest thing from a solicitation, which has been well defined in cases such as *Ohralik v. Ohio State Bar Assn.*, "Unlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure, and often demands an immediate response, without providing an opportunity for comparison or reflection. [Footnote 13] The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decision making; there is no opportunity for intervention or counter-education by agencies of the Bar, supervisory authorities, or persons close to the solicited individual." 436 U.S. 447 (1978) There was no pressure for speedy and uninformed decision making here to warrant this to be viewed as a solicitation in line with *Ohralik*. In fact, as of the point that the client had messaged Cleer, no final decision as to purchase has been made, despite the client taking an action to sign up as a client on the Optic Tax website.

Solicitation is further defined in Connecticut under the rules of professional responsibility Rule 7.3 – Solicitation of Clients ""'Solicitation ''or ''solicit ''denotes a communication initiated by or on behalf of a lawyer or law firm that is directed to a specific person the lawyer knows or reasonably should know needs legal services in a particular matter and that offers to provide, or reasonably can be understood as offering to provide, legal services for that matter."

The commentary later specifies, "A lawyer's communication is not a solicitation if it is directed to the general public, such as through a billboard, an Internet banner advertisement, a website or a television commercial, or if it is in response to a request for information or is automatically generated in response to electronic searches." Thus a client specifically signing up for a service on the website is not a solicitation, and automated responses generated to gather information following that action would follow to not be a solicitation either.

Given Plaintiff's repeated attempts to obscure the truth and lack of factual investigation, I respectfully request that the Court award attorney's fees, dismiss Plaintiff's claims, with prejudice, and award judgment in favor of myself, including awarding me payment of the Capital Account balance owed, which is the only way Cleer will stop wasting the court's time with this biased and unjust lawsuit.

Respectfully submitted,

Crystal Stranger

Pro Se Litigant

Date: February 14th, 2025