

**George Musekamp**
513.357.9453
GMusekamp@taftlaw.com

425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Tel: 513.381.2838 | Fax: 513.381.0205
taftlaw.com

February 25, 2025

The Honorable Michael P. Shea
Via Email Only c/o Amy Constantine (Amy_Constantine@ctd.uscourts.gov)

**Re:   Case No. 3:24-CV-01496 – Crystal Stranger's Misunderstanding**

Dear Judge Shea:

There is no discovery dispute. Instead, Defendant Crystal Stranger has stated that she intends to once again send blast solicitation emails against the warnings from this Court, and is demanding that the Court rewrite the TRO so that she can contact any client or supplier in her unilateral discretion.

The TRO unambiguously enjoins Ms. Stranger from contacting or soliciting Cleer's clients and suppliers. The TRO also establishes a procedure for how the parties are to handle disputes about contacting Cleer's clients and suppliers:

> The parties shall confer in a good faith effort to enable Stranger and other persons working with her to contact customers and suppliers with whom Stranger had no direct or indirect contact or solicitation on behalf of Cleer LLC two years prior to her termination. **Absent conferral and agreement, Stranger may not contact any customers or suppliers or prospective customers or suppliers of Cleer LLC or its predecessors.**

(TRO, Doc. 34 at 4 (emphasis added)).

At the TRO hearing, Defendants admitted that they possess and have used a Cleer client list. Ms. Stranger also testified to a list of 226 Cleer clients that Optic Tax's bookkeeping team created and she used to solicit Cleer's clients for Optic Tax. Through discovery, it was also revealed that Optic Tax's mailing list contains an overlap of 5,448 individuals with Cleer's mailing list. Ms. Stranger has been unable to provide any explanation for how 5,448 of Cleer's contacts ended up on Optic Tax's mailing list—the obvious conclusion being that Ms. Stranger stole Cleer's mailing list and is now using it for Optic Tax. Mr. McKeegan testified at the preliminary injunction hearing that Ms. Stranger had direct or indirect contact with all of those 5,448 clients and suppliers. Ms. Stranger provided no contrary evidence or testimony.

Ms. Stranger, who is now proceeding pro se, and counsel for Cleer conferred on February 21, 2025, after which Cleer provided Ms. Stranger with the list of 5,448 overlapping contacts (that was previously marked AEO). It is Cleer's position that Defendants may not contact or solicit any of those current or prospective customers or suppliers pursuant to the TRO in addition to the 226 Cleer clients on the list created by Optic Tax.

Ms. Stranger disagrees with Cleer's list and argues that she did not have direct or indirect contact with all 5,448 contacts. Ms. Stranger's argument is unpersuasive for many reasons.

First, she has not identified a single client or supplier on the list provided to her that she claims she should be able to contact. She simply wants Cleer to create a new list to her satisfaction. Ms. Stranger has not satisfied her obligation to confer in good faith.

Second, this is not a discovery issue—this is simply Ms. Stranger disagreeing with the Court's TRO as unambiguously written. Indeed, the TRO anticipated this exact situation occurring—the parties being unable to agree on a list of customers and suppliers that are "out of bounds." In the event of a disagreement, the TRO states that "Stranger may not contact any customers or suppliers or prospective customers or suppliers of Cleer LLC or its predecessors." Absent reforming the TRO, there is no further discovery dispute to discuss. Cleer respectfully requests that the TRO remain in place until the preliminary injunction order is entered.

Third, Ms. Stranger is missing the point. Ms. Stranger has contractual and statutory obligations not to disclose Cleer's confidential information and trade secrets. She cannot steal Cleer's client list on one hand, then on the other argue that she is entitled to use the list because she did not have direct or indirect contact with some of the individuals on the stolen list.

Counsel for Cleer will make himself available to discuss further if needed and appreciates the Court's attention to this matter.

Sincerely,

George B. Musekamp

Crystal Stranger
crystalstranger@gmail.com
(310)739-7699

February 25, 2025

Chambers of the Hon. Michael P. Shea, USDJ
Re: Opposing Counsel Discovery Techniques and Dispute Over TRO Terms

Your Honor:

I write respectfully to bring two urgent matters to the Court's attention: (1) professional responsibility violations during discovery by opposing counsel, George Musekamp, and (2) concerns regarding the production of client list by Plaintiff in compliance with the TRO.

**1. Discovery Techniques Used by Opposing Counsel**

There has been a theme in this litigation where Musekamp expects everyone to jump when he says jump, but provides nothing in return. For example, I sent emails on 2/15 and 2/20 asking for an outline of how he plans to return my personal laptop that has been stuck in customs and I don't want that repeated, but he has not responded to either email. Yet throughout these proceedings Musekamp has waited until the last minute to request documents, threatening sanctions or calls with the court if not receiving documents immediately.

