UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEER LLC (F/K/A GREENBACK BUSINESS SERVICES LLC) D/B/A CLEER TAX, <br><br> Plaintiff, <br><br> v. <br><br> CRYSTAL STRANGER, et al., <br><br> Defendants. | Case No. 3:24-cv-01496-MPS <br><br> Judge Michael P. Shea <br> Magistrate Judge Maria E. Garcia <br><br> **PLAINTIFF CLEER LLC'S REPLY IN SUPPORT OF SECOND MOTION FOR CONTEMPT** |

Plaintiff Cleer LLC ("Cleer") has not made "it look like [Defendant Crystal Stranger] is hellbent on stealing [its] clients and mocking the TRO" (Ms. Stranger's Opposition to Second Motion for Contempt, Doc. 147 at 1); Ms. Stranger has proven that narrative to be true. Ms. Stranger continues to violate the Court's TRO, which prohibits Ms. Stranger—and, derivatively, Defendant Optic Tax ("Optic Tax")—from:

> 2. [(a)] soliciting or otherwise contacting for purposes of developing business, [(b)] entering into an agreement, or [(c)] proposing or making any sale any person who is or was a customer, supplier, or prospective customer or supplier of Cleer LLC.

(TRO, Doc. 34 at 4). Defendants do not dispute that they solicited and otherwise contacted Marcos Sanchez, owner of Cleer client Siux Studio LLC ("Siux"), for purposes of developing business, and proposed to make a sale of Optic Tax's services to Siux, all in violation of the TRO. Put differently, Ms. Stranger has again violated the TRO in at least three individually sufficient ways. She further admits that she has not put any "checks" or "stops" in place to ensure compliance with the TRO. Instead, she has placed that burden on Cleer to police Defendants' conduct.

1

First, Ms. Stranger argues that she did not solicit Siux because Siux reached out to Optic Tax. However, under Connecticut law, "[s]olicitation is defined as '[a]n attempt or effort to gain business.'" *Avionics Techs., Inc. v. Fakhry*, No. CV-20-5047976-S, 2024 WL 2717658, at *6 (Conn. Super. Ct. May 23, 2024) (quoting Black's Law Dictionary (11th Ed. 2019)). As one Connecticut court has explained, "[t]he fact that the clients initiated the contact with [the defendant] is not dispositive if [the defendant] engaged in solicitation upon being contacted." *ATI Eng'g Servs., LLC v. Millard*, No. X03-CV-18-6118978-S, 2022 WL 1553389, at *16 (Conn. Super. Ct. May 16, 2022). And "[t]o establish solicitation, the evidence must show that [the defendant] sought to persuade the clients to do business with [her] personally, offered incentives to them if they did so (such as a lower price), or disparaged the plaintiff's services in an effort to obtain the business." *Id.*

As emails between Optic Tax Senior Customer Success Accountant Yancy Gonzalez show, there is no question that Mr. Gonzalez sought to persuade Mr. Sanchez to allow Optic Tax to provide tax services for Siux. (Exhibit A). There is also no dispute that Optic Tax was attempting to undercut Cleer's pricing to entice Cleer's clients to move:

> We had a great experience working with Cleer Tax last year, and I would love to continue our collaboration. However, the pricing difference is making me hesitate. Last year, our filing with Cleer Tax was **$2,542,** whereas the same professionals at Optic Tax are now offering the same process for approximately **$1,500 – 1,700** (including **$799** for the federal tax package, **$500** for bookkeeping, and **$99** for additional forms for our five partners).

(Exhibit B (emphasis in original)). And Ms. Stranger knew Siux was a Cleer client because Mr. Sanchez emailed Mr. Gonzalez: "I saw that several of the people I worked with last year on 2023 tax preparation at Cleer Tax are working here so I would like to know the pricing scheme." (Exhibit A). Mr. Gonzalez then forwarded this communication to Ms. Stranger. (*Id.* at 6). Instead of turning Siux away upon learning it was a current Cleer client, Ms. Stranger, through Optic Tax,

2

plowed forward in violation of the TRO and would have continued to do so absent the filing of the current Motion.

