IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLEER LLC | : | 3:24-cv-1496-MPS |
| | : | |
| v. | : | DEFENDANT'S SUR-REPLY IN |
| | : | OPPOSITION TO CLEER'S SECOND |
| CRYSTAL STRANGER et al. | : | MOTION FOR CONTEMPT |
| | : | |
| v. | : | |
| | : | |
| DAVID and CARRIE McKEEGAN | : | |
| | : | |

Now comes the undersigned defendant Crystal Stranger who submits this Sur-Reply in response to Plaintiff Cleer LLC's Reply in Support of its Second Motion for Contempt (Doc 162). Plaintiff continues to misrepresent the facts and misapply legal standards in an attempt to manufacture a violation of the Temporary Restraining Order ("TRO"). The claims made by Plaintiff are misleading, omit crucial context, and fail to establish that Defendants engaged in any prohibited conduct under the TRO.

## I. PLAINTIFF'S ARGUMENTS REST ON A DISTORTED NARRATIVE

Plaintiff alleges that I am "hellbent on stealing" Cleer's clients and "mocking the TRO" (Doc. 147 at 1), but the evidence shows otherwise. Defendants did not proactively solicit, initiate, or target Siux Studio LLC ("Siux") or its owner, Marcos Sanchez. Instead, as demonstrated by Plaintiff's own exhibits, Siux contacted Optic Tax first. Plaintiff failed

1

to provide this critical fact in its argument, attempting instead to portray Defendants as the initiators of this interaction, which is not supported by the record.

Furthermore, Plaintiff's counsel further distorts the narrative when he writes: "Even worse, Mr. Gonzalez forwarded Ms. Stranger the email thread in which Mr. Sanchez identified his business as a Cleer client, and she made no effort to meet and confer with Cleer about the impermissible contact as the TRO requires." (Doc 162 at 3) But I was only forwarded this message thread after my former attorney, Alan Harrison, had asked me about this client and I had no idea what he was talking about, so I requested information from Ms. Gonzalez. Thus this is a complete distortion of the facts of the situation.

## II. DEFENDANTS DID NOT ENGAGE IN PROHIBITED SOLICITATION UNDER THE TRO

Plaintiff relies on a misinterpretation of Connecticut law to argue that Defendants solicited Siux. Under Connecticut precedent, solicitation requires affirmative persuasion, incentives, or disparagement of a competitor's services. ATI Eng'g Servs., LLC v. Millard, No. X03-CV-18-6118978-S, 2022 WL 1553389, at *16 (Conn. Super. Ct. May 16, 2022). Here, Plaintiff has not produced any evidence showing that Defendants engaged in such behavior.

**No Evidence of Persuasion or Incentives:**

Mr. Sanchez's emails confirm that he was already interested in engaging Optic Tax and was comparing pricing options. This is routine business conduct and not improper solicitation. The pricing discussion was initiated by Mr. Sanchez, not Defendants.

**No Evidence of Disparagement of Cleer:**

Plaintiff has not provided any statements from Defendants suggesting that Cleer's services were inferior or that clients should leave Cleer. In fact, Mr. Sanchez's own email acknowledges that he reached out because of former Cleer professionals now working at Optic Tax, a decision independent of any solicitation by Defendants.

## III. DEFENDANTS DID NOT OTHERWISE CONTACT SIUX FOR THE PURPOSE OF DEVELOPING BUSINESS

Plaintiff argues that even if there was no solicitation, Defendants violated the TRO by "otherwise contacting" Siux. This is incorrect. The phrase "otherwise contacting for purposes of developing business" must be interpreted in the context of proactive outreach. Here:

• Siux *initiated* contact with Optic Tax.

• The response provided was in the ordinary course of business, as a company is not required to refuse services to inbound inquiries simply because of a prior business relationship with Cleer.

- Plaintiff has failed to cite any legal authority holding that responding to a prospective client's independent inquiry constitutes prohibited "contact" under a TRO.

