IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLEER LLC | : | 3:24-cv-1496-MPS |
| | : | |
| v. | : | |
| | : | DEFENDANT CRYSTAL STRANGER'S |
| CRYSTAL STRANGER et al. | : | MOTION FOR SANCTIONS AGAINST |
| | : | PLAINTIFF ATTORNEY GEORGE |
| v. | : | MUSEKAMP |
| | : | |
| DAVID and CARRIE McKEEGAN | : | |
| | : | |

I respectfully submit this motion for sanctions in response to the conduct of opposing counsel, Mr. George Musekamp, which has substantially hindered the fair and efficient progress of this litigation and violates numerous ethical rules regarding discovery, threats, and improper conduct toward a pro se litigant. I had also submitted my concerns about this in a letter to the court as part of a discovery dispute, but as that was not addressed on that request, I now formally request that the Court investigate these violations and impose appropriate sanctions to preserve procedural fairness.

**I. Obstructing Access to Discovery Materials**

The TRO required Plaintiff to provide a client list so that Defendants can comply with the TRO (TRO, 34, at 4). However, Plaintiff delayed producing a first version of this list until two months after the TRO was issued. In the PI hearing Plaintiff admitted they gave a more narrowly tailored list produced from Salesforce to their attorneys (157:25-158:4). This list would likely be directly relevant to the terms of the TRO. However, Mr.

1

Musekamp has refused to produce this list to me, despite repeated requests. The TRO requires that I be able to contact certain clients within a narrowly defined scope, but without this list, Plaintiff has taken a positoin that I cannot contact anyone who has or could open a business anywhere in the world, and thus I fully barred on my communications and deprived of my First Amendment rights. By withholding these documents, Mr. Musekamp is actively obstructing my access to the information necessary to comply with the TRO in order for his client to obtain this blanket ban on my communications, and has failed to comply with discovery requirements set forth in Connecticut Rule of Professional Conduct 3.4(4).

The ABA Model Rule 3.4(b) similarly requires attorneys to provide documents and evidence in their possession that are relevant to the opposing party's case or compliance with a court order. By withholding the list that has already been provided to his own legal team, Mr. Musekamp is disregarding his ethical obligations under both Connecticut and ABA rules. His actions further hinder the fair and just resolution of this matter, and sanctions are warranted to address this obstruction and ensure compliance with the court's orders.

**II. Musekamp Making Statements that Prejudice Proceedings**

Throughout this litigation Mr. Musekamp has painted a false narrative using inflammatory statements such as "After wading through Ms. Stranger's excuses and blame-shifting, it is evident that she sought to delay and obstruct because did not want the proceedings to continue." (Reply, Doc 163, at 1) "Ms. Stranger refuses to take

accountability for her own actions." (Opposition, Doc 157, at 1) or "Stranger alone directed all of Optic Tax's illegal activities and the company appears to be nothing more than a façade for Stranger to conduct her illegal activities." (Opposition, Doc 77, at 6) All of these statements are markedly false, and paint a false narrative that I have been trying to delay and obstruct the proceedings when I am the one burdened under a TRO for over four months; that I am completely unaccountable when I simply asked for my civil rights of due process as an American citizen; and somehow asserting I am conducting illegal activities while reviewing tax returns, not even sure what he is alluding to there. If this wasn't so serious and threatening to my livelihood these accusations would be comical.

The ABA Model Rule 3.4 prohibits making statements that improperly influence the tribunal. Mr. Musekamp's disparaging remarks inside the motions filed with the court fall within this rule by seeking to improperly influence the Court's perception of the case and my actions, thus violating the ethical standards set forth for attorneys.

This biased treatment has not ceased once I became a pro se litigant, as during a February 21st discovery dispute meet-and-confer call, Mr. Musekamp made further disparaging remarks about my case, stating, "I think that Alan was dealt a bad deal of cards, because you had done him no favors, and he had a horrible case," and later adding that I "fled" the case because I did not like how it was proceeding. Additionally, in an email, he stated, "While you may think you are a licensed attorney, you are not." (Exhibit A, at 4)

These comments are not only irrelevant and inflammatory but also violate Connecticut Rule 3.4(5), which prohibits attorneys from making statements that prejudice the proceedings or commenting on the justness of a case or the culpability of a civil litigant. Specifically, his statement that my former attorney "had a horrible case" and his insinuation that I "fled" my case are prejudicial and irrelevant to the issues at hand. While it is important for an attorney to zealously represent their client, such statements undermine the proper functioning of the legal process by focusing on the perceived weaknesses of the parties' claims rather than the merits of their case.

