Exhibit D

 Gmail  Crystal Stranger <crystalstranger@gmail.com>

## Re Cleer

**Crystal Stranger** <crystalstranger@gmail.com>  Mon, Aug 19, 2024 at 3:18 PM
To: David McKeegan <david@cleertax.com>, carrie@cleer.tax

Dear David and Carrie,

This letter is in response to your letter dated August 9th, 2024. I am disappointed after our long and amicable business relationship that you choose to end things by fabricating grounds to rescind my ownership in Cleer LLC (the Company), attempt to make a claim that my stake no longer has any value, and furthermore that you have slandered my good reputation within the Dynamite Circle social club that we are all members of.

When I resigned and left the company on February 1st, 2024, I did everything in my power to support the Company and make a smooth transition for you and the team. I had meetings with every single team member to personally ask them to stay with the Company, and assure them that things would work out with the transition. I also reassured many clients who have reached out to me since that time, and I have turned down tens of thousands of dollars worth of business from clients who wanted to leave the Company and work with me personally.

Please tell me how I have acted in any way with "flagrant dishonesty" or done any "intentional acts detrimental to the conduct of the Company's business"? And explain what these "multiple and continuing violations of the Company's Operating Agreement" may be, as I have done everything in my power to help you and the Company be successful in this transition. And this collaborative spirit of assistance was despite your refusal to give me the personal data I need to back up the client work I performed at the Company that I may have personal liability for.

There are, and have been, no grounds to rescind my membership units "for cause."  As you have held this special member meeting in order to repurchase my membership units, without legitimate cause under the terms of the operating agreement, you will now need to pay me a reasonable fair market value for the repurchased units.

In the email I responded to on August 10th, I requested an accounting of the negative $70,000 capital balance, but you have yet to respond to this request. There are zero grounds for claiming I am in $70,000 debt to the Company that you could collect from me. There certainly is a massive inherent value you are missing here. When I obtained my stake, I filed an 83(b) election on June 29th, 2022, paying tax on my membership interest valuation in the amount of $135,286. On May 13th you had offered to buy out my stake for $216,559.85, then on May 14th via WhatsApp you placed a valuation for quick sale on the business of $2.8M, which would place my 12% stake's value at $336,000. PIease explain to me how my value in the company in the last three months lost over $400,000?

I have been very generous and fair throughout this process with the team, clients, and use of my personal property for company purposes. I originally purchased the Cleer.tax domain prior to offering it for use as part of the business partnership, we never discussed this ownership or a transfer until you demanded I hand it over prior to my leaving daily work in the Company. I have continued to allow the Company access to use the Cleer.tax domain I own at no charge, assuming that I would receive my portion of the profit on my 12% stake as a partner in December. Thus the fair payment for my ownership you voted to repurchase should be the $336,000 value we had agreed upon in May, plus my profit share for 2024 through August 8th, which would be in the range of $100,973.64, based on the most recent profit and loss statement I received from you.

Therefore, please pay me $436,973.64 at your earliest convenience to settle the debt owed for my membership units and profit share estimate through the date you voted to repurchase my shares. And please make me a reasonable offer for how much you would like to pay in addition to this amount owed to me for my membership units in order to purchase the Cleer.tax domain, if you would like to continue to use this.

Furthermore, I would like you to publicly rescind your disparaging comments made to the Dynamite Circle, or if I am forced to take legal action I will also include a defamation claim for the reputational damage I have incurred from the disparaging comments made to have my membership in the DC revoked based on a "business disagreement with another member".

Sincerely Yours,

Crystal Stranger, JD, EA, NTPI Tax Fellow

**What is an enrolled agent?**
Enrolled agents (EAs) are America's tax experts. EAs are the <u>only</u> federally-licensed tax practitioners who specialize in taxation and also have <u>unlimited</u> rights to represent taxpayers before the Internal Revenue Service.

