UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Cleer LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Crystal Stranger and Optic Tax Inc.,<br><br>　　　　　Defendant. | Civil No. 3:24-CV-01496 (MPS)<br><br><br>March 20, 2025 |

**RECOMMENDED RULING ON OPTIC TAX INC.'S MOTION TO DISMISS**

Pending before the Court is Defendant Optic Tax's second motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).[1] ECF No. 57. For the reasons set forth below, I recommend that Optic Tax, Inc.'s Second Motion to Dismiss be **DENIED**.

**I.     BACKGROUND**

Plaintiff Cleer LLC ("Cleer") brings a fourteen count complaint for injunctive relief and damages against Defendants Crystal Stranger and Optic Tax Inc., alleging, among other things, unlawful acts of its former employee and business partner, Stranger, for breach of non-solicitation and noncompete covenants contained in the Operating Agreement ("OA"), and Membership

---

[1] Oral argument was held on January 30, 2025. During oral argument, Defendants' former counsel clarified that their second motion to dismiss is solely based on personal jurisdiction, under Fed. R. Civ. P. 12(b)(2). ECF No. 127 at 268:14-24.

1

Vesting Agreement ("MVA"), including poaching Cleer's current and prospective clients and employees, and using Cleer's confidential information for the benefit of Optic Tax.[2]

## II. FACTS

The following facts are drawn from Cleer's Amended Complaint, affidavits submitted by the parties, and other submissions on the motion to dismiss, and in this case, which may be considered on a Rule 12(b)(2) motion determining whether this Court has personal jurisdiction over Optic Tax.

### *Cleer, LLC*

In 2016, David and Carrie McKeegan, husband and wife, founded Greenback Business Services ("GBS"), with a focus on helping start-ups and early stage entrepreneurs with tax preparations and filings. ECF No. 55 ¶ 20. Cleer is a global provider of tax preparation and bookkeeping services to more than 5,000 startup, small, and growing domestic and international businesses seeking compliance with the United States tax system. *Id.* ¶ 22. ECF No. 126 at 27:8-15. Cleer engages foreign-based accountants and bookkeepers as independent contractors, that they referred to as "suppliers". ECF No. 126 at 43:10-16. GBS later changed its name to Cleer LLC d/b/a Cleer Tax. ECF No. 55 ¶ 20;. ECF No. 31-1 ¶ 2 (McKeegan Decl.).

---

[2] Specifically, Plaintiff alleges: (1) breach of contract against Stranger (MVA); (2) breach of contract against Stranger (OA); (3) unfair competition against Stranger; (4) tortious interference with existing and prospective business relationships against Stranger and Optic Tax; (5) civil conspiracy against Stranger and Optic Tax; (6) breach of duty of loyalty against Stranger; (7) false designation of origin and unfair competition in violation of the Lanham Act against Stranger and Optic Tax; (8) anticybersquatting in violation of the Lanham Act against Stranger and Optic Tax; (9) violation of the Defend Trade Secrets Act against Stranger and Optic Tax; (10) violation of the Connecticut Uniform Trade Secret Act; (11) Tortious Interference with Contract against Optic Tax; (12) statutory theft against Stranger; (13) conversion against Stranger; and (14) defamation (libel) against Stranger and Optic Tax. Amend. Compl. ECF No. 55.

Cleer is a Wyoming limited liability company. ECF No. 55 ¶ 3. Cleer has two members, David and Carrie McKeegan, who maintain United States residencies in Connecticut and who operate Cleer out of Connecticut when in the United States. *Id.* ¶ 4; Connecticut is the location of Cleer's United States headquarters. *Id.* ¶ 5 (Exs. A and B); ECF No. 85-1 (McKeegan Aff. ¶ 2) and (Ex. A-12/9/2024 invoice addressed to Cleer's Connecticut address).

*Crystal Stranger*

In January 2020, Cleer hired Stranger as a Lead Accountant. ECF No. 55 ¶ 29. At that time, David and Carrie McKeegan, were sole and equal members of Cleer. *Id.* ¶ 30. In May 2022, the McKeegans promoted Stranger and offered her a membership interest in Cleer. *Id.* ¶¶ 35, 39. As an employee, Stranger was tasked with preparing and reviewing tax returns, advising clients, and performing marketing services. *Id.* ¶ 31. Stranger was the top-level reviewer for all of Cleer's tax work; responsible for overseeing and signing off on the work of Cleer's team of Philippines-based accountants for all of Cleer's clients. ECF No. 126 at 30:4-10. In that role, Stranger had direct or indirect contact with all of Cleer's clients, suppliers, and referral partners. ECF No. 126 at 43:17-44:4.

