**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **CLEER LLC (F/K/A GREENBACK BUSINESS SERVICES LLC) D/B/A CLEER TAX,** | Case No. 3:24-cv-01496-MPS |
| | Judge Michael P. Shea |
| | Magistrate Judge Maria E. Garcia |
| Plaintiff, | |
| v. | |
| **CRYSTAL STRANGER, et al.,** | **PLAINTIFF'S SECOND MOTION FOR IMMEDIATE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF** |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 65, Plaintiff Cleer LLC (f/k/a Greenback Business Services LLC) d/b/a Cleer Tax ("Cleer") moves for entry of an immediate Temporary Restraining Order ("TRO") and Preliminary Injunction against Defendants Crystal Stranger ("Stranger") and Optic Tax, Inc. ("Optic Tax").

For the reasons set forth in the accompanying Memorandum of Law and the Verified Complaint, Defendants Stranger and Optic Tax are continuing to violate restrictive covenants through their affiliation with a new company, Optic Tax Global, Inc. ("Optic Tax Global"). Optic Tax Global was formed to end-run Judge Garcia's Recommended Ruling on Cleer's Motion for Preliminary Injunction and Stranger's contractual obligations of non-competition, non-solicitation, and non-disclosure. Cleer is likely to succeed on the merits of its claims, Cleer will suffer irreparable injury if Stranger, Optic Tax, and Optic Tax Global continue to engage in any of the conduct the requested injunction seeks to enjoin, and Cleer has no adequate remedy at law.

Thus, Cleer respectfully requests that the Court restrain and enjoin Stranger and Optic Tax, their agents, and all entities and persons acting in concert with them (including but not limited to Optic Tax Global) from continuing to violate Stranger's restrictive covenants through operation of

Optic Tax Global that was formed for the sole purpose of circumventing the Recommended

Ruling.  Cleer further requests that the Court toll the enforcement of the non-competition covenant

during the time of Defendants' non-compliance.

Respectfully submitted,

*/s/ George B. Musekamp*
George B. Musekamp (PHV)
Evan H. Cohn (PHV)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Tel:  (513) 381-2838
Fax: (513) 381-0205
gmusekamp@taftlaw.com
ecohn@taftlaw.com

Michael S. O'Malley, Esq. (CT31784)
Ogletree, Deakins, Nash,
Smoak & Stewart P.C.
281 Tresser Boulevard
Stamford, CT 06901
Tel: (203) 969-3109
Fax: (203) 969-3150
Michael.O'Malley@ogletree.com

*Attorneys for Plaintiff*

## <u>MEMORANDUM OF LAW IN SUPPORT</u>

## <u>INTRODUCTION</u>

This case has been plagued by Crystal Stranger's chronic defiance and gamesmanship. On October 22, 2024, this Court entered a Temporary Restraining Order ("TRO") enjoining Stranger and all person acting in concert with her from soliciting or working with any "customer, supplier, or prospective customer or supplier of Cleer LLC." [Doc. 34, p. 4]. On March 20, 2025, following two days of testimony and extensive briefing, Judge Garcia entered a Recommended Ruling ("Recommended Ruling") Granting Cleer's Motion for Preliminary Injunction. [Doc. 182]. While that Recommended Ruling awaits this Court's approval, the Recommended Ruling found, *inter alia,* that the non-competition restrictive covenant of the Operating Agreement enforceable, that Ms. Stranger had violated the non-competition restrictive covenant, and specifically enjoined Ms. Stranger from "competing against Cleer until August 9, 2025, including without limitation by offering tax preparation and bookkeeping services." [*Id.* at p. 34].

Shortly thereafter, on May 30, 2025, Stranger filed an appellate brief in the Second Circuit, wherein she represented that she "was forced to cease operations of Optic Tax on April 16, 2025" because of the Recommended Ruling. [Appellate Case No. 25-530, Doc. 31.1, p. 19]. On June 12, 2025, Stranger similarly represented to this Court that "Optic Tax has ceased business operations . . . ." [Doc. 204, p. 2].

