## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLEER LLC | : | 3:24-cv-1496-MPS |
| | : | |
| v. | : | DEFENDANT CRYSTAL STRANGER'S |
| | : | OBJECTION TO PLAINTIFF'S SECOND |
| CRYSTAL STRANGER et al. | : | MOTION FOR IMMEDIATE |
| | : | TEMPORARY RESTRAINING ORDER |
| v. | : | AND PRELIMINARY INJUNCTIVE |
| | : | RELIEF |
| DAVID and CARRIE McKEEGAN | : | |

Plaintiff opens their argument with the inflammatory and unsupported claim that this case has been "plagued by Crystal Stranger's chronic defiance and gamesmanship." This baseless personal attack is especially inappropriate given that Cleer LLC, a well-funded entity represented by top-tier counsel, is proceeding against a pro se defendant who has acted in good faith to comply with this Court's orders and her contractual obligations.

Cleer's rhetoric appears designed to obscure the glaring lack of evidence linking Ms. Stranger to any alleged misconduct. Not a single declaration or document offered by Plaintiff connects her to the conduct they now seek to punish. This motion is not about enforcement; it is about manipulation: an attempt to weaponize the judicial process to gain advantage through unsupported accusations.

As Harry Potter aptly put it: "I'm sorry, but this is completely ridiculous! How can I *possibly* prove it doesn't exist? Do you expect me to get hold of — of all the pebbles in the world, and test them? I mean, you could claim that *anything's* real if the only basis in believing

in it is that nobody's *proved* it doesn't exist!" Rowling, J.K., *Harry Potter and the Deathly Hallows,* Bloomsbury Publishing Plc, 21, p. 334. (2007).

Cleer's burden is to prove by clear and convincing evidence that Defendant has violated a court order and/or contractual agreements. That burden cannot be shifted to Ms. Stranger to disprove imagined violations through a never-ending exercise in negative proof. This is precisely why courts require evidence, not inference, before invoking legal remedies. Because Plaintiff has failed to meet this standard, and instead asks this Court to engage in speculative reasoning untethered to evidence, its motion must be denied.

## The Real Harm in This Case

If there is any party acting outside the bounds of equity, it is Cleer, who unilaterally stripped Ms. Stranger of her ownership interest, and now seeks to broaden the reach of this Court's injunctions to some unrelated company based purely on speculation and conduct of third parties beyond any control. Through this litigation, Cleer has:

- **Forced closure of Stranger's business**: Optic Tax Inc. has been shuttered due to this lawsuit and court restrictions.
- **Destruction of livelihood**: Ms. Stranger's unrelated ventures have collapsed under the weight of the restrictions, including a ban on basic outreach like email marketing.
- **Caused severe personal impact**: The combination of Cleer's aggressive litigation posture and the resulting TRO and injunction have caused significant emotional strain.

The devastating impact of this litigation stands in stark contrast to Cleer's speculative claims of harm from third-party conduct over which Ms. Stranger has no control. And if Cleer's allegations are correct, that Optic Tax's former portal is being used for another business, then Ms. Stranger is not a perpetrator but yet another victim, caught in the crossfire of others' choices.

**The Motion Seeks Relief for Third-Party Conduct (Again)**

Stripped of its inflammatory rhetoric, Cleer's motion once again attempts to hold Defendant Crystal Stranger responsible for the independent actions of third parties, individuals, and companies, over whom she exercises no legal or practical control. Despite Ms. Stranger's full withdrawal from Optic Tax business operations as of April 16, 2025, and her good-faith compliance with this Court's Recommended Ruling, Plaintiff seeks to extend restrictive covenants and impose sanctions based on unsupported speculation, innuendo, and guilt by association.

There is no legal or equitable basis to impose contempt sanctions against a party merely because another person or business, not shown to be acting at her direction, may have taken independent steps adverse to Plaintiff's commercial interests. Courts have consistently rejected attempts to stretch injunctions to cover conduct not directly attributable to the enjoined party. See *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980) (holding that injunctive relief cannot extend beyond the scope of proven conduct). Here, Cleer offers no evidence linking Ms. Stranger to the conduct it complains of—only conjecture.

This is not the first time Cleer has advanced sweeping and unsubstantiated accusations with an air of certainty, but without admissible evidence. See Doc. 135, *Plaintiff Cleer LLC's Second Motion for Contempt of Court's Temporary Restraining Order*, and related filings, which similarly relied on conjecture and conclusory affidavits lacking specific, corroborated facts.

If such tactics are permitted to continue unchecked, this Court risks setting a dangerous precedent, one in which any party may force its adversary to defend against hypotheticals and prove the nonexistence of connections or communications that never occurred.

