# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLEER LLC | : | 3:24-cv-1496-MPS |
| | : | |
| v. | : | |
| | : | DEFENDANT CRYSTAL STRANGER'S |
| CRYSTAL STRANGER et al. | : | MOTION FOR MISCELLANEOUS |
| | : | RELIEF SEEKING MODIFICATION OR |
| v. | : | RECONSIDERATION OF PRELIMINARY |
| | : | INJUNCTION UNDER LOCAL RULE |
| DAVID and CARRIE McKEEGAN | : | 7(C), RULE 60(B), AND RULE 62(C) |
| | : | |

Pursuant to Local Rule 7(c), Federal Rules of Civil Procedure 60(b)(1), (b)(4), and 62(c), Defendant Crystal Stranger respectfully moves to modify or dissolve the Preliminary Injunction Order entered on June 17, 2025 (ECF No. 208). This injunction imposes mandatory, sweeping, and constitutionally problematic restrictions that exceed the terms of the underlying contract, were entered without proper procedural safeguards, and impose irreversible harm. Most notably, the order compels the immediate transfer of a disputed domain name ("Cleer.tax"), a provision not recommended by the magistrate judge, without affording Defendant the required opportunity to object under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

In the alternative, Defendant seeks to modify specific terms of the injunction to conform with constitutional requirements and the express language of the underlying Member Vesting Agreement ("MVA") and stay the compelled transfer of the domain name until a full trial on the merits has been conducted.

## **I. INTRODUCTION**

The Preliminary Injunction as issued expands the scope of contractual obligations under the MVA in ways that are both unconstitutional and unsupported by the record. This includes prohibitions on speech not tied to commercial activity, imposition of non-compete-style restrictions that were not contractually agreed to, and application of those restrictions to third parties who are not signatories to the MVA. These overbroad and vague restrictions create a chilling effect on Defendant's lawful professional conduct and violate her rights under the First and Fifth Amendments to the U.S. Constitution.

In addition, the domain transfer, imposed for the first time by the district court, without prior recommendation or objection process, raises a serious procedural due process violation. This Court should not enforce or maintain an injunction that imposes such far-reaching and constitutionally infirm restrictions at the preliminary stage, prior to trial or full adjudication of the merits.

## **II. STANDARD**

Under Rule 60(b), courts may relieve a party from an order based on mistake, newly discovered evidence, or if the order is void or no longer equitable. Rule 62(c) allows courts to suspend or modify injunctions pending appeal "to preserve the status quo or ensure that the court's eventual judgment will be effective." Courts may reconsider or modify an injunction that imposes obligations beyond what the parties agreed to or that are inconsistent with governing constitutional standards.

## III. ARGUMENT

### A. The Injunction Substantially Expands Contractual Obligations Beyond the MVA

#### 1. Omission of Purpose Limitation

The MVA's non-solicitation clause applies only where the conduct is "for the purpose of selling or soliciting products or services that are in competition." The PI eliminates this limitation entirely, enjoining all "contacting" and even "communicating the fact or circumstances of [Defendant's] resignation," regardless of intent. This is a facial overbreadth problem, restricting even benign or constitutionally protected speech.

#### 2. Addition of "Accepting Business" and "Communicating Resignation"

The injunction prohibits "accepting business" from Cleer clients, which is not barred under the MVA and fundamentally transforms a non-solicitation clause into a non-compete, an obligation which was found in the contract but determined unenforceable under Wyoming law. Likewise, barring communication about one's own resignation infringes on Defendant's First Amendment rights, and amounts to being an unwarranted total gag order.

#### 3. Expansion to Non-Parties and Affiliated Companies

The injunction applies to "employees, contractors, agents, companies… and all persons in active concert or participation with [Defendant]," despite the MVA binding only Defendant personally. No legal basis is provided to extend contractual restrictions to unaffiliated third parties, many of whom had no notice or opportunity to be heard. This violates well-settled principles of due process. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) and *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973) (active concert or

participation language must be interpreted narrowly and applied only where there's privity or control.)

### 4. Mischaracterization of Employee Contact Clause

The MVA restricts contacting Cleer employees "for the purpose of encouraging or inducing them to leave." The PI bans all contact "for purposes of discussing employment or contractor opportunities," even if no encouragement to leave Cleer is involved. This expands the restriction far beyond what the parties negotiated.

### **B. The Court's Tolling of the Restrictive Period Was Unreasonable and Unsupported**

The Court's preliminary injunction tolls the non-solicitation period under the MVA to extend from March 20, 2025 through March 19, 2026, effectively granting Plaintiff an extra year of enforcement. However, the factual record does not justify such an extension.

Defendant's resignation from Cleer LLC occurred on January 31, 2024, and the MVA provides for a one-year non-solicitation period. Therefore, absent tolling, any restriction would have expired on January 30, 2025.

