## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CLEER LLC,

     *Plaintiff*,

     v.

CRYSTAL STRANGER AND OPTIC
TAX, INC.,

     *Defendants*.

No. 3:24cv1496(MPS)

## <u>RULING ON DEFENDANT'S MOTION</u>

     Defendant Stranger has filed a motion entitled "Motion for Miscellaneous Relief Seeking Modification or Reconsideration of Preliminary Injunction." ECF No. 210. Stranger "moves to modify or dissolve the Preliminary Injunction order entered June 17, 2025" under "Local Rule 7(C), Fed. R. Civ. P. 60(b)(1) and (b)(4)." *Id.* at 1. In the alternative, she seeks an order staying enforcement of the injunction under Fed. R. Civ. P. 62(c). Because Stranger has not shouldered her burden of demonstrating that she is entitled to the relief she requests, the motion is denied.

**Legal Standards**

     "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd*., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted). A motion for reconsideration is "not a vehicle for

relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P*., 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted). "District courts have broad discretion in determining whether to grant a motion for reconsideration." *Nosaj Ent. v. Tristate & Beyond, LLC*, No. 22-CV-10110, 2024 WL 2943732, at *1 (S.D.N.Y. June 10, 2024).

"An injunction should be modified only when the changed circumstances demonstrate that continuance of the injunction is no longer justified and/or [ ] will work oppressively against the enjoined parties." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd*., 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006), *aff'd* 246 Fed. App'x 73 (2d Cir. 2007)(internal quotation marks and citation omitted). *See Biediger v. Quinnipiac Univ*., 928 F. Supp. 2d 414, 433 (D. Conn. 2013)("For preliminary injunctions, the decision whether to modify or dissolve the order involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction,... and that discretion is measured by whether the requested modification effectuates or thwarts the purpose behind the injunction.")(internal quotation marks and citations omitted).

**Discussion**

I address Stranger's arguments seriatim.

1.       Stranger first asserts that the preliminary injunction enjoining her from violating the nonsolicitation provision of the MVA is overbroad.  ECF No. 210 at 3.  The pertinent order is as follows:

> Stranger and her employees, contractors, agents, companies (including but not limited to Optic Tax) and all persons in active concert or participation with, through, or under her, are enjoined and restrained from

(1) for a period of one year from March 20, 2025, directly or indirectly contacting, soliciting, accepting business from, or communicating the fact or circumstances of her resignation from or termination of employment with Cleer to any of Cleer's customers or prospective customers, with whom Stranger had direct or indirect contact or solicited on behalf of Cleer in the two (2) years prior to her termination under section 12 of the MVA[.]

Stranger argues that the non-solicitation clause in the MVA "applies only where the conduct is 'for the purpose of selling or soliciting products or services that are in competition'" but that that limitation is not included in the preliminary injunction.

I decline to modify the preliminary injunction to add this clause because (1) the injunction would not be effectual, administrable or practical as it would mire the Court in disputes about the purpose of Stranger's contacts, and (2) Stranger has not made any showing that she has non-business relationships with these clients.

2.      Stranger next argues that the preliminary injunction "prohibits 'accepting business' from Cleer clients" but that is "not barred under the MVA and fundamentally transforms a non-solicitation clause into a non-compete[.]"  ECF No. 280 at 3.

The injunction tracks the language of the MVA, which Stranger signed and agreed to, and which provides in pertinent part:

**12. Non-Solicit.**
[E]mployee agrees that, in the absence of prior written approval by a duly-authorized officer of Company, Employee will not:
> i. directly or indirectly contact, solicit, *accept business from*, or communicate the fact or circumstances of Employee's resignation from or termination of employment with Company to any of Company's customers or suppliers, or prospective customers or suppliers, with whom Employee had direct or indirect contact or solicited on behalf of Company in the two (2) years prior to Employee's termination, for the purpose of selling or soliciting products or services that are in competition with the products or services of Company[.]

(emphasis added).

3

Stranger also argues that "barring communication about one's own resignation infringes on [her] First Amendment rights, and amounts to being an unwarranted total gag order." ECF No. 210 at 3. I previously addressed Stranger's argument that the MVA violates her First Amendment rights. See ECF No. 208 at 22. And as I indicated, the injunction merely enforces the contractual obligations to which she agreed. She has not shown that modification is warranted.

