UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEER LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>CRYSTAL STRANGER AND OPTIC TAX, INC.,<br><br>    *Defendants*. | No. 3:24cv1496(MPS) |

### RULING ON PLAINTIFF'S MOTION FOR CONTEMPT

Cleer moves for an order finding Crystal Stranger and Optic Tax in contempt of the temporary restraining order issued by the Court on October 22, 2024. ECF No. 99. Specifically, Cleer alleges that the defendants sent three "blast" emails to Cleer clients. The emails contained links to Optic Tax's website in which various service packages and pricing were offered. For the reasons set forth below, I find that Defendant Stranger is in contempt.[1]

**I.  Factual Background**[2]

The TRO, issued on October 22, 2024, provided that "pending the preliminary injunction hearing scheduled for January 29, 2025:"

> It is HEREBY ORDERED that Stranger, and all of her agents, servants, employees, attorneys, and any other persons who are in active concert or participation with her are hereby RESTRAINED and ENJOINED from . . .
>
> 2. soliciting or otherwise contacting for purposes of developing business, entering into an agreement, or proposing or making any sale to any person who is or was a customer, supplier, or prospective customer or supplier of Cleer LLC.
>
> The parties shall confer in a good faith effort to enable Stranger and other persons working with her to contact customers and suppliers with whom Stranger had no direct

---

[1] Because the key factual allegations are not in dispute and neither party requested a hearing, no evidentiary hearing is required. *A Royal Flush, Inc. v. Arias*, 855 Fed. App'x 23, 26 (2d Cir. 2021).

[2] Familiarity with the underlying facts is assumed. A thorough recitation of the factual background is provided in the recommended ruling on the motion for preliminary injunction. See ECF No. 182.

or indirect contact or solicitation on behalf of Cleer LLC two years prior to her termination. Absent conferral and agreement, Stranger may not contact any customers or suppliers or prospective customers or suppliers of Cleer LLC or its predecessors.[3]

ECF No. 34 at 4.[4]  Neither party has provided any evidence of an "agreement" reached after "conferral."

The following facts are undisputed.  Stranger and Optic Tax sent a "blast" email on December 5, 2024 to a mailing list that included 226 Cleer clients.[5]  ECF No. 99-2.  The email advised the recipient not to miss "critical" end of year tax deadlines and discussed "essential deadlines that could impact your business."  *Id*.  The email had various embedded "weblinks," including a "Services" button, which if clicked, brought the reader to Optic Tax's website.  ECF No. 125-3.  The page displayed various services and stated "At Optic Tax we are experts in helping your startup succeed. Whether you just started your U.S. corporation or you need complex foreign subsidiary tax structuring and compliance, we are here to help!"  The email also had a "Read More" button which, when clicked, took the reader to a discussion of "Beneficial Ownership Information" (BOI) requirements and a pitch to utilize Optic Tax for BOI reporting and purchase its "package for filing FinCEN BOI for just $199."  ECF No. 125-4 at 6.

---

[3] Stranger did not move for reconsideration of the order.
[4] A two-day evidentiary hearing on the Cleer's motion for a preliminary injunction was held on January 29 and 30, 2025.  See ECF Nos. 118-119.  On March 20, 2025, Judge Garcia issued a recommended ruling.  ECF No. 182.  On April 2, 2025, Stranger filed an objection to the ruling.  ECF No. 195.  On June 17, 2025, I accepted and adopted the recommended ruling as modified.  With regard to the nonsolicitation provision, the Court enjoined Stranger from

> for a period of one year from March 20, 2025, directly or indirectly contacting, soliciting, accepting business from, or communicating the fact or circumstances of her resignation from or termination of employment with Cleer to any of Cleer's customers or prospective customers, with whom Stranger had direct or indirect contact or solicited on behalf of Cleer in the two (2) years prior to her termination under section 12 of the MVA[.]

