UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CLEER LLC,

    *Plaintiff*,

  v.

CRYSTAL STRANGER AND OPTIC TAX, INC.,

    *Defendants*.

No. 3:24cv1496(MPS)

**RULING ON MOTION TO DISMISS**

Optic Tax has filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). ECF No. 57. I referred the motion to Magistrate Judge Garcia, who issued a recommended ruling recommending that the motion to dismiss be denied because Optic Tax is the alter ego of Crystal Stranger, Optic Tax's President and CEO. ECF No. 181.[1] I have considered the parties' briefs and the recommended ruling. ECF Nos. 57, 77, 79, 85, 100, 181. For the reasons set forth below, I disagree that Optic Tax is an alter ego of Stranger and further conclude that Connecticut's long-arm statute does not reach Optic Tax. I therefore GRANT the motion to dismiss.

**I.    Legal Standard**

Where the district court decides a motion challenging personal jurisdiction based on the pleadings and affidavits, and does not conduct a full-blown evidentiary hearing, a plaintiff need only make a *prima facie* showing that personal jurisdiction exists by "pleading in good faith, legally sufficient allegations of jurisdiction." *Yih v. Taiwan Semiconductor Mfg. Co.,* 815 F. App'x 571, 572 (2d Cir. 2020). "[T]he plaintiff bears the burden of making a prima facie

---

[1] Stranger, not Optic Tax, filed an opposition to the recommended ruling (ECF No. 197). Cleer filed a response arguing that Stranger has no standing to object to the ruling. (ECF No. 199). I need not address these filings to resolve the pending motion to dismiss.

showing that the court has personal jurisdiction," *LaPrade v. Peyton*, 2014 WL 2871584, at *1 (D. Conn. June 24, 2014), and "may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *This, LLC v. HolaBelle, Inc.*, 2024 WL 2957037, at *2 (D. Conn. June 12, 2024) (citations and quotation marks omitted).

## II.   Discussion[2]

Cleer alleges that "Optic Tax is a Delaware corporation with its U.S. headquarters located in Wyoming." ECF No. 55 ¶ 6. Cleer argues that the Court has personal jurisdiction over Optic Tax because (1) it is the alter ego of Stranger, who has consented to jurisdiction here and/or (2) its conduct falls within Connecticut's long-arm statute, Conn. Gen. Stat. § 33-929(f), and the exercise of personal jurisdiction comports with the Due Process Clause.

### A.   Alter Ego[3]

Cleer contends that Optic Tax is the alter ego of Stranger, who has consented to personal jurisdiction in this court through the forum selection clause in the Membership Vesting Agreement.[4] See ECF No. 55 ¶ 16, ECF No. 77 at 4.

The parties agree that Delaware law, the law of Optic Tax's state of incorporation, governs. ECF No. 77 at 4: ECF No. 79 at 2. *See Graduation Sols., LLC v. Acadima, LLC*, 2018 WL 3637479, at *5 (D. Conn. July 31, 2018) (Connecticut choice of law principles generally

---

[2] I assume familiarity with the factual allegations and claims, which are set forth in the Recommended Ruling. *See* ECF No. 181. I cite only those portions of the record and the legal standards necessary to explain this ruling.

[3] Judge Garcia's recommended ruling concluded that under Delaware law, "Cleer has made a prima facie showing of personal jurisdiction under the alter ego theory." ECF No. 181 at 9. The recommended ruling did not address the other grounds that Cleer claimed that support personal jurisdiction. As noted earlier, Optic Tax did not file an objection to the recommended ruling. "Even in the absence of an objection, the district judge may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.' 28 U.S.C. § 636(b)(1)." *Marshall v. Nat'l Bank of Mtddlebury*, 2022 WL 1567445, at *3 (D. Vt. May 18, 2022).

[4] There is no dispute that the Court has personal jurisdiction over Stranger. "[I]n general, alter egos are treated as one entity for jurisdictional purposes." *Bank of Am. v. Apollo Enter. Sols., LLC*, 2010 WL 4323273, at *4 (S.D.N.Y. Nov. 1, 2010).

apply the law of the state of incorporation in determining alter ego liability): *see also Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (noting "parties' briefs assume that New York law controls, and such 'implied consent ... is sufficient to establish choice of law.'"); *Miramax Film Corp. v. Abraham*, 2003 WL 22832384, at *6 (S.D.N.Y. Nov. 25, 2003) (analysis regarding what law governed alter ego analysis "unwarranted" when parties assumed New York law controlled).

*Delaware Law*

Under Delaware law, "[d]isregard of the corporate entity is appropriate only in exceptional circumstances." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989). See also *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *4 (Del. Ch. Sept. 5, 2023) ("Delaware courts depart from [the] general rule [of corporate separateness] only in exceptional circumstances."); *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 505-06 (D. Del. 2003) ("Delaware courts apply the alter ego theory strictly.")

