UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEER LLC (F/K/A GREENBACK BUSINESS SERVICES LLC) D/B/A CLEER TAX,<br><br>Plaintiff,<br><br>v.<br><br>CRYSTAL STRANGER, et al.,<br><br>Defendants. | Case No. 3:24-cv-01496-MPS<br>Judge Michael P. Shea<br>Magistrate Judge Maria E. Garcia<br><br><br><br>**PLAINTIFF CLEER LLC'S OPPOSITION TO DEFENDANT CRYSTAL STRANGER'S RULE 11 MOTION FOR SANCTIONS; AND REQUEST FOR SANCTIONS** |

I. **INTRODUCTION**

Defendant Crystal Stranger's ("Stranger") Rule 11 motion ("Motion") was not made in good faith. It is a retaliatory stunt built on misrepresentations, filed in bad faith, and designed to deflect attention from Stranger's repeated sanctionable conduct.

First, the Motion should be denied because Cleer's Second Motion For Immediate Temporary Restraining Order And Preliminary Injunctive Relief ("Second TRO Motion")—the target of Stranger's Rule 11 Motion—had a strong likelihood of success. It was based on significant, indisputable direct and circumstantial evidence of Stranger and former Defendant Optic Tax Inc.'s ("Optic Tax") attempt to unfairly compete against Cleer through the newly formed entity, Optic Tax Global Inc. ("Optic Tax Global"). Optic Tax Global, which appears to be engaged in the same business as Optic Tax and is using essentially the same employees, name, and branding, was suspiciously formed days after Magistrate Judge Garcia issued her Recommended Ruling granting Cleer a preliminary injunction against Stranger and Optic Tax. **Stranger claims**

1

**that she had no involvement in Optic Tax Global. Yet, notably absent from Stranger's Rule 11 Motion is any explanation of how or why Optic Tax's website (which Stranger owns and controls) was linked to and referenced in Optic Tax Global's website (and vice versa).** Nor does she provide any explanation for why Optic Tax Global's website says it is controlled and managed by Optic Tax. Nor does she provide any explanation for why Optic Tax's alleged former employees are involved in Optic Tax Global and "coincidentally" now working for a company that does the same thing as Optic Tax, has a very similar name, and operates out of South Africa. Nor does Stranger provide any explanation for why she is allowing Optic Tax Global—a competing company—to operate using Optic Tax's employees, name, and likeness. While Stranger chalks this all up to a giant coincidence, there is no reasonable or legitimate explanation, though Cleer is eager to see what she manufactures.

Second, the Court should impose sanctions against Stranger for filing a frivolous Rule 11 Motion in violation of Rule 11 and award Cleer attorneys' fees and costs incurred defending against the same. The Motion intentionally wastes the Court's and parties' time and resources, is indisputably refuted by the evidence before the Court, abuses the purpose of Rule 11, and warrants sanctions against Stranger. Cleer cited to significant direct and circumstantial evidence in its Second TRO Motion linking Stranger and Optic Tax to Optic Tax Global, all of which Stranger knew to be true and accurate when she filed the Rule 11 Motion.

The objective frivolousness of Stranger's Motion is amplified by the fact that it was filed for the improper purpose of harassing undersigned counsel and driving up attorneys' fees for Cleer—an unethical initiative she has also pursued off the Court's docket by emailing Robert Hicks, Firmwide Chairman and Managing Partner of Taft Stettinius & Hollister LLP, accusing

undersigned counsel of the same meritless, unethical conduct that has been the subject of Stranger's many rejected filings in this Court.

For the reasons below, Stranger's Motion should be denied, and the Court should find Stranger in violation of Rule 11 for filing the Motion.

## II.  FACTUAL BACKGROUND

### A.  Cleer Obtained a Temporary Restraining Order and Recommended Ruling Granting Its Motion for Preliminary Injunction.

