IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEER LLC | : |
| | : |
| v. | : 3:24-cv-1496-MPS |
| | : |
| CRYSTAL STRANGER et al. | : DEFENDANT'S REPLY IN SUPPORT |
| | : OF RULE 11 MOTION FOR |
| v. | : SANCTIONS AND OPPOSITION TO |
| | : PLAINTIFF'S CROSS-REQUEST FOR |
| DAVID and CARRIE McKEEGAN | : SANCTIONS |
| | : |

Defendant Crystal Stranger respectfully submits this reply in support of her Motion for Sanctions under Rule 11 (ECF No. 231) and in opposition to Plaintiff Cleer LLC's opposition and cross-request for sanctions (ECF No. 245). For the reasons stated herein, Plaintiff's cross-request for sanctions should be denied, and Defendant's Rule 11 motion should be granted.

**I. INTRODUCTION**

Rather than engaging with the objective legal standards governing Rule 11, Plaintiff's opposition relies on hyperbole and misdirection to obscure the baseless nature of its underlying motion. Defendant's Rule 11 Motion was filed in good faith, with a reasonable basis in both law and fact, and only after compliance with Rule 11's safe harbor requirement, including notice by email and letter, neither of which Plaintiff responded to. By contrast, Plaintiff's retaliatory cross-motion seeks to punish protected litigation conduct and further burden this Court with unnecessary disputes.

In light of recent concerns raised by the Court regarding excessive motion practice, Defendant submits that Plaintiff's escalating accusations, unsupported by admissible evidence,

1

are not only meritless but risk compounding the very strain on judicial resources that Plaintiff claims to oppose.

## II. CLEER'S SECOND TRO MOTION WAS OBJECTIVELY UNREASONABLE AND LACKED A FACTUAL BASIS

While Plaintiff claims its Second TRO Motion had a "strong chance of success," this assertion is undermined by the actual outcome, the motion was denied. A denial alone does not establish frivolousness, but when a motion is premised on speculative inference rather than admissible evidence, and when the factual assertions are materially misleading or unverified, Rule 11 relief becomes appropriate.

Plaintiff's filings made the following flawed or unsupported claims:

A. **Website Attribution:** Plaintiff relied on an outdated privacy policy and the existence of prior hyperlinks to assert that Optic Tax Inc. and Optic Tax Global were the same entity, despite Ms. Stranger's sworn denials and publicly accessible evidence to the contrary.

B. **Personnel Links:** Plaintiff points to the prior work history of a third-party contractor and extrapolates this to imply Ms. Stranger's ongoing control over separate entities, ignoring the basic reality that individuals may move between companies or act independently.

C. **Innuendo and Speculation:** Plaintiff repeatedly presents coincidental facts (e.g., shared geography or domain timing) as conclusive evidence of wrongdoing without establishing a factual foundation or identifying any direct act by Ms. Stranger in violation of the injunction.

The standard for Rule 11 is "objective reasonableness," and a party may not proceed with serious allegations against an individual based solely on inference and narrative framing. The

Second Circuit has repeatedly held that Rule 11 is implicated where a claim "has no chance of success and no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (quoting *Caisse Nationale de Credit Agricole v. Valcorp*, 28 F.3d 259, 264 (2d Cir. 1994)).

### III. CLEER'S SPECULATIVE CLAIMS REGARDING WEBSITE LINKS AND BRANDING CANNOT SUPPORT SANCTIONS

Plaintiff's assertion that Defendant is responsible for the actions of Optic Tax Global rests almost entirely on the presence of superficial web references, such as a privacy policy stating the site is "operated by Optic Tax," or the use of the phrase "managed by Optic Tax Global," and on the similarity of company names. But these inferences are both legally and factually insufficient to establish control and certainly do not support a reasonable basis for bringing a motion against a nonparty for injunctive relief.

No registered trademark or protected branding was ever claimed by Optic Tax Inc. or registered by Ms. Stranger for this company. The logo, company name, and stylistic elements are generic and could easily be copied by any third party, just as millions of websites mimic the appearance of others without having any corporate relationship. Ms. Stranger has never claimed any enforceable intellectual property interest in the branding that Cleer now argues was misappropriated, and that is not at issue within this case.

The claim that "Optic Tax Global is run by Optic Tax" is derived from informal text in a web portal, not from corporate records, financial connections, or controlling ownership. Plaintiff does not cite a single legal document (e.g., shareholder agreement, officer/director listing,

contract, or financial trail) to support its theory that Optic Tax Inc. or Ms. Stranger has any managerial or economic interest in Optic Tax Global.

