# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEER LLC | : |
| | :    3:24-cv-1496-MPS |
| v. | : |
| | :    DEFENDANT'S MOTION TO SET ASIDE |
| CRYSTAL STRANGER et al. | :    AND VACATE CONTEMPT ORDER |
| | :    (ECF NO. 229) AND REQUEST FOR |
| v. | :    EVIDENTIARY HEARING |
| | : |
| DAVID and CARRIE McKEEGAN | : |

    Defendant Crystal Stranger respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 60(b)(1), (4), and (6), to set aside and vacate the Court's July 17, 2025 contempt order (ECF No. 229) and to grant an evidentiary hearing prior to any further contempt enforcement.

    This motion is warranted because the contempt order:

1. Was entered without the clear, unambiguous injunction language required for civil contempt;

2. Rested on an expansive reading of "solicitation" inconsistent with governing Connecticut law;

3. Imposed sanctions without affording Defendant the evidentiary hearing required by due process;

4. Relied on incomplete and speculative evidence not proven by clear and convincing standards; and

5. Overlooked constitutional limits on speech restrictions under the First Amendment.

These defects render the order the product of mistake and legal error under Rule 60(b)(1), void for lack of due process under Rule 60(b)(4), and unjust under Rule 60(b)(6) because extraordinary circumstances and manifest injustice will result if it is allowed to stand.

**I. INTRODUCTION**

The Defendant respectfully moves to set aside and vacate the Court's July 17, 2025 contempt order (ECF No. 229) and for an evidentiary hearing before any further enforcement. The ruling rests on disputed facts, ambiguous TRO language, and no opportunity for live testimony, raising serious due process and First Amendment concerns. The Second Circuit has emphasized that contempt is an extraordinary remedy, requiring a "clear and unambiguous" order, proven violation, and full procedural safeguards. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). Here, the record contains neither unambiguous terms nor clear and convincing proof of willful defiance, and the reasoning at times conflates prior judicial warnings with adjudicated evidence.

Vacatur now will also serve judicial efficiency. Plaintiff has moved for reconsideration of another contempt ruling (ECF No. 244) in this same case, requiring the Court to revisit the same legal standards and closely related factual issues. Addressing the overlooked controlling authority and material facts raised here, before a sanctions order issues and related appeals proceed, will conserve judicial resources, avoid duplicative proceedings, and reduce the risk of inconsistent rulings.

Therefore, pursuant to rule 60(b), Defendant identifies four overlooked matters that, if considered, would alter the outcome: (1) Second Circuit authority holding that ambiguities in injunctions must be construed in favor of the alleged contemnor; (2) the requirement of an

evidentiary hearing when intent and credibility are disputed; (3) the First Amendment mandate that restrictions on commercial speech be narrowly tailored; (4) record evidence undermining any finding of willful defiance; and (5) the contempt ruling's conflation of Ms. Stranger with Optic Tax, Inc., despite the Court's subsequent dismissal of Optic Tax for lack of personal jurisdiction (ECF No. 236), raises a dual defect: jurisdictional, because the Court may not base contempt on the conduct of a dismissed, non-jurisdictional party; and evidentiary, because no clear and convincing proof was made that Ms. Stranger personally committed each alleged act. This conflation undermines the factual and legal foundation for the contempt finding.

Each of these overlooked matters materially affects the validity of the contempt finding. Because these overlooked matters go to the core legal and factual sufficiency of the contempt finding, vacatur, or at minimum vacatur of the current order and scheduling of an evidentiary hearing to determine disputed facts., is warranted to prevent manifest injustice and preserve the integrity of the proceedings.

## II. LEGAL STANDARD

A motion to vacate an order is available under Rule 60(b) where there is mistake, inadvertence, surprise, or excusable neglect, or for any other reason that justifies relief. The Second Circuit recognizes that such relief is appropriate where the court has overlooked material factual matters or controlling decisions that could reasonably be expected to alter the result. See *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). The grounds for relief set forth below identify such overlooked controlling precedent and material facts, the correction of which is necessary to prevent manifest injustice.

Rule 60(b) permits a court to relieve a party from an order for:

- **(1)** mistake, inadvertence, surprise, or excusable neglect;

- **(4)** a judgment or order that is void; and

- **(6)** any other reason that justifies relief.

Such relief is appropriate where, as here, the court overlooked material facts or controlling precedent, applied an incorrect legal standard, or entered an order without affording the constitutionally required opportunity to be heard. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (judgment entered in violation of due process is void); *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (civil contempt order vacated where no evidentiary hearing was held despite disputed issues of intent). Here, Defendant challenges not merely the Court's reasoning, but the validity of the contempt order itself, making Rule 60(b) the appropriate procedural mechanism.

