IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEER LLC | : |
| | : |
| v. | : 3:24-cv-1496-MPS |
| | : |
| CRYSTAL STRANGER et al. | : DEFENDANT'S MOTION TO |
| | : RECONSIDER AND VACATE |
| v. | : CONTEMPT ORDER (ECF NO. 243) |
| | : |
| DAVID and CARRIE McKEEGAN | : |
| | : |

Defendant Crystal Stranger respectfully moves for reconsideration of the Court's August 4, 2025 contempt order (ECF No. 243). On August 12, 2025, the United States Court of Appeals for the Second Circuit granted Defendant's motion for a temporary stay of the domain transfer provision in the June 17, 2025 Preliminary Injunction Order, pending review by a three-judge panel on an expedited basis (Case No. 25-1575, Dkt. 36). While not a final determination on the merits, this stay reflects the appellate court's recognition that enforcing the August 12 deadline before review could cause irreparable harm by mooting the appeal, the same concern Defendant raised before this Court.

A civil contempt finding must rest on a clear and enforceable command, capable of lawful enforcement at the time of the alleged noncompliance. However, this contempt finding rests on an order tainted by improper burden-shifting and relies on misstated legal authority. The Second Circuit's stay now suspends the very provision on which the contempt order is based, materially altering its enforceability and undercutting the finding of "willfulness." Defendant's conduct, promptly seeking a stay from the Court of Appeals, and refraining from an irreversible

1

transfer while review was pending, was a good-faith effort to preserve appellate jurisdiction and protect constitutional due process rights, not defiance.

In light of the intervening appellate order, Plaintiff's calculated compression of the compliance schedule, and the good-faith nature of Defendant's actions, this Court should vacate the August 4, 2025 contempt ruling in its entirety, including any sanctions or fee awards to Plaintiff, and award reciprocal relief for the costs incurred in opposing the now-stayed compliance deadline.

## I. LEGAL STANDARD

Reconsideration is appropriate to correct clear legal error, prevent manifest injustice, or consider matters "overlooked" in the initial decision that could reasonably alter the result. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); D. Conn. L. Civ. R. 7(c).

## II. NEWLY RIPE AND OVERLOOKED ISSUES

**A. Enforcement of Domain Transfer Before Second Circuit Review**

The Second Circuit's August 12, 2025 Order granting a temporary stay pending review by a three-judge panel represents a significant development. While limited in scope, the order reflects the appellate court's view that there are substantial reasons to pause enforcement of the domain transfer until further review. This necessarily affects the August 4 contempt order's requirement of an August 12 transfer, as continuing to enforce that deadline would conflict with the stay now in place.

Defendant's actions were not undertaken in defiance of this Court's authority, but in a good-faith effort to preserve her appellate rights and protect her constitutional due process

interests while review was pending. The very concerns motivating that course of action, the risk that immediate transfer would irreversibly moot the appeal and prevent effective relief, are the same concerns recognized by the appellate court in granting the stay. Far from being willful noncompliance, Defendant's conduct reflected a measured attempt to navigate between complying with court orders and avoiding the loss of her ability to obtain meaningful appellate review.

Immediate transfer would not merely have been inconvenient, it would have effectively mooted the pending appeal by finalizing the placement of the Cleer.tax domain under Plaintiff's exclusive control before the Second Circuit could rule. Once the transfer occurred, the appellate court would have been unable to grant meaningful relief on that core issue, as the property right at stake would already have been surrendered. This is precisely the type of harm appellate jurisdiction principles are designed to prevent. See *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (appeal divests the district court of control over aspects of the case involved in the appeal); *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962) (district court's authority pending appeal is limited to preserving the status quo and avoiding actions that would effectively moot the appeal).

The due process concerns here are heightened because the domain transfer provision was never part of the magistrate judge's Recommended Ruling, and Defendant was never afforded the objection procedure required under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Its enforcement was both mandatory and irreversible relief, altering rather than preserving the status quo, directed at property rights at the heart of the pending appeal.

Defendant's decision to await appellate guidance was not defiance for its own sake, but a measured and principled effort to protect her constitutional right to be heard on appeal before surrendering contested property. By issuing and enforcing an August 12 deadline, the Court risked resolving that property dispute through contempt proceedings rather than full adjudication, a result the Second Circuit's stay now indicates should not proceed before appellate review.

### B. Misstatement of Legal Position and Inapplicability of Cited Authority

The August 4 order mischaracterizes Defendant's position as asserting a categorical right to disregard a court order simply because it is on appeal. That is not, and has never been, Defendant's argument. In fact, the procedural history and the docket reflect that Defendant has consistently sought to work within judicial channels, filing for reconsideration in this Court and a stay with the Second Circuit, and acting with the intent to preserve her appellate rights rather than to evade review.

