## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CLEER LLC | : | |
| | : | 3:24-cv-1496-MPS |
| v. | : | |
| | : | |
| CRYSTAL STRANGER et al. | : | DEFENDANT'S MOTION TO STRIKE, |
| | : | OR IN THE ALTERNATIVE, |
| v. | : | OPPOSITION TO PLAINTIFF'S |
| | : | DECLARATION IN SUPPORT OF FEE |
| DAVID and CARRIE McKEEGAN | : | APPLICATION (DOC. 270 & EX. 270-1) |

Plaintiff's declaration seeks reimbursement of attorneys' fees for its third contempt motion concerning the domain transfer, and thus operates as a motion properly subject to opposition. Defendant therefore moves to strike the filing as procedurally improper. In the alternative, and to preserve her rights, Defendant objects to the requested fee award and submits the following memorandum in opposition.

This request is not only excessive and duplicative on its face; it is also premature. The contempt order on which the fee claim rests (ECF No. 243) is the subject of Defendant's pending motion for reconsideration (ECF No. 261), multiple stay applications in the Second Circuit (Case No. 25-1575, Dkt. 42), and an Emergency Application before the Supreme Court. Each of these filings raises serious due process and jurisdictional defects in the underlying order.

Furthermore, the applicant bears the burden of demonstrating that claimed amounts related to contempt sanctions are reasonable, non-duplicative, and proportional. Plaintiff has not carried that burden. The billing records submitted in Exhibit A (Doc. 270-1) reflect (1) excessive duplication of attorney work, (2) unreasonable billing for clerical tasks, (3) inclusion of "fees-on-

fees" for preparing the fee petition itself, and (4) inadequate transparency due to redactions. Established Second Circuit authority requires meaningful scrutiny and reductions in such circumstances.

Awarding fees now would be inequitable and risk inconsistency with higher-court rulings. Courts routinely defer fee awards where the underlying finding is unsettled. Plaintiff's attempt to secure fees while the contempt order itself is still under review underscores the tactical pressure campaign surrounding the domain transfer, an effort this Court should not endorse. Accordingly, the Court should deny Plaintiff's fee request in full, but if the court declines to do this then it should substantially reduce it to an amount reflecting only reasonable and necessary work.

## I. PROCEDURAL AND SUBSTANTIVE BACKGROUND

### A. The Contempt Order is Under Active Reconsideration

On August 13, 2025, Defendant filed a Motion for Reconsideration and Vacatur of the contempt ruling (ECF 261). That motion emphasizes (i) the Second Circuit's August 12 temporary stay (Case No. 25-1575, Dkt. 36), (ii) the improper burden shifting in both the preliminary injunction and contempt order, and (iii) the due process violation of compelling irreversible relief before appellate review. The reconsideration motion remains undecided.

Because a contempt finding must rest on a "clear and unambiguous" command, enforceable at the time of alleged noncompliance (*United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1096 (2d Cir. 1995)), the appellate stay fundamentally

alters enforceability. Any fee award now would be premature while the contempt order itself still remains unsettled.

### B. Multiple Stay Motions Confirm Appellate Risk of Mootnes

#### 1. District Court Stay Motions

a. On August 11, 2025, Defendant moved for leave to file a declaration under §1746 or extend the contempt affidavit deadline, citing her scheduled surgery. This has not yet been addressed by this court.

b. On August 14, Defendant filed a **Motion for Limited Administrative Stay** (ECF 262) seeking only a 14-day pause for Supreme Court review.

c. On August 18, the Court denied that motion (ECF 267).

#### 2. Second Circuit Proceedings

a. August 12, Judge Kahn granted a temporary stay to preserve the status quo.

b. August 13, a three-judge panel denied the stay but granted expedited review.

c. A renewed motion for stay (Dkt. 42) remains pending in Case 25-1575.

#### 3. Supreme Court Emergency Application

a. On August 14, Defendant filed an Emergency Application for Stay Pending Appeal with Justice Sotomayor, stressing that compelled transfer would moot appellate review and pointing to due process defects in the PI and contempt rulings. That application remains pending.

