**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CLEER LLC (F/K/A GREENBACK BUSINESS SERVICES LLC) D/B/A CLEER TAX, | : | Case No. 3:24-cv-01496-MPS |
| | : | Judge Michael P. Shea |
| | : | Magistrate Judge Maria E. Garcia |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CRYSTAL STRANGER, et al., | : | |
| | : | |
| Defendants. | : | |

**FORM 26(F) REPORT OF PARTIES' PLANNING MEETING**

<u>Date Complaint Filed</u>: September 18, 2024

<u>Date Complaint Served</u>:

    <u>**Plaintiff's/Counterclaim Defendants' Position:**</u> November 25, 2024

    <u>**Defendant's/Counterclaimant's Position:**</u> Service disputed; effected through counsel rather than pursuant to the Hague Convention.

<u>Date of Defendant's Appearance</u>:

    <u>**Plaintiff's/Counterclaim Defendants' Position:**</u> October 1, 2024

    <u>**Defendant's/Counterclaimant's Position:**</u> November 26, 2024

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was held on September 4, 2025. The participants were:

    George Musekamp, counsel for Plaintiff Cleer LLC

    Crystal Stranger for defendant, *pro se*

## I.    CERTIFICATION

Undersigned counsel (after consultation with their clients) and any undersigned self-represented parties certify that (a) they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II.   JURISDICTION

A.    <u>Subject Matter Jurisdiction.</u>

**<u>Plaintiff's/Counterclaim Defendants' Position:</u>**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) pursuant to 28 U.S.C. § 1338(a)–(b) (original jurisdiction to adjudicate federal trademark claims) and 18 U.S.C. § 1836 (original jurisdiction to adjudicate trade secret claims under the Defend Trade Secret Act of 2016 ("DTSA")). The Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(a). The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity).

**<u>Defendant's/Counterclaimant's Position:</u>**

Defendant contests subject matter jurisdiction. Plaintiff has not established federal jurisdiction because several of its claims are state-law causes of action that do not arise under federal law, and its asserted federal claims are defective. Nor has Plaintiff made any showing sufficient to invoke diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff has produced no

evidence of financial damages, and thus cannot satisfy the $75,000 amount-in-controversy requirement. Supplemental jurisdiction under 28 U.S.C. § 1367 cannot be invoked to salvage claims where no proper basis for original jurisdiction exists. Defendant preserves all objections to subject matter jurisdiction for appeal.

B.    Personal Jurisdiction.

**Plaintiff's/Counterclaim Defendants' Position:**

It is Plaintiff and Counterclaim Defendants' position that the Court has personal jurisdiction over Stranger because she agreed by contract to personal jurisdiction in Connecticut and has been properly served.

**Defendant's/Counterclaimant's Position:**

Defendant contests personal jurisdiction. Defendant signed three different agreements in connection with her prior work for Plaintiff:

1. Employment Agreement – governed by New York law, with no Connecticut jurisdiction clause.

2. Operating Agreement – governed by Wyoming law, with venue expressly designated in Wyoming courts.

3. Membership Vesting Agreement – containing an arbitration clause designating Fairfield County, Connecticut for certain employment-related arbitration disputes, but not conferring general consent to federal court jurisdiction over all claims.

The existence of differing choice-of-law and forum provisions across these contracts undermines any claim that Defendant provided blanket consent to personal jurisdiction in Connecticut. Moreover, even if one agreement purports to designate Connecticut for arbitration, it cannot extend to disputes outside its scope or override federal due process requirements.

In addition, service of process was improper. Plaintiff attempted service on November 25, 2024 through Defendant's former counsel rather than by means of the Hague Service Convention, which governs service on parties located abroad. Defendant maintains that such service was defective and further undermines this Court's exercise of personal jurisdiction.

Accordingly, Defendant preserves her objections to personal jurisdiction in this Court and does not consent to the exercise of jurisdiction.

Furthermore, Optic Tax, Inc. has already been dismissed from this case for lack of personal jurisdiction, and Defendant disputes Plaintiff's repeated conflation of Optic Tax with her personally. Any discovery or evidence concerning Optic Tax should be limited to relevance for counterclaims and defenses, and should not be used to expand the Court's jurisdiction over Optic Tax.

## III.    BRIEF DESCRIPTION OF CASE

### A.    Claims of Plaintiff:

The Court has been provided with extensive briefing regarding the claims in this case, including Plaintiff's claims of breach of contract, unfair competition, tortious interference with existing and prospective business relationships, civil conspiracy, breach of duty of loyalty, false designation of origin and unfair competition, anticybersquatting, violation of the Defend Trade

Secret Act of 2016 ("DTSA"), violation of the Connecticut Uniform Trade Secret Act

("CUTSA"), statutory theft under Conn. Gen. Stat. § 52-564, conversion, and defamation (libel),

and involves enforcement of restrictive covenants and recovery of property including the domain

Cleer.tax. In sum, Plaintiff claims that Stranger executed certain contracts with Cleer containing

restrictive covenants, but violated the terms of those agreements by soliciting Cleer's clients and

suppliers, competing against Cleer, misappropriating Cleer's information, and taking company

property including the domain Cleer.tax to solicit Cleer's clients and redirect Cleer's customers

to her competing company Optic Tax, Inc.

