## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

CLEER LLC                                     :

v.                                            :    3:24-cv-1496-MPS
                                              :
CRYSTAL STRANGER et al.                       :    DEFENDANT'S MOTION TO
                                              :    TRANSFER VENUE TO THE DISTRICT
v.                                            :    OF NEW MEXICO
                                              :
DAVID and CARRIE McKEEGAN                     :
                                              :


Pursuant to 28 U.S.C. § 1404(a), Defendant Crystal Stranger respectfully moves this Court to transfer venue of this action to the United States District Court for the District of New Mexico, Las Cruces Division.

As set forth more fully in the accompanying Memorandum of Law in Support of Defendant's Motion to Transfer Venue, transfer is warranted because:

1. No party, counsel, or witness resides in Connecticut; the locus of operative facts and relevant records lies in New Mexico.

2. Plaintiff's Initial Disclosures, served September 19, 2025, identified Defendant's elderly father — a resident of Las Cruces, New Mexico — as a key non-party witness, whose medical limitations make live testimony feasible only within the District of New Mexico.

3. Plaintiff, the drafter of the operative agreements, inserted two conflicting forum-selection clauses—one selecting Connecticut, the other Wyoming—into documents bearing the same effective date: May 27, 2022. This contradiction, within agreements prepared by the same party and executed as part of a single transaction, creates ambiguity that undercuts any

1

presumption of enforceability under *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49 (2013). Courts routinely construe such inconsistencies against the drafter, particularly where the clause was neither clearly negotiated nor mutually assented to.

4. Public-interest factors overwhelmingly favor transfer. Judicial economy and trial efficiency would be served by moving the case to New Mexico, a forum with genuine ties to the underlying facts, rather than burdening Connecticut courts with a dispute involving no Connecticut parties, witnesses, or law. The governing agreements invoke the laws of at least five non-forum states, while New Mexico's own employment laws are likely to apply, giving that District a direct stake in the outcome. By contrast, Connecticut has no substantive interest in adjudicating the claims, and its docket has already been consumed by extensive motion practice with little progress toward the merits. Transferring the case would promote fairness, conserve judicial resources, and allow a jury drawn from the community most connected to the events to resolve the dispute.

For these reasons, Defendant respectfully requests that this Court enter an order transferring this matter to the District of New Mexico, Las Cruces Division.


Respectfully submitted,

/s/ Crystal Stranger
Crystal Stranger
Pro Se Defendant

Date: September 22, 2025

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO TRANSFER VENUE TO THE DISTRICT OF NEW MEXICO**

## I. INTRODUCTION

This case belongs in New Mexico, not Connecticut. Two different agreements governing the same relationship — both executed on May 27, 2022 — contained irreconcilable forum-selection clauses, one selecting Wyoming and one selecting Connecticut. That ambiguity alone renders the Connecticut clause unenforceable and removes it from the *Atlantic Marine* presumption.

More critically, Plaintiff's Initial Disclosures served on September 19, 2025, revealed for the first time that its principal fact witness is Defendant's elderly father, who resides in Las Cruces, New Mexico, within 50 miles of the federal courthouse there. His medical limitations make cross-country travel or remote testimony impracticable. New Mexico is therefore the only forum where live testimony from the key identified non-party witness can be compelled under Rule 45.

Defendant Crystal Stranger is a United States citizen currently living outside the country. While she previously designated South Africa as her domicile in filings before this Court, she and her husband maintain longstanding ties to New Mexico, where he owns a home. She has not established legal residency elsewhere, and retains historical and logistical connections to the state. Relevant tax and business records were filed and held in New Mexico, and all conduct giving rise to this dispute occurred outside Connecticut. (See Ex. A, Affidavit)

By contrast, Plaintiff Cleer LLC is a Wyoming limited liability company with no offices, employees, or clients in Connecticut. The business relationship at issue was conducted entirely remotely, and Plaintiff is represented in this case by Ohio-based counsel. Despite this, Plaintiff

chose to file suit in Connecticut, a state to which neither party has meaningful ties, based solely on a forum selection clause in the Membership Vesting Agreement ("MVA"). That clause was neither freely negotiated nor clearly understood, but was imposed unilaterally during a period of intense professional workload, in a contract marred by conflicting and hastily drafted provisions. Plaintiff has since disclaimed the MVA, asserting in its pleadings that the agreement was terminated prior to filing suit. Furthermore, the venue clause in the MVA conflicts with the Operating Agreement ("OA"), which according to the contracts was effective on the same day, May 27, 2022, (See Ex. G-J) and had a venue clause to choose Wyoming. Because the MVA clause is not valid or binding, and given that Plaintiff initially hired Defendant as a New Mexico employee, while she was operating her prior business in New Mexico, this case could, and should, have been brought in the District of New Mexico, where Defendant maintains longstanding personal, business, and logistical ties.

Indeed, the various agreements governing the parties' relationship are riddled with contradictions: the MVA invokes Michigan law, the OA is governed by Wyoming law, and the original employment agreement specified New York. None of these agreements applied Connecticut law. This patchwork reflects not a principled choice of forum, but a shifting and opportunistic contractual framework, crafted to benefit Plaintiff rather than reflect any real connection to the parties or the dispute.

