# EXHIBIT I

Original Employment Contract Between

Crystal Stranger and Greenback Business Services, LLC



## Greenback Business Services LLC
### EMPLOYMENT AGREEMENT

THIS AGREEMENT made as of 3 January 2020 between GREENBACK BUSINESS SERVICES LLC, (the "Employer" and/or the "Company"); and Crystal Stranger, IN CONSIDERATION of the promises and other good and valuable consideration (the sufficiency and receipt of which are hereby acknowledged) the parties agree as follows:

1. GENERAL TERMS.
    a. The Employee agrees that he/she will at all times faithfully, industriously, and to the best of his/her skill, ability, experience and talents, perform all of the duties required of the position of **Lead Accountant.**
    b. In carrying out these duties and responsibilities, including those outlined in Appendix A, the Employee shall comply with all Employer policies, Employer Handbook, procedures, rules and regulations, both written and oral, as are announced by the Employer from time to time.
    c. It is also understood and agreed to by the Employee that his/her duties and responsibilities and reporting arrangements may be changed by the Employer in its sole discretion without causing termination of this Agreement.
    d. The Employee agrees to work a minimum of forty (40) hours per week, eight (8) hours per day. The hours can be flexible based on the team and clients needs. Employee and Employer may revise this schedule together and agree upon alternate work hours.
    e. Employee will work from his/her home office. Employee agrees to inform Employer of his/her time zone at all times and give prior notice if current time zone will be changing for Employer approval. If Employer does not approve, a change in time zone may lead to termination.
    f. Employee acknowledges that from time to time he/she may be requested in advance to work hours outside the traditional schedule, including in Employers time zone, during which time the Employer will make the appropriate allowances to Employee's schedule.

2



g. Employee agrees to maintain homeowner's or renter's insurance that covers the home office. Such insurance needs to be provided at the time of execution of this Agreement, as well as on an annual basis, and/or if Employee moves to or rents a new home office location. In addition, Employer may ask for proof of such insurance from time to time.

h. Employee agrees to utilize his/her own computer and also agrees to utilize a Virtual Private Network (VPN) for any work performed outside of the home office.  Employee agrees to pay for and maintain adequate and secure internet and other technology required to perform his/her duties.

i. There may be work-related travel involved from time to time that would be covered by the Employer.

j. Employee agrees not to offer any freelance services and/or work on a side business without prior permission and agreement from the Employer.

k. The Employee specifically agrees that for a period of eighteen (18) months after the Employee is no longer employed by the Company, the Employee will not engage, directly or indirectly, either as proprietor, partner, officer, employee or otherwise, in the same or similar activities as were performed for the Company in any business which distributes or sells products or provides services similar to those distributed, sold, or provided by the Company.

l. For a period of eighteen (18) months from the date that Employee is no longer employed by the Company, Employee shall not take any actions to assist Employee's successor employer or any other entity in recruiting any other employee who works for or is affiliated with the Company or clients who work with the Company.

2. TERM AND TERMINATION.

   a. This is an At Will employment position. The Employer may terminate this Agreement and the Employee's employment at any time, with ten (10) business days notice, or payment in lieu of notice.

   b. It is understood and agreed that the first ninety (90) days of employment shall constitute a probationary period during which period

3



the Employer may, in its absolute discretion, terminate the Employee's employment at any time, for any reason without notice (and without payment in lieu of notice).

c. Employee may terminate this Agreement at any time with ten (10) business days written notice.

d. The Employee agrees to return any physical property, electronic files, and logins/systems access at the time of termination and any access to platforms or software will be revoked.

3. COMPENSATION.

a. As full compensation for all services provided the Employee shall be paid at the rate of $120,000 (US Dollars) per year. Such payments shall be made according to the payroll schedule by direct bank transfer or an alternate method that is mutually agreed upon.

b. Bonuses may be included at the Employer's discretion.

4. PERSONAL TIME AND BENEFITS.

a. Employee will be entitled to Company and/or holidays off as determined by the Employer and communicated to the Employee by January 1st of the year.

b. The Employee shall be entitled to additional personal time in the amount of four (4) weeks per calendar year on an accrual basis. Of the twenty (20) business days vacation, at least five (5) days must be taken together.

c. Employee shall be entitled to five (5) additional sick days per year. Unused sick days will not be paid out upon termination.

d. Employee shall request personal time off via writing to Employer with at least two (2) weeks' notice and will receive written approval from Employer if granted.

e. Employer may offer other benefits as outlined in the Employee Handbook.

5. CONFIDENTALITY. This Agreement is considered a mutual non-disclosure agreement. Employee agrees, during or after the term of this employment, not

4



to reveal confidential information learned through his/her duties, including information learned from Company clients, or trade secrets to any person, firm, corporation, or entity. Should Employee reveal or portend to reveal this information, the Company shall be entitled to an injunction restraining the Employee from disclosing same, or from rendering any services to any entity to whom said information has been or is threatened to be disclosed, the right to secure an injunction is not exclusive, and the Company may pursue any other remedies it has against the Employee for a breach or threatened breach of this condition, including the recovery of damages from the Employee.

