# EXHIBIT C

Defendant's 26(a) Disclosures

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEER LLC | : |
| v. | : 3:24-cv-1496-MPS |
| CRYSTAL STRANGER et al. | : DEFENDANT/COUNTERCLAIMANT'S INITIAL DISCLOSURES PURSUANT |
| v. | : TO FED. R. CIV. P. 26(A)(1) |
| DAVID and CARRIE McKEEGAN | : |

Defendant/Counterclaimant Crystal Stranger, appearing pro se, hereby makes her Initial Disclosures pursuant to Rule 26(a)(1). These disclosures are based on information reasonably available at this time and are made without prejudice to Defendant's right to supplement or amend them as discovery progresses.

## I. INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

The following individuals are believed to have discoverable information that Defendant may use to support her claims or defenses (excluding impeachment), along with the subjects of that information:

- **David McKeegan** – Plaintiff principal; membership expulsion; accounting practices; fiduciary duties; defamatory statements; continued use of Defendant's likeness.

- **Carrie McKeegan** – Plaintiff principal; management decisions; fiduciary breaches; defamatory statements; continued use of Defendant's likeness.

- **Crystal Stranger** – knowledge of Defendant's actions, communications, and defenses, including facts relevant to Plaintiffs 'allegations and Defendant's counterarguments.

- **Nicole Wiseman** – Cleer's corporate accountant; capital account calculations; equity valuation; preparation of financial spreadsheets.

- **Alleen Loiseau** – Former Greenback Expat Tax employee; interviewed Defendant; knowledge of original recruitment and representations made.

- **Henry Shin** – Current Cleer employee (U.S.); workplace conditions; harassment; business practices.

- **Nathalie Birotte** – Current Cleer employee (U.S.); workplace conditions; harassment; team management.

- **Mehwish Jabeen** – Current Cleer contractor; data security; email systems; marketing, Salesforce development.

- **Lindsey Anderson** – Former Cleer contractor; knowledge of "Cleer" name selection; security practices; team attrition.

- **Leonor Dacosta** – Former Cleer contractor; Cleer's lack of trade secret protections; operations post-Stranger's departure.

- **Wiaan Prinsloo** – Former Cleer contractor; Cleer's lack of trade secret protections; operations post-Stranger's departure; referred clients to Defendant for R&D tax credit work, showing waiver of restrictive covenants and client-sharing practices.

- **Alexandra Limin** – Former Cleer contractor; HR, team contracts, and mass attrition.

- **Macarena Olivares** – Former Cleer contractor; waiver of restrictions; subsequent work with Defendant waived; Xenitha project.

- **Nanzing Johnmark** – Former Cleer contractor; data security; email systems; marketing, Salesforce development.

- **Moses Kiboma** – Former Cleer contractor; data security; email systems; marketing.

- **Antonieta Tungcab** – Former Cleer contractor and Internal HR representative; executed NDA with Cleer; knowledge of how client information and "confidential data" were handled and shared with contractors.

- **Evita Bombase** – Cleer contractor via Avanti; executed NDA with Cleer; knowledge of Cleer's outsourcing practices and access to client data.

- **Representatives of Avanti (Philippines PEO provider)** – Oversaw Cleer's international HR, tax compliance, and contractor arrangements; relevant to classification of workers, NDAs, and alleged trade secret handling.

- **Representatives of Justworks (US PEO provider)** – Managed Cleer's payroll, benefits, and tax withholdings; relevant to employee classification, bonus accounting, and Cleer's financial practices.

- **Julie Kim** – Product Lead for Tax at Stripe; knowledge of Defendant's professional expertise and external relationships; discussions of Stripe's product tax integration; Defendant's role in Stripe relationship.

- **Lindsay Warne** – Former Product Strategy & Operations Manager at Stripe (now at Worldly); knowledge of Stripe–Cleer collaboration, Defendant's role in Stripe relationship, and client complaints of Cleer prior to Defendant joining firm.

- **Ryan Nash** – COO at Gust; knowledge of Defendant's external contributions to Gust (webinars, published content), prior business collaboration, and subsequent changes in relationship potentially due to defamatory statements.

- **Peter Swan** – CEO/Head of Product at Gust; knowledge of Defendant's role in Gust collaboration, including professional content creation and public presentations, and impact of Plaintiff's statements on professional reputation.

- **Dan Andrews** – Founder/administrator of the Dynamite Circle; recipients of defamatory statements from Plaintiff; relevant to reputational harm.

- **Ian Schoen** – Founder/administrator of the Dynamite Circle; recipients of defamatory statements from Plaintiff; relevant to reputational harm.

- **Administrators and members of Dynamite Circle** – Communications regarding Defendant and basis for expulsion.

