**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CLEER LLC | : | |
| | : | 3:24-cv-1496-MPS |
| v. | : | |
| | : | |
| CRYSTAL STRANGER et al. | : | DEFENDANT'S MOTION FOR |
| | : | RECUSAL OF JUDGE MICHAEL P. |
| v. | : | SHEA |
| | : | |
| DAVID and CARRIE McKEEGAN | : | |
| | : | |

Defendant Crystal Stranger respectfully moves for the recusal of Judge Michael P. Shea pursuant to 28 U.S.C. §455(a) and (b)(1). The record in this matter demonstrates both actual bias and the appearance of bias, such that Judge Shea's continued participation would undermine public confidence in the fairness of these proceedings.

## I. Introduction

From the outset, this case has been marked by procedural irregularities that would cause a reasonable observer to question the Court's impartiality. Before Defendant was ever served, represented by counsel, or afforded an opportunity to be heard, the Court issued substantive orders based solely on Plaintiff's allegations, without confirming service or jurisdiction. Those early rulings set a tone of alignment with Plaintiff that has continued through orders seizing Defendant's property without due process, restricting lawful speech, and imposing coercive sanctions before related motions were adjudicated.

Ultimately, nearly every ruling in this case has shown bias against Defendant, even the couple that on their surface appear favorable. Throughout the case, the Court has consistently afforded Plaintiff's requests deference while denying or disregarding Defendant's motions, often

1

without analysis or by declaring them "moot." Key constitutional objections raised have been labeled "frivolous," while seizures of property such as Defendant's laptop and internet domain have proceeded without the procedural safeguards normally required. The pattern is not one of isolated rulings, but of a sustained course of conduct creating the appearance of bias.

## II. **Legal Standard**

Under 28 U.S.C. §455(a), "[a]ny justice, judge, or magistrate judge … shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Recusal is also required under §455(b)(1) where a judge has "a personal bias or prejudice concerning a party." The test is whether "an objective, disinterested observer fully informed of the underlying facts" would question the judge's impartiality. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988).

## III. Appearance of Partiality

Recusal is required whenever a judge's conduct would cause a reasonable observer to question impartiality. *In re Murchison*, 349 U.S. 133, 136 (1955) ("justice must satisfy the appearance of justice"); *Liteky v. United States*, 510 U.S. 540, 555 (1994) (recusal warranted where judicial remarks reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible"). These principles apply with full force here, where the Court's repeated comments and rulings have created an unmistakable appearance of hostility toward Defendant and alignment with Plaintiff. This treatment did not begin when Defendant elected to proceed pro se, but was evident even while she was represented by counsel. That such a view would develop so swiftly—and from the chief judge of this District—raises an especially troubling question of why the Court's posture toward Defendant was adversarial from the outset.

Across these rulings, the Court has consistently: (1) Used disparaging, mocking, or dismissive language directed solely at Defendant. (2) Prejudged the merits of constitutional arguments, labeling them "needless," "meritless," or "frivolous" without fair consideration. (3) Threatened escalating sanctions, including dismissal of claims, in ways that suggest retaliation rather than neutral enforcement.Taken together, these actions would lead any reasonable observer to conclude that the Court has abandoned impartiality and assumed an adversarial stance, creating an appearance of partiality that mandates recusal under 28 U.S.C. § 455(a).

### A. Systematic Favoritism in Motion Practice

The Court's handling of motions in this matter reflects a troubling pattern of favoring Plaintiff while leaving Defendant's motions unresolved. Specifically the following motions all remain pending without decision: (1) Defendant's Motion for Rule 11 Sanctions (ECF 228, filed July 15, 2025); (2) Objection to the Magistrate Judge's Ruling on Motion for Return of Property (ECF 232, filed July 28, 2025); (3) Motion to Set Aside and Vacate Contempt Order and Request for Evidentiary Hearing (ECF 229, filed August 11, 2025); (4) Motion to Strike Plaintiff's Declaration in Support of Fee Application (ECF 271, filed August 26, 2025); (5) Motion for Clarification and Procedural Objection to Accelerated Rule 26(f) Sheduling Order (ECF 281, filed September 3, 2025); (6) Motion to Strike or Disregard Improper Reply Material (ECF 284, filed September 17, 2025); (7) Motion to Transfer Venue (ECF 289, filed September 22, 2025); Motion to Expedite Venue Transfer Motion (ECF 290, filed September 23, 2025); and (8) Motion to Dismiss Plaintiff's Damages Claims under Rule 37 (ECF No 291, Filed September 23, 2025).

In contrast, Plaintiff's motions for contempt, sanctions, and injunctive relief have been promptly granted (ECF Nos. 243, 279, 292), often accompanied by additional relief the Plaintiff did not explicitly request. For example, the Court has sua sponte raised procedural grounds (e.g., timeliness) to deny Defendant's motions, yet overlooked similar defects in Plaintiff's filings. Even when Defendant filed cross-motions (e.g., Cross-Motion for Sanctions, ECF 288, ECF 292), the Court denied them summarily while granting Plaintiff's companion motions in full. This selective docket management demonstrates more than routine judicial discretion. An objective observer would reasonably conclude that the Court has consistently advanced Plaintiff's interests while obstructing or ignoring Defendant's efforts to obtain relief. Such conduct reinforces the appearance of partiality under 28 U.S.C. § 455(a).

