IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLEER LLC | : |
| | : |
| v. | : 3:24-cv-1496-MPS |
| | : |
| CRYSTAL STRANGER et al. | : SECOND MOTION TO COMPEL |
| | : DISCLOSURE OF EX PARTE |
| v. | : COMMUNICATIONS |
| | : |
| DAVID and CARRIE McKEEGAN | : |
| | : |
| | : |

Defendant Crystal Stranger respectfully files this second motion to compel disclosure of any ex parte communications between Plaintiff's counsel and the Court, particularly in connection with the Court's September 25, 2025 Order (ECF No. 292) granting coercive sanctions and denying Defendant's cross-motion, and any pre-appearance communications.

This renewed request is made pursuant to this Court's inherent authority and Canon 3(A)(4) of the Code of Conduct for United States Judges, and supplements Defendant's previously filed and still-pending Motion to Disclose Ex Parte Communications (ECF No. 283). Since that filing, new facts have come to light suggesting further irregularities, including possible off-docket communications prior to Defendant's appearance in this case, as well as judicial adoption of Plaintiff's informal email arguments not contained in the record.

**I. Background**

1. On September 6, 2025, Defendant filed a motion requesting disclosure of any ex parte communications between the Court and Plaintiff's counsel or representatives in this matter. (ECF No. 283.) That motion remains pending and has not been addressed by the Court.

1

2. On September 18, 2025, the parties attended a confidential settlement conference. Despite the Court's express request that both parties bring concrete settlement proposals, Plaintiff refused to provide any specific offer or meaningful negotiation position. Based on the representations made at that time, it appeared Plaintiff had foreknowledge of an impending favorable coercive sanctions ruling, which may have influenced its refusal to meaningfully engage.

3. On September 18, 2025, just hours after the settlement conference ended, Plaintiff filed its Motion for Coercive Sanctions (ECF No. 287). On September 20, 2025, Defendant timely opposed the motion and cross-moved for sanctions. (ECF No. 288.)

4. Plaintiff did not file a reply brief. The motion was thus fully briefed with only the original motion and Defendant's opposition/cross-motion.

5. On September 25, 2025, Judge Shea issued a sanctions order (ECF No. 292) adopting Plaintiff's off-docket justifications for its wording in ECF No. 287, language that was not included in the motion itself, but rather articulated only in a private email exchange between Plaintiff's counsel and Defendant. (See Ex. A, Email Exchange re Rule 11 Safe Harbor, Sept. 23, 2025.)

## II. LEGAL STANDARDS

Ex parte communications in civil matters are strongly disfavored and presumptively improper unless expressly permitted by rule. See Canon 3(A)(4), Code of Conduct for U.S. Judges ("A judge should not initiate, permit, or consider ex parte communications... except as authorized by law.") Courts have long recognized that undisclosed ex parte communications, or

even their appearance, compromise due process and judicial impartiality. *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). The Supreme Court has held that even the probability of bias violates constitutional guarantees. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009). Likewise, appellate courts have vacated rulings where judges relied on off-record communications or extra-record facts. *In re Kensington Int'l Ltd.*, 368 F.3d 289, 310 (3d Cir. 2004); *United States v. Microsoft Corp.*, 253 F.3d 34, 115–16 (D.C. Cir. 2001). These authorities confirm that disclosure is not discretionary but necessary to safeguard the appearance and reality of fairness.

Transparency and impartiality require disclosure of any such communications, particularly where: (1) A ruling appears to resolve arguments not made in any publicly filed brief; (2)Language used by the Court closely mirrors undisclosed party communications; (3) A prior motion raising concerns about ex parte contact (ECF 283) remains unresolved.

**III. BASIS FOR DISCLOSURE**

Defendant has identified several irregularities suggesting the possibility of undisclosed ex parte contact:

**A. New Evidence of Potential Ex Parte Communications and Judicial Coordination Prior to the TRO Being Issued**

Defendant respectfully notes that additional troubling patterns that have emerged since the filing of her first (still-pending) motion (ECF No. 283). Specifically, the early docket activity in this case suggests the possibility of improper coordination between Plaintiff's counsel and the Court prior to service and before Defendant's appearance, raising serious due process concerns.

