# EXHIBIT B

Transcript of TRO Hearing Excerpt, Pages 15 and 21, Oct. 22, 2024,

1          THE COURT:  Wait a minute.  Let's -- let me interrupt.

2     Let's take the second one first.

3          Identify to her as Cleer employees?  How many

4     employees did Cleer have on its best day?  Forty?  Fifty?

5          MR. HARRISON:  I think they have about six, but --

6          THE COURT:  So there's no doubt who a Cleer employee

7     was; right?  I mean, she knew all of them; correct?

8          MR. HARRISON:  I guess the question in her mind is,

9     What if somebody just saw from Cleer, they used the company,

10    and then reaches out to her, which --

11         THE COURT:  That's not what -- that's not what the

12    evidence that's been submitted shows, Mr. Harrison.  It shows

13    that she solicited them.  I agree with you, that that would be

14    a harder call.  I don't know.  You know, we'd have to figure

15    out, well, where did that come from?  Probably not something I

16    could do today on the call without an evidentiary hearing.

17         But they've got evidence.  They've got e-mails or

18    whatever they are, Facebook contacts.  They've got messages

19    between her and the employee saying "Hey, I heard you might not

20    be happy there.  You want to consider a new opportunity?"  I

21    mean, don't you think it's fair for me to say "Stop doing that,

22    Ms." -- what's her name again? -- "Ms. Stranger"?

23         MR. HARRISON:  Yes, Your Honor.  And, in fact,

24    Ms. Stranger's willing to stop doing that.

25         THE COURT:  All right, good.  So that's the first

21

1      MR. HARRISON:  Who knows what "indirect contact"

2  means, Your Honor.

3      THE COURT:  I can think of ways of having indirect

4  contact with a customer.  You tell a subordinate to call them.

5  You didn't have direct contact, but you told a subordinate to

6  call them.  That's a way to have indirect contact with a

7  customer.  I'm sure there's other ways.  I don't know this

8  business.  I'm sure Mr. Musekamp could tell us other ways.

9      But, again, so it's not clear to me that term by

10  itself is ambiguous or unclear.

11      MR. HARRISON:  Well, I have a problem with

12  whether it's -- sorry.

13      THE COURT:  You go ahead.

14      MR. HARRISON:  I think the whole problem with whether

15  it's ambiguous or clear could be alleviated by drafting a TRO a

16  little differently if you want to do that, Your Honor.  You

17  could instead say -- you have Cleer provide a customer list as

18  of the date that Ms. Stranger left the company.

19      THE COURT:  Well, I think they wouldn't want to do

20  that because -- I'm afraid they would want to do that because

21  they're concerned -- and maybe they're wrong, okay -- but

22  they're concerned that she's going to solicit those customers.

23      So, you know, I get -- I think I get where you're

24  going, which is, Look, then how is she supposed to figure out

25  who she's in business with?