This dispute arose from document requests on 2/17 and 2/18, stated twice in writing for use in reply to my Motion for Mistrial (Motion, 139), filed on 2/5. But in the meet and confer call on 2/21 when I confronted him about waiting to the last minute to file an opposition, he said this document request was instead related to my 2/14 filing for Sanctions (Memo, 148), and said "I don't care about the mistrial". This type of switching stories has been common, and I would like the court's assistance in setting some ground rules. Furthermore, counsel has crossed many ethical lines in making these discovery requests in the following ways:

a. **Disparagement of My Case and Former Attorney:** In addition to the comment above, in the meet and confer call Musekamp brought the conversation completely off-subject to discuss the PI hearing then stated, "I think that Alan was dealt a bad deal of cards, because you had done him no favors, and he had a horrible case." Inferring my claims were frivolous, and disparaging my prior attorney's competence. Then he stated his opinion of my actions, "I just don't think you like the way the case was going so you fled, it's pretty evident to me." Later, in an email, "While you may think you are a licensed attorney, you are not." Such statements not only show lack of good-faith in resolving the dispute, but violate Connecticut Rule 3.4(5), which bars attorneys from alluding to irrelevant matters that prejudice proceedings, specifically asserting "a personal opinion as to the justness of a cause", or "the culpability of a civil litigant".

b. **Providing Unsolicited Legal Advice-** I had asked Mr. Musekamp to refrain from giving me unsolicited legal advice on 2/19, when he wrote advising me as to which documents he requested were discoverable. As a pro se litigant it seems important to research these legal issues myself, or receive court guidance. For example, on this issue I had to research the case history to determine exactly what was still privileged, and if anything should be redacted. Musekamp did not mention anything about redaction in his email, rendering the advice incomplete. I don't think self-serving legal advice from opposing counsel to a pro se litigant is allowable under Rule 4.3 which prohibits attorneys from giving advice to unrepresented parties, except to secure counsel. Such conduct is prohibited because it risks confusion and coercion, as could have happened here if I blindly followed his advice.

c. **Threats and Intimidation-** In this dispute on 2/18 Musekamp added to an email, "More important is the motion for contempt that you filed claiming we engaged in witness tampering. Please advise whether you are withdrawing so we do not have to bring another motion for sanctions." However, in my motion I provided proof, and threatening sanctions in order to try and cover this up is not right, as this is up to the court to decide based on the facts. Just days earlier on 2/14 he was pressuring me to obtain a copy of my passport, that

Case 3:24-cv-01496-MPS    Document 161    Filed 02/28/25    Page 4 of 4

Crystal Stranger
crystalstranger@gmail.com
(310)739-7699

I objected to as personal identifying information. He stated "Crystal - If we do not have a legible copy of your passport by Monday, we plan to contact the court on Tuesday." He had only requested my passport the prior day, and the following day DHL released my laptop from customs, without providing additional information. I don't believe threatening to "call the court" is reasonable. This is barred by Rule 8.4(4) which prohibits conduct "prejudicial to the administration of justice," including threats intended to intimidate.

I respectfully request the Court investigate these violations and consider sanctions to preserve procedural fairness.

### 2. Refusal to Produce Reasonable Client List Creating Overbreadth of the TRO

Because the Plaintiff has refused to produce a reasonable list related to the TRO terms, this has led to a blanket restriction on all communications, resulting in an impermissibly overbroad judgement. I have given webinars last year alone to over 25,000 attendees, these followers expect to receive urgent tax updates from me via my newsletters, but under Cleer's definition of the TRO all of my communications, even personal emails, are barred due to:

a. **Client List Definition:** The TRO requires: "The parties shall confer in a good faith effort to enable Stranger and other persons working with her to contact customers and suppliers with whom Stranger had no direct or indirect contact or solicitation on behalf of Cleer LLC two years prior to her termination."(TRO, 34, at 4) However, Plaintiff unreasonably contends that an email marketing list containing contacts added up to December 18th, 2024, nearly a year after I left employment at Cleer, is the appropriate list to restrict my communications. This exceeds legitimate business interests, as I cannot control clients acquired after resigning. If the MVA term the TRO language was based on was intended to block contact with all Cleer clients, it would not have include a time limitation. Furthermore, Plaintiff delayed producing this list until two months after the TRO, violating the "good faith conferral" requirement. In the PI hearing Plaintiff admitted they could produce a list tailored to the TRO but had not (PI Transcript 148:12-149:18) and that Plaintiff had produced a more narrowly tailored list from Salesforce to their attorneys (157:25-158:4), but this list has never been produced to Defendants, furthermore violating Rule 3.4(4).

b. **First Amendment Violation:** Absent conferral and agreement, the TRO bars all contact to any Cleer client. By not agreeing to the list, Plaintiff claims they have a total bar on my communications, effectively alienating my rights. Musekamp wrote on 2/22, "It remains Cleer's position, consistent with the TRO, that you or Optic Tax contacting any of Cleer's current, former, or prospective clients—whether or not on the attached list—absent conferral and agreement with Cleer beforehand is a violation of the TRO." Thus their position is that I cannot send any emails, for any purpose, because how am I to know if the person I email is outside of the list provided? This is a total prohibition on communications, and also would bar me from any other gainful employment. In *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), the Supreme Court held that broad injunctions stifling lawful speech are unconstitutional. The restriction here is not narrowly tailored, as it prohibits even benign communications (e.g. personal emails), creating a prior restraint.

I urge the court to: (1) Compel opposing counsel to produce a narrowly tailored client list limited to the TRO-referenced period. (2) Modify the TRO to permit lawful communication under the First Amendment.

I certify that I have met with Opposing Counsel to confer on this in good faith, and I respectfully request a hearing to address these issues and ensure compliance with ethical standards and constitutional protections. Thank you for your time and consideration.

Sincerely,
Crystal Stranger
Pro Se Litigant