Second, even if Ms. Stranger, through Optic Tax, did not "solicit" Siux (she did), Optic Tax's conduct undeniably falls under the proscribed "otherwise contacting for purposes of developing business" conduct of the TRO. (*See* TRO, Doc. 34 at 4). Mr. Gonzalez repeatedly contacted Mr. Sanchez to convince him to engage Optic Tax's services for Siux—a Cleer client. (Exhibit A). This prohibited contact, too, violates the TRO.

Third, through Optic Tax, Ms. Stranger also proposed a sale to Siux in violation of the TRO. Optic Tax Customer Success Accountant Annie Idloy emailed Mr. Sanchez: "We can **offer** our starting price of $500 for the 2024 bookkeeping clean-up. I would also like to add that our initial tax return pricing starts at $799, but the final pricing will be determined by the tax accountant assigned to your account." (Exhibit A at 4 (emphasis added)). And Mr. Sanchez certainly understood this and later communications from Mr. Gonzalez to be sale offers: " Hi Yancy, [t]hank you for the detailed information regarding your OpticPlus bookkeeping package. After reviewing the **offer**, I wanted to share a few thoughts and clarify some aspects." (*Id.* at 5 (emphasis added)). Ms. Stranger, using Optic Tax, undeniably proposed sales to a Cleer client in violation of the TRO.

Ms. Stranger violated the TRO in each of these individually sufficient manners. More troubling are Optic Tax's responses to Mr. Sanchez, who identified Siux as a Cleer client from the outset of the violative contact, demonstrating Ms. Stranger's complete lack of care for the TRO's mandates. The prompt and unhesitating responses of Mr. Gonzalez and Ms. Idloy to Mr. Sanchez—even after he disclosed he was a Cleer client—show that Ms. Stranger has not set up any TRO-compliant guardrails with Optic Tax. Even worse, Mr. Gonzalez forwarded Ms. Stranger

3

the email thread in which Mr. Sanchez identified his business as a Cleer client, and she made no effort to meet and confer with Cleer about the impermissible contact as the TRO requires.

It is also disingenuous for Defendants to argue that clients are reaching out to Optic Tax first when Defendants' blast emails (which is the subject of Cleer's first Motion for Contempt, Doc. 99) to at least 5,448 Cleer contacts in December 2024 and January 2025 were sent for the very purpose of enticing Cleer's clients to contact Optic Tax. In other words, Ms. Stranger cannot poison the well through blast solicitation emails to thousands of Cleer's current and prospective clients, then harvest the fruits of the TRO violations when Cleer's clients start contacting Optic Tax. The TRO was put in place to avoid this exact situation. This prohibited contact with Mr. Sanchez is just one provable instance of Ms. Stranger's continued TRO violations. It is impossible for Cleer to determine how many clients like Siux Ms. Stranger and Optic Tax are actively soliciting and contacting in violation of the TRO.

Given the repeated and egregious nature of Defendants' misconduct, the proper relief is to award the sanctions Cleer seeks in its Second Motion for Contempt.

    Respectfully submitted,

    */s/ George B. Musekamp*
    George B. Musekamp (PHV)
    Evan H. Cohn (PHV)
    Taft Stettinius & Hollister LLP
    425 Walnut Street, Suite 1800
    Cincinnati, Ohio 45202
    Tel: (513) 381-2838
    Fax: (513) 381-0205
    gmusekamp@taftlaw.com
    ecohn@taftlaw.com

                                        Michael S. O'Malley, Esq. (CT31784)
                                        Ogletree, Deakins, Nash,
                                        Smoak & Stewart P.C.
                                        281 Tresser Boulevard
                                        Stamford, CT 06901
                                        Tel: (203) 969-3109
                                        Fax: (203) 969-3150
                                        Michael.O'Malley@ogletree.com

                                        *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on February 28, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all counsel of record.

                                                */s/ George B. Musekamp*

171397141v1