Further, Plaintiff's interpretation of the TRO amounts to an unconstitutional restriction on commercial speech, effectively imposing a prior restraint. Prior restraints on speech, particularly commercial speech that is truthful and non-misleading, are presumptively unconstitutional. See *Alexander v. United States*, 509 U.S. 544, 550 (1993). Defendants have a fundamental First Amendment right to communicate with potential clients, particularly when those clients initiate contact. See *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980). If Plaintiff's claims were upheld, it would create an impermissible chilling effect on lawful business communications.

## IV. DEFENDANTS DID NOT PROPOSE A SALE IN VIOLATION OF THE TRO

Plaintiff alleges that Defendants violated the TRO by proposing a sale to Siux. However, the pricing information provided was in response to Siux's *explicit request* and was not an unsolicited offer.There was no active encouragement to switch from Cleer to Optic Tax—Siux had already decided to explore alternatives. If merely responding to a pricing inquiry constitutes a TRO violation, this would create an unreasonable and unenforceable burden, effectively requiring Defendants to refuse business from any client that Cleer had previously served, regardless of the client's own choice.

## V. PLAINTIFF'S CLAIMS OF "NO COMPLIANCE CHECKS" ARE BASELESS

Plaintiff falsely asserts that Defendants have no compliance measures in place. This is untrue. I have taken multiple steps to comply with the TRO, including:

- Instructing Optic Tax employees not to solicit or proactively contact former Cleer clients.

- Implementing an internal process to ensure that any incoming inquiries from potential clients with past ties to Cleer are reviewed before proceeding.

- Immediately ceasing discussions upon learning of any potential TRO concerns, as evidenced by Defendants' actions in this case.

## **VI. THE REQUESTED RELIEF WOULD VIOLATE THE FIRST AMENDMENT**

Plaintiff's motion seeks an overly broad restriction on Defendants' ability to engage in lawful business interactions, effectively amounting to a prior restraint on speech in violation of the First Amendment. Courts have consistently held that prior restraints on commercial speech are presumptively unconstitutional with a legislative history stretching back to *Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931) By attempting to bar Defendants from communicating with former Cleer clients, even when those clients initiate contact, Plaintiff seeks an impermissible restriction on Defendants' right to engage in lawful and truthful commercial speech.

Moreover, Defendants' communications with former Cleer clients, particularly when initiated by those clients, fall within the scope of protected speech. "In *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557,

100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Supreme Court articulated the test for determining whether a restriction on commercial speech is constitutionally permissible: For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest. Id. at 566, 100 S.Ct. 2343." *Safelite Grp., Inc. v. Jepsen*, 988 F. Supp. 2d 199, 203 (D. Conn. 2013). That test has not been met here:

    1. The communications were all lawful standard business activity.

    2. There is no governmental interest in preventing this speech as it is only concerning two private enterprises.

    3. Even if there were governmental interest, this restriction would be far more extensive than what is necessary to protect that interest.

Thus if Plaintiff's requested relief were granted, it would create an unconstitutional chilling effect, deterring lawful business communications based on vague and overbroad restrictions.

## VII. PLAINTIFF'S ARGUMENT REGARDING PAST EMAILS IS A RED HERRING

Plaintiff attempts to connect this matter to a prior dispute about the blast email communications, but those emails are the subject of a separate motion and are

irrelevant here. The attempt to bootstrap prior allegations into this case only underscores the weakness of Plaintiff's position.

## **VIII. CONCLUSION**

Plaintiff's motion rests on a misrepresentation of the facts and an overbroad reading of the TRO. Defendants did not solicit Siux, did not improperly contact them for business development purposes, and did not propose a sale in violation of the TRO. Instead, a former Cleer client independently reached out to Optic Tax. Responding to an inbound inquiry is not a violation of the TRO, and Plaintiff's attempt to twist normal business interactions into contemptuous conduct should be rejected.

For these reasons, Defendants respectfully request that the Court deny Plaintiff's Second Motion for Contempt in its entirety.

Respectfully submitted,

Crystal Stranger

Pro Se Litigant

Date: March 5th, 2025