### III. Threats and Intimidation

On February 18th, Mr. Musekamp threatened to bring a motion for sanctions unless I withdrew my claim of witness tampering, despite my having provided proof of this claim. (Exhibit B) This type of threat is improper, as it attempts to coerce me into withdrawing a claim that is properly before the Court. Moreover, on February 14th, Mr. Musekamp demanded that I provide a legible copy of my passport, despite my objections to disclosing personal identifying information. His email stated, "If we do not have a legible copy of your passport by Monday, we plan to contact the court on Tuesday," (Exhibit C) which was an unreasonable and overly aggressive deadline. This conduct is prohibited under Rule 8.4(4), which forbids conduct prejudicial to the administration of justice, including threats designed to intimidate or coerce.

The threats and coercive tactics employed by Mr. Musekamp, including his warnings about potential sanctions and contacting the Court, violate Connecticut Rule of

Professional Conduct 8.4(4), which prohibits conduct that is prejudicial to the administration of justice. Specifically, his email threatening to bring a motion for sanctions unless I withdrew my legitimate claim of witness tampering constitutes an improper attempt to intimidate and pressure me into dismissing a claim that is properly before the Court. Such threats undermine the integrity of the legal process and may discourage the fair and full presentation of evidence.

The ABA Model Rule 8.4(d) similarly prohibits attorneys from engaging in conduct that is prejudicial to the administration of justice, including using threats or intimidation to influence the course of litigation. Mr. Musekamp's actions in this regard are clearly intended to coerce withdrawal of legitimate claims through the improper use of threats and intimidation. These actions must be sanctioned to maintain fairness in the proceedings.

### **IV. Providing Unsolicited Legal Advice**

On February 19th, Mr. Musekamp sent me unsolicited legal advice regarding the discoverability of documents I had requested. (Exhibit B). As a pro se litigant, I had specifically asked him to refrain from providing such advice. This conduct is not only inappropriate but also in violation of Rule 4.3, which prohibits attorneys from giving legal advice to an unrepresented party, except for the purpose of securing counsel. On this issue I had to research the case history to determine exactly what was still privileged, and if anything should be redacted. Musekamp did not mention anything about redaction in his email, rendering the advice incomplete. By providing incomplete and

self-serving legal advice, Mr. Musekamp sought to improperly influence my decisions and risked causing confusion in my ability to navigate the legal process.

Mr. Musekamp's unsolicited legal advice to me on February 19th is in direct violation of Connecticut Rule of Professional Conduct 4.3. This rule prohibits attorneys from giving legal advice to an unrepresented party, except to secure counsel, as it risks confusing or coercing the unrepresented individual. In this case, Mr. Musekamp provided advice regarding the discoverability of documents, which, as a pro se litigant, I did not request. Such conduct is highly inappropriate because it creates a risk of confusion, especially when the advice is self-serving and incomplete. Furthermore, by failing to address potential redactions, he left the legal advice misleading and incomplete, further complicating my ability to navigate this case without the benefit of counsel.

The ABA Model Rule 4.3 mirrors this prohibition, ensuring that attorneys avoid providing advice that could be seen as an attempt to take advantage of a pro se litigant's lack of legal knowledge. Mr. Musekamp's actions in offering this unsolicited legal advice conflict with these ethical rules and should be addressed through sanctions.

## V. Failure to Correct the Record About False Statements

Mr. Musekamp has made several inaccurate and misleading statements to the Court, which have affected the integrity of the proceedings and may have caused confusion in the Court's understanding of the facts. His failure to correct these

inaccuracies further exacerbates the issue, as he failed to file a motion to correct the record despite the clear opportunity to do so. These inaccuracies, detailed below, should be addressed to preserve the fairness of the proceedings.