> On Sat, Aug 10, 2024 at 3:43 PM David McKeegan <david@cleertax.com> wrote:
>
> Crystal,
>
> I am sorry for your loss.
>
> Cheers,
> David Mckeegan, MBA, EA
>
>> On Aug 9, 2024, at 6:37 PM, Crystal Stranger <crystalstranger@gmail.com> wrote:
>>
>> Hi Dave,
>>
>> I don't know where this is coming from all of a sudden. My dad was hospitalized with bladder cancer in May and just passed away two weeks ago. So not only have I not been doing anything nefarious, I haven't been doing anything professionally over this time. Last we talked about me buying the Cleer or you buying me out, but with everything going on I haven't had time to review anything or look into this further. This email seems really out of left field, and this capital account value is outrageous. I will speak to my attorney next week after I finish up resolving all my parents matters and they will be in touch. Wishing you all the best.
>>
>> Sincerely Yours,
>>
>> Crystal Stranger, JD, EA, NTPI Tax Fellow
>>
>> **What is an enrolled agent?**
>> Enrolled agents (EAs) are America's tax experts. EAs are the <u>only</u> federally-licensed tax practitioners who specialize in taxation and also have <u>unlimited</u> rights to represent taxpayers before the Internal Revenue Service.
>>
>>> On Fri, Aug 9, 2024 at 1:48 PM David McKeegan <david@cleertax.com> wrote:
>>> Dear Crystal,
>>>
>>> Pursuant to Section 6.5(ii)[2] and [3] of Cleer LLC's Operating Agreement—through a member vote, as prescribed in the Operating Agreement—the Company has voted to repurchase your 12 Units in the Company "for Cause" due to, e.g., (a) your "flagrant dishonesty" (6.5(ii)[2]); (b) your "intentional acts detrimental to the conduct of the Company's business" (6.5(ii)[2]); and (c) your multiple and continuing violations of the Company's Operating Agreement (6.5(ii)[3]).
>>>
>>> Specifically, since you resigned from the Company earlier this year, we have tried to solve this situation with you amicably on multiple occasions, but your continued insistence on acting in bad faith, stealing/withholding company property, and continuing to impermissibly hold the Company's domain name/website in an attempt to force the company into selling to a third-party have prevented any mutually beneficial outcome.

Accordingly, the Company has elected to repurchase your 12 Units "for Cause" pursuant to the Operating Agreement, such that you no longer have any continuing ownership of or equity in the Company.

Moreover, under Section 6.5 of the Operating Agreement, the purchase price for your 12 Units shall be "equal to the credit balance in the Member's Capital Account". Since your capital account currently stands at a deficit of nearly $70,000 (i.e., -$70,000), the Company shall owe you no additional funds for your 12 Units, and the Company further reserves the right to pursue you for the ~$70,000 that you owe the Company to zero out your capital account.

Beyond that, I want to remind you of several obligations you have that survive your previous role as a Member in the Company, pursuant to the Operating Agreement you signed and/or your "Membership Vesting Agreement" that you signed around May 27, 2022.

Specifically, under your Membership Vesting Agreement, you have continuing obligations regarding, without limitation, non-disparagement of the Company (Section 7), confidentiality and trade secrets (Section 8 there and Section 9.4 of the Operating Agreement), non-competition with the Company for 12 months following this e-mail (Section 11 there and Section 9.1 of the Operating Agreement), and non-solicitation of the Company's customers, suppliers, or prospective customers or suppliers for 12 months following this e-mail (Section 12).

Should you breach or violate any of the foregoing, the Company has continuing contractual rights to, e.g., specific performance and injunctions, as well as the right to sue you for damages, which, following a default judgment against you if you choose not to appear in the US, may be used to attach any real property, assets, and bank accounts you possess anywhere in the United States.

Pursuant to the "Notice" requirement in Section 12.7 of the Operating Agreement, we have sent this same message via certified mail to your "last known address", which is 30 N Gould St. Ste 3088, Sheridan, WY 82801, with a copy sent via regular mail to Eric W. Misterovich, Revision Legal, PLLC, 8051 Moorsbridge, Portage, MI 49024; 269-235-9900. We have also sent a copy of the message here, via e-mail, for your convenience.

If you have any questions regarding the above, please contact the Company at:

Cleer LLC
2885 Sanford Avenue, SW14713
Grandville MI 49418

Sincerely,

David McKeegan

Member