On May 26, 2022, the McKeegans awarded Stranger, an initial 6% membership interest in Cleer. ECF No. 55 ¶ 35. The McKeegans required Stranger, as a new member of Cleer, to execute the OA. *Id.* ¶ 36 (Ex. C). The OA contains a set of restrictive covenants applicable to Stranger in her capacity as a member of Cleer. *Id.* ¶ 37. The OA includes non-disclosure, non-compete, and customer/employee/supplier non-solicit restrictive covenants, as well as protections for technical development and improvements and confidential information. ECF No. 55 ¶ 38 (Ex. C. §§ 9.1 (non-compete clause applies for twelve months following withdrawal for any reason as a member),

3

9.2 (non-solicitation clause applies for twelve months following withdrawal for any reason as a member), 9.3 (technical development and improvement), 9.4 (confidential information)).

On June 2, 2022, Stranger entered into a MVA with Cleer which defined her duties as an employee of Cleer. *Id.* ¶¶ 39-41 (Ex. D). As Chief Operating Officer ("COO") of Cleer, her primary duties included, without limitations: "(i) Overseeing the tax, bookkeeping and CSA team"; "(ii) Steering tax policy and general guidance"; "(iii) Providing tax strategy consultations for clients"; "(iv) Giving webinars and media interviews"; and "(v) Coordinating the development of technology and tools." *Id.* ¶ 40 (Ex. D. § 2 (a)(i-v)); ECF No. 126 at 31:16-18.. The MVA awarded Stranger 6% equity in Cleer upon execution of the agreement, which would vest to 12% on the MVA's first anniversary and 20% on the second anniversary, subject to Stranger's continued employment. *Id.* ¶ 41 (Ex. D § 6). The MVA contains a separate set of restrictive covenants applicable to Stranger in her capacity as a Cleer employee. *Id.* ¶¶ 42, 43, 47 (Ex. D §§ 8 (Confidentiality and Trade Secrets), 9 (Ownership of Intellectual Property), 11 (Non-Compete), 12 (Non-Solicit). Specifically, the MVA contains non-disclosure and client/supplier non-solicit provisions, both of which run by contract from Stranger's last day of employment with Cleer. *Id.* (Ex. D. §§ 11(h), 12). Section 11(h) of the MVA states that the "period of time during which Employee is subject to the Agreement shall be extended for that amount of time Employee is in breach of the Agreement." *Id.* (Ex. D § 11(h)).

The OA further states that Stranger, as a member of Cleer, shall not have any ownership rights to any of the assets of the company. *Id.* (Ex. C ¶ 3.2.4). The MVA required Stranger to return all company property to Cleer upon separation from employment for any reason. *Id.* (Ex. D. § 8(c)). The MVA and OA also contain provisions concerning the assignment of intellectual property

4

rights developed by Stranger during her employment and membership at Cleer. *Id.* (Ex. C §9.3; Ex. D § 9(a-c)).

During her employment at Cleer, Stranger was provided with a company laptop, client lists which included client contact information, and other confidential information. *Id.* ¶ 32. Cleer maintains the secrecy of its client lists and does not share those lists with the public or any competitors. *Id.* ¶ 33. Cleer maintains a competitive advantage from its client lists and uses its client lists to create new business, drive referrals, and maintain current clients. *Id.* ¶ 34.

### *Optic Tax Inc.*

Optic Tax is a Delaware corporation with its United States headquarters located in Wyoming. ECF No. 55 ¶ 6. Stranger maintains an agent for purposes of service of process at 30 North Gould Street, Suite 3088, Sheridan, Wyoming 82801, and Stranger was served with a copy of the original Complaint and Summons at this address. *Id.* ¶ 11. Stranger is the sole shareholder, CEO, and President of Optic Tax since February 1, 2024. *Id.* ¶¶ 12; 65, 66 (9/6/2024-email from "Cleer.tax" signed by "Crystal Stranger Founder and CEO Optic Tax Inc." at 30 N. Gould St. Ste3088, Sheriden WY82801"); Pl. Ex. 150 (response to Interrog. No. 2). The Optic Tax website identifies Crystal Stranger as the "Senior Tax Director and CEO of OpticTax.com" and "visionary behind Optic Tax." https://optictax.com/press/ (last visited Mar.18, 2025).