Optic Tax has not ceased business operations. Nor has it attempted to comply with the Recommended Ruling or Stranger's contractual obligations. To the contrary, Optictax.com is still an active website and Stranger/Optic Tax are still competing against Cleer by offering tax preparation and booking services. In an attempt to dodge Judge Garcia's Recommended Ruling, while simultaneously claiming Strange was complying with her non-compete, Stranger and Optic

Tax simply spun-off a new company, Optic Tax Global, Inc. ("Optic Tax Global"), with a new website, Optictaxglobal.com.

Optic Tax Global not only provides tax preparation and bookkeeping services in direct competition with Cleer, but it ***is directly linked to OpticTax.com's client portal – clicking on "Portal Login" on Optic Tax's website takes clients directly to Optic Tax Global's client portal.*** Despite Stranger's attempt to hide her affiliation with Optic Tax Global and feign the closure of Optic Tax, there can be no dispute that Stranger and Optic Tax are still competing and likely still soliciting and working with Cleer's clients.

It is unclear what must happen to require Stranger to comply with instructions from this Court and her contractual obligations. She has committed multiple violations of the Court's Temporary Restraining Order that are the subject of two different motions for contempt. In fact, Judge Garcia found in her Recommended Ruling that Stranger violated this Court's TRO. [Doc. 182, p. 16] ("On October 22, 2024, Chief Judge Shea issued a Temporary Restraining Order ("TRO"), *supra* at 2. Despite this order, the record shows that Stranger violated the TRO on several occasions."). Stranger has made misrepresentations regarding her compliance with the Recommended Ruling to the Second Circuit and this Court. She has created a spin-off company to end-run the Court's Recommended Ruling and her contractual obligations. She simply refuses to abide by her restrictive covenants even when faced with court orders and enforceable contracts.

Accordingly, Cleer respectfully requests a temporary restraining order and preliminary injunction enjoining Stranger and Optic Tax from offering or providing tax preparation or bookkeeping services through any company, including without limitation Optic Tax Global, to stop Optic Tax Global from soliciting, working with, or accepting business from any of Cleer's clients, to toll the enforcement of the non-competition and non-solicitation covenants during the

time of Stranger's non-compliance, and take further action it deems necessary to require Defendants' compliance.

## FACTUAL BACKGROUND

### I.      Cleer's Business.

David McKeegan founded Greenback Business Services (currently, Cleer) in 2016 to help start-ups and early stage entrepreneurs with tax preparations and filings. (Am. Compl. ¶ 20). Cleer experienced meteoric growth and in 2022 landed on the Inc. 5000 list of fastest growing private companies in the United States. (*Id.* ¶ 21). Cleer now has over 50 employees worldwide and provides tax preparing, bookkeeping, and consultation services to more than 5,000 domestic and international businesses seeking individualized solutions for compliance with the United States tax system. (*Id.* ¶ 22).

### II.     Cleer, Stranger, and the MVA.

Cleer hired Stranger as Lead Accountant in January 2020. (*Id.* ¶ 29). As Lead Accountant, Stranger prepared and reviewed tax returns, advised clients, and performed marketing services. (*Id.* ¶ 31). David and his wife Carrie McKeegan were sole and equal members of Cleer at that time. (*Id.* ¶ 30).

In May 2022, the McKeegans promoted Stranger to International Tax Director and General Manager of Cleer. (*Id.* ¶ 29). In that role, Stranger oversaw the tax, bookkeeping, and CSA Team; steering tax policy and general guidance; providing tax strategy consultations for clients; giving webinars and media interviews; and coordinating the development of technology and tools. (*Id.* ¶ 30). At that time, the McKeegans also presented Stranger with the MVA which provides:

> a.      During the time that Employee is employed with the Company, and for a period of twelve (12) months following the termination of Employee's employment for any reason (whether such termination is voluntary or involuntary), Employee agrees that, in the absence of

prior written approval by a duly-authorized officer of Company, Employee will not:

    i.    Directly or indirectly contact, solicit, accept business from, or communicate the fact or circumstances of Employee's resignation from or termination of employment with Company to any of Company's customers or suppliers, or prospective customers or suppliers, with whom Employee had direct or indirect contact or solicited on behalf of Company in the two (2) years prior to employee's termination, for the purpose of selling or soliciting products or services of Company; and

    ii.    directly or indirectly contact, solicit, recruit or hire any employees of the Company with whom Employee worked or had contact for the purpose of causing, inviting, or encouraging any such employee to alter or terminate his or her employment or business relationship with Company.