# STATEMENT OF FACTS

**Stranger's Compliance with Court Orders**

Following the Court's March 20, 2025 Recommended Ruling, Stranger immediately took steps to wind down operations and fully withdrew from all business activities on April 16, 2025. As outlined in the attached affidavit (Exhibit A), since that date, she has:

- Ceased all business operations and client communications;
- Been locked out of all business systems and client portals;
- Traveled extensively for family reasons, including caring for her mother with dementia;
- Engaged only in pre-scheduled educational webinars unrelated to client services;
- Had no involvement in the formation or operation of *any* new business entities.

**Cleer's Baseless Allegations**

Without Ms. Stranger's knowledge, participation, or consent, an individual named David Kayisuti Mutetwa, whom Ms. Stranger does not know, allegedly formed a company called Optic Tax Global, Inc. Ms. Stranger has had no involvement in the entity's formation, operations, or communications with its incorporator. After learning of the company through Plaintiff's filing, she attempted to obtain additional information but received no response. (See Exhibit B.)

Cleer's motion rests entirely on speculation and circumstantial evidence:

- Geographic proximity (South Africa is a country of 60+ million people);
- A former Cleer contractor's name in connection with one webpage;
- The mere existence of a similarly branded business.

None of this constitutes evidence of a breach or supports the imposition of extraordinary equitable relief.

# LEGAL ARGUMENT

## I. CLEER CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS

### A. No Evidence of Stranger's Violation of Restrictive Covenants

Cleer's motion is devoid of any credible evidence that Ms. Stranger has personally violated her restrictive covenants. The record instead demonstrates full compliance with the Court's Recommended Ruling:

1. **No Competition**: Stranger ceased all business operations on April 16, 2025, and has engaged in no competitive activities since that date.
2. **No Solicitation**: Stranger has not contacted, solicited, or communicated with any Cleer clients since her withdrawal.
3. **No Employee Recruitment**: Stranger has not recruited or hired any Cleer employees.
4. **No Involvement in Optic Tax Global**: Ms. Stranger holds no ownership interest and has had no role in its formation or operation. The incorporator, David Kayisuti Mutetwa, is unknown to her.

Cleer offers only speculation, not proof of any act by Ms. Stranger that would violate the covenants. Without such evidence, Cleer cannot demonstrate a likelihood of success on the merits. See *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999).

### B. Third-Party Actions Cannot Support Injunctive Relief Against Stranger

Under Second Circuit precedent, injunctions require a direct causal connection between a defendant's actions and the alleged harm. See *IBM Corp. v. Papermaster*, No. 08-CV-9078, 2008 WL 4974508, at *9 (S.D.N.Y. Nov. 21, 2008). Conduct by non-parties, even if arguably competitive, is not actionable unless Ms. Stranger knowingly participated, induced, or materially contributed. See *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999). Here, Cleer offers nothing more than conjecture based on geographic proximity, a name listed on a website

of a former colleague, and branding similarities; none of which were controlled, authorized, or known to Ms. Stranger.

Such speculative associations fall far short of the evidentiary threshold. See *Papermaster*, 2008 WL 4974508, at *9 (Speculation about what others may do is not enough). Because Cleer has failed to establish any such connection, it cannot demonstrate a likelihood of success on the merits of its claims. Injunctive relief must therefore be denied as a matter of law.

## II. CLEER CANNOT ESTABLISH IRREPARABLE HARM

To warrant injunctive relief, harm must be both actual and imminent, and traceable to the defendant. See *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995). Cleer's alleged harm stems from third-party actions, not from any ongoing or recent conduct by Ms. Stranger.

**A. Speculative Harm from Third Parties**

Cleer identifies no conduct by Ms. Stranger that caused its alleged harm. Instead, it points only to what appear to be independent business decisions by former Cleer contractors, decisions over which Ms. Stranger had no involvement or control. Under Second Circuit precedent, irreparable harm must be the direct and proximate result of the defendant's own conduct. Speculation about third-party actions does not suffice. *See IBM Corp. v. Papermaster*, 2008 WL 4974508, at *9 (S.D.N.Y. Nov. 21, 2008); and *Haber*, 188 F.3d at 49 (2d Cir. 1999).

**B. Any Harm is Compensable by Damages**

Even if Cleer could demonstrate lost revenue or business and somehow connect this to Ms. Stranger (which is not possible as she had no involvement), such losses are economic and do

not justify injunctive relief. See *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991); *Register.com v. Verio*, 356 F.3d 393, 404 (2d Cir. 2004).

**C. Any Harm Is Self-Inflicted**

Cleer's alleged harm, if it exists, arised from further actions of former contractors who left under hostile work circumstances Cleer does not meaningfully contest. To the extent any harm exists, it is a function of Cleer's own business practices, not Ms. Stranger's actions. Courts have consistently held that a plaintiff cannot manufacture irreparable harm by failing to address internal issues or client relationships that precipitate employee or customer departures. See *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) ("If the harm complained of is self-inflicted, it does not qualify as irreparable.")