The earliest alleged violation cited by Plaintiff did not occur until September 2024, more than seven months after resignation. If tolling is intended to pause the clock only during the period of alleged misconduct, then any such tolling could reasonably begin at the earliest in September 2024 and, if the preliminary injunction issued on March 20, 2025, should end by August 31, 2025. This would reflect the appropriate five-month tolling window, rather than tacking on a full additional year.

The Court's blanket extension of the restriction until March 2026 is both disproportionate and untethered from the actual timeline of alleged misconduct. It effectively punishes Defendant for a restriction Plaintiff itself did not assert was violated for the majority of the post-resignation period. Such a retroactive tolling period that penalizes inactivity and extends far beyond the contractually agreed term is inherently inequitable and undermines the enforceability of the injunction.

This extended tolling is particularly problematic because:

- It exceeds the MVA's express duration.

- It is not narrowly tailored to the actual period of alleged noncompliance.

- It operates as a de facto non-compete well beyond the parties' agreement, raising concerns under Wyoming and Connecticut law and the public policy limitations on post-employment restrictions.

- It ignores Defendant's professional and constitutional interests in being able to lawfully resume work after the contractually defined period.

Accordingly, the Court should modify the injunction to either declare the one-year period expired as of January 30, 2025, or at most, toll only the period from September 2024 to March 20, 2025, and terminate the injunction by August 31st, 2025.

**C. The Court's Irreparable Harm Findings Were Legally and Factually Unsupported**

The Court relied on contractual stipulations and anecdotal statements, including Plaintiff's counsel's opening arguments quoted by the magistrate, to find irreparable harm. This

does not meet the legal standard under *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008), which requires actual and imminent harm. The Second Circuit cautions against treating contractual stipulations as conclusive evidence. See *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33 (2d Cir. 1995).

### D. Due Process Was Violated by Procedural Changes in Final Order

The final Preliminary Injunction added the domain transfer remedy, which was **not** recommended by the magistrate judge. Defendant was deprived of the opportunity to file objections to that material change, in violation of 28 U.S.C. § 636(b)(1) and fundamental due process. The order also failed to resolve Defendant's objections regarding the vagueness of the client restrictions and declined to compel Plaintiff to produce a list of covered clients, leaving Defendant exposed to contempt without any way to comply.

### E. The Domain Transfer Was Improperly Added and Violates Due Process

The compelled transfer of the domain name "Cleer.tax" represents an egregious overreach in both procedure and substance.

#### 1. Improper Addition Without Objection Opportunity (28 U.S.C. § 636(b)(1))

The magistrate judge's Recommended Ruling (ECF No. 182) did not include any relief requiring the transfer of the domain name. The first time such relief appeared was in the district court's final Preliminary Injunction Order (ECF No. 208). This deprived Defendant of her right under 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b) to object to new provisions not contained in the recommendation.

By introducing a significant and final remedy, the forced transfer of a disputed property interest, without prior notice or opportunity to object, the Court violated basic procedural due

process. See *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (parties have a right to object to dispositive matters before adoption by the district court).

### 2. Mandatory, Irreversible Relief Improperly Granted Pre-Trial

The purpose of a preliminary injunction is to preserve the status quo, not to adjudicate disputed ownership or impose mandatory relief. See *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). Yet the PI requires Defendant to permanently transfer the domain to Plaintiff, thereby permanently altering the status quo and effectively resolving a key issue of disputed ownership, without full trial or discovery.

The domain transfer also cannot be undone if Defendant prevails on appeal. This renders the order functionally final and causes irreparable harm. It forces Defendant to choose between (1) complying and losing the asset permanently or (2) refusing and risking contempt. This Catch-22 scenario exemplifies why mandatory preliminary relief is particularly disfavored. See *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).

### 3. Unreasonably Short Compliance Window Further Denied Due Process

To compound the due process violation, the order required compliance **within 48 hours,** an unreasonably short timeframe given the lack of prior notice and the complexity of transferring domain ownership, which may involve third-party registrar processes, legal counsel coordination, and technical barriers.

This extreme deadline, imposed without allowing briefing or hearing, denied Defendant a meaningful opportunity to be heard. Courts routinely hold that even valid injunctions must afford parties a fair chance to comply. See *Mullane,* Supra, at 313 ("An elementary and fundamental

requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated").

### F. Pending Mistrial Appeal Undermines the Injunction's Evidentiary Foundation

Finally, Defendant notes that her appeal of the Court's denial of her motion for mistrial is currently pending before the Second Circuit (Case No. 25-663). That appeal challenges the integrity of the evidentiary proceedings upon which the preliminary injunction is based, raising substantial due process issues. Should the Second Circuit grant relief, the factual underpinnings of the injunction could be materially undermined. In light of this, the Court should avoid ordering irreversible relief that may conflict with the appellate outcome, and should modify or stay the injunction accordingly.

### G. Lack of Defined Timeline for Posting Bond Undermines Procedural Fairness

Federal Rule of Civil Procedure 65(c) mandates that "[t]he court may issue a preliminary injunction … only if the movant gives security in an amount that the court considers proper." The Rule is designed to protect the enjoined party against the costs and damages sustained if the injunction is later found to have been improvidently granted.