3.      Stranger next argues that the injunction impermissibly applies to "'employees, contractors, agents, companies… and all persons in active concert or participation with [Defendant],' despite the MVA binding only Defendant personally." ECF No. 210 at 3. She contends that the Court has "[n]o legal basis ... to extend contractual restrictions to unaffiliated third parties, many of whom had no notice or opportunity to be heard" and that doing so "violates well-settled principles of due process." *Id.*

To the contrary, Federal Rule of Civil Procedure 65(d) provides that an injunction binds the parties to the injunction; their officers, agents, and employees acting in that capacity; and those who are in active concert or participation with the enjoined parties. Fed. R. Civ. P. 65(d)(2). *See Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010) ("[T]hird parties 'who are in active concert or participation' with the parties, their officers, agents, servants, employees or attorneys, can be enjoined. Fed. R. Civ. P. 65(d)(2)."). "The essence of the rule is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Havens v. James*, 76 F.4th 103, 112 (2d Cir. 2023) (internal quotation marks and citation omitted). To the extent that she has not already done so, Stranger shall provide a copy of the injunction to her and Optic Tax's employees and contractors.

4.      Stranger next argues that the Court's order mischaracterized the MVA's nonsolicitation provision.  ECF No. 210 at 4.

The MVA provides that Stranger agrees not to

directly or indirectly contact, solicit, recruit or hire any employees of the Company with whom Employee worked or had contact for the purpose of causing, inviting, or encouraging any such employee to alter or terminate his or her employment or business relationship with Company.

ECF No. 55-4 at 11, MVA, § 12(a)(ii).

The preliminary injunction prohibits Stranger from

soliciting, hiring, or otherwise contacting for purposes of discussing employment or contractor opportunities any person who is or was working for Cleer LLC or any of its predecessors in any capacity or as independent contractors or suppliers.

Stranger argues that "[t]he MVA restricts contacting Cleer employees 'for the purpose of encouraging or inducing them to leave' but [t]he PI bans all contact 'for purposes of discussing employment or contractor opportunities,' even if no encouragement to leave Cleer is involved." ECF No. 210 at 4.  This is a distinction without a difference.  Although Stranger argues that the preliminary injunction's language "expands the restriction far beyond what the parties negotiated," the provisions are congruent; both are aimed at prohibiting Stranger from contacting Cleer's employees regarding changing their employment.  And as in her earlier argument regarding contacting clients, Stranger's attempt to narrow the language of the PI would embroil the Court in disputes as to her intent in contacting Cleer employees.

5.      Stranger next argues that the "Court's tolling of the restrictive period was unreasonable and unsupported."  ECF No. 210 at 4.

In her recommended ruling, Judge Garcia concluded that the MVA's tolling provision was enforceable and that the nonsolicitation period should extend for one year from March 20, 2025 (the date of the recommended ruling).  ECF No. 182 at 29-30, 34.  Stranger objected to the

recommended ruling on the grounds that the tolling provision was unenforceable under state law. See ECF No. 195 at 23-25.  I overruled her objection and adopted this aspect of Judge Garcia's recommended ruling, finding that "[a]greements to extend the duration of a restrictive covenant because of a breach are enforceable under Connecticut law, as Judge Garcia found, and under Michigan law, which governs the MVA."  ECF No. 208 at 10.

Stranger now raises a new and different argument as to the tolling provision – she challenges the calculation of the tolling period.  Specifically, she contends that the restrictive covenant should run from March 20, 2025, and "should end by August 31, 2025" because there was a period of time before she allegedly violated the covenant.  (ECF No. 210 at 4, arguing that "the earliest alleged violation" occurred in September 2024).

But Stranger did not raise this argument in her objection to the recommended ruling.  Her objection was silent as to Judge Garcia's determination of the duration of the restrictive covenant.  "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Stevens v. Duquette*, No. 22-1571, 2024 WL 705954, at *1 (2d Cir. Feb. 21, 2024).

6.    Stranger next argues that "[t]he Court's irreparable harm findings were legally and factually unsupported." ECF No. 210 at 5.  Specifically, Stranger contends that the Court impermissibly relied on the stipulation of irreparable harm contained in the MVA.  I previously addressed this argument in the ruling on her objection.  ECF No. 195 at 3; ECF No. 208 at 4-6.  Stranger does not point to any controlling decisions or information that I overlooked.  Rather, she merely seeks to relitigate issues already decided.