ECF No. 208 at 24.
[5] During the preliminary injunction hearing, evidence was adduced that Stranger was in possession of this list and uploaded it to Optic Tax's mailing list.  ECF No. 126 at 209-10.

Defendants sent another email in December that also went to, among others, the 226 Cleer clients.[6]  ECF No. 125-5.  This email contained a discussion of "breaking news" regarding BOI enforcement.  The email concluded with a statement that "Optic Tax can help you with determining the value of still filing, or determining other complex filing rules for your company." ECF No. 125-5 at 5.  The email had a "Learn More" button which takes a reader to Optic Tax's website.  ECF No. 125-6.  The page displayed states "We can help you with whatever you need" and "Let our team help you navigate these new regulations and keep your business on the right track.  Contact us today to learn how we can assist you with your BOI reporting needs, we file for just $199." ECF No. 125-6 at 3, 5.

Defendants sent a third "blast" email in January 2025 to the 226 Cleer clients.[7]  ECF No. 125-7.  The subject was "Essential Tax Deadlines for Startups in 2025." *Id.*  It listed various deadlines and advised that "Staying ahead of these dates is crucial for compliance and financial health."  *Id.* at 3.  It had a link to a page displaying Optic Tax's services.  ECF No. 125-3.

## II.    Legal Standard

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."  *Shillitani v. United States*, 384 U.S. 364, 370 (1966).  "A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc*., 369

---

[6] The email in the record, ECF No. 125-5, does not bear a date but discusses a December 3, 2024 court decision and a December 5, 2024 notice of appeal that was filed with the result that while the litigation is ongoing, "reporting companies are not currently required to file their beneficial ownership information with Fin CEN."  ECF No. 125-5 at 4.

[7] The email, ECF No. 125-7, does not bear a specific date in January but instructs the recipient to "keep in mind" a January 15 deadline, among other, subsequent deadlines.  I therefore infer that the email was sent prior to this deadline.

F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). "It need not be established that the violation was willful." *Id.*

### III.    Discussion

Cleer has met its burden with respect to each of these three requirements, and I find that Stranger is in contempt of the temporary restraining order.

First, the terms of the underlying order at issue here are clear and unambiguous. The plain language of the order enjoins Stranger from "soliciting or otherwise contacting for purposes of developing business, entering into an agreement, or proposing or making any sale to any person who is or was a customer, supplier, or prospective customer or supplier of Cleer LLC." ECF No. 34 at 4. The order further stated that "Absent conferral and agreement, Stranger may not contact any customers or suppliers or prospective customers or suppliers of Cleer LLC or its predecessors." *Id.* The Second Circuit has defined a "clear and unambiguous order" as one that leaves "no uncertainty in the minds of those to whom it is addressed . . . who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (internal quotation marks omitted). That standard is satisfied here.

Second, the evidence of Stranger's noncompliance is clear and convincing. The clear and convincing evidence standard requires "a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002). Cleer has satisfied that standard. There is no dispute that Stranger knew Optic Tax's mailing list included 226 Cleer clients and notwithstanding sent an email blast to that mailing list. Tr. of Prel. Inj. Hrg, ECF No. 126 at 210; Stranger Dep., ECF No. 99-2 at 3. Stranger responds that even though she contacted Cleer's clients, she "lack[ed] ... intent to violate the TRO." ECF No. 123 at 1. She argues she did not violate the Court's order because the emails were not

4

solicitations but rather they were an "informational e-mail blast without any personalization toward the addressees" and were "a form of general advertising akin to a direct mailing postcard." ECF No. 123 at 2.  As such, the emails "did not fall within the explicit prohibition of the TRO." *Id. See also* ECF No. 150-1 at 5 (Stranger describing her emails as "purely educational"); *id.* at 12 ("The emails sent in December and January were not a request, they did not seek to obtain anything, they were solely sent in order to disseminate urgent information about changes to relevant deadlines.")[8]

Stranger's attempt to argue that she did not violate the order because the emails were "informational" is unavailing.  As indicated, the emails contained buttons inviting the reader to "Read More" and "Learn More," which directed the reader to Optic Tax's website in which it advertised various services and pricing.  And in any event, the plain text of the TRO prohibited her from "contacting" Cleer's customers absent conferral and agreement.