> [A]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functions properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.[26]

*Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008) (internal quotation marks omitted). "A decision to disregard the corporate entity generally results not from a single factor, but rather some combination of them, and an overall element of injustice or unfairness must always be present, as well." *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008) (internal quotation marks and citations omitted).

3

"The overarching issue is . . . whether the corporation is a sham and exist[s] for no other purpose than as a vehicle for fraud." *I Am Athlete, LLC v. IM EnMotive, LLC*, 2023 WL 8933592, at *5 (Del. Ch. Dec. 27, 2023) (internal quotation marks and citation omitted).  *See Altabef v. Neugarten*, 2021 WL 5919459, at *12 (Del. Ch. Dec. 15, 2021) ("persuading a Delaware Court to disregard the [corporate] entity is a difficult task. Doing so under an alter ego theory requires that the corporate structure *cause* fraud or similar injustice. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.") (footnotes and quotation marks omitted) (emphasis added).  "[T]he requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim." *EBG Holdings LLC*, 2008 WL 4057745, at *12.

Cleer argues that it has pled sufficient facts to support a finding of personal jurisdiction under an alter ego theory. ECF No. 77 at 5.  It points to its allegation that Stranger is the sole shareholder, CEO, and President of Optic Tax.  ECF No. 55 ¶ 12.  It also points to Optic Tax's website, which identifies Stranger as the "visionary force and owner of Optic Tax." https://optictax.com/press/ (last viewed June 17, 2025).  Cleer asserts that Stranger has used Optic Tax to unfairly compete with it and that the "company appears to be nothing more than a façade for Stranger to conduct her illegal activities." ECF No. 77 at 6.  According to Cleer, "Optic Tax is Stranger and Stranger is Optic Tax." *Id.*

Cleer offers only argument – no factual allegations or evidence – on this point.  And in any event, "[m]ere dominion and control . . . will not support alter ego liability. Rather, [t]he degree of control required is exclusive domination and control . . . to the point that [the entity] no longer ha[s] legal or independent significance of [its] own." *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.,* 685 A.2d 724, 729 n.2 (Del. Super. Ct. 1996) (internal quotation

4

marks and citation omitted.)  There is nothing in the record regarding the key factors that Delaware courts employ in considering whether to disregard the corporate form.  Cleer has put forward no factual allegations or evidence regarding Optic Tax's capitalization, its solvency, whether it observed corporate formalities, or whether Stranger misused Optic Tax's funds.  As a result, I find that Cleer has failed to make a prima facie showing that the Court may exercise personal jurisdiction over Optic Tax on an alter ego theory.  *See In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *48 (S.D.N.Y. Mar. 28, 2017) (even applying a "less onerous standard" to assess personal jurisdiction, Plaintiffs failed to make a *prima facie* showing that the Court may exercise personal jurisdiction over a defendant under an alter ego theory where the complaint did not address whether the defendant observed corporate formalities and other factors).

Nor can Cleer succeed on an alter ego theory under federal common law.  ECF No. 77 at 7.  Federal common law allows piercing of the corporate veil where the corporation is "merely a shell."  *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 276 (2d Cir. 2023).  Cleer has not adequately alleged that Optic Tax is such a shell.  *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *48 (S.D.N.Y. Mar. 28, 2017) (Courts consider various factors in determining whether a corporation is a "shell," such that the corporate form should be disregarded, including, *inter alia*, the failure to observe corporate formality, inadequate capitalization, and intermingling of personal and corporate funds), *aff'd in part, vacated in part, rev'd in part*, 61 F.4th 242 (2d Cir. 2023).

**B.    Conn. Gen. Stat. § 33-929(f)**

Cleer next argues that Optic Tax is subject to this Court's jurisdiction under

Connecticut's long-arm statute and the due process clause.[5]  Specifically, Cleer relies on subsections (f)(2) and (f)(4) of Connecticut General Statutes § 33-929:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state . . . whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:. . . (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; . . . or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f).

### a. § 33–929(f)(2)

Cleer argues that the Court has jurisdiction over Optic Tax under Conn. Gen. Stat. § 33-929(f)(2) because Optic Tax actively solicited business in Connecticut on its website. ECF No. 77 at 9. According to Cleer, Optic Tax's website "specifically targets Connecticut residents or anyone doing business in Connecticut" because its website contains a treatise on Connecticut tax laws and allows a reader to book a consultation. ECF No. 77 at 11-12; ECF No. 77-1 (printouts from website). As a result of its "active website," Cleer argues, Optic Tax is subject to long-arm jurisdiction under § 33-929(f)(2). ECF No. 77 at 13.