On September 24, 2024, Cleer moved for a TRO and Preliminary Injunction. (Doc. 13). On October 22, 2024, the Court entered a TRO enforcing the Membership Vesting Agreement's ("MVA") nonsolicit provision against Stranger. (Doc. 34). The TRO specifically restrained and enjoined Stranger from:

1. soliciting or otherwise contacting for purposes of discussing employment opportunities any person who is or was employed by Cleer LLC or any of its predecessors;

2. soliciting or otherwise contacting for purposes of developing business, entering into an agreement, or proposing or making any sale to any person who is or was a customer, supplier, or prospective customer or supplier of Cleer LLC.

(Doc. 34 at 4).

On March 20, 2025, the Court entered its Recommended Ruling granting Cleer's Motion for Preliminary Injunction enforcing the nonsolicit and noncompete provisions of the Operating Agreement and MVA against Stranger and Optic Tax. (Doc. 182). The recommended Preliminary Injunction specifically restrains and enjoins Stranger and Optic Tax from:

1. Pursuant to the OA, competing against Cleer until August 9, 2025, including without limitation by offering tax preparation and bookkeeping services;

2. Pursuant to the OA and MVA, for a period of one year from entry of this Recommended Ruling and Order, soliciting, hiring, or otherwise contacting for purposes of discussing employment or contractor opportunities any

3

      person who is or was working for Cleer LLC or any of its predecessors in any capacity;

3. Pursuant to the OA and MVA, for a period of one year from entry of this Recommended Ruling and Order: (i) soliciting, (ii) accepting business from, (iii) continuing to provide services for, or (iv) otherwise contacting for purposes of developing business, entering into an agreement, or proposing or making any sale to any person who is or was a customer, supplier, or prospective customer or supplier of Cleer LLC. The parties shall confer in a good faith effort to enable Stranger and other persons working with her to contact customers and suppliers with whom Stranger had no direct or indirect contact or solicitation on behalf of Cleer LLC two years prior to her termination. Absent conferral and agreement, Stranger may not contact any customers or suppliers or prospective customers or suppliers of Cleer LLC or its predecessors.

4. Using or disclosing or sharing any Confidential Information or trade secret information of Cleer. Defendants are further instructed to confer with counsel for Cleer to ensure the permanent deletion of Cleer's confidential and trade secret information within fourteen (14) days of the Recommended Ruling and Order.

5. Using, operating and maintaining the Domain Name, Cleer.tax;

6. Transferring the domain names to third parties without the Court's consent prior to a permanent resolution of this action on the merits . . . .

(Doc. 182 at 34).

**B.   Stranger and Optic Tax Attempt to End-Run the Recommended Ruling and Contractual Obligations.**

On April 6, 2025—17 days after the Recommended Ruling—Optictaxglobal.com was registered as a domain.[1] The "Registrant Contact" name is redacted but includes a mailing address in Gauteng, South Africa and is linked to a domain server located in South Africa:

---

[1] GoDaddy, WHOIS Results for OpticTaxGlobal.com, https://www.godaddy.com/whois/results.aspx?domain=optictaxglobal.com (last visited June 15, 2025).

| Name | OPTICTAXGLOBAL.COM |
|---|---|
| Registry Domain ID | 2972848941_DOMAIN_COM-VRSN |
| Registered On | 2025-04-06T07:58:54Z |
| Expires On | 2026-04-06T07:58:54Z |
| Updated On | 2025-05-19T02:24:16Z |
| Domain Status | client transfer prohibited |
| | client update prohibited |
| Name Servers | NS.DNS1.CO.ZA |
| | NS.DNS2.CO.ZA |
| | NS.OTHERDNS.COM |
| | NS.OTHERDNS.NET |

**Registrant Contact**

| Name | REDACTED REGISTRANT |
|---|---|
| Organization | – |
| Phone | – |
| Fax | – |
| Email | https://tieredaccess.com/contact/c5a93643-40ae-4d61-97f1-c44984a187f4 |
| Mailing Address | Gauteng |

It is no coincidence that Ms. Stranger also lives in South Africa. (Doc. 138 at 2) ("My contact information is as follows: Crystal Stranger[,] 33 Rooibok St. Scarborough, WC 7975, South Africa . . . .").