Plaintiff points to the phrase "run by Optic Tax" but this could be shorthand branding or a coincidental expression. If a third-party business calls itself "Amazon Solutions" and writes on its site that it "works with Amazon," that does not establish a legal relationship with Amazon Inc. Courts routinely reject such vague marketing language as a basis for liability.

Plaintiff also disregards the possibility that Optic Tax Global, a Delaware entity, was created by individuals unconnected to Ms. Stranger but inspired by or attempting to leverage brand confusion. The Internet is replete with copycat businesses, and nothing in the record shows Ms. Stranger authorized, encouraged, or directed the formation or operation of Optic Tax Global.

Finally, Ms. Stranger expressly disavowed involvement and presented evidence (including a LinkedIn exchange) showing Optic Tax Global to be operated by another individual who has never been affiliated with Cleer or Ms. Stranger. Plaintiff dismisses this evidence as "staged" without any factual basis for that claim.

Plaintiff's theory rests, once again, not on facts, but on suspicion and mischaracterized web content. This does not meet the Rule 11 standard for a good-faith legal filing. It does not even meet the plausibility threshold under Rule 12. Thus Plaintiff is showing in their reply exactly why sanctions related to Rule 11 are warranted here.

### IV. CLEER MISREPRESENTS THE TIMING AND FABRICATES A CONNECTION WITHOUT EVIDENCE

Plaintiff attempts to portray the formation of Optic Tax Global as a deliberate attempt to circumvent the Court's March 20, 2025, Recommended Ruling. That narrative is simply false.

The decision to dissolve Optic Tax Inc. was a direct and good-faith response to the Recommended Ruling, not an effort to create or transition into a new entity. As Plaintiff is well aware, Ms. Stranger did not form Optic Tax Global, is not a director, officer, or shareholder of that entity, and has never authorized or approved its creation or operations.

Plaintiff's brief states that "David Kayisuti Mutetwa... is associated with Stranger," yet offers no factual support for that assertion, not a message, not a contract, not an affidavit, and not a single piece of evidence connecting Ms. Stranger to this individual. That omission is telling. Ms. Stranger does not know Mr. Mutetwa, has never communicated with him outside of the one LinkedIn message, and has no knowledge of his background or affiliations. Plaintiff's repeated assertion of "association" is therefore not only unsupported, but reckless.

The same team members who previously left Cleer and ultimately joined Optic Tax appear to have taken independent action again, this time without involving Ms. Stranger at all. Inferring liability once again from the independent decisions of others, without evidence of control or participation, runs contrary to both Rule 11 and basic principles of personal responsibility.

## V. PLAINTIFF MISUSES OLD DISCOVERY MATERIALS TO SUPPORT AN UNSUBSTANTIATED NARRATIVE

In a further attempt to fabricate a connection between Ms. Stranger and Optic Tax Global, Plaintiff relies on internal emails and contractor agreements from September 2024, produced in discovery related to Optic Tax Inc., which has since been dismissed from this litigation. Plaintiff presents no legal basis to impute the conduct or internal documents of that

dismissed entity to Optic Tax Global, an entirely separate company that Ms. Stranger had no role in forming, managing, or operating.

Even if the documents had probative value at the time they were produced, they predate the formation of Optic Tax Global by more than six months. Plaintiff offers no evidence that Ms. Stranger authorized, encouraged, or participated in that formation. Instead, it asks the Court to infer that because an individual named Rajah Rilveria previously worked with Optic Tax Inc., his current title in a company unrelated to Ms. Stranger somehow establishes her liability.

That argument is wholly speculative. Ms. Stranger was unaware that Mr. Rilveria had any involvement in a new company until Plaintiff raised it in their objection filing here. She certainly did not designate or approve him as any "CEO," a role for which he was plainly unqualified based on her experience working with him. Plaintiff has not even established that the "Optic Tax Global" listed on his LinkedIn profile is the same legal entity it refers to in its filings, nor has it presented any verified documentation from Optic Tax Global itself.

This is not "direct evidence", it is storytelling masquerading as fact, and it falls far short of Rule 11's requirements, once again.

## VI. PLAINTIFF IMPROPERLY SHIFTS THE BURDEN OF PROOF TO EXCUSE ITS LACK OF EVIDENCE

Plaintiff's opposition once again improperly attempts to shift the burden of proof onto Defendant, suggesting that because Ms. Stranger did not explain a third party's actions, she must somehow be responsible for them. This is not how Rule 11, or the law, works. It was Plaintiff's responsibility to investigate and verify facts before accusing Ms. Stranger of violating a court order, not Defendant's obligation to disprove unsubstantiated inferences after the fact.