### III. ARGUMENT

#### A. The TRO Was Not Clear and Unambiguous

In the July 17th ruling the Court overlooked that the TRO did not define "solicitation" in the context of modern digital marketing, nor did it expressly prohibit the kind of general broadcast emails at issue here. The allegedly contemptuous communications were sent to a longstanding, mixed-subscriber list and were not directed specifically to Cleer's clients or employees, nor did they contain individualized sales pitches. Instead, they provided general business updates available to all recipients.

This omission is critical under *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995), which requires that contempt orders rest on "clear and unambiguous" injunctions and that "[a]mbiguities and omissions in orders redound to the benefit of the person charged with

contempt." The July 17 ruling overlooked this controlling standard, instead adopting a broad reading of "contact" and "solicit" that was neither defined in the TRO nor supported by prior notice to Defendant.

Moreover, the Court overlooked that, under Connecticut law, which governs the interpretation of the state-law claims underlying the TRO, the term "solicit" is narrowly defined to mean a plea or entreaty directed to an individual. See *Pediatric Occupational Therapy Servs., Inc. v. Town of Wilton*, No. X06-CV-02-0174833 S (Conn. Super. Ct. Apr. 7, 2004) (limiting "solicit" to direct pleas or entreaties to an individual); *ATI Eng'g Servs., LLC v. Millard*, NNHCV186079777S (Conn. Super. Ct. Aug. 7, 2018) (holding no solicitation occurred where clients initiated contact). This interpretation is compelled both by the customary dictionary meaning, "to make petition to" or "approach with a request or plea", and by practical considerations, such as the inability to prohibit general public advertising without causing undue hardship.

This omission is significant because the Connecticut definition of "solicit" inherently narrows the scope of the TRO. Under that definition, a general email sent to a broad audience, without any individualized targeting, personal entreaty, or request for business, does not constitute solicitation.

The record contains no evidence that Defendant made individualized contact with any Cleer client after entry of the TRO; rather, the only provided evidence shows that the communications were automated email blasts showing content equally available to the public via Defendant's website and social media channels. By overlooking the Connecticut standard and instead adopting an expansive federal gloss that treats any public communication as solicitation,

the Court imposed a broader speech restriction than the TRO's plain terms or governing state law support. Under *King*, 65 F.3d at 1058, and *Huber*, 51 F.3d at 10, such ambiguity and overbreadth must be resolved in favor of the alleged contemnor, precluding a contempt finding on this record.

By failing to evaluate the alleged conduct under the governing Connecticut standard, the Court applied an overbroad construction of "solicit" that conflicts with state precedent and Second Circuit authority requiring injunctions to be construed narrowly in favor of the alleged contemnor.

### B. Defendant's Conduct Was Not Willful

The Court overlooked the internal inconsistency in its July 17, 2025 ruling regarding the role of willfulness in the contempt analysis. At the top of page 4, the Court stated that "[i]t need not be established that the violation was willful" to support a contempt finding, citing *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). Yet, in the sanctions section, the Court expressly relied on a finding of willfulness as the primary reason for awarding attorneys' fees and costs, invoking the standard from *Egri v. Connecticut Yankee Atomic Power Co.*, 2003 WL 23645255, at *4 (D. Conn. June 30, 2003), which requires "willful" contempt for such an award.

This mismatch in logic is more than a semantic issue, it affects the evidentiary burden and the due process protections afforded. If willfulness was not necessary for the contempt finding but became necessary for the sanctions award, then the Court was required to make a separate, well-supported finding of willfulness under the higher standard. No such hearing or specific factual finding was made in the contempt proceeding. Instead, the Court appears to have

inferred willfulness from disputed facts without affording Defendant an evidentiary hearing, contrary to *Huber v. Marine Midland Bank*, 51 F.3d at 10 (2d Cir. 1995).

By overlooking this inconsistency, the Court effectively applied two different standards without clarifying which governed Defendant's conduct, thereby compounding the ambiguity of the TRO's scope and depriving Defendant of clear notice as to what state of mind, if any, was required to trigger sanctions. Under FRCP 59(e) this constitutes a material legal and factual oversight warranting vacating the order.

There is no evidence that Defendant acted in bad faith or with an intent to violate the TRO. Defendant did not attempt to undermine the order, and the conduct in question involved communications to a pre-existing subscriber list, without any individualized targeting of Cleer clients or confidential information.