Defendant has never contended that the mere existence of an appeal excuses compliance. The point, made in ECF No. 231 and repeated here, is that coercive sanctions that compel irreversible action before appellate review is complete are unreasonable, particularly where the record on the domain transfer, as it appears in public filings, leaves open questions as to whether all relevant circumstances were placed before both parties on equal footing. Transference now would risk mooting the appeal, infringing upon the appellate court's jurisdiction, and undermining the litigant's right to meaningful review. This is a materially different proposition from the straw-man premise addressed by the Court.

The cases the Court cites (*Maness v. Meyers*, 419 U.S. 449 (1975); *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121 (2d Cir. 1988)) do not resolve this issue:

1. **In *Maness***, the Supreme Court addressed an attorney's refusal to comply with a court order to produce materials on Fifth Amendment grounds, holding that disobedience was not justified by the belief that the order was unlawful. Critically, the *Maness* Court did not involve a situation where compliance would irreversibly moot a pending appeal, it involved routine evidentiary compliance, which could be remedied after the fact.

2. **In *McDonald***, the Second Circuit applied the same general principle in a criminal contempt context, again without addressing mandatory, irreversible relief that would extinguish the subject matter of an appeal. Indeed, *McDonald* reaffirmed the general compliance requirement absent a stay, but it did not consider the competing principle that "an appeal divests the district court of its control over those aspects of the case involved in the appeal" (*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)).

Here, the transfer of the Cleer.tax domain is not analogous to producing documents or paying a fine that can later be refunded. Once transferred, the domain would be under Plaintiff's control, and the appellate court could be unable to restore the pre-appeal status quo even if Defendant prevailed. This distinguishes the present facts from *Maness* and *McDonald* and brings them closer to the line of cases holding that a district court may not take actions that interfere with the appellate court's jurisdiction over the subject matter under review. See, e.g., *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992) ("filing of a notice of appeal … divests the district court of jurisdiction except to take action in aid of the appeal").

The principle as defined in *Maness* and *McDonald* is relatively simple: routine compliance pending appeal remains required, but compliance that would irreversibly destroy the

subject matter of the appeal should not be compelled absent compelling justification and procedural safeguards, to avoid encroaching on the appellate court's authority.

The August 4 order does not address this distinction. The omission is material because the entire prejudice here stems from the irreversible nature of the compelled act and its direct impact on the Second Circuit's ability to decide the pending stay motion and the merits appeal.

### C. Improper Burden Shifting in Finding Against Defendant

In the Preliminary Injunction order, the Court stated: *"In fact, she points to no evidence that she registered the domain for her personal use."* (ECF No. 208 at 20) This reasoning, reiterated in the August 4th order by reference, impermissibly shifts the burden of proof from the movant, who bears the obligation to establish entitlement to injunctive relief and, in the contempt context, to prove a violation by clear and convincing evidence, to the Defendant, to disprove ownership or intended use.

Under well-established law, the burden in both the preliminary injunction and contempt contexts remains on the moving party:

• In the PI stage, Plaintiff must demonstrate a likelihood of success on the merits and irreparable harm; the defendant has no obligation to disprove plaintiff's case. *Winter v. NRDC*, 555 U.S. 7, 22 (2008).

• In civil contempt proceedings, the Second Circuit is clear that "[t]he moving party has the burden of establishing, by clear and convincing evidence, that the alleged contemnor violated the court's order." *EEOC v. Local 638*, 81 F.3d 1162, 1171 (2d Cir. 1996); s*ee also Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (movant must establish violation to a 'reasonable certainty').

By faulting Defendant for "point[ing] to no evidence" of personal use, the Court effectively relieved Plaintiff of its burden and required Defendant to affirmatively prove her lawful entitlement to the domain, a reversal of the proper evidentiary framework. This is not a mere evidentiary quibble; it is a structural due process error that undermines the validity of both the original PI findings and the contempt enforcement. Because this improper burden shift was expressly stated in the PI and relied upon in enforcement, the August 4 contempt ruling perpetuates the legal error. The August 4 contempt order did not independently evaluate domain ownership but instead incorporated the PI's burden-shifted finding as a predicate for sanctions, thereby carrying the original due process defect directly into the contempt context.

Reconsideration is warranted to correct this burden misallocation and ensure that contempt sanctions are not premised on a framework that requires the accused to disprove the allegations against her.