### C. These Proceedings Undercut Any Finding of Willfulness

The procedural history shows continuous, diligent resort to judicial channels rather than defiance: filing reconsideration, multiple stay requests, and an emergency application at every

available level. This record is inconsistent with the willfulness required for civil contempt (*Perfect Fit Indus. v. Acme Quilting*, 646 F.2d 800, 808 (2d Cir. 1981)).

### D. Prematurity of Fee Application

Because (i) reconsideration of contempt (ECF 261) is pending, (ii) appellate stays are actively under review, and (iii) Supreme Court intervention has been sought, any fee award at this juncture risks conflicting with higher-court rulings and compounding the prejudice. Courts routinely defer or deny fee requests while the underlying contempt finding is unsettled.

## II. LEGAL STANDARD GOVERNING FEE REQUESTS FOR CONTEMPT

Because Plaintiff's request is both premature and excessive, the Court should deny it in full; but if the Court elects to reach the merits, the governing standards require substantial reductions. In civil contempt, courts may award 'the reasonable costs of prosecuting the contempt, including attorney's fees,' particularly upon a finding of willfulness. See *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (citing *Vuitton*). The lodestar method governs: hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The movant bears the burden of documenting reasonableness "with contemporaneous time records that specify, for each attorney, the date, hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Courts must exclude "excessive, redundant, or otherwise unnecessary" hours, id., and may impose across-the-board percentage reductions for vagueness or block billing. *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

## III. PLAINTIFF'S FEE REQUEST IS PREMATURE AND, IN ANY EVENT, EXCESSIVE

Even setting aside that Plaintiff's request is premature given the pending motions for reconsideration and appellate stays, the billing records themselves reflect duplication, clerical charges, fees-on-fees, and inadequate transparency. Under settled Second Circuit precedent, such defects mandate denial in full or, at minimum, substantial reductions.

### A. Duplicative and Excessive Billing Warrants Substantial Reduction

The records show that on July 2–3, 2025, two attorneys (Cohn and Musekamp) billed a combined 6.75 hours for drafting and revising the same contempt motion. Duplicative attorney review of the same work product is disfavored absent a showing of necessity. *See Tucker v. City of New York*, 704 F. Supp. 2d 347, 355 (S.D.N.Y. 2010) (reducing fees where multiple attorneys performed the same work).

Similarly, between August 6–15, 2025, associate Jesse Daley billed nearly 5 hours repeatedly drafting, revising, and updating affidavits for the same fee application. Courts routinely reduce repetitive drafting entries as excessive. *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008).

### B. Clerical Tasks Billed at Attorney/Paralegal Rates Are Not Compensable

Plaintiff billed 0.25 hours of paralegal time at $380/hour ($95) for "format and file Motion for Contempt". Formatting and filing are clerical tasks that should be excluded or compensated at an administrative rate. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (noting that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them").

5

**C. Fees on Fees Are Improper in This Context**

Plaintiff's entries from Aug. 5–15 reflect 'fees-on-fees' work. While time spent preparing a fee petition can be compensable, it must be reasonable and non-duplicative, and courts routinely trim such hours across the board, especially where the billing is repetitive or vague. See *Rozell*, 576 F. Supp. 2d at 541 (limiting fees on fees to a fraction).

**D. Redactions Undermine Transparency**

The time report expressly states that it is a "redacted time report" (Aug. 5 entry). By redacting billing entries, Plaintiff deprives the Court and opposing party of the ability to assess reasonableness. Courts may reduce or strike fee requests where billing records are inadequate. *Kirsch*, 148 F.3d at 173.

**E. Quarter-Hour Billing Inflates the Request**

Plaintiff's records reflect a quarter-hour billing increment rather than industry-standard six-minute (0.1 hr) increments. Quarter-hour practices systematically inflate totals, especially where short tasks (emails, calls, formatting) are rounded up to 0.25 hours. Courts reduce for quarter-hour billing because it inflates time; a 20% cut was affirmed in *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007). This issue was raised in Defendant's earlier opposition (ECF No. 249) and Plaintiff has offered no rebuttal in subsequent filings, effectively conceding the point.