      B.    <u>Defenses and Claims (Affirmative Defenses, Counterclaims, Third Party Claims, Cross Claims)(either pled or anticipated) of Defendant:</u>

Defendant denies the material allegations of the Complaint and asserts multiple

affirmative defenses, including that Plaintiff and the McKeegans materially breached the

Operating Agreement and Membership Vesting Agreement, waived or excused performance of

restrictive covenants, and failed to take reasonable measures to protect alleged trade secrets.

Defendant disputes that Plaintiff has suffered any legally cognizable damages.

Defendant has asserted counterclaims against Cleer LLC, David McKeegan, and Carrie

McKeegan for:

1. **Breach of Contract (Operating Agreement)** — including refusal to provide financial records, fraudulent accounting of Defendant's Capital Account, and failure to allocate profits properly, resulting in economic loss exceeding $75,000.

2. **Breach of Contract (Membership Vesting Agreement)** — failure to obtain a third-party valuation of Defendant's membership interest as required under WY law, causing additional economic loss exceeding $75,000.

5

3. **Breach of Fiduciary Duty** — The McKeegans orchestrated Defendant's wrongful expulsion from Cleer LLC without court determination, violating the Operating Agreement and breaching their fiduciary duties under Wyoming law. These actions entitle Defendant to both compensatory and punitive damages.

4. **Self-Dealing** — While excluding Defendant from participation, the McKeegans directed company profits toward themselves and failed to distribute declared dividends to Defendant, as reflected in internal financial records disclosed in prior discovery. These actions were taken for personal gain at Defendant's expense. Defendant seeks disgorgement of wrongfully retained funds; compensatory damages for unpaid distributions; and punitive damages for breach of loyalty

5. **Bad Faith and Concealment** — The McKeegans concealed financial records and repeatedly refused to provide Cleer's tax filings or accounting information to Defendant, despite her statutory and contractual rights as a member. Their actions obstructed her ability to monitor or protect her interest in the company. Defendant seeks equitable relief through an accounting and production of all withheld documents; compensatory damages for losses caused by lack of access; and punitive damages for intentional concealment.

6. **Breach of the Duty of Loyalty** — By withholding distributions, hiding records, and executing a removal strategy without transparency or legal process, the McKeegans violated their duty of loyalty and fair dealing, justifying both compensatory and punitive damages and Defendant further will request judicial declaration that the expulsion was unlawful and void.

7. **Conspiracy to Defraud** — The McKeegans conspired with others, including legal counsel and accountants, to conceal financial information, divert distributions, and unlawfully remove Defendant from Cleer LLC in a coordinated scheme to enrich themselves at her expense. These actions entitle Defendant to compensatory and consequential damages; disgorgement of unjust gains; punitive damages for fraudulent intent; and joint and several liability for all co-conspirators.

8. **Misappropriation and Conversion of Business Assets** — After unlawfully removing Defendant from Cleer LLC without compensation or judicial determination, the McKeegans retained and continued to exploit Defendant's intellectual property, business development materials, client relationships, and internal systems—all developed in part or whole by Defendant during her time as co-founder. These assets were used to continue operations and pursue profit, while denying Defendant access, attribution, or remuneration. These actions constitute misappropriation and conversion, entitling Defendant to compensatory damages for the value of the business assets taken, restitution for unjust enrichment, and punitive damages for knowing and intentional misconduct.

9. **Misappropriation of Image or Likeness** — Cleer continues to use Defendant's photograph and likeness in marketing without authorization, causing reputational and economic harm. These actions entitle Defendant to compensatory damages, disgorgement of any unjust profits, and injunctive relief prohibiting further unauthorized use.

10. **Libel Per Se** — Cleer has continued to hold out Defendant as associated with its substandard services by publishing her articles and image, injuring her professional reputation. These actions entitle Defendant to presumed and compensatory damages,

punitive damages for willful conduct, and injunctive relief requiring removal of the defamatory materials.

11. **Libel and/or Slander Per Se** — David and/or Carrie McKeegan made defamatory statements to third parties, including the administrators of the Dynamite Circle, leading to Defendant's expulsion and reputational harm. These actions entitle Defendant to presumed and compensatory damages, punitive damages, and such further relief as the Court deems just.

12. **Hostile Work Environment** — Following the sale of their prior company, the McKeegans introduced Carrie McKeegan into Cleer's leadership, resulting in a significant deterioration of workplace culture. Carrie encouraged micromanagement, authoritarian oversight, and abusive work practices that created a hostile and toxic work environment. Defendant was subjected to constant scrutiny, unrealistic demands, and targeted exclusion. These actions entitle Defendant to compensatory and punitive damages for workplace interference and professional harm.

13. **Constructive Exclusion and Retaliatory Marginalization** — As part of a broader campaign to consolidate control, the McKeegans systematically removed Defendant from key roles, restricted her access to company systems and information, and isolated her from governance decisions. These actions were taken in bad faith and amounted to a de facto expulsion without process or compensation. These actions entitle Defendant to compensatory damages for economic loss, lost business opportunity, and reputational harm, as well as punitive damages.