Moreover, no party or even counsel in this case is a Connecticut taxpayer, and Connecticut law is not controlling. As such, adjudicating this case in the District of Connecticut offers no benefit to the state or its citizens, while imposing substantial costs on a congested federal docket. This litigation drains judicial resources and burdens this Court with the

administration of an out-of-state dispute, all to serve a venue clause that was never fairly bargained, and that Plaintiff itself has largely disregarded outside this usage.

The Court should not reward such gamesmanship by allowing Plaintiff to enforce a clause in an agreement it has otherwise disclaimed, especially where enforcing it imposes a disproportionate burden on a pro se Defendant with no Connecticut ties, and on the taxpayers of Connecticut who have reduced access to their courts with this contentious case clogging court resources. In substance, this venue clause represents forum shopping disguised as contract enforcement, and it imposes unnecessary burdens on this Court and the taxpayers of Connecticut for the adjudication of an out-of-state dispute. The Court should decline to allow this to continue, and transfer this matter to the District of New Mexico, the only forum with a meaningful connection to Defendant, and the only venue in which this dispute can be adjudicated fairly, efficiently, and without wasteful expenditure of public resources.

## II. LEGAL STANDARD

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Courts in the Second Circuit apply a flexible, case-specific analysis under this provision, considering the totality of the circumstances. In deciding a motion to transfer venue, courts examine: (1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and relative ease of access to sources of proof, (6) the

relative means of the parties, and, with less deference, to (7) the Plaintiff's choice of forum. See

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010), and

"the forum's familiarity with the governing law, . . . trial efficiency, . . . and the interest of

justice." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 29 (E.D.N.Y. 2014).

No single factor is dispositive, and "courts have broad discretion in making

determinations of convenience under Section 1404(a)." However, the party seeking to transfer a

matter to a particular venue must establish its position by "clear and convincing" evidence. See

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d at 113-14.

In cases involving a forum selection clause, the analysis under 28 U.S.C. § 1404(a) shifts.

The Supreme Court held in *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49

(2013), that while a valid and enforceable forum selection clause is entitled to "controlling

weight in all but the most exceptional cases," it does not end the inquiry. Courts must still

consider whether public-interest factors outweigh enforcement of the clause.

The Court identified three key public interest factors that may override even a

presumptively valid forum selection clause: (1) Administrative difficulties due to court

congestion; (2) Local interest in having localized controversies decided at home; (3) The interest

in having the trial in a forum that is familiar with the law that will govern the case.

These considerations ensure that litigation remains tied to the appropriate forum and legal

context, even in the presence of contractual venue language. Courts retain broad discretion to

deny enforcement of a forum clause when public interest, fairness, or judicial efficiency is

undermined.

## III. THE DISTRICT OF NEW MEXICO HAS JURISDICTION AND IS THE MOST APPROPRIATE VENUE FOR THIS CASE

A motion to transfer under 28 U.S.C. § 1404(a) may only be granted if the action could have been brought originally in the transferee district. That standard is met here.

A. **Subject matter jurisdiction** in this case is based on both diversity and federal question grounds. While Plaintiff's original claims rely in part on alleged federal law violations, the viability of those claims has been challenged, and Plaintiff has not plausibly alleged an amount in controversy exceeding $75,000 to satisfy federal diversity jurisdiction under 28 U.S.C. § 1332. However, Defendant's counterclaims independently satisfy the requirements for diversity jurisdiction: the parties are completely diverse, and the amount in controversy exceeds $75,000, as documented in prior filings, and in Exhibit F attached here. Accordingly, the District of New Mexico has subject matter jurisdiction over this action, regardless of whether Plaintiff's original claims survive.

B. **Personal jurisdiction** would likewise have existed at the time of filing. Plaintiff hired Defendant while she was residing in New Mexico and operating her prior business there. That relationship continued remotely, with professional activities and stored business records remaining in New Mexico throughout the relevant time period. These facts establish sufficient minimum contacts for personal jurisdiction under due process principles.

Furthermore, the District of New Mexico would have personal jurisdiction over the individual counterclaim defendants, David and Carrie McKeegan, based on their substantial and purposeful contacts with the state. Plaintiff initially hired Defendant while she was a New Mexico resident, operating her prior business, 1st Tax, which was based in and paid taxes to

New Mexico. That business was later merged into Cleer's operations, and Mr. McKeegan personally negotiated and directed that integration. Numerous business communications occurred while Defendant was physically located in New Mexico, and the McKeegans knowingly entered a working relationship with a New Mexico-based professional. These facts meet the minimum contacts standard under *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021), and provide a sufficient jurisdictional basis for adjudicating the related counterclaims against the McKeegans in New Mexico. In this context, transferring the case would not prejudice the Plaintiff or counterclaim defendants, and would allow all claims to be fairly resolved in a forum with a logical connection to the underlying events.

C. **Venue** is also proper in the District of New Mexico under 28 U.S.C. § 1391(b)(2), as a substantial portion of the events giving rise to the claims occurred there, Plaintiff retained Defendant to work from New Mexico, and the alleged conduct giving rise to this action, including business formation, client communication, and domain registration, occurred while Defendant was residing and working in that state. By knowingly hiring and engaging an employee in New Mexico, Plaintiff purposefully availed itself of that forum, making litigation there reasonably foreseeable, particularly since the initial employment contract contained no forum-selection clause aside from arbitration. (See Ex. I, Employment Contract.)