6. INTELLECTUAL PROPERTY RIGHTS. In respect of the documents specifically created for the Employer as part of this Agreement, the Employer maintains all of the copyright, other intellectual property rights and any other data or material used or subsisting in the Material whether finished or unfinished. Nothing in this Agreement shall transfer ownership of or rights to any intellectual property of the Employer to the Employee.

7. NON-DISPARAGEMENT. The Parties agree and accept that the only venue for resolving a dispute shall be in the venue set forth herein below. The Parties agree that they neither will engage in any conduct or communications with a third party, public or private, designed to disparage the other. Neither Employee nor any of Employee's associates or affiliates will directly or indirectly, in any capacity or manner, make, express, transmit speak, write, verbalize or otherwise communicate in any way (or cause, further, assist, solicit, encourage, support or participate in any of the foregoing), any remark, comment, message, information, declaration, communication or other statement of any kind, whether verbal, in writing, electronically transferred or otherwise, that might reasonably be construed to be derogatory or critical of, or negative toward, the Employer or any of its programs, affiliates, subsidiaries, employees, agents or representatives.

8. LIMITATION OF LIABILITY. Employee agrees to maintain his/her workspace in a safe condition, free from hazards and other dangers to Employee and equipment. The work to be performed under this Agreement will be performed

5



entirely at Employee's risk, and Employee assumes all responsibility for the use of tools and equipment used. Employee agrees to indemnify the Company for any and all liability or loss arising in any way that occurs outside of the designated home office.

9. DISPUTE RESOLUTION. If a dispute is not resolved first by good-faith negotiation between the parties to this Agreement, any controversy or dispute to this Agreement will be submitted to third party arbitration and be ruled using the guidelines of the American Arbitration Association. The arbitration shall occur within ninety (90) days from the date of the initial arbitration demand and shall take place in New York, New York or via telephone. The Parties shall cooperate in exchanging and expediting discovery as part of the arbitration process and shall cooperate with each other to ensure that the arbitration process is completed within the ninety (90) day period. The written decision of the arbitrators (which will provide for the payment of costs, including attorneys' fees) will be absolutely binding and conclusive and not subject to judicial review, and may be entered and enforced in any court of proper jurisdiction, either as a judgment of law or decree in equity, as circumstances may indicate.

10. GOVERNING LAW. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, regardless of the conflict of laws principles thereof.

11. SEVERABILITY. The parties hereto agree that in the event any article or part thereof of this agreement is held to be unenforceable or invalid then said article or part shall be struck and all remaining provision shall remain in full force and effect.

12. GOOD FAITH. Each party represents and warrants to the other that such party has acted in good faith, and agrees to continue to so act, in the negotiation, execution, delivery, performance and any termination of this Agreement.

13. REPRESENTATION. Employee hereby represents and warrant to Employer that he/she is not party to any written or oral agreement with any third party that

6



would restrict your ability to enter into this Agreement or to perform your obligations hereunder and that you will not, by working for Employer, breach any non-disclosure, proprietary rights, non-competition, non-solicitation or other covenant in favor of any third party.

14. ENTIRE AGREEMENT.   This Agreement supersedes all prior agreements between the parties, whether written or oral. No representations, inducements, promises, or agreements which are not embodied herein shall be of any force or effect. This Agreement may not be modified, amended, varied, waived, explained, added to, extended, changed in any way, except by a written instrument executed by a person authorized to execute such an instrument on behalf of both the Employer and the Employee.



The parties have caused this Agreement to be signed by their duly authorized representatives as of the Effective Date.

Employee Name

Crystal Stranger

Employee Address

5719 Mauer Road, Las Cruces, NM 88001

Employee Signature

*Crystal Stranger*
Crystal Stranger (Jan 3, 2020)

Jan 3, 2020

*David McKeegan*
David McKeegan (Jan 3, 2020)

Jan 3, 2020

Employer Representative Signature

GREENBACK BUSINESS SERVICES LLC

Employer Address
2885 Sanford Ave, SW 14713
Grandville, MI 49418

8



**Appendix A: Role and Responsibilities**

This role is a Lead Accountant and will be supporting David and Carrie McKeegan, in their business venture - Greenback Business Services LLC.

As the Lead Accountant the responsibilities are broad and cross functional, and will include:
- Reviewing Tax Returns
- Preparing Tax Returns
- Training other team members
- Assisting the accountant team in answering client questions
- Assisting the accountant team in resolving client issues
- Assisting in the execution of the business strategy
- Assisting with marketing and business development
- Assisting with developing the business processes and procedures

The role requires organizational flexibility and business acumen, as well as the ability to step in and help lead in a cross functional way.