- **Revision Legal attorneys (Andrew Jurgensen, John Giacomo, Rachel Russo)** – Trademark prosecution advice, clearance searches, strength of CLEER mark.

- **Ogletree Deakins attorneys (Michael O'Malley, Annabelle Torres, Karen Chapman)** – Trademark and domain strategy.

- **Taft attorneys (George Musekamp, Evan Cohn, Jennifer D Brumby)** – Trademark, domain, and litigation strategy.

- **George McKeegan** – President of Cavanaugh & McKeegan, PC; believed to be father of Plaintiff David McKeegan. Plaintiffs stated they discussed litigation matters with him during Defendant's tenure at Cleer; likely has knowledge of strategy, restrictive covenants, and expulsion decisions.

- **Two Connecticut clients (Referred to as this because Attorneys 'Eyes Only at PI hearing)** – Plaintiff claimed they were solicited; identities/details to be determined in discovery.

- **Prospective acquirers of Cleer** – Individuals/entities who discussed buying Cleer or valuing its business.

- **Other former Cleer clients, employees, and contractors (to be identified through discovery)** – Workplace hostility; waiver of restrictive covenants; knowledge of Defendant's role in growing Cleer.

## II. DOCUMENTS AND TANGIBLE ITEMS

Defendant may rely upon the following documents, data, and tangible things, among others, which are in her possession, custody, or control, or that she believes are in the possession of Plaintiff or third parties and will be sought in discovery:

- Operating Agreement and Membership Vesting Agreement.
- Employment Contract of Plaintiff at Greenback Business Services, LLC.
- Plaintiff's May 13, 2024 buyout offer to Defendant ($216,559.85).
- Communications regarding Defendant's membership expulsion and capital account.

- Emails showing client referrals from Cleer to Optic Tax.

- Evidence of Plaintiff's continued use of Defendant's image, name, and articles post-departure.

- Trademark prosecution communications with Revision Legal, Ogletree, and Taft attorneys.

- Cleer laptop records and employee access logs, and IT documents.

- Prior discovery responses, joint productions, and documents exchanged in preliminary injunction proceedings.

- Defendant's sworn declaration and physician's note (ECF 281, Exs. E–F).

- Avanti employment/contractor agreements and NDAs (April 2024) for Cleer team members, including Antonieta Tungcab and Evita Bombase.

- Independent Contractor Agreement for Alexandra Limin (June 26, 2024).

- Cleer's SOC 2 compliance project records, including communications and reports reflecting failed or incomplete compliance efforts.

- Leadership, management, and strategy meeting notes and materials (including "L10" or similar leadership sessions), reflecting discussions of company branding, name adoption, strategic direction, equity allocations, team contributions, and decisions about client solicitation and business development.

- Cleer financial documents, including all accounting records and supporting analyses, Profit & Loss statements (2022–2023), and capital account excel spreadsheets prepared by Nicole Wiseman, showing methodology for calculating member balances.

- Communications and leadership notes regarding Stripe relationship, including discussions of loss of Stripe contact and impact on Cleer's business development, and user complaints/resolution.

- Communications with Gust regarding webinars, website content, and ongoing collaboration; leadership notes regarding Gust relationship and any reputational fallout.

- Termination-related correspondence and drafts (August 2024) canceling Defendant's membership interest without third-party valuation.

- Justworks payroll and HR records, including bonus calculations and W-2/contractor classifications.

- Social media records (LinkedIn connections/unconnections, communications, and visibility restrictions) to the extent available, showing reputational harm and coordinated distancing from Defendant following defamatory statements and termination events.

- Salesforce client reports, listing client names and last contact dates.

- Cleer tax returns for all years of Defendant's membership.

- Trackabi monitoring records, installation orders, and related employee resignations.

- CRM/Typeform/email list records showing how client information was stored and accessed; communications regarding data downloaded to personal devices.

- Grain call recordings and transcripts, including leadership and team meetings where policies, clients, and Defendant were discussed.

- Communications with clients mentioning Defendant after her departure.

- Hiring and termination records for Cleer employees/contractors allegedly solicited by Defendant.

- All employee handbooks, workplace policies, and directives as of Defendant's departure on January 31st, 2023.

- Marketing plans, blogs, and client acquisition/retention materials; email blast campaigns.

- Trademark application materials and correspondence related to obtaining any trademarks, including the prior litigation threats of the GBS trademark.

- Optic Tax website and Connecticut tax guide (17 pages) cited at PI hearing.

- All documents regarding offers or discussions to acquire Cleer, including valuations or amounts discussed.

- Domain-related communications with brokers, auction houses, or attorneys regarding cleer.tax and related domains.