**B. Orders issued by Michael P. Shea showing personal animosity towards Defendant:**

The record of this case reflects not occasional sharp words or isolated rulings, but a sustained pattern of judicial hostility toward Defendant. From the earliest stages, Judge Shea's orders have consistently dismissed Defendant's arguments without meaningful analysis, and adopted Plaintiff's framing wholesale. The District Court's repeated use of terms like "frivolous" and "specious" to characterize Defendant's constitutional arguments, without substantive analysis, creates more than the appearance of impartial adjudication. As the Supreme Court held in *Liteky*, when judicial rhetoric reflects an "extreme" predisposition, it crosses the line into disqualifying bias. See also *Berger v. United States*, 255 U.S. 22, at 33–35 (1921) (recusal warranted where judge's remarks conveyed personal animosity), and *Microsoft*, 253 F.3d at 115-116 (recusal required where judicial tone and commentary suggested hostility toward a litigant).

Such language here demonstrates a personal embroilment inconsistent with due process. *Offutt v. United States*, 348 U.S. 11, 17 (1954).

Routine requests from Plaintiff have been granted or preserved, while parallel requests from Defendant have been denied, ignored, or rendered "moot." The Court has repeatedly used disparaging rhetoric in its written orders, casting Defendant as obstinate or reckless rather than treating her with the neutrality expected of a federal judge. Taken together, these rulings create an unmistakable appearance of bias and personal animosity, warranting recusal under 28 U.S.C. §455(a) and §455(b)(1).

1. **Order to Show Cause (ECF 19, Sept. 27, 2024).** Before confirming service or jurisdiction, and prior to any appearance by Defendant or her counsel, Judge Shea issued an order compelling Ms. Stranger and Optic Tax Inc. to "show cause" within 19 days of case filing, before any proof of service, and without verifying personal jurisdiction over either defendant. Plaintiff was given until October 8 to file proof of service, meaning the Court was actively engaging the defendants and threatening adverse relief before it had jurisdiction. This contradicts the most basic tenets of procedural due process. "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." See *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). Furthermore, rather than requiring Plaintiff to meet the burden of proof for a TRO/PI, the order demanded the defendants "show cause why it should not issue", a subtle but telling inversion of constitutional burden-shifting. This early action, based solely on Plaintiff's unchallenged filings, set a tone of urgency and judicial alignment with Plaintiff's narrative from the outset, without affording Defendant any opportunity to be heard. The Court's

immediate intervention on an ex parte basis, absent any procedural safeguards, underscores the pattern of pre-judgment and disregard for Defendant's constitutional rights.

2. **Temporary Restraining Order (ECF 34, Oct. 22, 2024).** In granting Plaintiff's TRO, Judge Shea brushed aside Defendant's service objections despite her sworn affidavit disputing any agency relationship with RV Mail. Instead of analyzing the service issue, the Court emphasized Defendant's "actual notice" and declared it "unwilling to refrain from issuing this restraining order simply on the basis of Stranger's attempt to contest service." This language dismisses a core due process argument and conveys skepticism toward Defendant's credibility, rather than neutral adjudication.

3. **Order Denying Motions for Protective Order (ECF No. 53 Nov. 6, 2024).** Before Defendant was properly served and while challenges to personal jurisdiction remained pending, the Court denied Defendant's and Optic Tax's motions for a protective order. The ruling disregarded ongoing jurisdictional objections and asserted that Defendant had "submitted to personal jurisdiction" solely based on her attorney's limited participation in early hearings. The Court further faulted Defendants for purported failure to follow "discovery instructions," despite the compressed timeline and lack of meaningful opportunity to confer. This premature ruling foreclosed basic procedural protections, compelled participation in discovery and hearings, and was used later as retroactive justification for denying constitutional claims. It illustrates how the Court repeatedly treated jurisdictional and due process challenges as foregone conclusions, rather than questions requiring legal analysis.

4. **Order Denying Motions to Dismiss and Authorizing Alternate Service (ECF No. 61, Nov. 22, 2024):** Before Defendant was ever formally served, and prior to any appearance

or consent, the Court denied her motion to dismiss under Rule 12(b)(5) and authorized alternate service through her attorney, despite no proof of an attempt of valid service having been made. The Court justified this extraordinary step by invoking "urgency" surrounding Plaintiff's preliminary injunction motion and discovery timeline, and relied on allegations of "actual notice" rather than actual compliance with Rule 4. The Court also denied Defendant's motion to continue the settlement conference, forcing proceedings forward without basic procedural fairness or an opportunity to meaningfully respond. This order set the tone for a pattern of procedural shortcuts that consistently deprived Defendant of due process while favoring Plaintiff's timeline and tactics.

5. **Order Denying Continuance of Preliminary Injunction Hearing (ECF 74, Dec. 5, 2024)**. When Defendant requested a continuance of the January 2025 evidentiary hearing due to documented medical inability to travel from South Africa, Judge Shea denied the motion without prejudice but imposed an unusually high evidentiary burden, requiring a medical specialist to confirm her doctor's finding of inability to travel, during the holiday period when specialists are on normally on leave. He warned that even if Defendant established inability to fly, the Court "would likely not move the hearing but rather would proceed by having her testify remotely." This dismissive approach to medical hardship reflects indifference to Defendant's ability to present her case, while accommodating Plaintiff's schedule.

6. **Order Granting Plaintiff Extensions but Denying Defendant Relief (ECFs 83 & 84, Dec. 18, 2024)** On the same day, Judge Shea granted Plaintiff's request for an extension of time to respond to the complaint (ECF 83) and granted Plaintiff's request for leave to file a sur-reply (ECF 84). By contrast, similar requests from Defendant for extensions or

accommodations were denied or met with threats of contempt. This asymmetric treatment of routine procedural requests evidences favoritism toward Plaintiff and hostility toward Defendant.