The case was originally assigned to the Hon. Janet C. Hall, but was sua sponte reassigned to Chief Judge Michael P. Shea on September 26, 2024 (ECF No. 18), without any motion by the parties and without docketed explanation or recusal by Judge Hall. The reassignment occurred the same day that pro hac vice admissions were granted to attorneys from Taft Stettinius & Hollister LLP (ECF Nos. 16–17), suggesting that the Court may have acted in anticipation of the involvement of out-of-state counsel affiliated with a large national firm.

The following day, before proof of service had been filed, Judge Shea issued an Order to Show Cause (ECF No. 19) compelling a response from Defendant to Plaintiff's TRO request and scheduling a telephonic hearing, a procedural move that effectively shifted the burden onto an unserved, unrepresented party. This sequence of events, particularly the sua sponte reassignment on the same day as pro hac vice approvals and the timing of judicial action, gives rise to the appearance of prior coordination and raises legitimate questions as to why the Chief Judge personally intervened in what was at that time a routine contract dispute.

**B. Court Appears During Proceedings to Contemplate Its Own Method of Indirect Communication With Plaintiff's Counsel**

When reviewing the docket and the transcript of the TRO hearing to better understand why the court appears to have been biased against defendant since before she was a party to the case, Defendant found that in the transcript Judge Shea made the following unsolicited remark:

> MR. HARRISON: Who knows what "indirect contact" means, Your Honor.
>
> THE COURT: I can think of ways of having indirect contact with a customer. You tell a subordinate to call them. You didn't have direct contact, but you told a subordinate to call

them. That's a way to have indirect contact with a customer. I'm sure there's other ways. I don't know this business. I'm sure Mr. Musekamp could tell us other ways.

(Ex. B - Transcript of TRO Hearing, Oct. 22, 2024, 21:1-8)

This statement, on its face, appears to state how the Court is able to communicate with Plaintiff's counsel in an indirect manner. A reasonable neutral observer would deem this circumstantial evidence that the Court's own choice of phrasing betrays familiarity with indirect, non-docketed communication mechanisms.

Moreover, the Court's remark, "I'm sure Mr. Musekamp could tell us other ways", appears to extend an open-ended invitation to Plaintiff's counsel to elaborate on off-the-record communication methods, as if signaling shared knowledge or prompting further confirmation. By suggesting that Plaintiff's counsel might 'tell us other ways 'of making indirect contact, the Court effectively deferred to counsel's expertise on evasion techniques, an odd stance for a neutral arbiter and one that invites the inference of familiarity with such communication norms. This is especially true in context to the indirect contact issues raised by Defendant's prior attorney related to the contract terms, and it would not be logical to expect Mr. Musekamp, an attorney, to know more about indirect contact within the tax business compared to the other participants in the call. In context, the tone and structure of this exchange raise troubling questions about whether such indirect methods may have already been employed outside the presence of Defendant or the record.

Further supporting this concern is how during the TRO hearing, the Court interjected with a factual assertion that Cleer had "Forty? Fifty?" employees on its "best day." This figure

was not introduced by counsel, nor supported by sworn evidence or any live testimony. Although Plaintiff's memorandum (ECF No. 12-1 at ¶16) references a "global employee count of over 50," this was not a litigated or developed fact during the hearing, and the Court's spontaneous citation, absent record development, suggests familiarity beyond the filed materials. The specificity and framing strongly resemble trying to remember an informal, undisclosed communication rather than neutral judicial inquiry. (See Ex. B - 15:3-5)

These statements in the TRO transcript further undercuts the credibility of the Court's September 2, 2025 blanket denial that *"to the undersigned's knowledge, there have not been any [ex parte communications]."* In context, that denial appears carefully hedged, especially as the same order immediately acknowledges one such communication did occur with the Court's chambers, and attempts to excuse it post hoc.

**C. Strong Inference of Ex Parte Communication or Improper Influence in September 25 Order**

Judge Shea's September 25 order adopts nearly verbatim a defense that Plaintiff's counsel raised only in a private email chain with Defendant, including reasoning and phrasing not found anywhere in the filed motion (ECF 287) or on the docket. In the original motion for sanctions, plaintiff stated, "Nor has Ms. Stranger submitted a statement under oath making clear the steps she has taken to comply with the letter and spirit of the Court's Order." This statement, which appears in the motion filed on the docket, omits acknowledgment of Defendant's sworn declaration filed at ECF 258-3 on August 11, 2025.