### 1. Cleer is Not a Connecticut Company

In the First Amended Complaint and during the proceedings subsequently, Mr. Musekamp has represented that Cleer is a Connecticut-based company. However, this statement is factually inaccurate. Cleer is not registered as a business in Connecticut, nor has it filed taxes in the state. By making this false representation to the Court, Mr. Musekamp misled the Court into believing that Cleer operates in Connecticut, which is not the case.

In the original complaint Plaintiff stated, "Cleer is a Wyoming limited liability company with its principal place of business located in Michigan." (Complaint, Doc 1, at 2:4) Later in the amended complain they magically switched to being headquartered in Connecticut. (Amended Complaint, Doc 55, at 2:5)  Also in the original complaint it also stated, "Cleer has two members who both reside in Connecticut." (Complaint, Doc 1,  at 2:5). However, at trial Plaintiff testified:

Q. Okay. Have you said at different times that you are a resident of Connecticut

A. No, I don't believe so.

Q. For example, did you say in the verified complaint that you maintain United States residency in Connecticut?

A. No. I said I have a residence in Connecticut, meaning I own a home.

(PI Hearing, 146:1-8)

This statement was based on the clever wording of the Amended Complaint where it stated that "Cleer has two members who maintain United States residencies in Connecticut and who operate Cleer out of Connecticut when in the United States." This clever change of wording from the first complaint that clearly said "Cleer has two members who both **reside** in Connecticut" to the amended complaint wording was clearly an intentional misstatement of fact to give Mr. McKeegan that out in testimony he so conveniently used.

Mr. Musekamp's intentional deception and continued failure to correct this error of fact, despite being aware of the truth of both the residency statement being false and the headquarters location being the same since the time he filed the original complaint, warrants scrutiny. The Court relies on accurate factual representations to make informed decisions, and misleading the Court in this manner undermines the administration of justice.

**2. The Capital Account Balance was Fraudulently Calculated**

Mr. Musekamp claimed that the capital account balance was correct, (PI Hearing, 14:17),  but this statement contradicts the factual record. I have repeatedly pointed out discrepancies in the capital account balance, and Mr. Musekamp's failure to acknowledge or address these discrepancies is misleading. The Plaintiff even

admitted—in direct testimony led by Mr. Musekamp—that the capital account balance was incorrect (Id., 116:21-25). His statement that the capital account balance was correct at negative 70,000, as stated in the initial and amended pleadings, is not only inaccurate but also an attempt to obscure the financial misrepresentations by Plaintiff that are central to this case.

Furthermore, Mr. Musekamp falsely stated that I did not ask for a capital balance calculation. (Id, 14:9-10) However, this statement directly contradicts the factual record. I had sent two emails on August 9th and August 19th (Exhibit D) both questioning the capital balance calculation, and I also sent the second email as a certified letter (Exhibit E) and in that letter I specifically requested a detailed calculation of the capital account balance and even listed alternative valuations. Despite these clear and documented requests, Mr. Musekamp's assertion that I did not ask for this information is inaccurate and misleading. By denying these requests and misrepresenting the facts, Mr. Musekamp has failed to acknowledge his client's responsibility to provide accurate financial documentation and has attempted to obfuscate the matter in order to avoid addressing a key issue in the case.

### 3. Misrepresentation of my employment and role at Cleer

Mr. Musekamp inaccurately described my employment at Cleer during the PI hearing, claiming: "Cleer hired Ms. Stranger to work as a W-2 employee. She was assisting with general tax and bookkeeping services." (PI Hearing, 5:19-20)

This statement is misleading in several respects: While I was indeed employed by Cleer, my role was far more complex and integral to the operations than Mr. Musekamp described. First of all, from the time I was hired I "was overseeing the whole tax team" as stated by the Plaintiff on direct (Id., 29:22-23). I was not "assisting with general tax and bookkeeping services".