### *Optic Tax-Jurisdictional Allegations in the Amended Complaint*

Plaintiff's allegations of personal jurisdiction as to Optic Tax contained in the Amended Complaint are as follows:

> This Court has personal jurisdiction over Optic Tax because it committed torts in Connecticut by tortiously interfering with the Membership Vesting Agreement ("MVA") between Cleer and Stranger that has a Connecticut forum clause, its wrongful conduct inflicted damage on Cleer and its members in Connecticut, and Stranger (who agreed to jurisdiction in Connecticut) is directing the wrongful acts of Optic Tax to cause harm to Cleer in Connecticut.

ECF No. 55 ¶ 16.

> The Court also has personal jurisdiction over Optic Tax because, upon information and belief, Optic Tax is soliciting Cleer's clients located in Connecticut using Cleer's confidential and trade secret list that has proprietary information pertaining to Connecticut clients.

*Id.* ¶ 17.

> Optic Tax further conducts or attempts to conduct business throughout the United States (including Connecticut), and has filed or will file income tax returns on behalf of clients that conduct business in Connecticut.

*Id.* ¶ 18.

### *E-Mail Solicitation*

On January 22, 2024, Stranger registered the domain "OpticTax.com" during her employment with Cleer. *Id.* ¶¶ 48, 56. She resigned from Cleer on February 1, 2024. *Id.* ¶ 57. Plaintiff initially believed that Optic Tax provided only non-competing services including consulting and advising. ECF No. 55 ¶ 60. Beginning September 1, 2024, Optic Tax began providing tax preparation, bookkeeping, and consulting services to startup, small, and growing domestic and international businesses seeking individualized solutions for compliance with the United States tax system—the exact services Cleer provides—making it a direct competitor of Cleer. ECF No. 55.¶ 61.

On or about September 1, 2024, Stranger redirected the Cleer.tax website and emails to Optic Tax. ECF No. 126 at 119:12-14; ECF No. 55 ¶ 69. Defendants forwarded emails sent to XXX@cleer.tax addresses to Defendants' new email addresses with Optic Tax. In other words, Defendants intercepted emails from clients intended for Cleer and redirected those communications to Optic Tax for purposes of taking business from Cleer. ECF No. 55 ¶ 71 (email from Yancy Gonzalez at yancy@optictax.com "You've contacted the cleer tax domain, which is owned by a co-founder and former partner of Cleer, who is now the founder and CEO of Optic

Tax Crystal Stranger. Due to professional differences, Crystal established Optic Tax, along with much of the original team, to offer exceptional services to clients.").

Stranger was also intercepting and soliciting Cleer's clients that were intending to contact Cleer through the Cleer.tax domain, offering to provide them competing services through Optic Tax. Pl. Hrg. Exs. 136, 153-54 (Prelim. Inj. Hrg.). After Cleer filed the Complaint in this action on September 18, 2024, a client informed David McKeegan that they had received an email from Optic Tax on September 30, 2024. ECF No. 31-1 (McKeegan Decl. ¶ 12; Ex. H. 9/30/2024 Optic Tax client solicitation from hello@optictax.com). It appeared that Stranger sent her solicitation email to a "dummy" Cleer email account Cleer used only for testing communications. The only way Stanger could have known that dummy email address is if she had access to Cleer's client list. *Id.* Stranger testified at her January 13, 2025, deposition that she obtained a list of 226 Cleer clients and solicited *all* of them by blast emails using the Cleer.tax email domain. ECF No. 100, Ex. A (Stranger 1/13/2025 Depo. Tr. 178:18-21; 195:5-7). Stranger further testified that her use of the Cleer.tax email domain caused confusion among Cleer's clients. *Id.* (Stranger 1/13/2025 Depo. Tr. 178:18-179:3). During jurisdictional discovery, Cleer also learned that Optic Tax sent email solicitations to at least two Cleer clients headquartered in Connecticut.[3] ECF No. 100 at 3.