(*Id.* ¶ 47).[1]

## III.    <u>Stranger Signed Cleer's Operating Agreement.</u>

As a new Member of Cleer, the McKeegans required her to execute the Operating Agreement. (*Id.* ¶ 36). The Operating Agreement imposed additional restrictive covenants on the McKeegans and Stranger in their capacities as Members. (*Id.* ¶¶ 37–38). By signing the Operating Agreement, Stranger agreed to and is bound by the following provisions:

    9.1    The Members hereby acknowledge that they are familiar and will help develop the Company's trade secrets and other confidential information. The Members agree that while a Member of the Company and for twelve (12) months following the withdrawal for any reason as a Member, he shall not, directly or indirectly, either for himself or for any other individual own any interest in, manage, control, consult with, render services for or participate in (whether as an officer, director, employee, partner, agent, representative, or otherwise) or in any other manner engage anywhere in the Protected Areas in any business competitive with business of the Company or any affiliated entity (the "Protected Business"). The term "Protected Territories" shall mean the entirety of the United States of America. The Members agree that the geographic restrictions set forth above

---

[1] Expedited discovery is requested to determine the extent to which Stranger has used Optic Tax Global to solicit or accept business from any clients of Cleer.

are reasonable and necessary to protect the goodwill of the Company's business or any affiliated entity.

9.2    Further, so long as a Member owns Membership Interest in the Company and for a period equal to twelve (12) months following withdrawal for any reason as a Member, the Member shall not directly, or indirectly through another person or entity, (i) induce or attempt to induce any employee of the Company or any affiliated entity to leave the employ of the Company or any affiliated entity, or in any way interfere with the relationship between the Company and any employee thereof; (ii) hire any person who was an employee of the Company or any affiliated entity at any time during the six (6) month period immediately prior to the date on which such hiring would take place (it being conclusively presumed by the Parties so as to avoid any disputes under this Paragraph that any such hiring within such six (6) month period is in violation of clause (i) above), or (iii) call on, solicit, or service any customer, supplier, licensee, licensor or other business relationship of the Company or any affiliated entity.

. . .

9.5    <u>Enforcement</u>.

(a) If, at the time of enforcement of the covenants contained above ("Protective Covenants"), a court shall hold that the duration, scope or area restrictions stated are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope or area reasonable under such circumstances shall be substituted for the stated duration, scope or area and that the court shall be allowed to revise the Protective Covenants to cover the maximum duration, scope and area permitted by law. Member has consulted with legal counsel regarding the Protective Covenants and based on such consultation has determined and agrees that the Protective Covenants are reasonable in terms of duration, scope and area restrictions and are necessary to protect the goodwill of the Company's businesses and agrees not to challenge the validity or enforceability of the Protective Covenants.

(b) If a Member breaches, or threatens to commit a breach of any of the Protective Covenants, the Company and its affiliates shall have the following rights and remedies, each of which rights and remedies shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available to the Company or its affiliates at law or in equity:

(i) the right and remedy to have the Protective Covenants specifically enforced by any court or competent jurisdiction, it being agreed that any breach or threatened breach of the Protective Covenants would cause irreparable injury to the Company and its affiliates and that money damages would not provide an adequate remedy to the Company or its affiliates; and

(ii) the right and remedy to require Employee to account for and pay over to the Company or its affiliates any profits, monies or other benefits derived or received by Employee as the result of any transactions constituting a breach of the Protective Covenants.