## III. THE BALANCE OF HARDSHIPS FAVORS MS. STRANGER

The balance of hardships weighs strongly against Cleer's requested relief. Ms. Stranger has ceased all business operations and complied fully with the Court's prior order, while Cleer seeks to impose broad restrictions based on speculative and third-party conduct.

Courts applying the Second Circuit standard decline to grant injunctions that would unfairly burden a restrained party who has voluntarily ceased the challenged activity, particularly where any alleged harm arises from others' independent decisions. See *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (courts must assess whether equitable relief imposes undue hardship).

Moreover, issuing injunctive relief against Optic Tax Global, a non-party over which neither Ms. Stranger nor Optic Tax Inc. has any control, would serve no meaningful purpose and contravene due process, while imposing impossible compliance obligations on Stranger for

conduct she neither directed nor participated in. Maintaining the status quo, where Ms. Stranger is already in full compliance, imposes no cognizable hardship on Cleer and serves the public interest in fair and proportionate remedies.

## IV. PUBLIC INTEREST WEIGHS AGAINST INJUNCTION

The public interest weighs against granting Cleer's requested injunction. Enforcing restrictive covenants beyond their contractual scope or against parties who did not agree to them undermines basic principles of contract law and due process. See *Salinger v. Colting*, 607 F.3d 68, 78 (2d Cir. 2010) (courts must ensure injunctive relief aligns with "the public consequences in employing the extraordinary remedy of injunction" (citing *Munaf v. Geren*, 553 U.S. 674 (2008); *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982))).

Imposing relief based on speculation or guilt by association risks chilling legitimate business activity and creating uncertainty for third parties who are not bound by the restrictive covenants at issue. The public has a strong interest in ensuring that such agreements are enforced according to their terms and not expansively interpreted to reach non-parties or conduct beyond the restrained individual's control.

## V. CLEER'S PROPOSED RELIEF IS OVERBROAD AND IMPOSSIBLE

### A. The Court Lacks Jurisdiction Over Non-Parties

Cleer seeks relief against non-party entities such as Optic Tax Global. Injunctions cannot bind entities not properly before the Court. See *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394–95 (Fed. Cir. 1996).

**B. Proposed Order Imposes Impossible Standards**

Cleer would effectively require Ms. Stranger to monitor and control the business decisions of others, a standard that courts consistently reject. Equity does not impose compliance obligations beyond a party's control. See *Haber*, 188 F.3d at 49 (no liability absent inducement or knowing participation).

# CONCLUSION

Cleer's motion is an improper attempt to expand restrictive covenants beyond their contractual scope and hold Stranger liable for unrelated parties' actions. Because Cleer cannot establish any of the required elements for injunctive relief, the motion should be denied in its entirety.

## A. Ms. Stranger Has Suffered the Real Harm in This Case

While Cleer seeks sweeping restrictions based on conjecture and guilt by association, the uncontested record shows that Ms. Stranger is the party who has suffered actual, concrete harm:

- **Business collapse**: Cleer's litigation has forced the closure of Optic Tax Inc. and decimated Stranger's unrelated ventures..
- **Loss of ownership rights**: Cleer unilaterally stripped Stranger of her 12% membership interest in Cleer LLC without legal process.
- **Devastating personal impact**: The strain of this litigation has caused debilitating depression, leaving her unable to pursue lawful economic activity.
- **Imbalance of power**: A well-funded plaintiff with national counsel seeks to impose additional burdens on a pro se defendant who has already complied with all legal obligations.

## B. Full Compliance Despite Severe Hardship

Despite suffering these devastating consequences, Stranger has fully complied with this Court's orders and her contractual obligations. She ceased all business operations following the Recommended Ruling, withdrew from client relationships, and has remained completely disengaged from competitive activities. She should not be held responsible for the alleged actions of former colleagues whom she neither controls nor directs.

## C. No Basis for Additional Restrictions

The extraordinary relief sought by Cleer is unwarranted by the facts and unsupported by law. Granting additional restrictions would:

• Punish Stranger for conduct she did not engage in and cannot control;

• Compound the already disproportionate consequences on a pro se defendant;

• Create dangerous precedent by tethering injunctive relief to speculation, not evidence.

Injunctive relief is an extraordinary remedy that courts grant only upon a clear showing that each equitable element is satisfied. That standard has not been, and cannot be, met here.

The motion should be denied.


Respectfully submitted,

Crystal Stranger

Pro Se Litigant

Date: June 19, 2025

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 19, 2025 the foregoing was filed using the Court's

electronic filing system which will provide notice to all parties.

*/s/ Crystal Stranger*