Here, while the Court set a bond amount, no timeline was established for Plaintiff to actually post that bond, creating a procedural gap. Without a firm deadline, Defendant remains under the burden of the injunction without assurance that the required security has been or will be provided. Courts have held that bond requirements are not discretionary once a preliminary injunction is granted, and failure to enforce them can deprive the enjoined party of a meaningful remedy. See *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).

Accordingly, Defendant respectfully requests that the Court clarify the deadline for posting the bond and confirm that no injunctive relief shall be enforceable unless and until proper security has been posted pursuant to Rule 65(c).

### **H. Preliminary Injunction Fails to Address Personal Computer**

The Preliminary Injunction addresses only a "company computer" allegedly retained by Defendant but makes no mention of the personal laptop Defendant surrendered to Plaintiff's counsel pursuant to the Court's December 5, 2024 Order (ECF No. 74). That laptop, which belonged to Defendant personally but was voluntarily delivered under a confidentiality designation, has now been held for over six months without justification, and Plaintiff's counsel has ignored repeated requests for its return.

This continued possession creates a fundamental inequity and raises further due process concerns, as Defendant is being indefinitely deprived of her personal property without notice, hearing, or any finding that the item is necessary to preserve evidence. The Preliminary Injunction does not authorize permanent seizure or forfeiture of personal assets, and Plaintiff has offered no evidence that the laptop contains materials relevant to any current or future proceeding.

Accordingly, Defendant respectfully requests that the Court modify the injunction to clarify that the personal laptop is not subject to continued retention, and further order its immediate return, unless Plaintiff can demonstrate a compelling, narrowly tailored need consistent with due process.

## IV. REQUESTED RELIEF

Defendant respectfully requests the Court:

**1. Modify the Preliminary Injunction to align with the scope of the MVA, including:**

- Reinstate the contractual purpose limitation on any restricted contact (i.e., only contact made *for the purpose of selling or soliciting competing services* should be restricted).

- Remove newly added terms such as "accepting business", "communicating resignation", and other overbroad restrictions not supported by the agreement or necessary to protect legitimate interests.

- Limit the scope of enjoined parties to Defendant personally, and not to unaffiliated companies, employees, contractors, or third parties not subject to the MVA.

- Clarify that contact with Cleer employees must involve intent to induce departure in order to fall within any restriction.

**2. Modify the injunction to limit or terminate the tolling period on the non-solicitation covenant.** Specifically, the Court should declare the one-year restriction to have expired as of January 30, 2025, one year after Defendant's departure from Cleer, or, at most, toll only the period between September 2024 and March 20, 2025, with the injunction terminating by August 31, 2025.

**3. Strike or stay enforcement of the domain transfer provision**, which was:

- Not included in the magistrate judge's Recommended Ruling (ECF No. 182);

- Introduced for the first time by the District Court without an opportunity for objection, in violation of 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b);

- Constitutes mandatory and irreversible relief adjudicating ownership before trial and inflicting irreparable harm.

3. **Order Plaintiff to provide a specific client and employee list** covered by the injunction, or produce the data required to construct such a list, so that Defendant may comply without fear of inadvertent violation or contempt.

4. **Order the immediate return** of Defendant's personal laptop, which was provided under a protective discovery order (ECF No. 74) and has been wrongfully retained by Plaintiff's counsel for over six months without legal basis.

5. **Clarify the timeline for Plaintiff's posting of the Rule 65(c) bond**. Defendant respectfully requests that the Court modify the injunction to require Plaintiff to post the bond by a date certain, within seven (7) days of any order denying this motion, or alternatively, that the injunction be stayed unless and until the bond is properly posted.

6. **Dissolve the Preliminary Injunction entirely** if the Court finds that it imposes obligations not found in the parties 'contract, fails constitutional scrutiny, or otherwise exceeds the bounds of permissible equitable relief at the preliminary stage.

7. In the alternative, **stay enforcement** of the Preliminary Injunction pending resolution of Defendant's appeals to the United States Court of Appeals for the Second Circuit, including enforcement of the domain transfer and solicitation-related clauses.

## V. CONCLUSION

The Preliminary Injunction as issued exceeds the permissible scope of equitable relief, violates both the plain terms of the parties 'agreements and Defendant's constitutional rights, and imposes irreparable harm in the form of compelled speech, overbroad restraint of lawful business activity, and the forced surrender of disputed property without trial or due process. The addition of the domain transfer order without prior notice or opportunity to object further compounds these defects.

For the foregoing reasons, Defendant respectfully requests that the Court grant the relief set forth above and modify or dissolve the injunction, or in the alternative, stay its enforcement pending appellate review.

Respectfully submitted,

Crystal Stranger

Pro Se Litigant

Date: June 19, 2025

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on June 19, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all parties.

    */s/ Crystal Stranger*