7.    Stranger argues that "[t]he final Preliminary Injunction added the domain transfer remedy, which was not recommended by the magistrate judge. Defendant was deprived of the

opportunity to file objections to that material change, in violation of 28 U.S.C. § 636(b)(1) and fundamental due process."  ECF No. 210 at 6.

I referred the motion for preliminary injunction to Magistrate Judge Garcia for a recommended ruling under 28 U.S.C. § 636(b)(1)(B).  In her recommended ruling, Judge Garcia enjoined Stranger from "Using, operating and maintaining the Domain Name, Cleer.tax" and "Transferring the domain names to third parties without the Court's consent prior to a permanent resolution of this action on the merits."  ECF No. 182 at 34.  I subsequently ordered that "within 48 hours of this Order, Stranger shall take all actions required to return to Cleer the domain Cleer.tax."  ECF No. 208 at 24.

The district court is not bound by the recommendation of the magistrate judge, rather it may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1)(C); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). To the extent that Stranger argues that the Court was confined to the Magistrate Judge's ruling, she is mistaken.  A magistrate judge acts "under the supervision of the district judge[s] when he accepts a referral, and th[e] authority for making final decisions remains at all times with the district judge." *Mathews v. Weber*, 423 U.S. 261, 270, 271 (1976) ("The magistrate may do no more than propose a recommendation . . . . The district judge is free to follow it or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew. The authority and the responsibility to make an informed, final determination, we emphasize, remains with the judge.")  In other words, notwithstanding a referral to a Magistrate Judge for a recommended ruling, the district court retains the "ultimate adjudicatory power over dispositive motions." *United States v. Raddatz,* 447 U.S. 667, 682 (1980) ("district court judge alone acts as the ultimate decisionmaker"); *see Thomas v. Arn,* 474 U.S. 140, 153 (1985) ("a district court may

refer dispositive motions to a magistrate for a recommendation so long as the entire process takes place under the district court's total control and jurisdiction ... and the judge exercise[s] the ultimate authority to issue an appropriate order")(internal quotation marks and citations omitted); *Cespedes v. Coughlin*, 956 F. Supp. 454, 463 (S.D.N.Y. 1997) ("the [district] judge is free to substitute his own view for that of the magistrate judge without any threshold finding whatsoever.")

Insofar as Stranger argues that the "transfer of the domain was without prior notice or opportunity to object," ECF No. 210 at 6, this argument is not well-founded. This specific relief was front and center in Cleer's motion for preliminary injunction. See ECF No. 12-1 at 21 ("Cleer respectfully requests that this Court enter a temporary restraining order and a preliminary injunction ordering that Stranger stop violating the MVA and Operating Agreement and that she immediately cease all use associated with the Cleer.tax domain name and transfer the Cleer.tax domain name to Cleer."); ECF No. 13 at 1 (Cleer's proposed order "[d]irecting Stranger and Optic Tax to relinquish control over the domain Cleer.tax (including, but not limited to, the email and website) to Cleer"). Cleer reiterated its request for the transfer during the evidentiary hearing. See ECF No. 126 at 20 (plaintiff's counsel stating that "we want Ms. Stranger to immediately turn over the Cleer.tax domain.... The transfer of that domain is critical and why we're seeking emergency relief, and to take any steps necessary to effectuate the Cleer.tax domain transfer back to Cleer."). And Cleer repeated its request for transfer in its post-hearing proposed findings of fact and conclusions of law. See ECF No 145 at 41 (requesting that the court order Stranger to return domain name). Based on this record, Stranger cannot claim surprise.

Stranger further argues that "the PI requires Defendant to permanently transfer the domain to Plaintiff" and that it was not the Court's role in deciding the motion for preliminary injunction to "permanently transfer the domain." ECF No. 210 at 7. But that is not what the Court did. The Court awarded preliminary, not final, relief. "[P]reliminary injunctions do not conclusively resolve the rights of parties on the merits[.]" *Lackey v. Stinnie*, 145 S. Ct. 659, 667, 221 L. Ed. 2d 63 (2025). *See also Asa v. Pictometry Intern. Corp.*, 757 F. Supp. 2d 238, 243 (W.D.N.Y.2010) ("[T]he court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, i.e., the situation that existed between the parties immediately prior to the events that precipitated the dispute."). Further, the Court ordered Cleer to file a bond to protect Stranger against any loss resulting from the preliminary injunction, and it has done se. ECF No. 215.