Finally, Stranger has not demonstrated a diligent attempt to comply with the temporary restraining order in a reasonable manner.  The transcript of the October 22, 2024 telephonic hearing on Cleer's motion for a temporary restraining order demonstrates that Stranger knew a list of Cleer clients somehow was "merged" into her list.  ECF No. 99-1 at 5.  The Court advised defense counsel that "the days of blast emails are over because -- unless, you know, she's willing to take a risk of a contempt order.  Because once I issue an order, it becomes an order of the Court."  ECF No. 99-1 at 7.  Notwithstanding, Stranger subsequently sent three separate emails to the mailing list which, as indicated, Stranger knew included Cleer clients.

---

[8] Although her submission at ECF No. 150 is titled as a "Motion for Leave to Leave Surreply," it does not appear on the docket as a pending motion, presumably because of the manner in which Stranger filed it on CMECF.  Stranger asserts that a surreply is needed "to address new arguments and evidence" that Cleer submitted in its reply brief.  I have reviewed her submission insofar as it responds to Cleer's reply brief, but I note that the surreply also raises new arguments – including that the TRO unconstitutionally restricts her "speech under the First Amendment." ECF No. 150-1 at 13-15.  This is improper. *See Raffone v. Weihe*, 2016 WL 2642213, at *1 n.1 (D. Conn. May 9, 2016) (new arguments raised in a surreply are "procedurally improper").

*Sanctions*

A "district judge, sitting in equity, is vested with wide discretion in fashioning a remedy" after a finding of civil contempt. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979). Civil contempt orders "may ... be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. Mine Workers*, 330 U.S. 258, 303–304 (1947). "Such sanctions may not be imposed as a purely punitive measure." *Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 657.

"[I]t is appropriate for the court to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the [court's order] is found to have been willful." *Egri v. Connecticut Yankee Atomic Power Co.*, 2003 WL 23645255, at *4 (D. Conn. June 30, 2003). "Contempt is willful where the contemnor has actual notice of the court's order, was able to comply with it, did not seek to have it modified, and made no effort to comply." *Id.* I find Stranger's contempt was willful and award Cleer the reasonable attorneys' fees and costs incurred in the making of this motion. *See United Rentals, Inc. v. Adams*, 2021 WL 4317055, at *2 (D. Conn. Sept. 23, 2021) ("The purpose of awarding attorneys' fees to the complaining party is to compensate fully that party for the trouble of prosecuting the contempt.")[9] Within 21 days, the plaintiff's attorneys shall file on the docket an affidavit attesting to Cleer's fees incurred in making this motion, with the requisite documentation. *See Ventures, LLC v. X-Ray Accessory Corp.*, 2021 WL 8993790, at *3 (D. Conn. May 28, 2021) ("The Second Circuit requires attorneys to submit

---

[9] I note that Stranger asserts that she "is financially drained by the ongoing litigation and simply can't make a full immediate payment of Cleer's attorney fees." ECF No. 123 at 2. But Stranger has not provided any evidence in support of her assertion. "A contemnor may be excused from the burden of a civil contempt sanction if it lacks the financial capacity to comply; but the contemnor bears the burden of production in raising such a defense." *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 658.

contemporaneous billing records, documenting the date, hours expended and nature of the work they performed.")

I decline to impose the additional sanctions - the fees incurred in obtaining the TRO and pursuing the preliminary injunction - requested. ECF No. 99 at 10.

## IV. Conclusion

For these reasons, the motion for contempt (ECF No. 99) is granted as set forth above.

IT IS SO ORDERED.

_____/s/_____  
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut  
         July 17, 2025