Section 33-929(f)(2) permits the exercise of personal jurisdiction over a foreign corporation when a cause of action arises "out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state." Conn. Gen. Stat. § 33-929(f)(2). "[M]ere solicitation of business within Connecticut does not provide the state's courts with

---

[5] "[A] Connecticut court may exercise personal jurisdiction over an out-of-state defendant if authorized by an applicable longarm statute and if doing so is consistent with due process." *Forsa v. LIB/GO Travel, Inc.*, 2014 WL 7462505, at *3 (Conn. Super. Ct. Nov. 18, 2014).

personal jurisdiction over a foreign corporation for all causes of action that could potentially arise against it." *Edgewell Pers. Care Co. v. O'Malley*, 2019 WL 4741553, at *6 (Conn. Super. Ct. Aug. 21, 2019).  The Connecticut Supreme Court, in construing the predecessor to § 33-929(f)(2), stated that "[a] plaintiff need only demonstrate that the defendant could reasonably have anticipated being hauled into court here *by some person who had been solicited* in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation." *Thomason v. Chem. Bank*, 234 Conn. 281, 296 (1995) (emphasis added).  The court explained that "a plaintiff's 'cause of action aris[es] ... out of ... business solicited in this state' if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut *by a solicited person* on a cause of action similar to that now being brought by the plaintiffs." *Id.* (emphasis added).  *See DeMatteo v. Walgreen E. Co.*, 2024 WL 3566182, at *4 (D. Conn. July 29, 2024) (same); *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc.*, 312 F. Supp. 2d 247, 256 (D. Conn. 2004) (same).

Here, Cleer alleges that Optic Tax solicited Cleer's customers and employees in breach of Stranger's restrictive covenants, improperly retained and used Cleer's domain name, and defamed Cleer.  See ECF No. 55, counts 3 (unfair competition) 4 (tortious interference), 5 (civil conspiracy), 7 (Lanham Act), 8 (cybersquatting in violation of the Lanham Act), 9 (violation of the Defend Trade Secrets Act), 10 (violation of the Connecticut Uniform Trade Secret Act), 11 (tortious interference with contract), and 14 (defamation).  Even if, as Cleer argues, Optic Tax's website was "active," Cleer does not argue, nor is it evident, that the causes of action in the complaint as to Optic Tax are the type that could reasonably be expected to arise from its solicitation and the type that might be brought by "a solicited person."  *See also Polylok, Inc. v.*

7

*Bear Onsite*, *LLC*, 2012 WL 13028558, at *4 (D. Conn. Aug. 20, 2012) (concluding it was not reasonably foreseeable that as a result of the information displayed on Bear Onsite's website, Bear Onsite could be sued in Connecticut by a Connecticut consumer on a cause of action similar to the Plaintiff's patent infringement action); *Edgewell Pers. Care Co. v. O'Malley*, 2019 WL 4741553, at *6 (Conn. Super. Ct. Aug. 21, 2019) ("the business that the defendant solicits in Connecticut is that of individual shaving product consumers. ... [T]he claims now being brought by the plaintiff—misappropriation of trade secrets, tortious interference with contractual relations, and two counts derivative of these claims—are not the type that could reasonably be expected to arise from a general consumer of shaving products. Accordingly, § 33-929(f)(2) does not provide this court with personal jurisdiction over the defendant."). Accordingly, Cleer has not met its burden of demonstrating personal jurisdiction under section 33-929(f)(2).[6]

b. § 33-929(f)(4)

Cleer next argues that the Court has jurisdiction over Optic Tax under Conn. Gen. Stat. § 33-929(f)(4) because it "sent an email from the Cleer.tax domain to solicit Cleer clients and disparage Cleer in Connecticut," the site of Cleer's "United States headquarters." ECF No. 77 at 13; ECF No. 55 ¶ 65 (alleging "Defendants used Cleer's "cleer.tax" domain to solicit Cleer's clients and disparage Cleer.")  Cleer asserts that "[i]n its solicitations, Optic Tax harmed Cleer in Connecticut by publishing false statements to individuals and entities on Cleer's client list." ECF No. 77 at 14.  Cleer further argues that Optic Tax intended "for these communications to reach (and they did reach) Cleer, which is headquartered in Connecticut." *Id.*

---

[6] Cleer states in its supplemental brief, ECF No. 100, that "[d]uring jurisdictional discovery, Cleer ... learned that Optic Tax sent email solicitations to at least two Cleer clients headquartered in Connecticut."  ECF No. 100 at 3. Cleer argues that this, coupled with Optic Tax's "active website," "is enough to satisfy C.G.S.A. § 33-929(f)(2)." *Id.* I disagree for two reasons.  First, this is merely a statement in a brief.  Cleer did not present this fact to the Court in an affidavit.  Nor was it alleged in the complaint.  The plaintiff has the burden of either alleging or proving personal jurisdiction – and unsupported statements in a brief do neither.  Second, even if I were to consider this information, as discussed above, it does not alter the fact that the causes of action in the complaint against Optic Tax are not the type that could reasonably be expected to arise from this solicitation.