On April 30, 2025, Optic Tax Global filed a Certificate of Incorporation with the Delaware Secretary of State. (*See* Doc. 207-1 at 4–7). The initial director of Optic Tax Global is named as David Kayisuti Mutetwa, who, upon information and belief and assuming is an actual person, resides near or has ties to Gauteng, South Africa, and is associated with Stranger. (*Id.*).

Optic Tax Global is competing against Cleer. For example, under the "services" tab of Optictaxglobal.com, the following bookkeeping and tax preparation services are offered:

5



(*Id.* at 1–2, 9).

Optic Tax Global and Optic Tax, which is controlled by Stranger, are affiliated companies. The Privacy Policy for Optic Tax Global states that it is operated by Optic Tax[2]:

> We value your privacy very highly. Please read this Privacy Policy carefully before using the OpticTax.com Website (the "Website") operated by Optic Tax Inc., a(n) Corporation formed in Delaware, United States ("us," "we," "our") as this Privacy Policy contains important information regarding your privacy and how we may use the information we collect about you.

A person looking to exercise rights under the Privacy Policy is directed to contact Leonor Da Costa—a former Cleer supplier Stranger poached to work for Optic Tax:

> **Exercising your rights**
>
> You may exercise the rights specified above by submitting a consumer request to:
>
> Leonor Da Costa
> Customer Success Lead
> support@optictaxglobal.com
> 34 Brier Ave, Unit #559, Wilmington, DE 19805, USA

(*Id.* at 1–2, 13).

---

[2] https://optictaxglobal.com/privacy-policy-2/ (last visited June 16, 2025)

Most concerning, the "Portal Login" for Optictax.com (which has been shut down since Cleer's filing) took clients directly to the Optic Tax Global client portal which *__states that it is managed by Optic Tax Global__*:



(*Id.* 1–2, 11).

Since Cleer filed the Second TRO Motion, the client portal account links between OpticTax.com and OpticTaxGlobal.com have been removed.

### C. After Filing The Second Motion For TRO, Cleer Discovered Another Critical Fact Further Linking Optic Tax To Optic Tax Global.

Rajah Rey Relveria is a former Cleer supplier. When Stranger weaponized Optic Tax in September 2024 to compete directly with Cleer, she immediately poached Mr. Relveria. (*See* Ex. A). On September 9, 2024, Mr. Relveria formally left Cleer and joined Optic Tax as a Junior Tax

Accountant. (*See* Ex. B). Mr. Relveria now serves as the "Interim CEO" of Optic Tax Global—a position he has held since Optic Tax Global's formation on April 30, 2025. (*See* Ex. C). Stranger expects the Court to believe this is all coincidence.

> **D.     Stranger's Rule 11 Motion Cites To A LinkedIn Conversation With The "Owner" Of Optic Tax Global, Which Appears Staged And Ignores The Direct Evidence Linking Optic Tax To Optic Tax Global.**

Throughout this litigation, Stranger has aggressively fought against transferring the Cleer.tax domain back to Cleer—so much so that she was recently held in contempt. For an individual who evidently cares so deeply about intellectual property rights, she appears to have no objection to David Mutetwa and Optic Tax Global using a substantially similar name as her company, competing against Optic Tax, linking their website to Optic Tax's website, informing the public that the companies are affiliated, and using Optic Tax's employees that she solicited away from Cleer. (Doc. 228-5).

Though "Mr. Mutetwa" built a business that blatantly copied hers and hired away her employees, including Mr. Relveria who now serves as Optic Tax Global's "Interim CEO," Stranger congratulated him without objection and did not challenge any of Mr. Mutetwa's actions—behavior irreconcilable with the combative approach she has adopted in this litigation. (*Id.*). She did not even question how he came up with the substantially similar name of his alleged unaffiliated company, how and why the websites were linked, how and why he had hired away her employees, or why Optic Tax Global's website says it is operated by Optic Tax. The only logical explanation is because Stranger already knew the answer to all of those questions.