For example, Plaintiff faults Defendant for not "explaining" why a third-party website linked to Optic Tax's site used overlapping branding. But Plaintiff fails to provide any evidence that Ms. Stranger caused, authorized, or even knew of those links before they were discovered. Websites and metadata can be easily cloned, copied, or manipulated by others, particularly when there is no protected IP or registered trademark involved. Plaintiff also accuses Defendant of "allowing" former Optic Tax contractors to work for a third party, as if Ms. Stranger retains legal control over their future employment. She does not.

Rule 11 sanctions are not a vehicle to punish a party for failing to guess at or negate every inference opposing counsel wishes to make. They exist to deter frivolous and factually unsupported claims, and Plaintiff's efforts to reverse the burden only confirm that it cannot support its own.

## **VII. DEFENDANT'S RULE 11 MOTION WAS FILED IN GOOD FAITH, AFTER PROPER NOTICE**

Plaintiff attempts to paint Defendant's Rule 11 motion as a "retaliatory stunt," but the record contradicts that characterization. Defendant served the Rule 11 motion in accordance with Rule 11(c)(2)'s safe harbor requirements and provided a detailed explanation of why Plaintiff's Second TRO motion lacked evidentiary and legal support, giving Plaintiff sufficient time to withdraw the motion before involving the court. However, none of the three separate counsel for Plaintiff which were notified responded to any of the numerous emails Defendant sent prior to filing her motion. The filing was not retaliatory, but a direct response to a motion that accused Ms. Stranger of violating an injunction based entirely on inference and speculation.

Plaintiff implies that the timing was suspect, but Ms. Stranger did not wait for the Court to rule before asserting her concerns. The Rule 11 motion was served well in advance of the Court's denial of the Second TRO motion, further demonstrating that it was made on the basis of objective unreasonableness, not hindsight.

Moreover, opposing counsel's reliance on unrelated grievances, such as Ms. Stranger's decision to raise ethical concerns with Taft's managing partner, underscores the weakness of its legal position by attempting to deflect from their own lack of evidence. Rule 11 does not prohibit litigants from raising legitimate complaints with opposing counsel's law firm, nor does it insulate attorneys from scrutiny outside the courtroom. Plaintiff's attempt to reframe such conduct as "harassment" only confirms the retaliatory nature of its cross-motion.

Finally, Plaintiff suggests that pro se litigants cannot pursue sanctions under Rule 11. This is legally incorrect. Courts in this District and across the Second Circuit have recognized that Rule 11 motions may be brought by pro se litigants. See, e.g., *Chien v. Barron Capital Advisors, LLC*, No. 3:09-CV-1873 (CSH), 2011 WL 6004580, at *1 (D. Conn. Dec. 1, 2011), aff'd, 509 F. App'x 79 (2d Cir. 2013).

## VIII. CLEER'S CROSS-MOTION FOR SANCTIONS IS BASELESS, RETALIATORY, AND PROCEDURALLY DEFICIENT

Plaintiff's request for sanctions in response is not only meritless—it is procedurally defective. Cleer failed to comply with Rule 11(c)(2), which requires that a motion for sanctions be served on the opposing party at least 21 days before filing to allow for correction or withdrawal. No such advance service occurred here. Plaintiff instead embedded its sanctions request within an opposition brief and asked the Court to impose penalties without following the

rule's mandatory safe harbor procedure. That alone warrants denial. See *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89–90 (2d Cir. 2003) ("Rule 11(c)(1)(A)'s safe harbor provision is a strict procedural requirement.").

Substantively, Cleer's cross-motion rests not on any showing that Defendant's Rule 11 motion lacked legal or factual basis, but on personal grievances, specifically, Defendant's decision to raise concerns about counsel's conduct with Taft's leadership. That communication occurred outside the context of litigation and is not governed by Rule 11. Reporting potential ethical misconduct is not sanctionable behavior; attempting to punish such reporting is.

Nor is it appropriate to accuse a litigant of "harassment" merely for filing a motion under the Federal Rules of Civil Procedure. Defendant's Rule 11 motion was properly served, factually grounded, and legally supported. Plaintiff's repeated efforts to reframe legitimate legal filings as misconduct reflects a pattern of intimidation designed to chill valid defenses and deter accountability.

For these reasons, Plaintiff's request for sanctions must be denied.

## IX. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's cross-request for Rule 11 sanctions and grant Defendant's motion.


Respectfully submitted,
Crystal Stranger
Pro Se Litigant

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 7, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all parties.

    */s/ Crystal Stranger*