Contempt requires proof of willful defiance. *Parmalat*, 639 F.3d at 578. Even if the Court later adopted a broader interpretation of "solicitation," Defendant's actions were not undertaken with knowledge or intent to violate that standard at the time. Moreover, once Plaintiff raised its contempt accusation, Defendant ceased all marketing communications, even those she believed were lawful, resulting in the effective closure of two of her businesses. This substantial professional harm, caused without clear notice or intent, weighs strongly against further sanctions.

**C. The Contempt Finding Violated Due Process**

The Court overlooked that no evidentiary hearing was held on the contempt motion itself, and that the only "evidence" cited in support of intent came from prior proceedings addressing a different motion with different legal standards. The July 17 ruling relied heavily on inferences

drawn from footnotes in the contempt order, specifically Footnotes 4 and 5, which reference the January 29–30, 2025 preliminary injunction hearing and isolated deposition excerpts (ECF No. 126 at 209–10). Those proceedings were not convened to adjudicate contempt, and Defendant had no opportunity during the contempt phase to testify, present rebuttal evidence, or cross-examine witnesses on the issues of scope, notice, or intent.

This omission is fatal under *Hernandez v. Lynch*, 831 F.3d 106, 115 (2d Cir. 2016), which reaffirms that "[a] meaningful opportunity to be heard is a core requirement of due process." The Second Circuit in *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995), vacated a contempt finding imposed without such a hearing where intent and the nature of the alleged violation were in dispute. The same defect is present here: the Court effectively made adverse credibility and intent determinations based on an incomplete and stale record, without convening a hearing to test the reliability or completeness of that evidence in the context of the contempt allegations.

Furthermore, the July 17 ruling cited "no dispute" as to certain facts, yet Defendant has consistently disputed the scope of the TRO, whether the emails constituted solicitation, and whether any Cleer client was targeted in violation of the order. By relying on contested inferences from unrelated prior testimony, rather than live evidence subject to cross-examination, the Court deprived Defendant of the procedural safeguards guaranteed by the Fifth Amendment and required under controlling Second Circuit law.

**D. The Court Overlooked Evidentiary Gaps in the Record**

The Court also overlooked that the evidence cited in Footnotes 6 and 7 of the July 17 ruling was incomplete and speculative. Specifically, Footnote 6 concedes that the December

email (ECF No. 125-5) "does not bear a date" and relies solely on the content of the message to estimate its timing. Footnote 7 similarly acknowledges that the January email (ECF No. 125-7) "does not bear a specific date" and infers its transmission date from internal references to a January 15 deadline.

These inferences illustrate that the evidence was not fully developed or tested through live testimony. Without precise dates, it is impossible to determine whether these communications even fell within the operative TRO period, let alone whether they targeted prohibited recipients in a manner constituting "solicitation." By treating these inferred dates as undisputed facts, the Court resolved material factual questions without affording Defendant the opportunity to present rebuttal evidence or cross-examine on the reliability of these assumptions.

Second Circuit precedent makes clear that such credibility and evidentiary determinations cannot be made on an incomplete paper record where material facts are in dispute. See *Huber*, 51 F.3d at 10. This is especially true in contempt proceedings, where the burden is on the movant to present clear and convincing evidence of a violation. In relying on inferential dating of key exhibits rather than definitive proof, the Court applied a lower evidentiary threshold than that required under *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002). This oversight underscores the need for vacatur, or an evidentiary hearing before any contempt finding or sanctions are allowed to stand.

**E. The Court's Reliance on Its Prior Remarks Risks the Appearance of a Misunderstanding of the Record**

In its contempt ruling, the Court quoted its own statement from the October 22, 2024 TRO hearing: "the days of blast emails are over because—unless, you know, she's willing to

take a risk of a contempt order. Because once I issue an order, it becomes an order of the Court." (ECF No. 99-1 at 7). The ruling then stated: "Notwithstanding, Stranger subsequently sent three separate emails to the mailing list which, as indicated, Stranger knew included Cleer clients."

The sequence of this quotation and conclusion may unintentionally suggest that the finding of contempt was driven by the fact that "blast" emails were sent after the Court's prior admonition, rather than on clear, independent evidence that the TRO was violated. This inference is especially problematic because Defendant was not personally present for the October 22, 2024 TRO hearing; the statement was made to defense counsel only, and Defendant first became aware of it upon later review of the transcript. Thus, the contempt ruling's framing could be read as imputing willful defiance based on a remark Defendant did not hear at the time and could not have taken as a personal directive.