**D. Reciprocal Sanctions Warranted for Unnecessarily Prejudicial Compliance Deadline**

In the August 4, 2025 contempt ruling (ECF No. 243), this Court awarded Plaintiff its reasonable attorneys' fees and costs incurred in making the contempt motion, finding Defendant's conduct willful. However, the August 12 compliance deadline imposed in that same order has now been stayed by the United States Court of Appeals for the Second Circuit (Case No. 25-1575, Dkt. 36). This appellate ruling confirms that the compliance date was premature, unnecessarily short, and in direct conflict with the pending appellate stay motion, requiring Defendant to expend substantial time, resources, and effort under extreme personal and medical constraints to defend against a deadline that has now been suspended.

The compressed deadline functioned to secure Plaintiff's primary litigation objective, a permanent domain transfer, before the merits could be adjudicated or appellate review completed, effectively creating leverage for settlement. This sequencing was unnecessary for any genuine exigency and undermined the fairness of the proceedings. Such tactics amplify the prejudice to Defendant, both procedurally and substantively, and magnify the inequity of forcing her to bear costs now rendered unnecessary by the Second Circuit's stay.

Given the Second Circuit's intervention, fairness and symmetry dictate that Defendant should be compensated for the costs incurred in addressing a compliance deadline that has been nullified before it took effect. Defendant respectfully requests that the Court exercise its authority under 28 U.S.C. §1927, Fed. R. Civ. P. 54(d), and its inherent powers to award Defendant her reasonable attorneys' fees and costs (including pro se litigant costs allowable under 28 U.S.C. §1920) directly attributable to opposing the August 12 deadline. Such relief is consistent with the Court's prior decision to award fees to Plaintiff in connection with its contempt motion, and would deter the imposition of similarly prejudicial compliance schedules in the future.

## III. INTERVENING APPELLATE STAY AS NEW CONTROLLING AUTHORITY

The Second Circuit's August 12, 2025 stay order is not merely a scheduling adjustment, it directly impacts the enforceability of the order underlying this Court's contempt ruling. A contempt finding must rest on a "clear and unambiguous" command capable of enforcement at the time of the alleged noncompliance. See *United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1096 (2d Cir. 1995) (civil contempt requires proof that the order was "clear

and unambiguous" and leaves "no reasonable doubt" as to the conduct required). When the underlying order is stayed pending appellate review, the basis for finding contempt is materially altered, because enforcement is no longer legally operative.

Maintaining the August 4 contempt finding despite the appellate stay risks creating conflicting rulings and unnecessary expenditure of judicial resources if the Second Circuit later modifies or reverses the underlying injunction. Under principles of comity and the law-of-the-case doctrine, vacatur now would align this Court's docket with the appellate court's action, preserve consistency between jurisdictions, and avoid the risk of a contempt judgment that cannot stand when the underlying order is changed on appeal. See *Arizona v. California*, 460 U.S. 605, 618 (1983) (law-of-the-case doctrine promotes finality, consistency, and judicial economy).

Furthermore, Second Circuit precedent recognizes that good-faith reliance on available appellate remedies, particularly where the compelled act would moot appellate rights, is inconsistent with the willfulness required for civil contempt. See, e.g., *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 808 (2d Cir. 1981) (recognizing that reasonable diligence can preclude a finding of contempt). Defendant here promptly sought a stay from the Second Circuit, and refrained from transferring the domain to preserve appellate jurisdiction. That conduct cannot fairly be equated with deliberate defiance, and continuing to brand it as "willful" in light of the appellate stay would be inequitable.

For these reasons, the August 4 contempt finding should be vacated in full, not merely suspended, to conform with the appellate stay, maintain consistency between the courts, and recognize Defendant's good-faith reliance on appellate remedies.

## IV. RELIEF REQUESTED

For the foregoing reasons, Defendant respectfully requests that the Court:

1. **Vacate the Court's August 4, 2025 contempt ruling (ECF No. 243) in its entirety,** including the contempt finding and any related sanctions or fee awards to Plaintiff, in light of the Second Circuit's August 12, 2025 stay order, the absence of the statutory objection process under 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b), and the good-faith nature of Defendant's conduct undertaken solely to preserve appellate jurisdiction and constitutional due process rights;

2. **Award Defendant reciprocal sanctions** for her reasonable fees and costs incurred in opposing the August 12, 2025 compliance deadline, which has now been stayed by the Second Circuit, as compensatory sanctions under the Court's inherent powers, Fed. R. Civ. P. 54(d), and 28 U.S.C. §1927, in parity with the Court's prior award of fees to Plaintiff in connection with the contempt motion; and

3. **Grant such further relief as the Court deems just and proper** to conform the district court proceedings to the appellate stay, preserve the integrity of appellate review, and ensure compliance with constitutional and statutory procedural protections.

Respectfully submitted,
Crystal Stranger
Pro Se Litigant

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 13, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all parties.

    */s/ Crystal Stranger*