**F. Unsupported Associate and Paralegal Rates Inflate the Request**

Plaintiff seeks compensation for a junior associate at $440/hour and a paralegal at $380/hour. These rates are well above prevailing market standards in the District of Connecticut for comparable experience, where associate rates typically fall between $300–$375/hour and

paralegal rates between $125–$200/hour. See *Doe v. Darien Bd. of Educ.*, 2015 WL 8770003, at *5 (D. Conn. Dec. 14, 2015).

No evidence has been provided to justify these elevated rates. Unlike the attorneys, the paralegal's qualifications were not documented at all in Plaintiff's filings, despite the unusually high rate claimed. This issue was also raised in Defendant's earlier opposition (ECF No. 249) and Plaintiff had the opportunity to justify these rates in its reply but did not. Likewise, the new associate's rate is unsupported by market data or unique expertise. Plaintiff's silence on these points in its subsequent filings amounts to concession that the rates cannot be substantiated. See *United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir. 1993)* ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990). Without proof of prevailing market comparability, the Court should reduce the associate's rate to a reasonable level (no more than $330/hour) and the paralegal's rate to a maximum of $200/hour, if deemed more than clerical.

### G. Associate Substitution (Cohen to Daley) Further Inflates Billing

Taft's billing records reveal that the associate originally paired with Mr. Musekamp (Evan Cohen) was later replaced by another associate (Jesse Daley), both billed at the same elevated rate of $440 per hour. See, e.g.*, N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983) (holding that "unnecessary duplication of effort" warrants a reduction in fees); *U.S. Football League v. Nat'l Football League,* 887 F.2d 408, 415 (2d Cir. 1989) (affirming reduction where "new attorneys had to familiarize themselves with the record"); *Marisol A. v. Giuliani*, 111 F. Supp. 2d 381, 396 (S.D.N.Y. 2000) (reducing fees due to

duplicative work caused by turnover of personnel); *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996) (courts should exclude "hours that are excessive, redundant, or otherwise unnecessary").

This substitution provided no cost savings and instead resulted in duplication, as Daley necessarily expended additional time becoming familiar with the matter. The uniform rate demonstrates that Taft treats junior associates as interchangeable billers at an excessive level, further supporting a downward adjustment. These hours should thus further be reduced by at least another 50% to eliminate duplication and recalibrated to a reasonable market rate for junior associate work.

## IV. PROPOSED REDUCTIONS

Because Plaintiff's fee request is both premature and excessive, the Court should deny it in full. In addition, because the contempt order remains under reconsideration and appellate review, the prudent course is to defer any award entirely until those proceedings are resolved. However, if the Court elects to award any fees, substantial reductions are required:

- **Duplicative work** (July 2–3; Aug. 6–15): Reduce by at least 50%.

- **Clerical tasks** (July 3 paralegal entry): Strike entirely.

- **Fees on fees** (Aug. 5–15): Exclude in full.

- **Redactions:** Apply an additional 20–30% across-the-board reduction for lack of transparency.

- **Quarter-hour billing:** Remove inflationary padding by recalculating entries using industry-standard six-minute increments.

- **Unsupported billing rates:** Reduce associate rate from $440/hour to no more than $330/hour, and paralegal rate from $380/hour to no more than $200/hour.

Taken together, these corrections reflect the proper lodestar adjustment to prevent overcompensation and to ensure any award is strictly limited to hours proven reasonable, necessary, and supported by evidence.

## V. CONCLUSION

For the foregoing reasons, the Court should strike Plaintiff's declaration (Doc. 270) as procedurally improper because it seeks affirmative relief without a motion. In the alternative, if the Court elects to consider the fee request on the merits, the Court should deny it in its entirety. At minimum, the Court should defer ruling until resolution of Defendant's pending motion for reconsideration (ECF No. 261), the Second Circuit's review in Case No. 25-1575, and the Supreme Court emergency application. Deciding fees now, while appellate courts are actively evaluating the enforceability of the underlying contempt order, risks conflicting outcomes and compounds the prejudice already suffered through compressed compliance deadlines.

Respectfully submitted,
*/s/ Crystal Stranger*
Crystal Stranger
Pro Se Litigant

9

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 26, 2025 the foregoing was filed using the Court's

electronic filing system which will provide notice to all parties.

*<u>/s/ Crystal Stranger</u>*