14. **Intentional Infliction of Emotional Distress (IIED)** — The McKeegans' pattern of abusive behavior—including public and private degradation, exclusion from business decisions, withholding of basic legal and financial rights, and prolonged litigation harassment—caused Defendant to suffer extreme stress. This stress manifested physically, resulting in a diagnosable injury, Maxillofacial Pain Dysfunction Syndrome, and surgery to Defendant's jaw, directly linked to the psychological trauma inflicted. These actions entitle Defendant to compensatory damages for emotional and physical harm, as well as punitive damages for extreme and outrageous conduct.

15. **Tortious Interference with Business Expectancy (Optic Tax)** —  The McKeegans, through misrepresentations and improper legal tactics, obtained a preliminary injunction and TRO that forced the effective shutdown of Defendant's business, Optic Tax, without a full trial on the merits. These actions interfered with Defendant's legitimate business relationships, disrupted her operations, and severely damaged the reputation and income stream of a thriving independent enterprise. These actions entitle Defendant to compensatory damages for lost business revenue, lost client relationships, and consequential damages flowing from the destruction of her brand, as well as punitive damages for intentional interference.

16. **Tortious Interference with Separate Business Enterprise (Xenitha)** — In addition to destroying Optic Tax, the McKeegans' actions directly caused the shutdown of another business Defendant co-owned with her husband, Xenitha—a portfolio of 19 artificial intelligence tools. The preliminary injunction and related restrictions against communication and professional activity made it impossible to operate Xenitha lawfully, causing total business interruption and permanent loss of value. These actions entitle

Defendant to compensatory damages for the full loss of Xenitha's business value, future earnings, and associated reputation, as well as punitive damages for intentional and knowingly overbroad enforcement of restrictive covenants.

17. **Economic Loss from Unlawful Restraint of Trade** — By securing a TRO and preliminary injunction based on overbroad and vague contractual provisions, the McKeegans knowingly restrained Defendant's ability to work in her field, solicit clients, and earn a living. The enforcement of these restraints occurred without a final adjudication, amounting to a temporary economic injunction that caused measurable wage loss, career disruption, and reputational harm. These actions entitle Defendant to compensatory damages for lost income, including back pay and forward loss, as well as punitive damages for malicious and premature enforcement.

18. **Unlawful Deprivation of Personal Property and Digital Intrusion** — The McKeegans, through their litigation tactics and misuse of court process, have deprived Defendant of her personal property by retaining possession of her laptop for over eight months without forensic examination or legitimate justification. Furthermore, they have attempted to gain access to Defendant's iCloud account and other private digital data under false pretenses and without legal authority. These actions constitute an ongoing interference with Defendant's property, privacy, and due process rights. These actions entitle Defendant to compensatory damages for the deprivation of property and interference with personal data, injunctive relief to compel return and prevent further intrusion, and punitive damages for willful and deceptive conduct.

19. **Abuse of Process** — Plaintiffs have weaponized the judicial process to gain reputational and competitive advantage, including attempting to force the permanent transfer of a property interest through a preliminary injunction, attempting to access personal data on her iCloud account under false pretenses, and using litigation delay and scope to suppress Defendant's speech, income, and reputation, while enriching themselves and securing strategic advantage. These actions reflect a pattern of improper litigation use intended to harm rather than resolve, entitling Defendant to compensatory and punitive damages.

In sum, Defendant denies the material allegations of the Complaint and asserts that Plaintiffs and the McKeegans orchestrated her unlawful expulsion from Cleer LLC and then used litigation to suppress competition, seize property, and silence dissent. Plaintiffs misappropriated Defendant's business assets, likeness, and intellectual property, including the client base and systems she built, while denying her compensation for her equity interest. Defendant's ability to work, earn income, and defend her reputation was restrained through overbroad injunctive relief that forced the closure of two businesses (Optic Tax and Xenitha), barred her from professional communication, and led to a physical injury requiring surgery. Plaintiffs further abused the legal process by attempting to force the permanent transfer of a domain name via preliminary injunction, unlawfully withholding Defendant's laptop, and attempting to access her iCloud account under false pretenses. These actions give rise to counterclaims for breach of contract, breach of fiduciary duty, self-dealing, misappropriation, defamation, emotional distress, tortious interference, and abuse of process, for which Defendant seeks compensatory, punitive, and equitable relief.

C.      Defenses and Claims of Third Party Defendants':

**Plaintiff's/Counterclaim Defendants' Position:** It is Counterclaim Defendants' position that Cleer has complied with the contracts at issue and payment, if any, to Defendant Stanger is not due until August 2026 per the terms of the Operating Agreement. Cleer further denies any liability to Defendant under and of the alleged counterclaims.

**Defendant's/Counterclaimant's Position:** Defendant's position is that Cleer's claim that "payment, if any, is not due until August 2026" is misleading and legally flawed. That provision of the Operating Agreement only applies in the event of a valid removal for cause, yet Defendant contests the validity of any such removal, which occurred without judicial determination or agreement, in violation of both Wyoming law and the Operating Agreement itself. Further, Cleer's material breaches—including refusal to provide financial records, exclusion from governance, and self-dealing distributions—preceded and invalidated any contractual reliance on a deferred payout clause. Defendant is entitled to seek immediate equitable relief, an accounting, and damages, irrespective of that date.