Courts in the Second Circuit have recognized that when actions giving rise to a dispute occur in a particular state, that state's law may be implicated and thus reinforce its interest in adjudicating the case. See *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 105 (2d Cir. 2000) (emphasizing the United States' interest in furnishing a forum to litigate claims implicating international human rights where U.S. law may apply). Here, Defendant was employed in New

Mexico and performed many critical actions there; it is likely that New Mexico law will govern at least some of the claims. This reinforces New Mexico's legal and factual connection to this dispute and supports transfer to that venue.

Because this is a workplace-related dispute, and the employment relationship was centered in New Mexico, it is likely that New Mexico law will govern at least some aspects of this case. New Mexico statutes, such as N.M. Stat. §50-4-36 and the New Mexico Human Rights Act (NMSA 1978, §§ 28-1-1 to -14), provide protections against workplace retaliation and harassment, and may apply to Plaintiff's conduct. Connecticut jurors and courts have no stake in enforcing New Mexico employment protections, while New Mexico does. Accordingly, New Mexico is the forum with the strongest factual and legal connection to this dispute.

Accordingly, the threshold condition for transfer under § 1404(a) is satisfied. While Plaintiff may reference the MVA's forum selection clause, that provision does not undermine the appropriateness of New Mexico as a venue. This principle is reinforced by *Hoffman v. Blaski*, 363 U.S. 335 (1960), where the Supreme Court held that a case may be transferred only to a district where it "might have been brought" at the time of filing, not one rendered available solely by later consent or litigation tactics. Because New Mexico had both subject matter jurisdiction and personal jurisdiction over the parties from the outset, it is not just a convenient forum but one that satisfies the *Hoffman* standard.

New Mexico also has a strong legal interest in adjudicating claims arising from an employment relationship entered into within its borders. In light of these facts, New Mexico was not only a permissible venue— it was, and remains, the best forum for resolution of this dispute.

## IV. ANALYSIS OF FACTORS THAT SUPPORT TRANSFER OF VENUE

### A. Transfer is Warranted for the Convenience of the Witnesses

One of the key non-party witnesses identified by Plaintiff is Defendant's elderly father, Simeon Stern, who is in his late 70's and resides in Las Cruces, New Mexico. Forcing him to travel across the country to Connecticut, when he has no connection to the state and has medical issues that make travel challenging, would be unduly burdensome and potentially prejudicial.

Requiring a non-party witness to travel thousands of miles to testify in Connecticut is often unreasonable. Courts have long recognized that the "convenience of non-party witnesses is often the most important factor in determining whether to grant a motion to transfer." *Longo v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 169, 172 (E.D.N.Y. 1999); *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

Where witnesses are elderly or infirm, transfer becomes even more compelling. See *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000) (granting transfer in part due to age and health of key witnesses). Transfer to the District of New Mexico would allow Defendant's father to participate in the proceedings without the need for cross-country travel or complicated deposition accommodations.

Moreover, none of Plaintiff's other witnesses reside in Connecticut. As outlined in Plaintiff's Initial Disclosures, its expected witnesses include individuals located in California, South Carolina, Texas, Virginia, the Philippines, and various other non-Connecticut jurisdictions, including corporate representatives of third-party companies. (See Ex. B - Plaintiff's 26(a) Disclosures). Not a single individual identified by Plaintiff has any known connection to Connecticut.

The foreign witnesses could appear in New Mexico just as easily as in Connecticut, particularly since many of them would require air travel regardless of forum. This is especially true as the District of New Mexico is well-equipped to accommodate remote proceedings and discovery-related hearings. Many courtrooms in New Mexico support integrated video-conferencing and technology for remote testimony. Local Rule 7.6 allows for telephone hearings in appropriate circumstances, and local procedures explicitly permit requesting hearings to be telephonic or in person. Thus, transferring venue to New Mexico would not foreclose remote participation, particularly for witnesses abroad, as are most of the witnesses in this case, but would reduce the burden of travel, logistical challenges, and expense.

Accordingly, the convenience of both party and non-party witnesses overwhelmingly favors transfer to New Mexico, where a local jury would also be better equipped to assess the context of events that occurred outside Connecticut, and where evidence and personal testimony are just as readily accessible.

### B. Transfer is Warranted by the Convenience of the Parties

Furthermore, New Mexico is significantly more convenient for Defendant, who would face fewer logistical burdens litigating in that district, particularly if a jury trial is ordered. Holding a trial in Connecticut, where neither party resides, and which has no meaningful nexus to the facts of the case, imposes undue hardship and expense. Both parties witnesses, documentation, and historical records are located either in New Mexico or outside of any possible forum state.

Courts recognize that the convenience of the parties is a relevant factor under § 1404(a). *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *In re Volkswagen of Am.,*

*Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Although the convenience of non-party witnesses is often given greater weight, the burdens on the parties themselves remain an important consideration. Here, those burdens weigh heavily in favor of transfer.

Plaintiff is headquartered in Wyoming. Defendant has longstanding ties to New Mexico, where her husband owns a home and her historical tax and business records are located. Neither party resides in Connecticut. Additionally, the counterclaimants, have admitted under oath to residing outside the United States. (See Ex. C – PI Trial Testimony of David McKeegan, Pg145, 21-25). Accordingly, there are no parties actually residing in Connecticut whose convenience would be served by keeping this case here.