- Other documents to be identified through discovery.

## III. COMPUTATION OF DAMAGES

Defendant seeks the following categories of damages, subject to further computation as discovery develops and supplementation under Fed. R. Civ. P. 26(e):

1. **Equity Interest in Cleer LLC**

    ◦ Value of Defendant's ownership interest, at least $216,559.85 based on May 13, 2024 buyout offer.

    ◦ Cleer's projected 2024 revenues of $3.8M and ~30% EBITDA margins support a company valuation of $5–6M; Defendant's 20% equity stake = $1.0–1.2M.

- Defendant will seek compensatory damages for full equity value, as well as punitive damages for fiduciary breaches and self-dealing.

2. **Breach of Fiduciary Duty & Self-Dealing**

    - Compensatory damages for withheld distributions and diverted profits.
    - Punitive damages under Wyoming law for willful exclusion and concealment of financial records.

3. **Lost Earnings Under Preliminary Injunction**

    - PI prohibits Defendant from working in her chosen profession until at least March 2026.
    - Defendant has missed Q4 2025 and Q1 2026 hiring cycles; realistic re-entry delayed until January 2027.
    - Estimated lost earnings: $500,000.

4. **Business Damages**

    - **Optic Tax**: Forced closure and loss of profits, systems, and client relationships due to TRO.
    - **Xenitha**: Portfolio of 19 AI tools forced to shut down due to overbroad injunction; permanent loss of value and future earnings; complete loss of $60,000 purchase price as of May, 2025, and approximately $30,000 further investment, for a total sunk loss of ~$90,000.

- ○ Defendant will seek damages for both direct business losses and consequential damages.

5. **Reputational Harm**

    - ○ False statements to the Dynamite Circle leading to expulsion; reputational injury in a core professional community.

    - ○ Continued unauthorized use of Defendant's likeness and authored materials by Cleer post-departure.

    - ○ Gag order in PI prevented Defendant from publicly defending herself.

    - ○ Estimated reputational damages: $300,000–$500,000.

6. **Legal and Procedural Costs**

    - ○ ~$100,000 in attorneys' fees before proceeding pro se, plus ongoing costs of managing litigation.

    - ○ Time and resources diverted from professional work; ongoing economic loss.

    - ○ Estimated: $200,000.

7. **Health & Emotional Distress**

    - ○ Extreme stress from knowingly false accusations caused related physical disorder; bilateral arthrocentesis surgery performed August 2025.

    - ○ Recovery period impaired daily function and litigation capacity.

- Defendant seeks damages for emotional distress, physical injury, and punitive damages for IIED.
- Estimated: $250,000–$400,000.

8. **Unlawful Deprivation of Property & Digital Intrusion**

    - Defendant's personal laptop was deprived from her possession for over eight months, despite being produced in expedited discovery and despite Plaintiff's failure to initiate any timely forensic review.
    - During this period, Plaintiff attempted unauthorized access to Defendant's iCloud and personal data outside of judicially approved channels.
    - The prolonged deprivation and attempted intrusion were not accidental, but part of a deliberate litigation strategy to exert pressure and obtain leverage.
    - Defendant seeks damages for deprivation of property, privacy violations, due process harms, and punitive damages for intentional misconduct.

9. **Abuse of Process**

    - Litigation weaponized to secure improper domain transfer, suppress competition, and expand injunction to unrelated entities.
    - Defendant seeks compensatory and punitive damages for misuse of judicial process.

**Estimated Range**

- **Total damages**: $2.35M – $2.7M+

## IV. INSURANCE AGREEMENTS

Defendant is not aware of any insurance agreements under which an insurance business may be liable to satisfy all or part of a judgment in this action. Defendant notes that Plaintiff Cleer LLC and its principals may have held general liability, employment practices, or other business insurance policies during the relevant period, but no such policies have been disclosed to date. Defendant reserves the right to seek production of any responsive insurance agreements in Plaintiff's possession, custody, or control.

Respectfully submitted,
*/s/ Crystal Stranger*
Crystal Stranger
Pro Se Litigant
September 16, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2025, a true and correct copy of Defendant/Counterclaimant s Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) was served via electronic mail upon the following counsel of record:

George B. Musekamp
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
gmusekamp@taftlaw.com
Evan Cohn
Taft Stettinius & Hollister LLP
ecohn@taftlaw.com
Jesse K. Daley
Taft Stettinius & Hollister LLP
jdaley@taftlaw.com

Michael O'Malley
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
michael.o'malley@ogletree.com
Annabelle Torres
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
annabelle.torres@ogletree.com

/s/ Crystal Stranger
Crystal Stranger
Pro Se Defendant/Counterclaimant