7. **Order granting Plaintiff's motion for leave to file a sur-reply (ECF No. 84, Dec.18, 2024).** This motion was granted only two days after it was filed (ECF No. 80), allowing Plaintiff to supplement its briefing against Optic Tax's jurisdictional motion. By contrast, Defendant has filed no fewer than six motions for leave to file sur-replies throughout this litigation, each raising issues of law or factual misstatements, and the Court has either disregarded or summarily denied them. This asymmetry in the treatment of identical procedural requests cannot be explained by docket management or neutral discretion. It clearly demonstrates the appearance of bias, where Plaintiff's motions are expedited and granted, while Defendant's motions are ignored. Such one-sided management of briefing opportunities directly prejudices Defendant's ability to be heard on disputed issues, further supporting recusal under both 28 U.S.C. § 455(a) and (b)(1).

8. **Order Compelling Premature Discovery from Optic Tax Without Jurisdiction (ECF No. 86):** The Court ordered Optic Tax, while still actively contesting personal jurisdiction, to immediately respond to broad discovery demands encompassing both jurisdictional and merits-related issues. This ruling violated well-settled due process principles, which require courts to establish personal jurisdiction before compelling a party to participate in litigation. See *Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584–85 (1999) (quoting Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)): "Personal jurisdiction, too, is an essential element… without which the court is powerless to*

proceed to an adjudication." *Ruhrgas, 526 U.S. at 584–85 (quotation marks in original).* The Court's directive that discovery should proceed "forthwith" and include categories not clearly tied to jurisdiction further illustrates its premature exercise of power. Instead of protecting Optic Tax's right to contest jurisdiction without being forced into full litigation conduct, the Court dismissed those concerns, thereby creating a coercive dynamic and a chilling effect on jurisdictional defenses.

9. **Preliminary Injunction (ECF No. 208, June 17, 2025).** Here the Court entered a sweeping ruling that went beyond the Magistrate Judge's recommendations by adding new provisions without notice or opportunity to object, including a 48-hour deadline to transfer the Cleer.tax domain. The order also bound Optic Tax Inc. despite its unresolved jurisdictional challenge and imposed broad non-solicitation and confidentiality restrictions without the findings required under *Winter*. By introducing and enforcing obligations that were neither briefed nor subject to adversarial process, the Court deprived Defendant of her statutory right to object under 28 U.S.C. §636(b)(1) and created the foundation for subsequent contempt and sanctions. A reasonable observer would view especially the domain transfer in this ruling as prejudgment in favor of Plaintiff transferring property permanently, not neutral adjudication.

10. **Order Deferring Ruling on Motion to Reconsider but Enforcing Injunction (ECF 214, June 23, 2025).** When Defendant moved for reconsideration of the Court's preliminary injunction (ECF 210), Judge Shea issued a brief order stating, "The Court is about to begin a jury trial and does not have time to consider or rule on the motion to reconsider." The order emphasized, however, that "the Court's injunctive order is NOT stayed and remains in full force and effect". By refusing to promptly consider constitutional objections while

simultaneously threatening against noncompliance, the Court reinforced the perception that Defendant's rights were subordinated to procedural convenience. An objective observer would view this as evidence of personal animus and selective enforcement, particularly given the urgency with which the Court addressed Plaintiff's motions during the same period.

11.    **Order Denying Motion to Modify/Reconsider Preliminary Injunction (ECF 218, July 3, 2025).** In denying Defendant's motion to reconsider or modify the preliminary injunction (ECF 210), Judge Shea used dismissive and prejudicial language that reflects hostility rather than neutrality. He described Defendant's objections as "a distinction without a difference" and "relitigating old issues". He rejected her due process challenge to the domain transfer provision by asserting that she had "notice" from Plaintiff's filings, disregarding her statutory right to object under 28 U.S.C. §636(b)(1). He trivialized Defendant's request for the return of her personal laptop as "unsurprising" that it was omitted, promising to address it "in due course," which later resulted in denial by the Magistrate Judge he referred it to (ECF 232). Finally, in denying a stay, he asserted that Defendant had been "profiting from the violations of her contractual obligations at Cleer's expense," a finding that went beyond the scope of reconsideration and cast Defendant in a negative light, unsupported by evidence as Plaintiff has yet to show a single dollar in damages. The tone and substance of this ruling once again exemplified a pattern of personal animus toward Defendant.

12.    **Order Denying Motion to Strike as Moot (ECF 222, July 8, 2025).** Defendant filed a motion to strike or object to Plaintiff's motion for default judgment against Optic Tax (ECF 204), raising detailed arguments that the motion was premature, procedurally improper, and violative of due process. Judge Shea denied the default judgment motion "without

prejudice to renewal" but simultaneously denied Defendant's motion to strike as "moot," without addressing any of its substantive points. This selective disposition avoided adjudicating Defendant's due process objections, while leaving the door open for Plaintiff to refile its request for default. An objective observer would view this as further evidence of partiality, where Defendant's motions are dismissed perfunctorily, while Plaintiff's motions are preserved for renewed consideration.