Comparison of Plaintiff's Emails and Judge Shea's Order:

| Plaintiff's Private Email Chain to Defendant (9/23/25) | Judge Shea's Sanctions Order (ECF 292, 9/25/25) |
|---|---|
| "While you provided a statement under oath… your statement does not make any mention of the steps you have taken to comply…" | "I took the plaintiff's statement to say that the declaration that was filed did not, in fact, show that she had taken any meaningful steps to comply…" |
| "You have not taken any steps to comply with the Court's Order to transfer the domain…" | "Indeed, it is evident that Stranger has not even attempted to comply…" |
| "The Court is able to review the docket and already has an accurate account of the sequence of events." | "...it was apparent to anyone who looked at the docket that Stranger had filed a declaration." |

After filing her opposition to the Motion for coercive sanctions, Defendant served Plaintiff's counsel with a Rule 11 motion making this misstatement clear and asking them to correct the record. In response to the Rule 11 notice, Plaintiff's counsel issued a series of emails disputing Defendant's interpretation and clarifying Plaintiff's position.

Notably, Plaintiff never filed a reply brief on ECF 287, and the arguments and distinctions articulated in their emails were never placed before the Court through a formal filing. Despite this, the Court's ruling (ECF No. 290) denying Defendant's cross-motion for sanctions adopts nearly verbatim language and reasoning from those emails.The factual characterizations and interpretations of Defendant's declaration in this order mirror Plaintiff's off-record assertions in private email exchanges, suggesting either the Court reviewed the undisclosed email exchange or was otherwise briefed off-docket. Absent access to these private emails, no disinterested reader could reasonably anticipate the Court's logic in its ruling. That logic appears to require either prescience—or off-record input.

Moreover, the timing of the order, coming shortly after the settlement conference where Plaintiff declined to meaningfully negotiate, while stating to the Magistrate that Defendant should agree to a $0 settlement due to their certainty about obtaining coercive sanctions imminently from the court, that they had only not filed yet because of the settlement conference, raises concerns that Plaintiff may have again communicated with the Court ex parte regarding Defendant's pending Rule 11 safe harbor letter, in addition to their overall litigation strategy.

Taken together, the timing and nature of these statements would lead a reasonable neutral observer to suspect there being ex parte communications between the Court and Plaintiff or its counsel related to this issue. The Court's ruling reads less like an impartial adjudication and more like a response brief authored in Plaintiff's voice.

While it is possible the Court independently reached the same conclusion, it is equally plausible, and perhaps more likely, that a neutral arbiter might have adopted alternative reasoning. For instance, the Court could have denied sanctions on the grounds that the alleged conduct fell outside the scope of the injunction. Or that the motion was procedurally defective due to lack of waiting for the Rule 11 statutory service period to pass. It could have cited the absence of a reply brief from Plaintiff. That the Court instead embraced Plaintiff's exact email framing, while ignoring these plausible alternatives, further reinforces the appearance that the ruling was influenced by private communications, not neutral judicial reasoning.

## IV. CONCLUSION

Given the pattern of the early procedural advantage conferred on Plaintiff, sua sponte judicial reassignment with no transparency, sanctions rulings reflecting Plaintiff's informal communications not in the docket, and the continuing failure to rule on Defendant's original motion seeking transparency (ECF 283), Defendant respectfully renews her request for a complete disclosure of any and all ex parte communications between Plaintiff's counsel and the Court from the date of filing through the present — including any communication with chambers (telephonic, email, or otherwise) prior to Defendant's service or formal appearance, even if that communication would be considered "not improper". Defendant thus requests that the Court:

1. **Disclose whether any ex parte communication** occurred between the Court and Plaintiff or its counsel between September 6 and September 25, 2025, including during or after the September 18 settlement conference;

2. **Identify the nature and participants** of any such communication, and whether any representations were made regarding:

    A. The domain transfer dispute,

    B. The pending Rule 11 safe harbor letter,

    C. The timing or content of the sanctions order,

    D. Defendant's declaration (ECF 258-3), or

    E. Plaintiff's decision not to file a reply;

3. **If such communication occurred, allow briefing** as to whether vacatur or reconsideration of the sanctions order is warranted under the Due Process Clause and principles of judicial impartiality.

This request is made not only to safeguard Defendant's due process rights but to preserve the integrity of these proceedings as a whole.

    Respectfully submitted,
    /s/ Crystal Stranger
    Crystal Stranger
    Pro Se Litigant

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 29, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all parties.

    */s/ Crystal Stranger*