A little later in the hearing Musekamp again misstated when he said: "You'll see at the same time period in 2022 Ms. Stranger is actually promoted to have equity in the company and she's also promoted to be the international tax director." (Id., 7:4-8) The claim that I was "promoted to have equity in the company" is not an accurate representation of the circumstances of my equity interest either, as that had nothing to do with any promotion, as the promotion to COO was completely unrelated to gaining equity. Additionally, my role as "international tax director" was the role I had held since shortly after I started at the company, and even in the Plaintiff's testimony he stated that role I was promoted to around 2022 was "COO, Chief Operating Officer." (Id., 31:16-18)

These misstatements not only distort the factual record but also undermine the credibility of the arguments presented by Mr. Musekamp who is trying to paint me as a low-level employee who took advantage of the business she worked at, rather than an expert coming in as an equal to build a partnership, who was promised equity from the beginning but it was only granted later, which was later stolen from me by actions of the Plaintiff. The Court's understanding of my role at Cleer is essential to resolving the issues at hand, and these inaccuracies should not go uncorrected.

### 4. Failure to Correct the Record

Despite being aware of these inaccuracies, Mr. Musekamp has failed to file a motion to correct the record. This failure to amend the record, which was contradicted in testimony, particularly after I have raised these issues in other filings, suggests either neglect or a deliberate attempt to mislead the Court. Attorneys have an ethical duty to correct any false or misleading statements made to the Court, and failing to do so violates Connecticut Rule of Professional Conduct 3.3(a)(1), which requires that attorneys not knowingly make false statements to the tribunal. The ABA Model Rule 3.3 similarly mandates that an attorney must take corrective action when they know a statement made to the Court is false.

Mr. Musekamp's continued reliance on these inaccurate statements without seeking to correct them is prejudicial to the administration of justice. These misrepresentations must be addressed to ensure that the Court is provided with accurate and truthful information necessary to make informed rulings in this case.

## VI. Opposing Counsel Attempting to Testify in the PI Hearing

During the Preliminary Injunction hearing, Mr. Musekamp improperly attempted to testify on behalf of his client by offering subjective, hearsay statements and opinions that fall outside the scope of permissible arguments in court. Specifically, Mr. Musekamp made the following statements:

- "Some clients are saying, 'I don't know what's going on. Who is my accountant? I don't know.'" (PI Hearing, 18:20-21)
- "Some actually switched their business to Optic Tax and said, 'Okay, I'll follow you, Ms. Stranger.'" (Id, 18:21-23)
- "Some respond back and say, 'That's in bad faith. You're stealing their email domain. I'm not working with you, I'm staying with Cleer.'" (Id, 18:23-25)

These statements were not only speculative but also attempted to introduce third-party opinions and anecdotes, which are improper for establishing facts in court. Mr. Musekamp's attempt to testify in this manner is a clear violation of professional conduct standards, as an attorney should not act as a witness for their client or present testimony that is not based on personal knowledge or admissible evidence.

Additionally, Mr. Musekamp continued giving testimony in his own words throughout the preliminary injunction hearing:

- "What she's going to tell the Court is that because Cleer miscalculated her capital account, that that gave her carte blanche to do whatever she wanted." (PI Hearing, 14:11-13)
- "Exhibit 105 in our binder, which we'll show to you, Ms. Stranger says to Mr. McKeegan she purchased Cleer.tax, quote, 'just as to make sure we don't get sniped when Googling and looking at the name, when someone else is looking at the name, so they've got that name locked down for the company.' She's going to tell the Court that she bought the .tax just to make sure we have it."(Id, 8:16-22)
- "He's asking Ms. Stranger, What domains did you buy? She says, I bought Cleer.tax so nobody can circumvent us." (Id, 8:24-9:1)

Mr. Musekamp's statements were speculative and prejudicial, attempting to sway the Court's opinion by offering unsworn testimony that was neither based on the factual record nor supported by admissible evidence. In doing so, Mr. Musekamp crossed the line between representing his client and attempting to serve as a witness, which is not only improper but also violates Connecticut Rule of Professional Conduct 3.7, which prohibits an attorney from acting as both advocate and witness in a case unless certain conditions are met, none of which apply here.

By attempting to offer testimony rather than argument, Mr. Musekamp violated fundamental principles of professional conduct and trial practice. He also wasted the court's time during the trial, depriving the Defense from having sufficient time to raise issues and introduce evidence. These actions are prejudicial to the administration of justice and should be addressed by the Court to ensure fairness in the proceedings.