***Cleer's Connecticut Presence***

Cleer owner, Founder, President and Chief Executive Officer David McKeegan testified that Cleer is headquartered, and has its nerve center, in Connecticut when he is located in the United States. ECF No. 85-1 (McKeegan Decl.) Ex. 1 ¶ 2; Ex. A (12/8/2024 Invoice to Cleer at

---

[3]   Cleer did not identify these two clients by name as they remain subject to Defendants' attorneys' eyes only designation. Cleer offered to submit the identities for *in camera* inspection or provide such information at the Court's request. Defendants did not challenge Plaintiff's representation.

Ridgefield, Connecticut address). Stranger knew of Cleer's Connecticut presence. ECF No. 100 at 2 (4/14/2022-email from Stranger to David McKeegan seeking confirmation of Connecticut "official" residency); ECF No. 55 Exs. A and B (listing Ridgefield Connecticut address) (Ex. A-U.S. Patent and Trademark Office Registration of Cleer 4/9/2024; Ex. B-Trademark/Service Mark Application for Cleer.tax 8/11/2023); ECF No. 85-1 Ex. 1 ¶ 2 (McKeegan Decl.).

### III. LEGAL STANDARD

#### A. Personal Jurisdiction-Federal Rule of Civil Procedure 12(b)(2)

In diversity cases within the Second Circuit, "personal jurisdiction is determined by the law of the state in which the district court sits," which in this case is Connecticut. *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The party asserting jurisdiction, Cleer in this case, bears the burden of showing that the court has jurisdiction over the defendant when a motion to dismiss is brought under Rule 12(b)(2). *Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001). "[T]he nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). "After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Id.* "Where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker,* 261 F.3d at 208 (citations and alterations omitted); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). Thus, "'[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie*

showing is sufficient notwithstanding the contrary presentation by the moving party.'" *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam)).

**IV.     DISCUSSION**

In response to Optic Tax's challenge to personal jurisdiction, Cleer raises two arguments. Plaintiff first argues that this Court has personal jurisdiction over Optic Tax in Connecticut as the alter ego of Defendant Crystal Stranger. ECF No. 77-1 at 2-8. Plaintiff also argues that Optic Tax's conduct satisfies Connecticut's long-arm statute, and the Court's exercise of personal jurisdiction comports with notions of due process. *Id.* 8-20. For the reasons that follow, the Court finds that Cleer has made a *prima facie* showing of personal jurisdiction under the alter ego theory.

### 1.     *Personal Jurisdiction Under Alter-Ego Theory.*

Cleer argues that the Court should disregard the corporate form and pierce the corporate veil of Optic Tax to find that there is personal jurisdiction on the basis that Optic Tax is the "alter ego" or a mere instrumentality of Crystal Stranger. It argues that "[a]ll of Optic Tax's illegal actions are being orchestrated by Stranger-founder and CEO of Optic Tax-for the benefit of Optic Tax." ECF No. 77 at 1. The parties do not dispute that Stranger is subject to this Court's jurisdiction. The Court previously found that Defendant Stranger consented to personal jurisdiction through the forum selection clause in the MVA. ECF No. 55-5 at 12 (MVA ¶ 16); ECF Nos. 61, 63; *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."). Cleer contends that Stranger's consent to personal jurisdiction confers personal jurisdiction over Optic Tax as Stranger's alter ego. *See S. New England Tel. Co. v. Global Naps Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) ("It is

9

[]well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process."). The Court need only determine whether Cleer made sufficiently supported allegations that, if proven true, would establish that Optic Tax is the alter ego of the individual Defendant Stranger, who the parties do not dispute is subject to this Court's jurisdiction. *Id.*

As a threshold matter, there is a question about the choice of law for the determination of whether to pierce the corporate veil for jurisdictional purposes. Optic Tax argues that when evaluating personal jurisdiction under an alter ego theory, Connecticut courts apply the law of the controlled entity's state of incorporation-Delaware in this case. *See, e.g., Graduation Sols., LLC v. Acadima, LLC*, No. 3:17-CV-01342 (VLB), 2018 WL 3637479, at *5 (D. Conn. July 31, 2018) ("Connecticut choice of law principles generally apply the law of the state of incorporation in determining whether two entities are alter egos of each other."). The parties agree on the application of law of the state of incorporation. ECF No. 77 at 4; ECF No. 127 at 273:22-25; *see NovaFund Advisors, LLC v. Capitala Grp., LLC*, No. 3:18-CV-1023 (MPS), 2021 WL 3568892, at *8 (D. Conn. Aug. 11, 2021)(citing cases applying the law of the state of incorporation). Optic Tax is incorporated in Delaware, thus, the Court applies Delaware law to this analysis. ECF No. 55 ¶ 6; ECF No. 65 ¶ 6.