The invalidity or unenforceability of any provision hereby of, or parts hereof shall in no way effect the validity or enforceability of any other provision or parts hereof. The parties agree that the part or parts of this Agreement to be held invalid or unenforceable shall be deemed to have been modified to provide the maximum protective covenant possible by law.

(*Id.* ¶ 38).

## IV.    **Cleer Terminated Stranger's Units For Cause And Stranger's Withdrawal**

On August 8, 2024, because Stranger refused to return Cleer.tax and a company laptop with client information on it to Cleer, Cleer Members voted to terminate Stranger's 12 Cleer Units for cause and repurchase them under the Operating Agreement because of her "flagrant dishonesty," "intentional acts detrimental to the conduct of the Company's business," and "multiple and continuing violations of the Company's Operating Agreement." (*Id.* ¶ 75). As of August 2024, Stranger had only vested a 12% membership interest in Cleer because she was employed for more than two but less than three years from when she signed the MVA when her Cleer employment ended. (*Id.* ¶ 74).

Under the Operating Agreement, when a Member's Units are terminated for cause and repurchased, "[t]he purchase price shall be equal to the credit balance in the Member's Capital

Account . . . ." (*Id.* ¶ 77).  When Cleer terminated Stranger's 12 Units for cause and repurchased them, Stranger's Member Capital Account for Cleer was -$70,743.  (*Id.* ¶ 78).

Important here, the covenants not to compete and non-solicitation apply for twelve (12) months following withdrawal for any reason as a Member.  "Thus, the twelve month period expires on August 9, 2025." (Recommended Ruling [Doc. 182], n. 8).

## V.    **Cleer Obtains a Temporary Restraining Order and Recommended Ruling Granting Its Motion for Preliminary Injunction.**

On September 24, 2024, Cleer moved for a TRO and Preliminary Injunction.  [Doc. 13]. On October 22, 2024, the Court entered a TRO enforcing the MVA's nonsolicit provision against Stranger.  [Doc. 34].  The TRO specifically restrained and enjoined Stranger from:

1.    soliciting or otherwise contacting for purposes of discussing employment opportunities any person who is or was employed by Cleer LLC or any of its predecessors;

2.    soliciting or otherwise contacting for purposes of developing business, entering into an agreement, or proposing or making any sale any person who is or was a customer, supplier, or prospective customer or supplier of Cleer LLC.

[Doc. 34, p. 4].

On March 20, 2025, the Court entered its Recommended Ruling granting Cleer's Motion for Preliminary Injunction enforcing the nonsolicit and noncompete provisions of the Operating Agreement and MVA against Stranger and Optic Tax.  [Doc. 182].  The recommended Preliminary Injunction specifically restrains and enjoins Stranger and Optic Tax from:

1.    Pursuant to the OA, competing against Cleer until August 9, 2025, including without limitation by offering tax preparation and bookkeeping services;

2.    Pursuant to the OA and MVA, for a period of one year from entry of this Recommended Ruling and Order, soliciting, hiring, or otherwise contacting for purposes of discussing employment or contractor opportunities any person who is or was working for Cleer LLC or any of its predecessors in any capacity;

3.      Pursuant to the OA and MVA, for a period of one year from entry of this Recommended Ruling and Order: (i) soliciting, (ii) accepting business from, (iii) continuing to provide services for, or (iv) otherwise contacting for purposes of developing business, entering into an agreement, or proposing or making any sale any person who is or was a customer, supplier, or prospective customer or supplier of Cleer LLC. The parties shall confer in a good faith effort to enable Stranger and other persons working with her to contact customers and supplier with whom Stranger had no direct or indirect contact or solicitation on behalf of Cleer LLC two year prior to her termination. Absent conferral and agreement, Stranger may not contact any customers or suppliers or prospective customers or suppliers of Cleer LLC or its predecessors.

4.      Using or disclosing or sharing any Confidential Information or trade secret information of Cleer. Defendants are further instructed to confer with counsel for Cleer to ensure the permanent deletion of Cleer's confidential and trade secret information within fourteen (14) days of the Recommended Ruling and Order.