Stranger also argues that the Court-ordered deadline by which she was to transfer the domain was "unreasonably short" and "denied [her] due process." ECF No. 210 at 7. Specifically, she contends that the deadline "denied her a meaningful opportunity to be heard." *Id.* She has not, however, indicated whether she in fact has transferred the domain, although the Court surmises from her submission that she has not. Nor has she demonstrated any prejudice from the timeframe.

8.      Stranger also takes issue with my decision not to "compel Plaintiff to produce a list of covered clients." ECF No. 280 at 6. I addressed this issue previously, noting that "While a list might have been helpful to Stranger, Cleer is not required to provide such and she has not demonstrated that the absence of a list made it impossible for her to comply." ECF No. 208 at 19. Her single sentence objection presents no basis for reconsideration or modification. Stranger also states that I "failed to resolve her objections regarding the vagueness of the client

restrictions" but my ruling noted that Stranger "admits that the contractual provision at issue clearly states that the restriction is limited to clients I was in direct or indirect contact with for two years prior to leaving the company." ECF No. 152 at 6; ECF No. 208 at 21.

9.      Stranger argues that her pending appeal of the denial of her motion for a new hearing "undermines th[e] injunction's evidentiary foundation." ECF No. 210 at 8.

Five days after the conclusion of the preliminary injunction hearing, Stranger filed a motion for "mistrial" on the grounds that her attorney was ill during the second day of the evidentiary hearing and "physically incapable of providing competent representation." ECF No. 139 at 12. As relief, she requested that the Court "declare the preliminary injunction hearing held on January 29 and 30 null and void" and schedule a new hearing. *Id.* at 14. Judge Garcia denied the motion. ECF No. 185. Stranger did not file an objection of that ruling with the district court under 28 U.S.C. § 636 but rather filed an appeal with the Court of Appeals. ECF No. 187. The Court of Appeals subsequently notified Stranger that the order at issue "appears to be non-appealable" and ordered further briefing as to the "claimed basis for this Court's jurisdiction." ECF No. 192. In any event, the pending appeal does not warrant modifying or vacating the injunction.

10.     Stranger requests that the Court set a deadline by which the Plaintiff shall post the security bond the Court ordered. This request is moot because Cleer has posted the bond. See ECF No. 215.

11.     Stranger next argues that the "preliminary injunction fails to address [her] personal computer" which she provided to Plaintiff pursuant to the Court's December 5, 2024 order. ECF No. 210 at 9. But the motion for preliminary injunction did not seek relief as to

Stranger's personal computer and therefore it is unsurprising that the order addressing the motion did not address this computer.[1]

12.     Stranger requests that the Court stay the preliminary injunction pending her appeal (ECF No. 211) of my ruling on Cleer's motion for preliminary injunction.  ECF No. 210 at 12.  Under Federal Rule of Civil Procedure 62(c), the district court has the discretion to issue a stay pending appeal.  No stay is warranted because Stranger has not demonstrated any of the factors that courts consider when deciding whether to issue a stay pending appeal: "(1) 'whether the movant has shown a substantial possibility, although less than a likelihood, of success on appeal,' (2) 'whether the movant will suffer irreparable injury absent a stay,' (3) 'whether the opposing party will suffer substantial injury if a stay is granted,' and (4) 'the public interests that may be affected.'" *United States Sec. & Exch. Comm'n v. Ahmed*, No. 15-cv-675, 2020 WL 1502278, at *2 n.1 (D. Conn. Mar. 30, 2020) (quoting *Cooper v. Town of E. Hampton*, 83 F.3d 31, 36 (2d Cir. 1996)).  She has not shown a substantial possibility of success because none of the arguments she has presented for reconsideration has merit.  She has not shown irreparable injury because, as explained in my and Judge Garcia's rulings, the facts show that she has been profiting from the violations of her contractual obligations at Cleer's expense.  Further, and as explained in those rulings, Cleer would suffer substantial injury - including ongoing loss of its goodwill and domain name - if a stay was granted.  And the public interest plainly weighs in favor of protecting Cleer's contractual and intellectual property rights.

For these reasons, the defendant's "Motion for Miscellaneous Relief Seeking Modification or Reconsideration of Preliminary Injunction" (ECF No. 210) is DENIED.

IT IS SO ORDERED.

---

[1] I note that this issue was raised in a pending motion and in emails to chambers and will be addressed in a separate order in due course.

11

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                July 3, 2025