8

Section 33-929(f)(4) "provides for jurisdiction over a foreign corporation when the claim arises from tortious conduct in Connecticut." *Hamann v. Carpenter*, 2017 WL 421646, at *8 (D. Conn. Jan. 31, 2017).  "Under the plain language of § 33-929(f)(4), a court need only inquire as to the place where the tort occurred because 'the statute requires tortious *conduct in this state*.'" *Amerbelle Corp. v. Hommell*, 272 F. Supp. 2d 189, 194 (D. Conn. 2003) (emphasis in original). "Therefore, jurisdiction may be founded on [Section] 33-929(f)(4) only if the tortious conduct occurred in Connecticut, regardless of whether the injury was felt in Connecticut from tortious activity occurring outside Connecticut." *Id.*

"False representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under [§ 33–929(f)(4)] ... because the alleged misrepresentations ... would have been made by way of communications sent to and received by [the plaintiff] from the [out-of-state] defendants in Connecticut." *Knipple v. Viking Commc'ns, Ltd.,* 236 Conn. 602, 610 (1996).

Neither the pleadings nor any supporting affidavits allege that Optic Tax's alleged defamatory remarks were sent to Connecticut.  Rather, Cleer merely asserts in its brief that Optic Tax "intended for these communications to reach (and they did reach) Cleer, which is headquartered in Connecticut."  ECF No. 77 at 14.  Apart from the absence of any factual allegations or evidence to support this assertion, the fact that communications about it that Cleer believes to be false came to its attention in Connecticut is not enough to confer jurisdiction under the statute.

In *Gen. Star Indemn. Co. v. Anheuser-Busch Companies, Inc*., 199 F.3d 1322 (2d Cir. 1999) (summary order), the plaintiff argued jurisdiction existed under § 33-929(f)(4) because the defendant's tortious "conduct in question was targeted at the state, because it was targeted at a Connecticut company that necessarily felt the sting of the defendants' actions in its home state."

9

*Id.* The Court rejected that argument, "as it would obliterate the longstanding distinction between long-arm statutes that reach tortious conduct in a given state and those that reach conduct which causes tortious injury in the state by action outside the state." *Id.*[7]

For these reasons, Cleer has failed to make a prima facie showing that personal jurisdiction exists under § 33-929(f)(4). I therefore need not reach the question of whether personal jurisdiction would comport with due process. *See Planned Furniture Promotions, Inc. v. City Antique, Inc.*, 2014 WL 5481438, at *7 (D. Conn. Oct. 29, 2014).

### C. Jurisdictional Discovery

In a footnote, Cleer requested jurisdictional discovery in the event the Court finds that it has not made a prima facie showing of personal jurisdiction. ECF No. 77 at 20 n.6. I have already permitted Cleer to engage in such discovery, ECF No. 86, and considered Cleer's supplemental filing, see note 6, *supra*. The new information acquired through jurisdictional discovery, which I have addressed (see note 6, *supra*) has not altered my conclusions. And Cleer has not shown that further jurisdictional discovery (see ECF No. 86) would be useful nor that it has made a "sufficient start toward establishing personal jurisdiction." *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F. Supp. 3d 287, 298 (S.D.N.Y. 2023).

### III. CONCLUSION

For the reasons discussed above, I conclude that the Court lacks personal jurisdiction over the defendant Optic Tax. Accordingly, I REJECT the recommended ruling (ECF No. 181) recommending that the motion to dismiss be denied and I GRANT the motion to dismiss (ECF No. 57).

Because the Court has granted the motion for preliminary injunction (ECF No. 208) and

---

[7] Cleer did not argue that the email solicitations it mentioned in its supplemental brief constituted tortious conduct under § 33-929(f)(4).

granted Cleer's motion for contempt (ECF No. 229), the Court feels compelled to add this admonition. Ms. Stranger is reminded that even though the TRO no longer applies in this case, the injunction issued by this Court does. The preliminary injunction applies not only to Ms. Stranger but also to her employees, contractors, agents, companies (including but not limited to Optic Tax) and all persons in active concert or participation with, through, or under her. ECF No. 208; Fed. R. Civ. P. 65(d)(2). *See also NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013) ("Every injunction issued by a district court automatically forbids others ... from assisting in a violation of the injunction.").

IT IS SO ORDERED.

                                                    _____/s/_____
                                                    Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                 July 29, 2025