**III.    LEGAL ARGUMENT**

> **A.     Stranger's Motion Is Meritless Because Cleer's Second TRO Motion Was Not Frivolous—It Had A Strong Chance Of Success When Cleer Filed It.**

8

"The legal standard for sanctions under Rule 11(b)(2) of the Federal Rules of Civil Procedure requires that a legal contention 'must be or border on the frivolous.'" *Chien v. Barron Cap. Advisors, LLC*, No. 3:09-CV-1873 CSH, 2011 WL 6004580, at *1 (D. Conn. Dec. 1, 2011), *aff'd*, 509 F. App'x 79 (2d Cir. 2013) (quoting *Healey v. Chelsea Resources Ltd.,* 947 F.2d 611, 626 (2d Cir.1991)). "'[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear . . . that there is no chance of success . . . .'" *Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 830 (2d Cir.1992) (quoting *Mareno v. Rowe,* 910 F.2d 1043, 1047 (2d Cir.1990)). "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387 (2d Cir. 2003) (quotation and citation omitted) (quoting *Margot v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000)).

On March 20, 2025, Magistrate Judge Garcia entered a Recommended Ruling denying Optic Tax's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 181). That same day, Magistrate Judge Garcia entered a Recommended Ruling granting Cleer's Motion for Preliminary Injunction against Stranger and her agents, which includes Optic Tax. The Recommended Ruling also included enforcement of the non-compete restrictive covenant. (Doc. 182). Shortly thereafter, Optic Tax Global was formed.

Based on objective, direct evidence of Optic Tax's link to Optic Tax Global (and thus Stranger's link to Optic Tax Global), Cleer filed the Second TRO Motion against Stranger and Optic Tax to, among other things, enjoin their unfair competition with Cleer through Optic Tax Global. (Doc. 207). Such direct evidence included a statement in Optic Tax Global's privacy policy that its website is operated by Optic Tax Inc. (Optic Tax Global's privacy policy still includes this disclosure); the "Portal Login" on Optictax.com directly opening the Optic Tax Global client portal which stated it is managed by Optic Tax Global (an apparent slip up that has

9

since been removed); and Optic Tax Global's website directing users looking to exercise their rights under its Privacy Policy to Leonor Da Costa—a former Cleer supplier Stranger poached to work for Optic Tax (another apparent slip up that has since been removed).

There also exists significant circumstantial evidence linking Stranger to Optic Tax Global beyond the similarly of its name and services to Optic Tax, operation out of South Africa, and the close temporal proximity of its formation to Magistrate Judge Garcia's entry of her Recommended Ruling granting Cleer's Motion for Preliminary Injunction against Stranger and Optic Tax. On his LinkedIn page, former Cleer supplier Rajah Rey Relveria, who Stranger unlawfully poached from Cleer to Optic Tax, now lists himself as "Interim CEO" of Optic Tax Global—a position he has held from April 2025 (Optic Tax Global's formation) to present. (*See* Ex. C). Then there is the artificial-sounding dialogue between Stranger and "Mr. Mutetwa," in which she congratulates rather than admonishes him for stealing her business's name, website client portal, business model, and workers. (*See* Doc 228-5).

Undersigned counsel conducted a reasonable inquiry consistent with Rule 11 by spending considerable time finding and confirming the validity of the direct and circumstantial evidence discussed above. The evidence speaks for itself. Had the Court denied Optic Tax's Motion to Dismiss and kept Optic Tax a Defendant in this case, Cleer is confident that its Second TRO Motion had a strong likelihood of success based on the substantial concrete, nonspeculative evidence it cited. Nothing about the content of Cleer's Second TRO Motion was frivolous.

For these reasons, Stranger's Motion is meritless and should be dismissed.