Second Circuit precedent requires civil contempt to be supported by clear and convincing evidence of a violation, *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002), not by the mere appearance of defiance. Here, the contempt ruling risks conflating an **uncommunicated** courtroom remark, made to counsel when Defendant was not present, with a finding of willful violation. Because Defendant did not hear that admonition at the time and could not have acted in conscious defiance of it, reliance on it as evidence of contempt undermines the factual foundation required by *Levin*. This defect warrants vacatur under Rule 60(b)(1) and (4) to ensure the decision rests solely on the evidentiary record developed for the contempt motion and to preserve public confidence in the fairness and impartiality of the proceedings.

### F. The Court Improperly Declined to Consider Constitutional Arguments

The Court overlooked and declined to consider Defendant's preserved constitutional arguments challenging the TRO's scope under the First Amendment. In Footnote 8 of the July 17 ruling, the Court acknowledged that Defendant's surreply (ECF No. 150-1 at 13–15) asserted that the TRO "unconstitutionally restricts her speech under the First Amendment," but deemed those arguments "procedurally improper" because they were raised in a surreply, citing *Raffone v. Weihe*, 2016 WL 2642213, at *1 n.1 (D. Conn. May 9, 2016) See ECF No. 229 at 5 n.8.

The Court nevertheless reviewed other portions of the same filing insofar as they responded to Cleer's reply brief, indicating that the Court could and did consider portions of that surreply when relevant. By refusing to address the constitutional argument in any form, the Court overlooked controlling precedent requiring courts to construe injunctions narrowly to avoid unconstitutional restrictions on speech, even when procedural irregularities are alleged. See *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980); *Alexander v. United States*, 509 U.S. 544 (1993).

As applied here, interpreting the TRO to prohibit all marketing communications, even those not directed to specific parties, transforms a limited injunction into an unconstitutional prior restraint on speech. The First Amendment protects even commercial speech from unjustified court interference, and any restriction must be narrowly tailored to serve a substantial governmental interest without burdening more speech than necessary. The emails at issue contained no confidential information and consisted of general business updates or promotions sent to a longstanding, mixed-subscriber list. Enforcing the TRO so broadly, without first addressing the constitutional limits on such an application, risks substantial and irreparable harm to Defendant's protected speech rights.

This oversight is material under FRCP 60(b)(1) because it involves both (1) a controlling constitutional principle the Court declined to apply, and (2) a substantive narrowing requirement the Court failed to undertake before enforcing the TRO in a manner that chilled lawful speech. Vacatur is warranted to ensure that any injunction is construed in a manner consistent with First Amendment protections.

**G. The Contempt Ruling Fails to Distinguish Between Ms. Stranger and Optic Tax, Inc., Which Was Later Dismissed for Lack of Jurisdiction**

The ruling repeatedly attributes the alleged conduct to "Stranger and Optic Tax" collectively, without making specific findings as to Ms. Stranger's individual actions. On July 29, 2025, just twelve days after the contempt order, this Court granted Optic Tax, Inc.'s Motion to Dismiss for lack of personal jurisdiction. *See* ECF No. 236. This confirms that at the time of the contempt ruling, the Court lacked personal jurisdiction over the corporate entity.

Under Rule 60(b)(4), a contempt order is void to the extent it rests on conduct of a party or entity over which the Court lacks jurisdiction. Moreover, holding an individual in contempt based on acts attributed to a separate corporate entity, without veil-piercing findings or specific proof of personal involvement, fails to satisfy the "clear and convincing" evidence standard. *See Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002).

The order here does not identify which specific actions were taken by Ms. Stranger personally versus those undertaken by Optic Tax, Inc., nor does it find that Ms. Stranger personally sent each challenged email. Instead, it conflates the actions of the corporation and the individual, creating a substantial risk that the contempt finding rests in part on conduct outside

the Court's jurisdiction and not attributable to Ms. Stranger individually. This defect warrants vacatur under Rule 60(b)(1) and (4) to ensure that any contempt finding rests solely on admissible, jurisdictionally sound, and individually attributable conduct.

### IV. REQUEST FOR EVIDENTIARY HEARING

Because the contempt finding rests on unresolved factual disputes, including the scope of the TRO, Defendant's intent, and the nature of the communications, Defendant respectfully requests an evidentiary hearing. See *Drywall Tapers*, 889 F.2d at 395 ("An evidentiary hearing is required where credibility and intent are at issue.").

### V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court:

1. Set aside and vacate its contempt order dated July 17, 2025 (ECF No. 229); or,
2. Schedule an evidentiary hearing and reconsider the contempt; and,
3. Grant such other relief as the Court deems just and proper.

Respectfully submitted,
Crystal Stranger
Pro Se Litigant

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 11, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all parties.

    */s/ Crystal Stranger*