## IV.    STATEMENT OF UNDISPUTED FACTS

Counsel and self-represented parties certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The following material facts are undisputed:

- CLEER® is registered with the United States Patent and Trademark Office as Reg. No. 7356779. The CLEER® Trademark claims a first use date of October 28, 2022. (Exhibit A – Registration For CLEER®a).

- Cleer has filed a United States trademark application for CLEER.TAX (Design Mark), Ser. No. 98128324 (collectively with CLEER®, the "CLEER Trademarks").

- In January 2020, Greenback Business Services hired Ms. Stranger as a Lead Accountant.

- Cleer provided Ms. Stranger with a company laptop.

- In May 2022, Ms. Stranger received an initial 6% membership interest in Cleer.

- Ms. Stranger executed the Operating Agreement and Membership Vesting Agreement.

- Cleer used the website www.Cleer.tax to market its services.

- Ms. Stranger purchased the domain "OpticTax.com" on January 22, 2024.

- Ms. Stranger still possesses and maintains the Cleer.tax domain.

## V.    CASE MANAGEMENT PLAN

A.    <u>Initial Disclosures.</u>

Initial disclosures will be served by September 19, 2025.

B.    <u>Scheduling Conference.</u>

1.    The parties request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

2.    The parties prefer that a scheduling conference, if held, be conducted by telephone or video conference.

C.    <u>Early Settlement Conference.</u>

**<u>Plaintiff's/Counterclaim Defendants' Position:</u>** Plaintiff and Counterclaim Defendants certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice. Settlement discussions are underway and being facilitated by Judge Vati in a second mediation scheduled for September 18, 2025.

**Defendant's/Counterclaimant's Position**: Defendant disputes Plaintiff's characterization that settlement discussions are "underway." Defendant has participated in prior mediation and will comply with court-ordered ADR, but Plaintiff has not engaged in good-faith negotiation. In particular, Plaintiff made an ex parte request to the Court to re-start mediation, then attempted to characterize the resulting mediation as though it were court-initiated rather than at Plaintiff's request. Such tactics do not reflect good-faith efforts toward resolution, but instead serve to create a misleading record.

       D.     <u>Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings.</u>

**Plaintiff's/Counterclaim Defendants' Position:** The parties should be allowed until October 15, 2025 to file motions to join additional parties and until October 15, 2025 to file motions to amend the pleadings. Motions filed after the foregoing dates will require, in addition to any other requirements under the applicable rules; a showing of good cause for the delay. Plaintiff proposes the same deadlines for Defendant.

**Defendant's/Counterclaimant's Position:** Defendant does not agree to the compressed amendment deadline proposed by Plaintiff. Defendant requests that both parties be allowed until October 31, 2026 to move to join additional parties or amend the pleadings. Plaintiff has already delayed discovery for months, and Defendant's counterclaims involve complex accounting and fiduciary duty issues that cannot be fully developed without complete discovery. It would be highly prejudicial to foreclose amendments within weeks of commencing discovery. Motions filed after October 31, 2026 would, as provided by rule, require a showing of good cause.

       E.     <u>Discovery.</u>

a.     Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case":

**<u>Plaintiff's/Counterclaim Defendants' Position:</u>** Substantial discovery has been completed relevant to obtaining preliminary injunctive relief. Cleer will need to conduct limited, additional discovery to determine the net profit Defendant Stranger incurred by soliciting Cleer's clients and to assess the totality of the damage to Cleer's business and its reputation and goodwill with its customers by virtue of Stranger's breach of the protective covenants and her misappropriation and redirection of the Cleer.tax domain, and other claims asserted by Cleer. Cleer also needs discovery to determine additional clients and suppliers solicited by Plaintiff since initial discovery was served as part of the preliminary injunction hearing. Cleer also needs additional discovery to determine additional unfair competitive practice of Stranger since the preliminary injunction hearing. Cleer will also require limited discovery relating to Defendant's counterclaims.

**<u>Defendant's/Counterclaimant's Position:</u>** Defendant disagrees with Plaintiff's characterization that substantial discovery has already been completed. The discovery conducted to date was limited, expedited, and one-sided, directed solely toward Plaintiff's preliminary injunction motion. Defendant has not had a fair opportunity to obtain discovery on her defenses or counterclaims.

Defendant anticipates discovery will be needed on the following:

1. Accounting, dividend, and equity records, including all financial records necessary to calculate Defendant's capital account and ownership interest under the Operating Agreement and Membership Vesting Agreement.

2. Valuation-related discovery, including communications with third-party buyers, internal projections, and investor reports bearing on the fair market value of Cleer LLC.

3. Internal and external communications relating to Defendant's purported removal, the domain name transfer, valuation, or any suppression of Defendant's rights.

4. Misappropriation of Defendant's likeness, including post-departure marketing use of her name, photo, or authored materials.

5. Evidence of reputational harm and third-party communications, including defamatory statements to entrepreneurial networks, clients, or public-facing channels.

6. Use of Defendant's proprietary business systems and intellectual property following her exclusion, including documents related to client relationships, processes, and infrastructure she developed.