Plaintiff cannot reasonably claim that trial in the District of New Mexico would impose an undue burden. Plaintiff's primary litigation counsel, George Musekamp, is based in Ohio, not Connecticut. As such, Plaintiff is already relying on out-of-state counsel who must travel to appear in court regardless of venue. Any incremental inconvenience associated with proceeding in New Mexico rather than Connecticut would be negligible. In contrast, Defendant resides abroad and has extensive ties to New Mexico, where family support, housing, and resources are readily available. The relative burdens weigh strongly in favor of transfer.

Thus Plaintiff will suffer no greater inconvenience by litigating in New Mexico than Defendant would face in Connecticut. Given the absence of local parties in Connecticut, there is no equitable reason to burden Defendant with a remote forum.

**C. The Locus of Operative Facts is New Mexico, Not Connecticut**

While a plaintiff's choice of forum is ordinarily entitled to some deference, that deference is substantially diminished where the operative facts have little connection with the chosen district. *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008).

Precedent in this Court confirms that the "location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Armor All/STP Prods. Co. v. TSI Prods., Inc.*, No. 3:17-CV-1131 (MPS), 2018 WL 9812123, at *4 (D. Conn. Aug. 30, 2018) (quoting *Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC,* 294 F. Supp. 2d 218, 220 (D. Conn. 2003)). In *Armor All/STP*, the Court noted that trademark infringement claims implicate multiple jurisdictions but emphasized that where acts of unfair competition occur outside the chosen forum, the locus lies elsewhere.

Similarly here, significant acts including contracts, records, communications, and business formation occurred in New Mexico. None occurred in Connecticut. This Court has already determined that the factual nexus with Connecticut was insufficient to establish personal jurisdiction over Defendant Optic Tax, even when considered in conjunction with other alleged contacts. "Apart from the absence of any factual allegations or evidence to support this assertion, the fact that communications about it that Cleer believes to be false came to its attention in Connecticut is not enough to confer jurisdiction under the statute." ECF No. 236 at 9

Moreover, the Court emphasized that Cleer failed to allege or prove that its claims arose from conduct in Connecticut, or that Defendant reasonably anticipated suit here. Id. at 6–8.

As the Court has already concluded that the claims asserted do not arise from conduct in this District sufficient to establish personal jurisdiction, then it logically follows that this District

is not a proper or convenient forum for adjudicating those claims, either. This sharply reduces any presumption in favor of Plaintiff's forum selection and strongly supports transfer.

### D. The Availability of Process to Compel Unwilling Witnesses Favors Transfer

One of the most critical non-party witnesses in this case is Defendant's elderly father, Simeon Stern, who resides in Las Cruces, New Mexico. Mr. Stern suffers from a heart condition and essential tremor disorder. These medical limitations significantly impair his ability to testify remotely. His hand tremors make it difficult for him to operate video call technology, and his health issues pose a serious obstacle to travel. As such, securing his live trial testimony is only realistically feasible in the District of New Mexico, where he resides within the Court's subpoena power under Rule 45.

In such situations, courts routinely favor transfer. As the Second Circuit has emphasized, "[t]he ability to compel the testimony of important witnesses is a factor that weighs heavily in determining whether to transfer a case." *See In re Eastern District Repetitive Stress Injury Litigation*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994). The importance of live testimony from witnesses who are medically fragile or unavailable by remote means only magnifies the prejudice that would result from retaining the case in an improper forum.

Most critically, the Federal District Court of Las Cruces, New Mexico is within 50 miles of the home of Defendant's father, one of the only identified non-party witnesses tied to a specific state. That court would have clear subpoena power to secure his testimony, streamlining trial preparation and avoiding reliance on costly and less reliable video testimony or deposition transcripts. By contrast, if venue remains in Connecticut, his live testimony would potentially be lost, depriving Defendant of her opportunity to cross examination the witness, and leaving the

factfinder with an incomplete record. Beyond Mr. Stern, all of the other non-party witnesses identified by Plaintiff reside outside the subpoena power of either forum, and none are located within Connecticut.

Thus, only New Mexico provides compulsory process for any identified non-party witness, and that fact alone weighs heavily in favor of transfer.

### E. The Location of Documents Is Either Remote or Centered in New Mexico

Most records in this case, including historical business documents, tax records, and email communications, are maintained electronically or in documents connected to addresses in New Mexico. There is no suggestion that any evidence is located in Connecticut.

The location of relevant documents is a minor factor in the digital age, unless physical inspection is required. *Frame v. Whole Foods Mkt., Inc.*, No. 06-cv-7058 (DAB), 2007 WL 2815613, at *3 (S.D.N.Y. Sept. 24, 2007)*. To the extent any physical materials exist, they are in New Mexico, rather than Connecticut.

This is because relevant records tied to the early operation of Cleer, particularly those originating from Defendant's prior business, 1st Tax, are physically stored in New Mexico. This includes legacy files, marketing collateral, and proprietary workflows that predate Plaintiff's formation and were later integrated into Cleer. Because these documents, which are essential to Defendant's defense, are not readily accessible outside the U.S., trying this case in New Mexico would significantly improve ease of access to evidence under Section 1404(a).

Accordingly, the location of documents factor weighs in favor of transfer, because the only physical records are in New Mexico, while Connecticut has none.