13.     **Order on Plaintiff's Motion for Contempt (ECF 229, July 17, 2025).** Judge Shea found Defendant in contempt of the TRO (ECF 34) and awarded Cleer attorney's fees. In doing so, the Court rejected Defendant's argument that the challenged emails were "informational" rather than solicitations, holding her interpretation "unavailing" and emphasizing that she should have known "the days of blast emails are over" because of comments made by the judge during a TRO hearing at which Defendant was not present. The Court further found her contempt "willful," dismissed her inability-to-pay argument without crediting her sworn statements of financial hardship, and required her to cooperate with Plaintiff's counsel on sanctions enforcement. The ruling not only adopted Plaintiff's framing wholesale but also cast Defendant as reckless and disingenuous, reinforcing the adversarial posture reflected in Judge Shea's other orders.

14.     **Order Denying Second TRO Without Addressing Defendant's Responsive Filings (ECF 230, July 17, 2025).** Plaintiff filed a "Second Motion for Immediate Temporary Restraining Order and Preliminary Injunctive Relief" (ECF 207) containing false allegations that Defendant had formed and was operating "Optic Tax Global, Inc." In response, Defendant filed both an Objection (ECF 209) with sworn affidavits and a Rule 11 motion for sanctions

(ECF 228) demonstrating that the allegations were baseless and knowingly false, but Plaintiff
had refused to withdraw them at Defendant's request and service of notice. Judge Shea
ignored both filings and issued a brief order stating only that the Second TRO motion was
denied without prejudice because it "may [have been] supersede[d]" by the existing
injunction. By refusing to adjudicate the merits of Plaintiff's false accusations or Defendant's
pending Rule 11 motion, while preserving Plaintiff's ability to refile, the Court conveyed that
Defendant's efforts to defend herself against baseless claims would not be taken seriously.
This selective avoidance again reflects animosity toward Defendant and indulgence toward
Plaintiff.

15.     **Order Denying Defendant's Motion for Sanctions (ECF 235, July 29, 2025).**
Judge Shea denied Defendant's motion for sanctions against Plaintiff's counsel, characterizing
her allegations of false statements and misrepresentations as mere "expressions of opinion"
and "not unethical." He further minimized Defendant's concerns, declaring that none of the
challenged statements were "material" because the Court "does not rely … on the mere
representations of counsel". The Court went further, defending Plaintiff's first motion for
contempt as meritorious and reiterating that it had already granted sanctions against
Defendant. By excusing Plaintiff's conduct while simultaneously invoking its prior sanction
against Defendant as validation, the Court again conveyed partiality and hostility toward
Defendant's efforts to protect the integrity of the proceedings.

16.     **Motion to Dismiss Optic Tax Decided Only After Irreversible Prejudice to
Defendant (ECF 236, July 29, 2025).** Although Judge Shea ultimately granted Optic Tax's
motion to dismiss for lack of personal jurisdiction, that ruling came far too late to cure the

prejudice inflicted on Defendant. By the time dismissal issued, Optic Tax had already been named in and bound by the Preliminary Injunction Order (ECF 208), compelled to respond to sweeping discovery (ECF 86), and held in contempt alongside Defendant (ECF 243). Plaintiff leveraged these interim rulings to obtain broad discovery into Defendant's personal and business affairs, expanding the litigation burden beyond what would have been permissible had the Court timely enforced jurisdictional limits. In effect, the Court dismissed Optic Tax only after Defendant had been forced to cease business operations under the Optic Tax name, defend duplicative claims, and incur the stigma of orders treating Optic Tax as her "alter ego." The late dismissal functioned less as a vindication of jurisdictional rights than as a procedural afterthought, preserving the appearance of fairness while leaving Defendant to bear all of the harms. This sequence underscores not neutrality, but bias, where jurisdiction was acknowledged only after it could no longer protect Defendant from substantial prejudice.

17.  **Order Denying Reconsideration (ECF 279).** Judge Shea denied Defendant's reconsideration motion against the contempt sanctions as untimely and "frivolous," despite acknowledging a contemporaneous Second Circuit stay order that materially altered the enforceability of the injunction. (See ECF No. 289). The Court dismissed due process arguments without meaningful engagement, repeatedly invoking contempt principles rather than addressing constitutional concerns.

18.  **Order on Alleged Ex Parte Communications (ECF 280).** Defendant raised a concern about ex parte contact. Judge Shea, while acknowledging there were ex parte communications, not only rejected the request for disclosure but also belittled Defendant, stating she should "devote her time to complying with the undersigned's orders (lest she face

further contempt motions and sanctions) … instead of driving the case down dead-end side trails". Such language exceeds neutral adjudication and conveys hostility toward Defendant.

19.    **Order on Coercive Sanctions (ECF 292). J**udge Shea granted Plaintiff's motion, imposed daily fines, threatened dismissal of counterclaims, and denied Defendant's cross-motion for sanctions. In doing so, the Court accused Defendant of "testing whether, in fact, I will do these things," and labeled her constitutional objections as "frivolous" and "specious". The Court's rhetoric demonstrates a personal animus inconsistent with judicial neutrality, portraying Defendant as defiant rather than recognizing her ongoing appellate efforts.

**B. Orders by Magistrate Judges Working under Michael P. Shea**

The bias in this case is not confined to Judge Shea's own rulings. Magistrate judges working under his supervision have repeatedly echoed the same adversarial posture, issuing orders that amplify rather than check the appearance of partiality. While magistrates are expected to serve as neutral adjuncts, here their rulings have consistently reinforced Judge Shea's one-sided approach: imposing extraordinary settlement demands, excusing procedural irregularities, and disregarding Defendant's constitutional objections. Far from providing independent oversight, these orders demonstrate how the broader judicial apparatus of the District Court has been aligned against Defendant, compounding the perception of systemic bias and raising serious concerns about whether impartial adjudication is possible in this forum.