## VII. Lack of Clarity Regarding the Return of Defendant's Personal Property

Mr. Musekamp is currently in possession of my personal laptop, which had been stuck in customs for nearly three months and was received by Plaintiff finally in mid-February. Despite my repeated requests, he has failed to provide any clarification or timeline regarding the return of my property. On February 15th and 20th of 2025, I sent emails specifically requesting an outline of how and when he plans to return the laptop, yet I have received no response. (Exhibit F)

The failure to return my personal property, particularly my laptop, is not only a delay in the resolution of this matter but also constitutes a violation of ethical rules governing the handling of client property. Under Connecticut Rule of Professional Conduct 1.15(e), an attorney is required to promptly return a client's property upon request, and to provide an accounting for any property that has been held. This rule is designed to ensure that attorneys do not unlawfully withhold property from clients or others with a rightful claim.

ABA Model Rule 1.15(e) imposes a similar obligation on attorneys, specifically requiring that "a lawyer shall promptly return to the client any property that the client is entitled to receive." As my personal property, this laptop is unequivocally mine, and I have made reasonable efforts to retrieve it. The failure to respond to my written requests for its return further exacerbates this issue and raises serious concerns about the attorney's compliance with the professional responsibility rules.

By failing to address my inquiries regarding the return of my personal laptop, Mr. Musekamp has not only caused undue delay but has also violated my rights to property, as guaranteed by these ethical standards. This conduct should not be overlooked, and I respectfully request that the Court take appropriate action to ensure the return of my property and address any potential violations of professional conduct.

## VIII COUNSEL SOUGHT TO SILENCE DEFENDANT THROUGH MONETARY SANCTIONS

Plaintiff's counsel has engaged in unethical conduct by requesting the Court to impose monetary sanctions on Defendant for the purpose of preventing her from filing pleadings. In Plaintiff's Opposition to Motion for Contempt, Mr. Musekamp explicitly sought monetary penalties to "stop Ms. Stranger from filing this and other abusive, vexatious, and oppressive papers." (Opposition, Doc 156, at 5). He further referenced Local Rule 16(g) as a mechanism to prohibit Defendant from filing any further documents unless monetary sanctions were paid in full, in an attempt to stop his adversary from defending against the onslaught of false narrative attacks, and seemingly intent on depriving me of my constitutional rights of Due Process.

This request appears to violate Connecticut Rule of Professional Conduct 8.4(4), which prohibits attorneys from engaging in conduct that is prejudicial to the administration of justice. Seeking monetary sanctions not as a legitimate deterrent against bad-faith filings but as a means to silence an opposing party constitutes an abuse of the legal process. The Court should not permit Plaintiff's counsel to use sanctions as a tool for suppressing Defendant's right to access the judicial system, particularly in light of Plaintiff's own litigation conduct. Accordingly, Defendant requests the Court to deny Plaintiff's improper request for sanctions and consider whether Plaintiff's counsel's actions warrant disciplinary review.

## IX. COUNSEL'S CONDUCT EXCEEDS ZEALOUS REPRESENTATION

Plaintiff's counsel's conduct goes beyond the limits of zealous advocacy and into the realm of abuse of legal procedure. As the commentary to Connecticut Rule 3.1

states, "The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure." While attorneys are expected to pursue their clients' interests vigorously, they must do so within ethical and legal constraints.

The filing of sanctions motions aimed at preventing Defendant from accessing the courts is frivolous and not grounded in a good faith argument. Rule 3.1 further makes clear that an action is frivolous if the lawyer "is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." Plaintiff's repeated threats, obstruction of discovery, lack of truthfulness, and attempts to impose punitive monetary sanctions to block Defendant from participating in litigation demonstrate an abuse of the legal process and warrant scrutiny by the Court.

## X. Conclusion

In light of these ongoing violations and unethical practices, I respectfully request that the Court impose sanctions against Mr. Musekamp and order him to either withdraw as counsel or be ordered to cease this improper conduct and file motions to correct the record on the many false statements made. I further request that the Court establish clear guidelines for discovery and procedural fairness in order to prevent further disruption of these proceedings.

Respectfully submitted,

Crystal Stranger

Pro Se Litigant

Date: March 6th, 2025