Under Delaware law, a corporate alter ego theory can serve as the basis to pierce the corporate veil and assert personal jurisdiction. *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ch. 1992) ("[A] court can pierce the corporate veil of an entity where there is fraud *or* where a subsidiary is in fact a mere instrumentality or alter ego of its owner.") (emphasis added). "The alter-ego claim thus turns on the facts of the owner's operation of the corporation and its relationship to the alleged victim." *Kertesz v. Korn*, 698 F.3d 89, 91 (2d Cir. 2012) (examining Delaware law). "To prevail on an alter ego claim under Delaware law, a plaintiff must show (1)

10

that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness . . . [is] present." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (quoting *Harper v. Delaware Valley Broadcasters, Inc.,* 743 F. Supp. 1076, 1085 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991) (citing cases)). "[U]nder Delaware law, the alter ego theory of liability does not require any showing of fraud." *Id.; New York Wheel Owner LLC v. Mammoet Holding B.V.,* 481 F. Supp. 3d 216, 230 (S.D.N.Y. 2020) *(*observing that the "Second Circuit has explained that, under Delaware law, 'a plaintiff need not prove that there was actual fraud but must show a mingling of the operations of the entity and its owner plus an overall element of injustice or unfairness.'") (quoting *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (applying Delaware law)).

"A number of courts in this Circuit have concluded that the standard for veil piercing is 'relaxed where the alter ego theory is used not to impose liability, but merely to establish jurisdiction.'" *Rudersdal, EOOD v. Harris*, No. 18-cv-11072 (GHW)(RWL), 2020 WL 9815180, at *11 (S.D.N.Y. Aug. 18, 2020), *report and recommendation adopted in part, rejected in part sub nom., Rudersdal, EEOD v. Harris*, No. 1:18-CV-11072-GHW, 2020 WL 5836517 (S.D.N.Y. Sept. 30, 2020) (quoting *In re Platinum and Paladium Antitrust Litigation*, No. 1:14-cv-9392 (GHW), 2017 WL 1169626, at *47 (S.D.N.Y. Mar. 28, 2017) and collecting cases); *D. Klein & Son, Inc. v. Good Decision, Ltd*, 174 F. App'x 195, 196 (2d Cir. 2005) ("the exercise of personal jurisdiction over an alleged alter ego . . . requires application of a 'less onerous standard' than that necessary to pierce the corporate veil for liability purposes under New York law") (citations omitted); *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09-cv-6148 (VM)(MHD), 2012 WL 12932049, at *14 (S.D.N.Y. July 17, 2012), *report and recommendation adopted sub nom. Cardell Fin. Corp. v. Suchodolksi Assocs., Inc.,* 896 F. Supp. 2d 320 (S.D.N.Y. 2012) ("The standard for piercing the

corporate veil for purposes of personal jurisdiction, however, is a less stringent one.") (citation and internal quotation marks omitted).

### Single Economic Entity

"To satisfy the first factor, Plaintiff must allege more than 'mere domination and control of the subsidiary by the parent corporation.'" *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 402 (S.D.N.Y. 2013) (quoting *In re Sunbeam Corp. v. Morgan Stanley & Co. Inc.,* 284 B.R. 355, 366 (Bankr. S.D.N.Y. 2002) (quoting *Outokumpu Eng'g Enters., Inc. v. Kvaerner Enviropower, Inc.,* 685 A.2d 724, 729 (Del. Super. Ct.1996)). Among the factors to be considered in determining whether Defendant Optic Tax and the individual Defendant Stranger operated as a "single economic entity" are:

> [W]hether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a façade for the dominant shareholder.