5.      Using, operating and maintaining the Domain Name, Cleer.tax;

6.      Transferring the domain names to third parties without the Court's consent prior to a permanent resolution of this action on the merits . . . .

[Doc. 182, p. 34].

## VI.     <u>Stranger and Optic Tax Attempt to End-Run the Recommended Ruling and Contractual Obligations.</u>

On April 6, 2025—17 days after the Recommended Ruling—Optictaxglobal.com was registered as a domain.[2]  The "Registrant Contact" name is redacted but includes a mailing address in Gauteng, South Africa and is linked to a domain server located in South Africa:

---

[2] GoDaddy, WHOIS Results for OpticTaxGlobal.com, https://www.godaddy.com/whois/results.aspx?domain=optictaxglobal.com (last visited June 15, 2025).

| | |
|---|---|
| Name | OPTICTAXGLOBAL.COM |
| Registry Domain ID | 2972848941_DOMAIN_COM-VRSN |
| Registered On | 2025-04-06T07:58:54Z |
| Expires On | 2026-04-06T07:58:54Z |
| Updated On | 2025-05-19T02:24:16Z |
| Domain Status | client transfer prohibited |
| | client update prohibited |
| Name Servers | NS.DNS1.CO.ZA |
| | NS.DNS2.CO.ZA |
| | NS.OTHERDNS.COM |
| | NS.OTHERDNS.NET |

## Registrant Contact

| | |
|---|---|
| Name | REDACTED REGISTRANT |
| Organization | – |
| Phone | – |
| Fax | – |
| Email | https://tieredaccess.com/contact/c5a93643-40ae-4d61-97f1-c44984a187f4 |
| Mailing Address | Gauteng |

It is no coincidence that Ms. Stranger also lives in South Africa.  [Doc. 138, p. 2] ("My contact information is as follows: Crystal Stranger[,] 33 Rooibok St. Scarborough, WC 7975, South Africa . . . .").

On April 30, 2025, Optic Tax Global filed a Certificate of Incorporation with the Delaware Secretary of State.  (McKeegan Dec. – Ex. 1 at Ex. A).  The initial director of Optic Tax Global is named as David Kayisuti Mutetwa, who, upon information and belief, resides near or has ties to Gauteng, South Africa, and is associated with Stranger. (*Id.*).

Optic Tax Global is competing against Cleer. For example, under the "services" tab of Optictaxglobal.com, the following bookkeeping and tax preparation services are offered:

## Bookkeeping Services

**Stay Investor-Ready. Always.**

At Optic Tax Global, we don't just "do your books"—we turn them into a growth asset. Whether you're behind, scaling fast, or preparing for a funding round, our expert team delivers financial clarity that drives better decisions.

**What We Offer**

✅ **Catch-Up Bookkeeping**
Falling behind? We specialize in untangling messy books and getting you back on track—fast.

✅ **Full-Service Bookkeeping**
Want to stay hands-off? We handle everything: reconciliations, reporting, compliance—you name it.

✅ **Financial Reconstruction**
Need clean, U.S. GAAP-compliant financials for investors or tax season? We'll rebuild your books with speed and precision.

**Why Choose Optic Tax Global?**

- **Built for Startups** – Tailored solutions for high-growth, fast-paced companies
- **U.S. GAAP Experts** – Perfect for foreign founders navigating U.S. compliance
- **Global Reach** – Cross-border support without the communication headaches
- **Customized Service** – No cookie-cutter templates—just bookkeeping that fits your business

## 2. C-Corp & LLC Tax Preparation

### Smart, strategic filings tailored to your entity.

*From basic startups to complex structures, we prepare tax returns that optimize deductions and reduce risk. Our services include:*

- Small business tax optimization
- Corporate tax strategy
- Complex forms like 5471 and 5472

## 3. Foreign Corporate Tax Returns (Form 5471)

### Own a foreign subsidiary? We've got you covered.

*These returns are complex—and mistakes are expensive. We handle:*

- Accurate Form 5471 prep
- Compliance with international reporting laws
- End-to-end filing management

(*Id.* ¶ 4 and Ex. C).