**B.     Stranger's Rule 11 Motion Violates Rule 11 and Sanctions Should be Entered Against Stranger.**

"[T]he filing of a motion for sanctions is itself subject to the requirements of Rule 11 and can lead to sanctions." *Bulldog NY LLC v. Pepsico, Inc.*, No. 3:08CV1110(AWT), 2010 WL

11562080, at *1 (D. Conn. June 17, 2010) (citing Fed. R. Civ. P. 11(c)(1)(A)). And "'[a] party defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions.'" *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (quoting *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir.2001)).

As one court in the Second Circuit has noted, "in fraud on the Court cases, something that looks like 'a duck . . . walk[s] and talk[s] like a duck,' is likely to be a duck." *Colella v. Republic of Argentina*, No. 04 CIV. 2710 (LAP), 2020 WL 4700930, at *7 (S.D.N.Y. Aug. 13, 2020), *aff'd*, No. 20-3031-CV, 2021 WL 5895783 (2d Cir. Dec. 14, 2021) (quoting *Othman v. City of Chicago*, No. 11-CV-5777, 2019 WL 556710, at *4 (N.D. Ill. Feb. 12, 2019)). Stranger's Motion is objectively unreasonable and replete with misrepresentations at odds with the actual evidence Cleer cited above and in its Second TRO Motion.

The standards for Rule 11 sanctions discussed above are met here. Cleer thus requests that the Court impose a penalty on Stranger payable to the Court to deter her and similarly situated litigants' future violations and any nonmonetary directives the Court deems just and appropriate under the circumstances. Cleer also requests that the Court award Cleer all attorneys' fees and costs incurred in defending against Stranger's frivolous Rule 11 Motion.

### C. Stranger's *Pro Se* Status Does Not Give Her Carte Blanche To Harass Counsel And Try To Undermine The Legal Process.

Stranger's Rule 11 Motion is the latest in a long list of misconduct for which there is no place in federal court. Her status as a *pro se* litigant is no excuse. *Durant v. Traditional Invs., Ltd.*, 135 F.R.D. 42, 49 (S.D.N.Y. 1991) ("Although [w]hen a party appears *pro se*, it must be factored into the reasonableness standard, . . . *pro se* filings do not serve as an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless

11

litigation, and abuse already overloaded court dockets." (internal quotation marks and citations omitted)).

Since proceeding *pro se* in this case, Stranger has inundated this Court with numerous frivolous filings and appealed its unappealable orders. Most concerning, however, is the unethical and harassing conduct in which she engages off the Court's docket. On June 23, 2025, Stranger sent an email to Robert Hicks, Firmwide Chairman and Managing Partner of Taft Stettinius & Hollister LLP ("Firm"), in an evident attempt to have the Firm discipline or discharge Attorney Musekamp to gain some kind of tactical edge in this case. (*See* Ex. D). Her email recycles the same rejected arguments she has made in this Court and goes well beyond zealous advocacy.

For these reasons, too, Cleer urges the Court to sanction Stranger for her misconduct.

## IV.  CONCLUSION

For all the above reasons, the Court should deny Stranger's Rule 11 Motion. The Court should also impose on Stranger all sanctions it deems just and appropriate under the circumstances, including a penalty payable to the Court and an award of all attorneys' fees and costs Cleer incurred in defending against the Motion, for filing a Rule 11 Motion that violates Rule 11.

Respectfully submitted,

*/s/ George B. Musekamp*
George B. Musekamp (PHV)
Evan H. Cohn (PHV)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Tel:  (513) 381-2838
Fax: (513) 381-0205
gmusekamp@taftlaw.com
ecohn@taftlaw.com

Michael S. O'Malley, Esq. (CT31784)

>Ogletree, Deakins, Nash,
>Smoak & Stewart P.C.
>281 Tresser Boulevard
>Stamford, CT 06901
>Tel: (203) 969-3109
>Michael.O'Malley@ogletree.com
>
>*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 5, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all counsel of record.


>*/s/ George B. Musekamp*