7. Evidence concerning Xenitha, including whether Plaintiffs knew the injunction would restrict Defendant's unrelated ventures and intentionally sought to suppress them.

8. Plaintiff's efforts to access Defendant's personal devices and accounts, including all communications and legal process (if any) related to the seizure of Defendant's laptop and attempts to gain iCloud access.

9. Allegations of a hostile workplace and retaliatory exclusion, including third-party testimony from current or former employees, contractors, or advisors.

10. Plaintiff's use of the legal process, including any misuse of court orders, litigation conduct designed to suppress speech or economic participation, and strategic delay or manipulation of discovery.

11. Communications with the Court or its staff, including ex parte communications or requests related to ADR, scheduling, or procedural orders that may have impacted Defendant's due process rights.

Defendant expressly reserves all rights under Fed. R. Civ. P. 26(b)(1) to pursue additional discovery proportional to the needs of the case. Given the scope of Defendant's counterclaims—including fiduciary breach, tortious interference, conversion, misappropriation, defamation, IIED, and abuse of process—discovery will necessarily extend well beyond the confines of Plaintiff's initial PI-related theories.

Defendant further notes that Optic Tax, Inc. has been dismissed from this case for lack of jurisdiction. Plaintiff continues to conflate Optic Tax with Defendant personally, and Defendant disputes the relevance or admissibility of evidence concerning Optic Tax where it is not directly tied to claims against Defendant. Defendant reserves the right to move to strike or exclude any evidence improperly obtained or presented in violation of the Court's prior dismissal order.

b.      The parties anticipate discovery will be needed on the following subjects:

**<u>Plaintiff's/Counterclaim Defendants' Position</u>:**  Plaintiff and Counterclaim Defendants anticipate that discovery will be needed on the following subjects: net profit Defendant Stranger incurred by soliciting Cleer's clients; clients solicited by Stranger since prior discovery was responded to; Stranger's current employment; other parties involved in Stranger's competing activities; damage to Cleer's business, reputation, and client goodwill caused as a result of

Stranger's breach of the protective covenants and her misappropriation and redirection of the Cleer.tax domain.  Additional discovery will be needed on Defendant's counterclaims.

**Defendant's/Counterclaimant's Position:** Defendant anticipates discovery will be needed on the following subjects:

- Plaintiff's accounting practices and financial records, including all documents necessary to calculate Defendant's Capital Account under the Operating Agreement and to determine the proper valuation of Defendant's membership interest under the Membership Vesting Agreement.

- Communications and documents concerning Plaintiff's refusal to provide financial reports, capital account statements, and other required records during Defendant's membership.

- Plaintiff's internal and external communications regarding Defendant's removal as a member and the purported repurchase of her interest.

- Plaintiff's use of Defendant's name, image, and likeness in marketing and publications after her departure.

- Plaintiff's referral of clients to Optic Tax and communications evidencing waiver or modification of any non-solicitation restrictions.

- Plaintiff's security practices and handling of alleged "trade secrets," including access to client data by contractors and third parties.

- Communications between Plaintiff and the Court or Court staff relating to mediation, scheduling, or settlement, including any ex parte requests.

18

- Communications and documents relating to Plaintiff's May 13, 2024 offer to purchase Defendant's membership interest for $216,559.85 and the later contradictory claim of a negative capital balance.

- Plaintiff's trademark prosecution, clearance searches, and related communications with trademark counsel, including Revision Legal, Ogletree Deakins, and Taft attorneys. Plaintiff has waived privilege by testifying at deposition to the substance of these attorney communications and advice.

- Communications regarding the selection of the "Cleer" and "Cleer.tax" names, the known existence of similar marks (including ClearTax and ClearTax.us), and potential objections identified by counsel.

- Communications and documents concerning any advice provided to Plaintiff about the strength, enforceability, or risks associated with the CLEER trademarks.

- Communications with counsel regarding domain names, including cleer.tax, GBStax, and related marks.

- Plaintiff's communications concerning Defendant to third parties, including the Dynamite Circle entrepreneurial community, which led to Defendant's removal as a member.

- Records concerning Cleer team members' employment status, tenure, and treatment. Defendant requested these previously but Plaintiff refused to provide them. These records are relevant to Defendant's claims of a hostile work environment and breach of duty.

- Records of leadership meetings, strategy sessions, and internal communications demonstrating Defendant's role in building and growing Cleer, contrasted with the minimal involvement of David and Carrie McKeegan.

- Plaintiff's continued use of Defendant's name, image, and likeness in marketing, publications, and communications after her departure.

Defendant expressly reserves all rights under Fed. R. Civ. P. 26(b)(1) to pursue additional discovery proportional to the needs of the case. Given the scope of Defendant's pled and intended counterclaims—including fiduciary breach, tortious interference, conversion, misappropriation, defamation, IIED, and abuse of process—discovery will necessarily extend well beyond the confines of Plaintiff's initial PI-related theories.