### F. The Relative Means of the Parties Favors Transfer

This case involves a stark disparity in financial resources between the parties. Defendant is proceeding pro se after being forced to relinquish legal representation due to the mounting costs of litigation in a remote and inconvenient forum. In contrast, Plaintiff is represented by two national law firms, including a top-tier firm with extensive litigation capabilities.

The Second Circuit recognizes that courts should consider the financial burden litigation imposes on a party when deciding venue transfer. Courts consider multiple factors under §1404(a), including 'the relative means of the parties.' *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (quoting *Albert Fadem Tr. v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)), *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006) (quoting *D.H. Blair*, 462 F.3d at 106–07).".

As detailed in Defendant's affidavit, the Preliminary Injunction entered in this case forced the closure of her business, Optic Tax, which she built following her separation from Cleer LLC. Additionally, the restrictions in the original Temporary Restraining Order (TRO), including a bar on email communications, caused devastating operational harm to a second venture, Xenitha, which Defendant and her husband had acquired. That business is now being wound down due to ongoing losses. In effect, this litigation has forced the closure of two businesses and eliminated Defendant's primary sources of income.

Defendant is now further constrained by a provision in the Preliminary Injunction that prevents her from explaining the circumstances of her departure from Cleer LLC, making it virtually impossible to obtain new employment in her field. Her only remaining income is

derived from occasional webinars she delivers to professional tax education platforms, an insufficient and unstable source of financial support.

By contrast, based on her prior role as COO, and in conversations with Plaintiff's co-founder, Defendant is aware that Cleer's principals maintain substantial personal wealth, do not reside in the United States, and have expressed that they do not pay meaningful U.S. taxes. This is corroborated by David McKeegan's sworn testimony that he files using the Foreign Earned Income Exclusion, claiming nonresidency to exclude U.S. income. See Ex. D, Deposition of David McKeegan, at 7:4–9.

Plaintiff has shown no indication that litigating in an alternative venue such as New Mexico would impose any financial hardship. Indeed, when asked whether he instructed staff to record $400,000 in bonuses for himself and his wife, Mr. McKeegan testified that he did not recall and remarked, "$400,000 is and is not a lot of money." See Ex. E at 86:10–11. Such a statement illustrates a high degree of financial comfort and demonstrates the disparity in resources between the parties.

Where, as here, one party is pro se, geographically distant, and under economic duress, while the other is represented by experienced litigation counsel and financially stable, the balance of fairness strongly supports transfer to a more convenient and affordable forum.

Furthermore, as also seen in the affidavit, the cost of Defendant's prior travel to Connecticut for a preliminary injunction hearing highlights the ongoing financial burden of this venue:

1. Round-trip airfare from South Africa to Newark: $3,402

2. Rental car: $748

3. Toll costs: $182

4. Hotel accommodations in New Haven: $127.26 per night

5. Meals: $50–$100 per person per day, with even modest breakfasts near the courthouse costing $20/person

6. Local transportation, incidental expenses, and time away from work and family added further hardship.

Thus a two-day Preliminary Injunction hearing cost Defendant nearly $5,000. While this may be an insignificant cost for the Plaintiff who seems unconcerned about litigation costs, these outlays are not sustainable for a pro se litigant, particularly one forced by this litigation to shut down her business. Holding a full jury trial in New Haven would multiply these costs exponentially, especially when factoring in multiple witnesses, accommodations, and long-term trial attendance. By contrast, transfer to the District of New Mexico would allow Defendant to stay with family and significantly reduce logistical and financial burdens.

Plaintiff's counsel, meanwhile, is based in Ohio and would not face materially greater expense in trying this case in New Mexico as opposed to Connecticut. Plaintiff has made clear through its conduct that litigation costs are of little concern. It retained a large, nationally recognized firm with a reputation for high billing rates and extensive litigation firepower. It did not participate in Settlement Conferences in good faith, instead bringing no offer while preparing a motion for coercive sanctions (See Doc 287-288, Plaintiff's Motion for Coercive Sanctions and Defendant's Opposition and Cross-Motion for Sanctions). Altogether, Plaintiff has made no showing of financial hardship from travel or venue change, and given their past business success, they are far better equipped to absorb litigation costs.

These decisions reflect a strategic choice to escalate legal spend rather than contain the costs of litigation, a luxury unavailable to a pro se defendant who has been forced to shut down her businesses as a direct result of this litigation.

In these circumstances, transfer to New Mexico is the only path to procedural equity, restoring balance between the parties and avoiding the risk that a self-represented defendant is priced out of her own defense.

### G. Judicial Economy, Administrative Burden, and Governing Law Favor Transfer

Federal courts are presumed competent to apply the substantive law of other states, so Connecticut's lack of connection to the governing law does not weigh against transfer. *See Frame v. Whole Foods Mkt., Inc.*, No. 06-cv-7058 (DAB), 2007 WL 2815613, at *3 (S.D.N.Y. Sept. 24, 2007); Iragorri v. United Techs. Corp., 274 F.3d 65, 74 (2d Cir. 2001) (en banc)*. Yet this case presents an unusually fragmented landscape: the MVA is governed by Michigan law, the OA by Wyoming law, and the employment agreement by New York law. Delaware law has already been briefed in the Optic Tax dismissal motion, and New Mexico employment law is likely to arise as proceedings continue. Thus, even if the case remains here, the Court would be tasked with applying the laws of at least five non-forum states — and notably not Connecticut law. This reinforces the absence of any local interest in keeping the case in this District.