1. **Orders Compelling Broad Privilege Waiver (ECF Nos. 91 & 92, Jan. 10–13, 2025).** In early expedited discovery, Magistrate Judge Garcia—acting under Judge Shea's directives—held that Defendants had "waived" attorney-client privilege as to two central issues: the enforceability of the restrictive covenant and ownership of the Cleer.tax domain.

The ruling compelled production of privileged communications with multiple law firms, while denying Defendant's fairness objections. It further clarified that *all* attorney communications within the timeframe must be disclosed, even though Plaintiff was never subjected to a reciprocal waiver. This deprived Defendant of core protections while Plaintiff retained the shield of privilege, skewing the evidentiary record at a critical stage and prejudicing Defendant's ability to mount a defense. An objective observer would reasonably view this as another example of selective enforcement consistent with bias.

2. **Improper Sequencing of Preliminary Injunction and Jurisdictional Hearing (ECF No. 113, Jan. 27, 2025).** The Court ordered that Optic Tax's motion to dismiss for lack of personal jurisdiction (ECF No. 57) would not be heard until *after* the conclusion of the preliminary injunction hearing (ECF No. 113). This inverted the required sequence of adjudication, compelling Defendants to litigate merits-based injunctive relief before jurisdiction had been established. The Supreme Court has made clear that personal jurisdiction is an "essential element" that must be decided first. *Ruhrgas*, 526 U.S. at 584–85. Forcing Optic Tax into a preliminary injunction hearing before resolving jurisdiction not only contravened this rule but also prejudiced Defendant Stranger by enabling Plaintiff to obtain discovery and evidentiary rulings against both Defendants that would have been foreclosed if jurisdiction had been denied.

3. **Prejudicial Conduct During Preliminary Injunction Hearing (ECF No. 120, Jan. 30, 2025).** At the January 2025 evidentiary hearing on Plaintiff's motion for a preliminary injunction, Defendant Stranger began testifying in Plaintiff's case but was unable to return for the second day due to documented health and travel constraints. Rather than granting a

continuance or ensuring her testimony could be completed, the Court proceeded without her, allowed Plaintiff to rest its case, and then moved directly to Defendants' examination of Plaintiff's CEO. This truncated proceeding deprived Defendant of a meaningful opportunity to present her own testimony, undermining the fairness of the evidentiary hearing. The Court then compounded the prejudice by directing counsel to re-serve the TRO on Defendant, effectively treating her absence as noncompliance rather than a legitimate hardship. The handling of this hearing exemplifies the Court's pattern of subordinating Defendant's rights to procedural convenience and Plaintiff's litigation strategy.

4. **Order Allowing Withdrawal of Optic Tax's Counsel (ECF No. 155, Feb. 26, 2025).** The Court permitted Optic Tax's counsel to withdraw immediately after the preliminary injunction hearing, despite recognizing that discovery was incomplete and motions were pending. While granting Plaintiff repeated extensions, the Court gave Optic Tax only until March 14, 2025 to secure new counsel, under threat of default. In doing so, the Court expressly named Defendant Stranger, noting she could not represent the company pro se, effectively framing her as the reason for potential default. By forcing Defendant to scramble for replacement counsel under the risk of sanctions and dismissal—while minimizing the disruption to proceedings—the Court once again tilted procedure in Plaintiff's favor. This ruling compounded prejudice against Defendant, who was already facing premature discovery orders and an injunction binding Optic Tax despite unresolved jurisdictional challenges.

5. **Order Denying Defendant's TRO-Related Relief (ECF 164, Mar. 3, 2025)** When Defendant sought modification of the TRO to allow lawful speech, the Court summarily

denied the request and "reminded" Defendant that "the TRO is still in place and … needs to be complied with". The Court did not engage with the First Amendment argument, instead reiterating prohibitions in a patronizing tone, reinforcing an appearance of hostility rather than fair consideration.

6. **Recommended Ruling on Motion to Dismiss (ECF 181).** Magistrate Judge Garcia's recommended ruling on Optic Tax's motion to dismiss illustrates the appearance of bias by conflating unresolved factual disputes with final determinations against Defendant. The ruling discounted sworn evidence disputing Cleer's alleged Connecticut contacts and treated Plaintiff's contested allegations as if they were established fact. Instead of requiring Plaintiff to meet its burden of proof, the ruling credited Plaintiff's pleadings and testimony while disregarding Defendant's objections, effectively foreclosing jurisdictional defenses before full discovery. By framing jurisdiction as a foregone conclusion, the ruling undermined Defendant's right to a fair adjudication and paved the way for premature injunctive relief.

7. **Recommended Ruling on Preliminary Injunction (ECF 182).** In her recommended ruling on Plaintiff's motion for a preliminary injunction (ECF 182), Magistrate Judge Garcia adopted Plaintiff's narrative wholesale, reciting allegations of solicitation, misuse of client information, and domain control as though undisputed, while disregarding contrary testimony and evidence. The ruling emphasized Defendant's absence on the second day of the hearing as a decisive factor, effectively punishing her for circumstances beyond her control and treating disputed issues as admitted. It further upheld the broadest construction of restrictive covenants without engaging the limiting principles of Wyoming law or the Second Circuit's cautionary precedent. By treating contested facts as established and elevating Plaintiff's narrative over

Defendant's defenses, this ruling reinforced the appearance that the Court was aligned with Plaintiff from the outset.