*Fletcher,* 68 F.3d at 1458 (quotation marks and citation omitted). "No one factor is determinative, but rather the key inquiry is whether the corporation is being used by the alleged dominating entity to advance its own personal interests as oppose[d] to furthering the corporate ends." *Cardell Fin. Corp.,* 2012 WL 12932049, at *15; *E. Mins. & Chemicals Co. v. Mahan*, 225 F.3d 330, 333 (3d Cir. 2000) (The alter ego theory comes into play in piercing the corporate veil when one seeks to hold liable an individual owner who controls the corporation.); *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988) ("[N]o single factor could justify a decision to disregard the corporate entity, but that some combination of them was required, and that an overall element of injustice or unfairness must always be present, as well.").

Finally, while it is not sufficient, at the pleading stage, to make conclusory allegations of control . . . nevertheless, setting forth some examples of alleged domination may provide sufficiently specific factual allegations to support an alter ego claim and result in denial of the motion to dismiss. *In re Sunbeam Corp.,* 284 B.R. at 366 (citing *Union Carbide v. Montell N.V.,* 944 F. Supp. at 119, 1144-5 (S.D.N.Y. 1996)); *Geyer,* 621 A.2d at 793 (finding that conclusory averments that subsidiary acted as a mere instrumentality or alter ego were supported by specific allegations).

The uncontroverted allegations in the Amended Complaint, supported by declarations, deposition testimony and other evidence show that Optic Tax "simply functioned as a façade for the dominant shareholder" and/or corporate officer, Stranger. Cleer alleges that Stranger is the sole shareholder/owner, CEO, and President of Optic Tax. ECF No. 55 ¶ 12. Specifically, Stanger testified that the Optic Tax board consists of her and her father. ECF No. 126 at 177:12-13. She stated that she and her father co-founded Optic Tax with an investment of $100,000 from her father. *Id* at 176:20-25. Stranger testified that she is the CEO of Optic Tax and considers herself the new face of the company. *Id.* at 177:1-3. Optic Tax offered no contrary evidence to suggest that corporate formalities were observed or that the company took any steps so that Stranger and/or Optic Tax's employees and independent contractors avoided violating the MVA and OA between Stranger and Cleer, or that any other officer or shareholder of Optic Tax had decision making responsibilities.[4]

---

[4] The Court notes that Stranger provided an affidavit stating that she is not a shareholder of Optic Tax, and is not the sole decision maker because the company has a team of 23 members doing the bulk of the work. ECF No. 79-2 (Stranger Aff.). Plaintiff responds that "Optic Tax's website prominently promotes 'Crystal Stranger, [as] the visionary force and owner of Optic Tax" [and] "[i]t is impossible to reconcile those two conflicting statements." ECF No. 85 at 1. Stranger testified at the preliminary injunction hearing that she is the President and CEO of Optic Tax, a co-founder of the company with her father and she sits on the board of directors with her father. ECF

Stranger testified that as an employee of Cleer she had a fiduciary duty to the company including a duty of loyalty and duty to act in the best interests of the company. *Id.* at 178:16-24. Plaintiff alleges, and the uncontroverted evidence shows, that Stranger directed Optic Tax, its employees and independent contractors, to act contrary to its own interests to facilitate the violation of Stranger's obligations under the MVA and OA. *Geyer,* 621 A.2d at 793 (finding allegations in corporate creditor's complaint, that director had treated assets of corporation as if they were his own by causing corporation to cancel valuable management agreements that provided steady stream of income to corporation in return for consideration paid personally to director, were sufficient to state claim against director on alter ego theory under Delaware law.); *E. Mins. & Chemicals Co.*, 225 F.3d at 334 (finding piercing of corporate veil appropriate where corporate officer "continuously and unabashedly used [the corporation] and other affiliated entities as the means for the achievement of personal ends."). At this stage of the pleadings, the Court finds

---

No. 126 at 176:13-177:13. Where, as here, "parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft*, 989 F.2d at 580.

The Court also notes that Judge Shea entered the following order,

> Optic Tax (and its co-defendant) shall forthwith respond, as a party in this action, to any discovery requests related to its formation, geographical ties, corporate structure, and ownership and control of or by other persons. It shall in the same manner respond to discovery requests relating to its employees and ownership or control of any of the intellectual property or other assets described in the operative complain, including websites, domain names, and the like-including when that ownership or control began. It shall also respond immediately to any discovery requests related to the "alter-ego" theory articulated in the plaintiffs' briefs on the jurisdictional issue. All of this is reasonably characterized as jurisdictional discovery in this case.