Optic Tax Global and Optic Tax, which is controlled by Stranger, are affiliated companies.

The Privacy Policy for Optic Tax Global states that it is operated by Optic Tax[3]:

We value your privacy very highly. Please read this Privacy Policy carefully before using the OpticTax.com Website (the "Website") operated by Optic Tax Inc., a(n) Corporation formed in Delaware, United States ("us," "we," "our") as this Privacy Policy contains important information regarding your privacy and how we may use the information we collect about you.

A person looking to exercise rights under the Privacy Policy is directed to contact Leonor Da Costa

– a former Cleer supplier that was poached by Stranger to work for Optic Tax:

## Exercising your rights

You may exercise the rights specified above by submitting a consumer request to:

Leonor Da Costa
Customer Success Lead
support@optictaxglobal.com
34 Brier Ave, Unit #559, Wilmington, DE 19805, USA

(*Id.* ¶ 5 and Ex. D).

Most concerning, the "Portal Login" for Optictax.com takes clients directly to the Optic

Tax Global client portal which ***states that it is managed by Optic Tax Global***:





(*Id.* ¶ 2 and Ex. B).

While Stranger has represented to the Second Circuit and this Court that she "ceased operations," in reality she has done no such thing. Accordingly, immediate injunctive relief is required to enjoin Stranger's and Optic Tax's unfair business operations and ensure Cleer receives the contractual relief to which it is entitled as a matter of equity.

## **LEGAL STANDARD**

Cleer is entitled to a temporary restraining order and preliminary injunction pursuant to Fed. R. Civ. P. 65.  To demonstrate that it is entitled to relief, the party seeking the injunction must prove: (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.  *3M v. Francavilla*, 191 F. Supp. 2d 270, 277 (D. Conn. 2002).  In determining whether to

grant preliminary injunctive relief, courts consider these factors: (1) the probability the plaintiff will succeed on the merits; (2) the significance of the irreparable harm in the absence of the injunction; (3) the balance between the irreparable injury and harm to the opposing party; and (4) the public interest. *Id.*; *see also Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 26 (2d Cir. 2004).[4]

For the reasons below, Cleer satisfies these elements and is entitled to the injunctive relief it seeks.

## LEGAL ARGUMENT

### I.   Cleer Is Likely To Prevail On The Merits.

In establishing the likelihood of success on a motion for preliminary injunctive relief, "the movant 'need not show that success is an absolute certainty. . . . There may remain considerable room for doubt.'"  H*&R Block E. Tax Servs., Inc. v. Brooks*, No. 3:00-CV-132JCH, 2000 U.S. Dist. LEXIS 19369, at *6 (D. Conn. Oct. 12, 2000) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).  Cleer more than meets that standard.  The facts show a strong likelihood of success on Cleer's claims against Stranger and Optic Tax.

Under Wyoming law, which controls the Operating Agreement, "[t]o be enforceable, a noncompete agreement must be (1) in writing; (2) part of a contract of employment; (3) based on reasonable consideration; (4) reasonable in duration and geographical limitations; and (5) not against public policy."  *Hassler v. Circle C Res.*, 2022 WY 28, ¶ 15, 505 P.3d 169, 174 (Wyo. 2022) (*Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 540 (Wyo. 1993)).  Here, the terms of the Operating Agreement are clear, unambiguous, and reasonable to protect Cleer's competitive business interests.  Indeed, preventing the anticompetitive contact with a business' clients is a

---

[4] The "'standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction.'"  *Media Grp., Inc. v. Ontel Prods. Corp.*, No. 3:00CV2034, 2001 U.S. Dist. LEXIS 2015, at *3 (D. Conn. Jan. 12, 2001) (citation omitted).

legitimate business interest. *Brown v. Best Home Health & Hospice, LLC*, 2021 WY 83, ¶ 28, 491 P.3d 1021, 1031 (Wyo. 2021) (holding that under Wyoming law "'[e]mployers are entitled to protect their business from the detrimental impact of competition by employees who, but for their employment, would not have had the ability to gain a special influence over clients or customers.'" (quoting *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 542 (Wyo. 1993), *overruled on other grounds by Hassler v. Circle C Res.*, 2022 WY 28, 505 P.3d 169 (Wyo. 2022)).