Defendant further notes that Optic Tax, Inc. has been dismissed from this case for lack of personal jurisdiction. Plaintiff continues to improperly conflate Optic Tax with Defendant personally. Defendant disputes the admissibility and relevance of any evidence concerning Optic Tax where not directly tied to claims asserted against her individually and reserves the right to move to strike or exclude such material in accordance with the Court's dismissal order.

c.      All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4):

**<u>Plaintiff's/Counterclaim Defendants' Position:</u>**

Plaintiff and Counterclaim Defendants propose all discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced by September 8, 2025 and completed (not propounded) by November 7, 2025.

**<u>Defendant's/Counterclaimant's Position:</u>**

Defendant proposes that discovery shall commence October 1, 2025 and be completed by August 31, 2026. The two-month schedule proposed by Plaintiff is unrealistic and prejudicial, particularly given the breadth of counterclaims, and the fact that Defendant is *pro se*.

      d.    <u>Discovery in Phases.</u>

**<u>Plaintiff's/Counterclaim Defendants' Position:</u>**

Plaintiff and Counterclaim Defendants propose discovery not be conducted in phases.

**<u>Defendant's/Counterclaimant's Position:</u>**

Defendant agrees discovery need not be formally divided into "phases," but emphasizes that discovery must be broad enough to address both Plaintiff's claims and Defendant's counterclaims, which encompass breach of contract, breach of fiduciary duty, self-dealing, misappropriation of likeness and intellectual property, defamation, workplace misconduct, emotional distress, tortious interference with multiple business ventures, unlawful deprivation of personal property, and abuse of legal process. Given the scope and complexity of the case, Defendant reserves all rights to pursue discovery proportional to the needs of these claims under Fed. R. Civ. P. 26(b)(1), including third-party subpoenas and supplemental discovery requests as appropriate.

      e.    If discovery will be conducted in phases, describe each phase and state the date by which it will be completed by: Not applicable.

f.      The parties anticipate that the plaintiff(s) will require a total of two (2) depositions of fact witnesses and that the defendant(s) will require a total of nine (9) depositions of fact witnesses, including Plaintiff's principals (David and Carrie McKeegan), corporate representatives of Cleer with knowledge of finances, operations, and workplace conditions, Plaintiff's trademark counsel and corporate accountant, and third-party witnesses relevant to defamation, waiver, and data control issues..

Following is the position of each party:

**Plaintiff's/Counterclaim Defendants' Position:**

Plaintiff and Counterclaim Defendants propose the depositions commence by September 8, 2025 and be completed by November 7, 2025.

**Defendant's/Counterclaimant's Position:**

Defendant proposes depositions should be completed by July 31, 2026.

g.      Interrogatories.

**Plaintiff's/Counterclaim Defendants' Position:**

Plaintiff and Counterclaim Defendants propose the parties will not request permission to serve more than 25 interrogatories.

**Defendant's/Counterclaimant's Position:**

Defendant does not object to the presumptive limit of 25 interrogatories under Rule 33, but reserves the right to seek leave of Court to serve additional interrogatories if necessary and proportional to the needs of the case.

h.    <u>Experts.</u>

Plaintiff does not intend to call expert witnesses at trial, but reserves the right to do should discovery reveal a need for expert opinions. Defendant anticipates calling expert witnesses at trial, including but not limited to experts on business valuation, accounting, fiduciary duties, and damages.

i.    Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they bear the burden of proof by a date not later than 3 months before the deadline for completing all discovery. Depositions of any such experts will be completed by a date not later than 2 months before the deadline for completing all discovery.

**<u>Defendant's/Counterclaimant's Position:</u>**

Defendant proposes that parties designate experts on issues where they bear the burden of proof, and provide reports under Rule 26(a)(2), by May 15, 2026 (3 months before the close of discovery on Aug 31, 2026). Depositions of such experts will be completed by July 15, 2026.

j.    Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any issues on which they do not bear the burden of proof by a date not later than 1 month before the deadline for completing all discovery. Depositions of such experts will be completed by a date not later than the discovery cutoff date.

**<u>Defendant's/Counterclaimant's Position:</u>**

Defendant proposes that parties designate rebuttal experts by July 1, 2026 (1 month before the close of discovery). Depositions of such experts will be completed by the discovery cutoff date of Aug 31, 2026.

k.      Damages Analysis.

**Plaintiff's/Counterclaim Defendants' Position:**

Plaintiff and Counterclaim Defendants propose a damages analysis will be provided by any party who has a claim or counterclaim for damages by November 12, 2025.

**Defendant's/Counterclaimant's Position:**

Defendant does not agree to the compressed deadline proposed by Plaintiff. Because damages analyses in this case depend on financial, accounting, and valuation evidence that is uniquely in Plaintiff's possession, Defendant cannot provide a complete damages analysis until discovery is substantially complete.

Defendant proposes that any party with claims for damages provide its damages analysis by May 15, 2026, approximately three months before the close of discovery, with supplementation permitted as additional information becomes available.

l.      Undersigned counsel (after consultation with their respective clients concerning computer-based and other electronic information management systems, including historical, archival, back-up and legacy files, in order to understand how information is stored and how it may be retrieved) and self-represented parties have discussed the disclosure and preservation of electronically stored information (ESI), including, but not limited to, the form in which such data shall be produced, search terms and/or other techniques to be used in connection with the

retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. While the parties have not reached full agreement on all aspects of ESI disclosure, both parties acknowledge their obligations under Fed. R. Civ. P. 26(b) and 34 and agree to preserve relevant ESI in their possession, custody, or control, and to meet and confer as necessary regarding the scope and format of production.