More importantly, retaining this case in the District of Connecticut imposes a substantial and ongoing burden on judicial resources in a state that bears no real connection to the dispute. Connecticut courts bear the cost of this litigation, yet: (1) neither party is a citizen or business based in Connecticut, (2) no local jobs or economic benefit arise from the case, (3) Plaintiff's own counsel isn't even located there, (4) and yet Connecticut courts are required to devote

resources to a complex and contentious dispute between out-of-state parties. That's not just inefficient, it can deprive Connecticut residents of timely access to their own courts. Even Plaintiff's primary litigation counsel is based in Ohio. Thus, no party, witness, or attorney is substantially contributing to Connecticut's tax base, yet the state's judiciary and public resources have been consumed by more than a year of intensive litigation, including injunction proceedings and multiple appellate filings.

Continuing to litigate this matter in Connecticut, when a more appropriate venue is available in New Mexico, would unfairly burden local taxpayers for the resolution of an out-of-state dispute involving out-of-state actors. Transfer to the District of New Mexico would not only promote convenience and fairness but also protect the integrity and efficiency of judicial administration in the District of Connecticut.

The procedural history further underscores the inefficiency of continuing here. Plaintiff pursued a premature default motion (ECF No. 203), a TRO/PI application unsupported by evidence (ECF No. 207), and shifting jurisdictional theories (ECF Nos. 55, 62), all of which generated unnecessary briefing. Plaintiff did not even agree to a Rule 26(f) conference until compelled by court order (ECF No. 277). To date, discovery has not begun in earnest, no dispositive rulings on the merits have issued, and no trial date has been set. Transferring now would not duplicate effort or prejudice any party; rather, it would allow the District of New Mexico to manage discovery and motion practice from a clean slate, with a jury drawn from the community most closely tied to the facts.

The Connecticut forum has ultimately been used as a tool of procedural games of chance — a kind of *procedural Yahtzee*— with Plaintiff exploiting tactical opportunities rather than

selecting the forum for any legitimate connection to the underlying dispute. The overall pattern

of rulings to date has tended to favor Plaintiff's corporate interests, reinforcing the perception

that venue has been used more as a litigation tactic than a reflection of any legitimate nexus to

Connecticut.This may reflect the District's heavy caseload and the fact that the dispute involves

out-of-state parties, but the effect is the same: the matter has not received the focused attention

needed for efficient resolution. By contrast, the District of New Mexico is unencumbered by this

procedural history and can provide a fresh and neutral forum to oversee discovery, motion

practice, and trial.

Judicial economy and trial efficiency therefore strongly support transfer to the District of

New Mexico, where a local jury can fairly adjudicate the dispute.


## V. THE MVA'S FORUM SELECTION CLAUSE SHOULD NOT CONTROL VENUE IN THIS CASE

### A. Conflicting Forum Selection Clauses Across Simultaneous Agreements Undermine Enforceability

The two most critical documents in this case, the OA and MVA, share the same effective

date—May 27, 2022—but designate two different forum states: Wyoming and Connecticut,

respectively. This inconsistency is compounded by their close execution dates (May 26 and June

2, 2022), which demonstrate that they were executed as part of the same general transaction. The

conflicting venue clauses across agreements executed within days of each other, and with one

bearing an incomplete venue designation ("_____ County, Wyoming"), reflect ambiguity,

hasty drafting, and a lack of mutual understanding regarding proper venue.

Courts routinely decline to enforce such inconsistent clauses where ambiguity exists or bargaining power is unequal, especially when one agreement is subsequently disavowed, as Plaintiff has done here with the MVA. See *Carron v. Holland Am. Line-Westours Inc.*, 51 F. Supp. 2d 322, 325 (E.D. N.Y. 1999) ("[W]here there are conflicting forum selection clauses in two contemporaneously executed agreements, and one party disclaims one agreement, the clause will not be enforced.") See also *Baker v. LeBoeuf, Lamb, Leiby & MacRae*, 105 F.3d 1102, 1106 (6th Cir. 1997)("Where two contracts forming part of a single transaction contain inconsistent forum selection clauses, and neither clearly supersedes the other, the ambiguity may render both clauses unenforceable.")

Here the parties' various agreements select three different governing laws:

1. The MVA selects Michigan law with Connecticut venue. (Ex. G)

2. The Operating Agreement selects Wyoming law with Wyoming venue (but omitting the county for venue). (Ex. H)

3. The original 2020 Employment Agreement selects New York law, with a venue clause that seemingly only applies for arbitration. (Ex. I)

This patchwork of conflicting provisions not only raises serious questions about which law governs the dispute, but also clouds any reliable understanding of what venue would be proper. For a side-by-side comparison of the conflicting venue, jurisdiction, and governing law provisions across the Employment Agreement, Operating Agreement, and Membership Vesting Agreement, see Exhibit I, Forum Clause Comparison Table. It is unreasonable to interpret any one contract, especially one signed under pressure, as controlling venue when the Plaintiffs

themselves, who drafted all of these documents, two of which were effective on the same date, failed to maintain consistency across documents.

Where two related contracts executed as part of the same transaction include materially conflicting forum selection clauses, courts regularly decline to enforce either clause due to ambiguity and lack of mutual assent. "Ambiguities in a forum selection clause should be construed against the drafter." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997). Here, as Plaintiff drafted the contracts, with two conflicting venue clauses set to be effective on the same date, for documents that are both related to ownership in the underlying entity, this error should be construed against Plaintiff and render the venue clause ineffective. Even if the MVA's forum selection clause were enforceable, its legitimacy is further undermined by the confusing and contradictory contractual landscape governing this dispute.