8. **Order Denying Plaintiff's Motion for Sanctions (ECF No. 183, Mar. 20, 2025).**

While the Court denied Plaintiff's request to sanction Defendant for allegedly "fleeing" the preliminary injunction hearing, the ruling nevertheless adopted Plaintiff's disparaging narrative. The Court repeated allegations that Defendant acted in "bad faith," made "misrepresentations," and attempted to "stall and delay," but denied relief only because Plaintiff failed to show prejudice. Rather than rejecting these accusations as unfounded, the Court left them uncorrected in the record and suggested that Defendant had pursued defenses "with no factual support." This language, though embedded in a denial, reinforces the appearance of bias by echoing Plaintiff's characterizations of Defendant as dishonest and obstructionist, while offering no acknowledgment of the constitutional concerns that had prompted Defendant's objections and procedural motions.

9. **Order Denying Defendant's Motion for Contempt (ECF No. 184, Mar. 20, 2025).**

Defendant's motion set forth in detail a pattern of Plaintiff's misconduct, including misrepresentations of jurisdictional facts, inconsistent financial statements, and efforts to influence a subpoenaed witness. The Court, however, dismissed the 104-page filing in conclusory terms, labeling it "unsupported" and faulting Defendant for not attaching additional declarations. In doing so, the Court overlooked documentary and testimonial evidence already in the record and instead minimized allegations of witness interference as a mere "discovery dispute," referring Defendant to general instructions on the Court's website. In contrast to the Court's readiness to grant Plaintiff's contempt motions, this summary

dismissal reflects unequal treatment: Plaintiff's accusations are credited and enforced, while Defendant's are disregarded without engagement. This disparate approach reinforces the appearance of partiality.

10.    **Order Denying Motion for Mistrial (ECF 185, Mar. 20, 2025).** Although formally signed by Judge Garcia, Judge Shea presided over the TRO and scheduling aspects and framed the proceedings in a way that cast Defendant's concerns about her attorney's severe illness as frivolous, stating that "Defendants' counsel's health did not impact the ultimate result." The Court further blamed Defendant personally for not testifying on the second day, writing, "Simply put, Defendants would not have needed a continuance … but for Defendant Stranger's own actions". This reasoning is prejudicial for two reasons: first, it excuses procedural irregularities that directly impaired Defendant's defense, and second, it retroactively justifies denying relief after the Court had already advanced Plaintiff's injunction. Because the mistrial ruling was issued only after the recommended preliminary injunction (ECF 182), the Court effectively insulated the injunction from challenge while minimizing the circumstances that deprived Defendant of a fair opportunity to be heard.

11.    **Order Denying Motion for Clarification (ECF 202)**. When Defendant sought clarification of the Court's prior TRO order (ECF 165), the Magistrate summarily denied the request, stating only that "the Court has considered her arguments and declines to clarify the order or provide further explanation". By refusing to clarify ambiguous provisions in the TRO, the Court heightened Defendant's risk of contempt without providing clear guidance, an adversarial posture inconsistent with impartiality.

12.     **Order Denying Motion for Return of Personal Property (ECF 232, July 23, 2025).** Magistrate Judge Garcia, adopting Judge Shea's prior directive in ECF 218, denied Defendant's request for the return of her personal laptop or a bond adjustment to cover its depreciating value. The ruling granted Plaintiff indefinite rights to retain the laptop, even though ownership of the laptop remains unresolved, and shifted the burden of proof of ownership to Defendant, without any affirmative evidence produced by Plaintiff. The Court dismissed Defendant's Fifth Amendment due process claim by declaring *Fuentes v. Shevin* "inapplicable," despite the indefinite deprivation of personal property without compensation or final adjudication. The ruling further ordered Defendant to cooperate in resetting the password under Plaintiff's control, without any balancing of privacy rights.

### IV. Evidence of Bias

### A. Early Case Reassignment and Pre-Service Orders Demonstrate Prejudgment

From the outset, the Court demonstrated an unusual readiness to act on Plaintiff's allegations, without affording Defendant the basic procedural protections guaranteed by due process. The Supreme Court has long held that "[s]ervice of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Likewise, due process requires "notice reasonably calculated… to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Yet here, before service was completed and before Defendant had any opportunity to appear or be heard, the case was reassigned to Judge Shea, who immediately began issuing binding orders against her.

20

On September 26, 2024, just eight days after the Complaint was filed and before any Defendant had appeared, Judge Janet C. Hall sua sponte reassigned the case to Judge Michael P. Shea for all further proceedings. (ECF No. 18). This occurred on the very same day that Plaintiff's counsel filed pro hac vice motions for attorneys George B. Musekamp and Evan H. Cohn (ECF Nos. 14–17), and just one day before Judge Shea issued the Order to Show Cause on the Temporary Restraining Order (ECF No. 19). At that time, Defendant had not been served, had not appeared, and had no counsel of record.

No explanation was given for the reassignment, and there was no indication of recusal or conflict by Judge Hall. The timing and sequencing, reassignment to a judge who then immediately fast-tracked an ex parte restraining order before confirming service or jurisdiction, suggests a coordinated litigation strategy, not a random docket transfer. It raises serious concerns as to whether the Court was acting in concert with Plaintiff's counsel from the outset.

Moreover, in its very first substantive ruling, the Court issued an Order to Show Cause (ECF No. 19) directing Defendants to justify why injunctive relief should not issue, before either Defendant had been served, before any appearance had been made, and without confirming personal jurisdiction.