ECF No. 86.

that Plaintiff has established that the Optic Tax simply functioned as a façade for the dominant shareholder/owner/CEO Crystal Stranger and at the sole direction of Stranger.

### *An Overall Element of Injustice or Unfairness is Present*

Plaintiff has established the presence of injustice and unfairness. Cleer argues that since the formation of Optic Tax, Stranger steered the company

> in a direction of boundless unfair competition, injustice, fraud, and wrongdoing, including tortiously interfering with Cleer's contracts and business relationships, hijacking and redirecting Cleer's website domain to Optic Tax, sending solicitation emails to Cleer's contact list using its own Cleer.tax email domain for the benefit of Optic Tax, stealing Cleer's trade secret client list to solicit clients for Optic Tax and convincing them to upload their Cleer client contact information to the Optic Tax database, and defaming Cleer and its members to redirect clients to Optic Tax.

ECF No. 55 ¶¶ 56-73. Plaintiff argues that Stranger used Optic Tax to solicit Cleer's clients and defame Cleer and the McKeegans, the harmful effect of which Cleer and the McKeegans suffered in Connecticut-enough for this Court to exercise personal jurisdiction over Optic Tax. ECF No. 100 at 2.

As previously discussed, the standard for piercing the corporate veil is relaxed where the alter ego theory is used not to impose liability, but merely to establish personal jurisdiction. Plaintiff has alleged and submitted evidence to support the allegations that: (1) Stranger directed Optic Tax employees and/or independent contractors to violate Stranger's obligations under the MVA and OA for the benefit of Optic Tax; (2) induced Cleer's employees to violate their Non-Disclosure Agreements and/or Independent Contractor Agreements; (3) solicited and hired nearly every employee who worked at Cleer; and (4) utilized Cleer's confidential information for the benefit of Optic Tax. The record establishes that, at the direction of Stranger, Optic Tax employees used Cleer.com to solicit clients, causing confusion and/or used Cleer's confidential client e-mails and pricing information to lure Cleer's clients to Optic Tax and forwarded emails sent to

XXX@cleer.tax addresses to Defendants' new email addresses with Optic Tax. Stranger directed Optic Tax employees to utilize Cleer's confidential information creating a list of 226 clients belonging to Cleer and merged it into a roughly 14,000 mailing list for the purposes of soliciting clients-5,448 of which overlap with Cleer's mailing prospective and current client and referral list. Moreover, Cleer has shown that after the entry of the TRO on October 22, 2024, against Stranger, Optic Tax continued to send blast emails containing Optic Tax branding, direct links to Optic Tax's website offering services and pricing information, and invitations to contact Optic Tax with any questions. Cleer "need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used." *NetJets Aviation, Inc.*, 537 F.3d at 177 (citing *Sonne v. Sacks,* No. CIV.A. 4416, 1979 WL 178497, at *2 (Del. Ch. June 12, 1979) (courts "look behind the corporate curtain" generally "where the facts indicate that the corporate entity has been or is being used by those in control of it to perpetrate a fraud" or to "promote injustice" (internal quotation marks omitted)); *Oliver v. Boston University,* No. 16570, 2000 WL 1091480, at *9, *12 (Del. Ch. Jul.18, 2000) (holding that a Massachusetts LLC, created solely to serve the interests of its owner and completely dominated by the owner, could be fairly characterized as the alter ego of its owner).

On this record the Court finds that Cleer plausibly alleged facts and provided evidence showing that Optic Tax is the alter ego of Crystal Stranger sufficient to support personal jurisdiction over Optic Tax. *Kertesz,* 698 F.3d at 91 ("The alter-ego claim thus turns on the facts of the owner's operation of the corporation and its relationship to the alleged victim.").

## V. CONCLUSION

For the reasons stated above, I recommend that Optic Tax, Inc.'s Second Motion to Dismiss **(ECF No. 57)** be **DENIED**.

This is a recommended ruling by a magistrate judge. *See* Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen days of being served with this order. *See* Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; D. Conn. L. Civ. R. 72.2(a); *Impala v. United States Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order) (failure to file timely objection to magistrate judge's recommended ruling precluded further appeal to Second Circuit); *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam).

                                                    */s/ Maria E. Garcia, USMJ*
                                                      Hon. Maria E. Garcia
                                          United States Magistrate Judge