Judge Garcia, after two days of testimony, has already held that the covenants are enforceable, that Stranger is bound by the non-compete covenant until August 9, 2025, and that Cleer is likely to succeed on the merits. [Doc. 182, p. 28 ("Plaintiff has demonstrated a likelihood of success on the merits on its breach of the non-compete and non-solicitation covenants in the OA that is enforceable against Stranger at least until August 9, 2025, and she will remain bound by the non-disclosure provisions as provided for in the OA . . . [and] [f]or the same reasons . . . the restrictive covenants [under the MVA] are enforceable . . . .")].[5]

As an owner of Cleer, Stranger agreed to customer and employee non-solicitation covenants and a one- year non-competition restrictive covenant in the Operating Agreement. Stranger's breaches of the Operating Agreement are clear: during the restricted period, she has formed and is operating a directly competitive businesses, first Optic Tax and now Optic Tax Global. Upon information and belief, Stranger and Optic Tax are using their spin-off company to solicit and work with Cleer's clients. As a result, Cleer is highly likely to succeed on the merits of its claims and this factor weighs strongly in its favor.

---

[5] Judge Garcia further tolled enforcement of the non-solicitation covenants in the MVA for a period of one year from date of the entry. [Doc. 182, pp. 30, 34].

**II.    Cleer Will Be Irreparably Harmed Absent Injunctive Relief.**

Cleer would suffer irreparable harm absent injunctive relief based on Stanger's many violations of the Operating Agreement and Optic Tax's tortious interference.  Defendants have already unfairly competed with and tarnished Cleer's goodwill by soliciting and poaching Cleer's clients and employees through a domain name belonging to Cleer, among other means.  She is operating a competing company in direct violation of the non-competition restrictive covenant. *See*, *e.g.*, *Westport Res. Mgmt., Inc. v. Delaura*, No. 3:16-CV-00873 (VAB), 2016 WL 3546218, at *4 (D. Conn. June 23, 2016) (citing *POP Radio, LP v. News Am. Mktg. In-Store, Inc.*, 49 Conn. Supp. 566, 576 (2005)); *see also Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999).

**III.    Sufficiently Serious Questions Go To The Merits And The Balance Of Equities Weighs In Favor Of Plaintiff.**

Even if this Court were not satisfied that Cleer is likely to prevail on the merits, it has raised sufficiently serious questions going to the merits of the dispute and shown that the balance of the equities weighs in its favor to warrant the issuance of a preliminary injunction.  *See Fairy-Mart v. Marathon Petroleum Co., LP*, No. 3:17-cv-1195, 2017 U.S. Dist. LEXIS 183642, at *47 (D. Conn. Nov. 6, 2017) (holding that at preliminary injunction stage, novel legal issues, and evidence brought forth by Plaintiffs raised sufficiently serious questions "to make them fair ground for litigation.") (citation omitted).  The Second Circuit has ruled that, under its "serious questions" standard, a district court may "grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (affirming issuance of injunctive relief based on the serious questions standard) (citation omitted). In balancing the equities, a court "must weigh the need to protect the employer's

legitimate business interests against the employee's concern regarding the possible loss of livelihood." *Ticor*, 173 F.3d at 69.

The balance of equities here leans heavily in Cleer's favor. Cleer is seeking to hold Stranger to the bargain she struck when it made her a Member, negotiated the terms of the restrictive covenants, and entered into the MVA and Operating Agreement. It further seeks to hold Defendants to the Recommended Ruling entered by Judge Garcia to protect its legitimate business interests, including its goodwill, client information, relationships, and employees.