The parties have been unable to reach agreement on the procedures for the preservation, disclosure and management of electronically stored information on a laptop produced by Stranger.

Following is the position of each party:

**<u>Plaintiff's/Counterclaim Defendants' Position:</u>**

Plaintiff and Counterclaim Defendants have maintained electronically stored information and will provide the same to Defendant Stranger upon properly served discovery requests. However, despite the Court's Order requiring that Defendant Stranger produce her laptop for forensic review and assist Cleer in obtaining access to the laptop, she has refused to provide the password or to assist Cleer in obtaining the password, preventing Cleer from conducting a forensic analysis of same.

**<u>Defendant's/Counterclaimant's Position:</u>**

Defendant maintains that Plaintiff's delay in pursuing forensic inspection constitutes waiver of any urgent need and has caused significant personal and professional harm through the deprivation of her property. Plaintiff Cleer LLC retained the device but took no action to initiate

forensic inspection for over seven months. Only after Defendant moved for protective relief in July 2025 did Cleer begin to pursue a forensic process. Defendant has not refused compliance, but has objected to any forensic review in the absence of a protective order, a neutral protocol, and appropriate scope limitations to protect personal, privileged, and constitutionally sensitive materials. Defendant also intends to assert counterclaims based on unlawful seizure and attempted access to cloud-based personal data without due process. These issues remain the subject of pending motion practice (see ECF 234, 236).

Defendant also notes that her ability to access or preserve certain electronically stored information has been materially impacted by the events giving rise to this litigation. Specifically, Optic Tax, Inc., a separate legal entity, was forced to shut down as a result of the preliminary injunction, and certain digital systems were wrongfully seized or controlled by former Cleer contractors who had joined Optic Tax. Other systems were lost due to nonpayment when the company could no longer sustain operations. As a result, certain Optic Tax-related ESI may no longer be accessible, and Defendant disputes any implication that all prior data remains available or preserved. Defendant expressly reserves all rights under Fed. R. Civ. P. 26(c), 37(e), and 45(d)(1) to seek protective relief or cost-shifting for any discovery that is unduly burdensome, disproportionate, or premised on data no longer within her possession, custody, or control.

Defendant further notes that Plaintiff has its own obligations to preserve and produce ESI, including emails and records of communications with counsel, contractors, and third parties relevant to trademark prosecution, client solicitation, and Defendant's counterclaims.

m.     Undersigned counsel (after consultation with their clients) and self-represented parties have also discussed the location(s), volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms.

**Plaintiff's/Counterclaim Defendants' Position:**

Plaintiff and Counterclaim Defendants propose that the individual parties bear their own costs of preserving and producing electronically stored information.

**Defendant's/Counterclaimant's Position:**

Defendant does not object in principle to bearing reasonable costs of preserving and producing her own paper records. However, Defendant notes that Optic Tax, Inc. was forced to close as a result of this litigation. Certain systems were wrongfully seized and controlled by former Cleer contractors who later joined Optic Tax, and Defendant was locked out of access without her consent. Defendant was unable to intervene because the Preliminary Injunction prohibited her from contacting or discussing business with those individuals, and she complied with the Court's order. Other systems were terminated for nonpayment when the company could no longer sustain operations. As a result, some Optic Tax records are no longer available. Defendant disputes any implication that such records were intentionally destroyed or withheld, but makes this disclosure now in the interest of transparency so the Court is aware of potential limitations in discovery. Defendant further does not agree that this provision should foreclose cost-shifting under Rule 26(c) or Rule 45 where discovery is unduly burdensome or disproportionate, and reserves the right to seek appropriate cost allocation from the Court.

n.     Undersigned counsel and self-represented parties have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including

27

procedures for asserting privilege claims after production. The parties have not reached agreement on uniform procedures for the preservation, disclosure, or cost allocation for such materials.

### Plaintiff's/Counterclaim Defendants' Position:

Plaintiff and Counterclaim Defendants agree to the prompt clawback and immediate deletion of inadvertently produced documents.

Plaintiff/Counterclaim Defendants' disagree as to their waiver of any privilege.

### Defendant's/Counterclaimant's Position:

Defendant notes Plaintiff has already waived privilege on trademark counsel communications by testifying to their substance and reserves all rights to contest any attempted clawback. Defendant further requests that the clawback procedure be entered under Federal Rule of Evidence 502(d) to ensure clarity and consistency across proceedings.

While Ms. Stranger acknowledges her respective preservation obligations, Cleer proposes that individual parties should bear their own costs of preserving and producing paper records. Defendant does not object in principle to bearing reasonable costs for preservation and production of her own non-electronic records. However, she notes that Optic Tax, Inc. was forced to close as a direct result of this litigation. Certain systems were wrongfully seized and controlled by former Cleer contractors who later joined Optic Tax, and Defendant was locked out of those systems without her consent. Other records became inaccessible when company services were terminated for nonpayment during the shutdown. As a result, some relevant Optic Tax records are no longer available.