This contractual inconsistency weighs heavily against enforcing the forum clause and supports a transfer to a venue more closely tied to the actual facts and parties involved.

**B. The Forum Selection Clause Was Introduced Under Procedurally Unfair Circumstances and Not Freely Negotiated**

Even if the conflicting venue clauses across the MVA and OA were not dispositive, the MVA's forum selection clause remains unenforceable because it was imposed under coercive, procedurally unfair conditions that deprived Defendant of meaningful negotiation or assent.

In *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49 (2013), the Supreme Court held that forum-selection clauses should "be given controlling weight in all but the most exceptional cases." This is such an exceptional case. *Atlantic Marine* specifically

acknowledged that enforcement of a forum clause may be denied based on public-interest factors

or where the circumstances surrounding execution render enforcement unjust or unreasonable.

Here, those extraordinary circumstances are manifest. Plaintiff Cleer LLC is a Wyoming

entity with no operations, offices, or staff in Connecticut. Defendant likewise has no ties to

Connecticut, and the conduct underlying the dispute occurred entirely outside the state. No party

resides in Connecticut, no relevant witnesses are located there, and the operative agreements are

governed not by Connecticut law, but by a patchwork of conflicting provisions invoking

Michigan, Wyoming, and New York law. The sole connection to Connecticut arises from a

forum clause inserted in a one-sided agreement presented to Defendant during peak tax season,

without counsel, contrary to contemporaneous document venue choice clauses, and under

substantial pressure.

Unlike in *Atlantic Marine*, where both parties were sophisticated businesses on equal

footing, Plaintiff here seeks to enforce a clause against a former employee who had no leverage,

was promised equity for years, and was eventually handed a "final" agreement to sign or lose

everything. Defendant had contributed significant value to the company under repeated

assurances of being made a partner. The MVA, finally formalizing that promise, was delivered

under extreme conditions.

As courts have held, a forum selection clause may be disregarded when it is the product

of overreach or imposed without fair opportunity to negotiate. See, e.g., *Carnival Cruise Lines,

Inc. v. Shute*, 499 U.S. 585, 593–94 (1991) (noting a forum clause may be unenforceable if it is

the product of fraud or overreaching); *Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 967

(2d Cir. 1988) (unenforceability where clause was imposed in adhesion contract context without

negotiation); *Hodes v. S.N.C. Achille Lauro ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 858 F.2d 905, 913 (3d Cir. 1988) (not enforceable if not reasonably communicated or bargained for).

Equity participation had been promised to Defendant since 2020, but was continuously delayed. When the MVA was finally presented, it came as a take-it-or-leave-it offer, at a time when Defendant had already invested years of work in building the company, and had no realistic alternative but to sign in order to protect her existing contributions and future prospects.

Compounding the pressure, the contract was presented as final on April 14, 2022, one day before the U.S. tax filing deadline, a notoriously high-pressure period for tax professionals. At the time, Defendant was deeply immersed in time-sensitive client filings and unable to devote full attention to contract review or negotiation. These circumstances deprived her of a meaningful opportunity to obtain legal advice or push back on the clause.

Plaintiff's CEO, David McKeegan, himself a seasoned tax professional who also owned another large tax firm with his wife, Carrie McKeegan, would have been acutely aware of the demands on Defendant's time and attention at that moment. Presenting the contract under such conditions, without clear warning of substantive changes, particularly venue and jurisdictional shifts embedded deep within the document, reflects a one-sided bargaining posture and raises questions about the voluntariness of assent.

Defendant ultimately signed the MVA on June 2, 2022, while on personal leave in Oregon, assisting her elderly mother with dementia. The contract was delivered again at a time when the Plaintiff could nearly be certain Defendant would not review it thoroughly, during a period of family crisis and without legal representation. Under these conditions, and given the

prior representations about equity and forum, the choice of Connecticut cannot be viewed as freely negotiated.

This is not mere forum selection; it is contractual forum shopping. And under *Atlantic Marine*, that is precisely what the public-interest exception exists to prevent. These facts support disregarding the forum selection clause as unfair and coercively imposed.

### C. The MVA Was Terminated Prior to Filing Suit, According to Plaintiff's Own Allegations

Plaintiff's Complaint asserts that Defendant's membership interest was terminated "for cause," that both vested and unvested units were repurchased for a yet undisclosed amount due in August of 2026, and that all rights under the MVA were extinguished. (See ECF No. 1 Compl. ¶¶ 52–53). Plaintiff cannot simultaneously disavow the agreement for purposes of equity and benefits, yet enforce a forum clause within it for strategic advantage.

Courts are divided on whether forum-selection provisions survive termination absent express survival language. Compare *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 525–26 (2d Cir. 2011) (arbitration clause survived termination because dispute "arose out of" the agreement) with *Harris v. Kellogg Brown & Root Servs., Inc.*, 605 F. Supp. 2d 248, 274 (D.D.C. 2009) (refusing to enforce forum clause where the contract was denied) and *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 143 (S.D.N.Y. 2018) (forum clause unenforceable post-termination where claims did not arise under the terminated agreement).