Rather than requiring Plaintiff to meet its burden of proof under Rule 65, the Court inverted the standard, placing the onus on unserved parties to refute allegations they had not yet had an opportunity to respond to. This pre-service engagement, combined with the Court's scheduling of a telephonic hearing involving non-appearing Defendants, signaled a troubling pattern of pre-judgment ex parte communications. That pattern has continued throughout the

case, with repeated instances of the Court adopting Plaintiff's positions wholesale, denying

Defendant's motions without analysis, and treating her constitutional defenses as inherently

frivolous. The trajectory of this case began not with neutrality, but with a presumption of

Plaintiff's correctness, setting the stage for the judicial bias that has since unfolded.

### B. Prejudicial Handling of Jurisdiction and Discovery Issues

The Court's management of service, jurisdiction, and discovery from the outset

demonstrates clear prejudice. On November 6, 2024, before Defendant was properly served and

while jurisdictional objections remained pending, the Court denied motions for protective orders

filed by Defendant and Optic Tax (ECF No. 53). The ruling declared that Defendant had

"submitted to personal jurisdiction" based only on her attorney's limited early appearance and

faulted the filings for purported noncompliance with "discovery instructions," despite the

compressed timeline and absence of meaningful opportunity to confer. This compelled

Defendant into discovery and hearings prematurely and was later cited as justification for

rejecting constitutional objections, effectively foreclosing core defenses before they could be

adjudicated.

Just weeks later, the Court denied Defendant's motion to dismiss for insufficient service

and instead authorized alternate service through her attorney (ECF No. 61), again prioritizing

speed over procedural safeguards. By relying on allegations of "actual notice" rather than

compliance with Rule 4, and by denying a continuance of the settlement conference, the Court

advanced Plaintiff's discovery and injunction timeline while depriving Defendant of the

protections Rule 12(b)(5) is designed to afford. The pattern culminated in December 2024, when

the Court compelled Optic Tax Inc., still actively contesting jurisdiction, to respond "forthwith"

to sweeping discovery demands, including merits-related issues (ECF No. 86). This directive contravened well-settled precedent that jurisdiction must be established before substantive litigation proceeds. See *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinée,* 456 U.S. 694, 706 (1982) ("A court without personal jurisdiction is powerless to proceed to an adjudication."). Rather than safeguarding Optic Tax's right to challenge jurisdiction without waiving defenses, the Court imposed a coercive dynamic that chilled both Defendants' ability to press jurisdictional objections.

The prejudice was compounded by the Court's subsequent delay in ruling on Optic Tax's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 57). Filed in October 2024 and fully briefed by January 2025, the motion was not resolved until July 2025 (ECF No. 236), one month after Judge Shea had already entered a preliminary injunction expressly binding Optic Tax. This inversion of sequence violated the basic principle that personal jurisdiction is a prerequisite to substantive orders. See *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).

Together, these rulings show a one-sided pattern: accelerating Plaintiff's discovery and injunction requests before jurisdiction was secure, while delaying rulings that would have protected Defendant. The effect was to prejudice Defendant procedurally and substantively, reinforcing the appearance of bias warranting recusal.

### C. Indefinite Seizure of Defendant's Laptop Without Due Process or Oversight

The Court's handling of Defendant's personal laptop illustrates another sustained denial of due process. The device has been withheld for more than seven months without any forensic

protocol, protective order, or ruling on ownership, and has shifted the burden of proof on ownership to Defendant.

The Supreme Court has long required notice and an opportunity to be heard before property may be seized. *Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Those protections are especially critical where, as here, the property is a personal laptop implicating both property rights and the "privacies of life." *Riley v. California*, 573 U.S. 373, 393–97 (2014). Courts addressing electronic discovery routinely require protective orders and narrowly tailored forensic protocols. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003). Yet in this case, no such safeguards were imposed.

Despite Defendant's repeated objections, the Court allowed Plaintiff to hold the laptop indefinitely, without declaring an expert, without filing a proper Rule 34 motion, and without any showing of spoliation or imminent harm. Magistrate Judge Garcia faulted Defendant for not providing passwords directly to Plaintiff's attorneys, even though no chain of custody exists and no judicial oversight was established.

This device is not incidental, it is Defendant's primary work and personal computer, containing financial data, client records, medical files, and attorney–client communications. Defendant raised these privacy concerns in formal objections (ECF 234), yet the Court has provided no ruling or framework to safeguard them.

A reasonable observer would conclude that the Court has not merely tolerated but facilitated Plaintiff's possession of Defendant's laptop, in disregard of ordinary procedure. The indefinite deprivation of such a device, without due process or judicial limitation, creates an appearance of bias and undermines confidence in the fairness of these proceedings

**D. Conflict Between Shea's Kelo Advocacy and the Domain Coercion Takings Issue**

In addition to the obvious procedural due process failings related to the domain transfer coercion, the Court should recuse itself because the underlying dispute implicates the Fifth Amendment's takings clause, and Judge Shea's prior advocacy in *Kelo v. City of New London* presents an unacceptable risk of bias or its appearance thereof. The Supreme Court has repeatedly held that mandates that demand a property owner give up rights or accept burdens can trigger takings scrutiny. See *Nollan v. California Coastal Comm'n*, *Dolan v. City of Tigard*, *Koontz v. St. Johns River Water Management District*. Moreover, Justice Scalia in *Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection*, 560 U.S. 702, 715 (2010) recognized that judicial action can, in some circumstances, effect a taking by eliminating established property rights.

If a court or administrative body demands compliance with a property transfer, absent a hearing on the merits, appropriate nexus and proportionality or compensatory mechanism, it risks overstepping constitutional bounds.