Nevertheless, Stranger has shown that she has no intent of abiding by her restrictions or this Court's instructions through her repeated violations and attempt to circumvent the Recommended Ruling. There is no inequity in compelling Stranger to honor her contractual promises to wait before engaging in competitive work. On the other hand, Cleer faces immediate and irremediable damage, including the potential loss of substantial business and harm to its reputation, should Stranger continue to reap the benefits of her unfair competition with Cleer. Any prejudice to Stranger (which is minimal given the egregious and deliberate nature of her conduct) is substantially outweighed by the prejudice Cleer would suffer absent injunctive relief.

## IV.   **The Public Interest Favors An Injunction.**

The public will not be harmed through enforcement of the restrictive covenants and holding Stranger to the contract she signed. This Court has held that it is in the public's interest to enforce contracts. *Gartner, Inc. v. Hackett Grp., Inc.*, No. 3:23-CV-688 (SRU), 2023 WL 7350329, at *7 (D. Conn. Nov. 7, 2023). As established above, the restrictive covenants are reasonable in all relevant respects. Thus, Cleer seeks to do no more than hold Stranger to her voluntarily assumed contractual obligations, which serves the public interest and favors issuing the injunctive relief it seeks.

**V.**     **The Non-Compete Covenant Should be Tolled.**

Judge Garcia's Mach 20, 2025 Recommended Ruling contemplated that the non-compete should expire on August 9, 2025 – one year from the date of Stranger's withdrawal from Cleer. Judge Garcia's Recommended Ruling contemplated that Stanger would comply.  However, since that Recommended Ruling, Stranger has not complied with the non-competition covenant or the instructions of the Recommended Ruling.  To the contrary, Stranger and Optic Tax associated themselves with and/or formed Optic Tax Global to intentionally side-step the Recommended Ruling.

Accordingly, as a matter of equity, the period of non-competition should be tolled for a period of the number of days between April 6, 2025 (the date OpticTaxGlobal.com was registered) and Defendants' eventual compliance.  *Gartner, Inc. v. Hackett Grp., Inc.*, No. 3:23-CV-688 (SRU), 2023 WL 7350329, at *7 (D. Conn. Nov. 7, 2023), *appeal withdrawn*, No. 23-7832, 2024 WL 4866897 (2d Cir. Feb. 15, 2024) (entering injunction for twelve months following the entry of the preliminary injunction order); *Beacon Ins. & Inv. Grp., LLC v. Panzo*, No. CV146044992S, 2016 WL 4507389, at *20 (Conn. Super. Ct. July 25, 2016) ("In ordering a permanent injunction, 'the relief granted must be compatible with the equities of the case.'" (quoting *Castonguay v. Plourde*, 46 Conn. App. 251, 267, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997))); *Roth Staffing Companies, L.P. v. Brown*, 3:13- cv-00216 (JBA)(JGM), ECF No. 71 (D. Conn. Dec. 9, 2013) (entering preliminary injunction as of the date of the Court's Recommended Ruling because defendant continued to breach the employment agreement after the Joint Motion for Stipulation Order Pending Ruling on Motion for Preliminary Injunction was granted).

## CONCLUSION

Based on the above, Cleer respectfully requests that this Court enter a temporary restraining order and a preliminary injunction ordering that Defendants stop violating the Operating Agreement through unfair competition with Cleer, require compliance with the Recommended Ruling, and toll the restrictive covenants for the period of her noncompliance.

Respectfully submitted,

*/s/ George B. Musekamp*
George B. Musekamp (PHV)
Evan H. Cohn (PHV)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Tel:  (513) 381-2838
Fax: (513) 381-0205
gmusekamp@taftlaw.com
ecohn@taftlaw.com

Michael S. O'Malley, Esq. (CT31784)
Ogletree, Deakins, Nash,
Smoak & Stewart P.C.
281 Tresser Boulevard
Stamford, CT 06901
Tel: (203) 969-3109
Fax: (203) 969-3150
Michael.O'Malley@ogletree.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2025, I filed the foregoing using the Court's CM/ECF system, which will send electronic notice to Defendants:

*/s/ George B. Musekamp*

20