Defendant therefore disputes any presumption that all requested records remain available or preserved and does not agree that this provision should foreclose cost-shifting where appropriate. Defendant expressly reserves the right to seek protective relief or cost allocation under Federal Rules of Civil Procedure 26(c) or 45, should any discovery requests prove unduly burdensome, disproportionate, or seek inaccessible materials.

F.    Other Scheduling Issues.

**Plaintiff's/Counterclaim Defendants' Position:**

During the September 4 scheduling conference, Ms. Stranger relayed that, despite the Court Order [ECF 208], she refuses, and has no intent, to transfer the domain Cleer.tax. Plaintiff requests to schedule a hearing to discuss the transfer of the Cleer.tax domain.

**Defendant's/Counterclaimant's Position:**

Defendant disputes Plaintiff's characterization and notes that the domain transfer issue is already subject to ongoing appellate proceedings. Defendant further maintains that a Rule 26(f) report is not the proper vehicle for addressing enforcement of prior orders.

Plaintiff has proposed no additional scheduling needs beyond those addressed in its initial statement. Defendant, however, identifies the following additional scheduling issues that may affect the pace and coordination of discovery and pretrial proceedings:

1.  Medical recovery from bilateral arthrocentesis is expected to continue for approximately 8–12 weeks from August 12, 2025, during which time Defendant experiences intermittent pain, cognitive fatigue, and reduced jaw mobility, impairing her ability to manage high-volume litigation tasks;

2. The Court has not yet ruled on Defendant's pending objection to the forensic review protocol (ECF 234), and any discovery involving electronically stored information (ESI) should be deferred until a protective order and mutually agreed-upon protocol are in place. Defendant anticipates that resolution of this issue may require 4–6 weeks, including briefing and potential motion practice;

3. Defendant's Second Circuit appeal (No. 25-1575) involve overlapping issues of jurisdiction, due process, and property rights, and may impact the scope of permissible claims and defenses in this matter. Defendant submitted her appellate brief on July 31, 2025; Plaintiff's response brief is due October 29, 2025. A decision is expected in late 2025 or early 2026;

4. A Petition for Certiorari to the U.S. Supreme Court is in preparation regarding due process and First Amendment issues arising from the dismissal of TRO appeal No. 25-530, which was later cited as the basis for this Court's contempt ruling. The petition is expected to be filed by mid-September 2025, and may trigger additional briefing or stay requests depending on the issues accepted for review.

Given these overlapping constraints, Defendant proposes that any discovery schedule remain flexible, with initial efforts focused on discrete paper record production, third-party subpoenas, and written discovery, with deadlines for depositions and dispositive motions to be set after forensic and appellate issues are resolved. Defendant remains willing to confer further under Rule 26(f) and to revisit the schedule as circumstances evolve.

G.    Summary Judgment Motions.

**Plaintiff's/Counterclaim Defendants' Position:**

Summary judgment motions, which must comply with Local Rule 56, will be filed on or before November 14, 2025.

**Defendant's/Counterclaimant's Position:**

Defendant proposes that all dispositive motions, including summary judgment motions, be filed by October 15, 2026, following the close of discovery on August 31, 2026. This schedule allows for a complete record, including valuation/accounting evidence, fiduciary duty discovery, and damages proof, and avoids premature summary judgment motions.

      H.    <u>Joint Trial Memorandum.</u>

**Plaintiff's/Counterclaim Defendants' Position:**

Plaintiff and Counterclaim Defendants propose the joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by November 19, 2025.

**Defendant's/Counterclaimant's Position:**

Defendant proposes that the Joint Trial Memorandum required by the Standing Order on Trial Memoranda in Civil Cases be filed by January 15, 2027, consistent with a trial readiness date of March 15, 2027.

**VI**.    **TRIAL READINESS**

**Plaintiff's/Counterclaim Defendants' Position:**

Plaintiff and Counterclaim Defendants propose the case will be ready for trial by December 1, 2025.

**Defendant's/Counterclaimant's Position:**

Defendant disputes Plaintiff's proposed trial readiness date. Discovery has not yet commenced in earnest, and Defendant has significant counterclaims involving complex accounting, fiduciary duty, defamation, and valuation issues. In addition, Defendant is currently in a documented period of medical recovery (ECF 281, Exs. E–F), and parallel proceedings are pending in the Second Circuit and Supreme Court that overlap with issues in this case.

Thus Defendant proposes that the case will be ready for trial by March 15, 2027, consistent with the close of discovery on August 31, 2026, summary judgment motions due October 15, 2026, and a Joint Trial Memorandum due January 15, 2027.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.



Plaintiff

By   /s/ George B. Musekamp          Date: September 5, 2025

Defendant

By   /s/ Crystal Stranger (By Email Auth.)   Date: September 5, 2025

The undersigned self-represented parties agree to cooperate with the Court and all parties to promote the just, speedy, and inexpensive determination of this action. **Defendant's addition**: consistent with the preservation of constitutional rights and objections previously asserted in this case.

Plaintiff

By  ___/s/ George B. Musekamp_____    Date: __September 5, 2025_____

Defendant

By  ___/s/ Crystal Stranger (By Email Auth.)___    Date: __September 5, 2025_____

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 5, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all counsel of record.


*/s/ George B. Musekamp*