The latter line of authority fits this case: Plaintiff's Complaint expressly alleges Defendant's membership was terminated and "all rights under the MVA were extinguished."

(ECF No. 1 Compl. ¶¶ 52–53). With no survival clause preserving venue, and with Plaintiff itself disavowing the contract to seek equitable relief, the forum clause does not survive and cannot be selectively enforced.

To the extent Plaintiff contends that certain restrictive covenants survive termination, the MVA itself resolves that question: the non-solicit and non-compete provisions were expressly drafted with survival language, and any disputes concerning those covenants may properly be governed by the MVA's choice-of-law clause. But the forum clause is different. It contains no survival language, and courts consistently hold that venue provisions do not automatically outlive the contract when the parties chose not to preserve them. See *Hitachi*, 331 F. Supp. 3d at 143; *Harris*, 605 F. Supp. 2d at 274. Plaintiff's attempt to apply the forum clause, while simultaneously disclaiming the MVA for other purposes, precisely demonstrates why it cannot control here.

**D. Enforcement of the Forum Clause Would Contravene the Public Interest and Waste Judicial Resources**

As the Supreme Court has long recognized, a forum-selection clause is a "significant factor" in the transfer analysis, but not dispositive. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). *Atlantic Marine* reaffirmed this principle, clarifying that such clauses ordinarily control "in all but the most exceptional cases." 571 U.S. at 63. Justice Ginsburg observed that when the chosen forum bears no connection to the parties or dispute, public-interest factors may still override private choice. *Id.* at 76 (Ginsburg, J., dissenting). This is precisely such an exceptional case: the chosen forum bears no connection to the parties or the dispute, and the public-interest factors overwhelmingly support transfer.

All three public-interest factors identified in *Atlantic Marine* weigh against enforcement:

1. **Judicial burden.** The District of Connecticut has already been burdened with over 280 docket entries in just over a year, much of it procedural skirmishing, while no merits rulings have issued and discovery has barely begun.

2. **Lack of local interest.** Connecticut has no local interest in adjudicating this dispute: Plaintiff is a Wyoming company, its principals reside abroad, its counsel is in Ohio, and Defendant has never lived or worked in Connecticut. By contrast, New Mexico has a direct stake: Defendant maintains family, property, and historical business records in the state, her elderly father (a key non-party witness) resides there. New Mexico therefore has both a factual and legal interest in adjudicating this matter.

3. **Governing law.** The operative contracts invoke Michigan, Wyoming, and New York law—but not Connecticut law—leaving this Court to apply a patchwork of non-forum rules. Delaware law has already been briefed in the Optic Tax dismissal motion, and elements of New Mexico employment law are likely to arise as the case proceeds. This further exposes Connecticut's lack of connection and highlights New Mexico's affirmative interest in applying its own employment statutes to disputes tied to work performed within its borders.

After extensive production, Plaintiff has identified only one document with a Connecticut address, underscoring the absence of local connection. The only tie is a forum clause embedded in a now-terminated contract that conflicted with another agreement executed on the same effective date. This Court has already recognized, in dismissing Optic Tax for lack of personal jurisdiction, that Plaintiff failed to establish meaningful Connecticut contacts. That same reasoning supports why keeping this dispute in Connecticut serves no public interest.

Anticipated discovery disputes will only further increase the burden on this Court. Contested depositions, document production, and motions to compel are foreseeable given the contentious history of this case. Courts recognize that judicial efficiency in managing discovery is a proper consideration under § 1404(a). *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (emphasizing the importance of subpoena power and court oversight in discovery management). Because the District of New Mexico has subpoena power over the only identified non-party witness, it is better suited to manage discovery fairly and efficiently.

Maintaining venue here serves no public interest and imposes costs with no reciprocal benefit. Only the District of New Mexico—where the witnesses, records, and applicable laws converge—can resolve this matter fairly, efficiently, and in line with the public interest.

## VI. CONCLUSION

This case has no meaningful connection to Connecticut. Plaintiff is a Wyoming LLC, Defendant was employed in and has longstanding ties to New Mexico, and no Connecticut law governs the dispute. The only tie to this forum is a forum-selection clause embedded in a terminated agreement, invoked here for tactical advantage.

Enforcing that now-terminated clause would reward forum shopping and needlessly burden this Court with an out-of-state dispute. Plaintiff will suffer no prejudice from transfer: it has no operations in Connecticut, its counsel is already located out of state, and it originally retained Defendant to work from New Mexico. Having chosen to engage her there, Plaintiff could reasonably anticipate that New Mexico might be the appropriate forum if disputes arose.

By contrast, Defendant, a pro se litigant, has been forced to shutter two businesses as a result of this litigation. She cannot afford to travel to Connecticut for extended hearings or a jury trial, and faces a real risk of being priced out of her own defense if venue is not transferred. The District of New Mexico, by contrast, offers factual connections, manageable costs, and subpoena power over the only identified non-party witness.

For these reasons, Defendant respectfully requests that this case be transferred to the United States District Court for the District of New Mexico, Las Cruces Division, pursuant to 28 U.S.C. §1404(a), in the interest of justice and for the convenience of the parties and witnesses.

Respectfully submitted,
Crystal Stranger
Pro Se Litigant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 22, 2025 the foregoing was filed using the

Court's electronic filing system which will provide notice to all parties.

*<u>/s/ Crystal Stranger</u>*