Furthermore, Shea's prior role in Kelo suggests predisposition to this treatment. In his published Senate confirmation hearing testimony, Michael P. Shea disclosed that he submitted an amicus brief in *Kelo* on behalf of the Connecticut Conference of Municipalities, in which he supported expansive eminent domain authority and endorsed the legitimacy of taking homes for purely economic redevelopment projects.

Because this case similarly hinges on coercive property transfer powers, that prior advocacy places Shea in a position of (1) interest in expanding takings authority; (2) prior

commitment to the legal theory challenged in this case; and (3) a "bent of mind" that may impair his capacity to decide impartially. *Berger*, 255 U.S. at 33–35.

A reasonable, informed observer, knowing of Judge Shea's *Kelo* involvement and the thematic overlap with this case, would doubt his ability to adjudicate neutrally. That alone triggers recusal under § 455(a).

### E. Ex Parte Communications Undermine the Appearance of Neutrality

Another ground for recusal arises from this Court's handling of ex parte communications. Defendant raised concerns that the Court may have engaged in undisclosed one-sided contact with Plaintiff's counsel. Instead of addressing the matter transparently, Judge Shea denied the request for disclosure and, in doing so, disparaged Defendant with the admonition that she should "devote her time to complying with the undersigned's orders (lest she face further contempt motions and sanctions) … instead of driving the case down dead-end side trails." (ECF No. 280). Such language exceeds neutral adjudication and suggests hostility toward Defendant for raising a legitimate judicial ethics concern. More troubling, the Court's refusal to clarify the scope of its communications leaves open the possibility that material issues have been influenced outside the adversarial process.

The Supreme Court has held that "[o]ur system of law has always endeavored to prevent even the probability of unfairness." *In re Murchison*, 349 U.S. 133, 136 (1955). Ex parte communications strike at the core of this principle by creating at least the appearance of partiality. The Second Circuit has likewise recognized that ex parte judicial communications can warrant disqualification where they create an appearance of bias. See *United States v. Microsoft*

*Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001) (recusal warranted where judge's undisclosed contacts with media created appearance of partiality).

Here, the Court not only declined to dispel Defendant's reasonable concerns, but also penalized her for raising them, reinforcing the perception that it is aligned with Plaintiff. This conduct independently warrants recusal.

### F. Court's Disregard of Established Protections for Pro Se Litigants

Recusal is also warranted because the Court's conduct toward Defendant has been especially hostile since she elected to proceed pro se. Federal courts are obligated to liberally construe filings by pro se litigants and ensure they are not disadvantaged by their lack of counsel. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se filings are to be "liberally construed"); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (courts have an "obligation to construe pro se submissions liberally and interpret them to raise the strongest arguments they suggest").

Yet here, Defendant has been treated more harshly, not less. Since appearing pro se, her motions have routinely been denied without analysis or dismissed as "frivolous," her constitutional arguments ignored, and sanctions imposed without proper adjudication. The Court has even described her filings as "dead-end side trails" (ECF 280) and accused her of "testing" the Court's authority (ECF 292), rhetoric that would be extraordinary against represented parties.

Rather than affording Defendant the procedural solicitude required by law, the Court has demonstrated open hostility toward her pro se status. Such conduct not only contravenes

established precedent, but also creates a clear appearance of bias warranting recusal under § 455(a).

### G. Unequal Treatment of the Monetary Claims of Parties

The Court recently threatened to dismiss Defendant's counterclaims as a sanction, in connection with its coercive sanctions order (ECF No. 292), despite this not being a remedy requested by Plaintiff. Threatening dismissal of Defendant's counterclaims under these circumstances not only prejudices Defendant but also turns basic procedural fairness on its head. Rule 37 sanctions must be proportionate and tethered to actual prejudice. See *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (sanctions must be "just" and "specifically related to the particular claim at issue"). Here, Plaintiff has suffered no demonstrated harm, while Defendant faces the extraordinary penalty of losing her affirmative claims altogether.

Defendant's recent motion under Rule 37 (ECF No. 291) highlights this imbalance. Plaintiff has not produced financial records or other documents substantiating any of the damages it claims, despite multiple requests, extensive discovery on the preliminary injunction level, and and Court orders demanding production of this for settlement and 26(a) disclosures. Plaintiff's production remains devoid of concrete proof of financial injury.. Instead of requiring Plaintiff to meet its basic obligations under Rule 26 and Rule 37, the Court has threatened dismissal of Defendant's counterclaims, claims that seek to hold Plaintiff accountable for its own misconduct.

By excusing Plaintiff from proving damages while simultaneously threatening Defendant with dismissal of her claims, the Court advanced Plaintiff's litigation strategy at Defendant's expense. A reasonable observer would see this not as neutral case management, but as hostility toward Defendant and disregard for the requirement that sanctions be proportionate and evidence-based.

### V. Conclusion

The record reflects not isolated errors, but a sustained pattern of rulings that call the Court's impartiality into question. Defendant's constitutional claims have been dismissed without meaningful consideration, her property has been withheld without safeguards, and sanctions have been imposed in a manner that conveys hostility rather than neutrality. Under 28 U.S.C. § 455(a) and (b)(1), recusal is required whenever a judge's conduct creates reasonable doubt as to impartiality or reflects personal bias. That standard is plainly met here.

Because Judge Shea serves as Chief Judge of this District, continued adjudication in the District of Connecticut would not restore impartiality. Defendant therefore respectfully requests that Judge Shea recuse himself and that this matter be transferred to another forum where her rights may be adjudicated before a truly neutral tribunal.

Respectfully submitted,
/s/ Crystal Stranger
Crystal Stranger
Pro Se Litigant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 26th, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all parties.

*/s/ Crystal Stranger*