**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CLEER LLC | : | |
| | : | 3:24-cv-1496-MPS |
| v. | : | |
| | : | DEFENDANT'S MOTION FOR RELIEF |
| CRYSTAL STRANGER et al. | : | PURSUANT TO RULE 60(B)(6) AND |
| | : | TO STAY ENFORCEMENT PENDING |
| v. | : | APPEAL OR FURTHER REVIEW |
| | : | |
| DAVID and CARRIE McKEEGAN | : | |
| | : | |
| | : | |

Defendant respectfully moves under Fed. R. Civ. P. 60(b)(6) to vacate the Court's Order

at ECF No. 292, on the grounds that the order—entered sua sponte and without adversarial

briefing, and appearing to adopt Plaintiff's off-docket arguments—creates the appearance of

judicial partiality and possible reliance on undisclosed communications and, additionally, for a

stay of the dismissal sanction threatened therein.

## I. Introduction

When a federal court declares due process arguments "frivolous" and uses coercive

sanctions to extinguish substantive rights without trial, it is not enforcing the law—it is

abandoning it. The Court's September 25, 2025 Order (ECF No. 292)[1] , exemplifies this

abdication of constitutional duty, threatening to dismiss counterclaims that assert equity

ownership in a company—an established property interest—based solely on Defendant's refusal

---

[1] This motion raises a controlling question of law involving due process and the limits of coercive sanctions under the Fifth Amendment. Whether a district court may condition dismissal of counterclaims asserting substantive property rights on compliance with an order enforced by daily contempt penalties—without trial, discovery, or appellate review—presents a novel and significant issue. The resolution of that question is of public importance and will materially affect the course of these proceedings.

to yield to coercive threats under a contested injunction during an active appeal. Such a sanction implicates core constitutional protections under the Fifth and Fourteenth Amendments. Yet the Court's ruling summarily characterizes Defendant's prior due process and takings arguments as "frivolous" and "specious[2]," without addressing their substance. The Court appears obsessed with compelling the transfer of disputed property at the preliminary stage, doubling down on a questionable ruling, rather than preserving the status quo until trial.

According to the Merriam-Webster dictionary[3], the word "*frivolous"* means "of little weight or importance" or "lacking in any sound basis in law or fact." Neither definition fits here. To brand constitutional defenses as "frivolous" when they rest on established precedent is not legal analysis but rhetorical suppression. In doing so, the Court reduces fundamental constitutional safeguards to mere irritants. The message is unmistakable: in this courtroom, due process concerns are no longer law. They are judicial inconveniences labeled "frivolous".

That message is deeply troubling.

This dismissal notably followed a pattern of judicial reasoning that appeared to reflect arguments never raised by Plaintiff in any filed motion or reply brief. These procedural irregularities, including the Court's sua sponte invocation of arguments known only from private email exchanges between Defendant and Plaintiff's counsel, as fully discussed in Defendant's Second Motion for Disclosure of Ex Parte communications (ECF No. ___), call into question the

---

[2] Likewise, *specious* traditionally refers to an argument that is superficially plausible but actually misleading or false. Judge Shea's use of "specious" to describe constitutional claims, while declining to address the underlying arguments, seems to reveals a desire to stigmatize rather than analyze. See *Specious*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/grammar/specious-vs-spurious-usage-guide (last visited Sept. 27, 2025).

[3] *Frivolous*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/frivolous (last visited Sept. 27, 2025).

neutrality of the process and amplify concerns about due process violations, warranting vacatur under Rule 60(b)(6).

The issues raised previously in this case—due process, jurisdiction, the scope of coercive sanctions, the appearance of bias, and the timing of injunction enforcement—are neither novel nor meritless. Labeling something as "frivolous" does not make it so. The issues of due process and judicial takings have been fully preserved and argued in prior filings, including Defendant's Motion for Mistrial (ECF No. 139), Reply in Support (ECF No. 173), Objection to the Recommended Ruling (ECF No. 195), and Motion to Modify or Reconsider the Preliminary Injunction (ECF No. 210). Defendant need not relitigate these here. She has provided substantial legal support, yet the Court has chosen to portray her filings as "frivolous". That characterization is inaccurate, and the record preserves these issues for further review.

This punitive framing is not new. Even when Defendant was represented by counsel at the initial TRO hearing, the Court threatened her attorney saying, "tell her 'The judge says you get some demerits on this,' because that's the truth."[4] These "demerits" were for not waiving service and raising objections to personal jurisdiction. Thus the court was trying from the outset to force Defendant to give up her Constitutional due process rights. These statements reveal that the Court's punishment-oriented posture toward Defendant predated her pro se status and has consistently colored its treatment of her lawful exercise of rights.

---

[4] See Ex. A - TRO Hr g Tr. Oct. 22, 2024, at 43:24–25 In the same exchange, the Court entertained Plaintiff s request to force Defendant's travel to an in-person deposition as a vehicle to accomplish service: MR. MUSEKAMP: "So I can serve her when she shows up at the deposition." THE COURT: "Yeah, I get that. I get that." (Id. at 43:9-14) This exchange illustrates how, even at the TRO stage, the Court aligned itself with Plaintiff s efforts to shortcut service and jurisdiction, while framing Defendant s assertion of rights as misconduct.

That the Court has exhibited bias against Defendant since the outset[5], does not strip these arguments of their validity; rather, they remain matters of ongoing dispute grounded in established precedent. The Court's attempt to dismiss them as "frivolous" is rhetorical overreach, not a fair representation of the record. These arguments are grounded in binding Supreme Court precedent and raise substantial questions appropriate for appellate review. To label them 'frivolous' is to evade, rather than address, the substance of the objection. Thus, if the Court declines to vacate the September 25 Order, it is not merely rejecting Defendant's position—it is declaring that the Constitution itself is now "frivolous" in the eyes of this Court.

## II. Constitutional Questions Raised

The sanctions threatened in the Court's September 25, 2025 Order (ECF No. 292) present three independent and substantial constitutional questions:

1. **Takings and Due Process Clause:** Whether dismissal of substantive property-based claims, including equity ownership interests in a business, as a coercive sanction for non-compliance with an injunction constitutes a deprivation of property without due process of law, or an uncompensated taking in violation of the Fifth Amendment.

2. **First Amendment Petition Clause:** Whether imposing escalating daily fines and threatening dismissal of counterclaims in direct response to a litigant's filing of constitutional objections and motions constitutes retaliation against protected petitioning activity, in violation of the First Amendment.

---

[5] As thoroughly discussed in *Defendant's Motion for Recusal of Judge Michael P. Shea* (ECF No. 293), Section IV(A), starting on pg. 20.

3. **Due Process / Proportionality of Sanctions:** Whether conditioning preservation of multimillion-dollar counterclaims on compliance with a contested order regarding a disputed domain name — without merits adjudication, a trial on the merits, or opportunity for adversarial challenge — constitutes a sanction so disproportionate and procedurally irregular that it violates the constitutional limits on judicial sanctions.

### III. Supporting Authority

1. ***Logan v. Zimmerman Brush Co.***, **455 U.S. 422, 428 (1982)** – a cause of action is a species of property protected by the Due Process Clause; dismissal by procedural means can violate due process.

2. ***United States v. James Daniel Good Real Property***, **510 U.S. 43 (1993) –** property cannot be seized by the government without prior notice and hearing, even in civil forfeiture.

3. ***Societe Internationale v. Rogers***, **357 U.S. 197, 212 (1958)** – dismissal of claims as a sanction violates due process where noncompliance was not willful or proportionate.

4. ***Insurance Corp. of Ireland v. Compagnie des Bauxites***, **456 U.S. 694, 707 (1982)** – sanctions must be specifically related to the misconduct and proportionate.

5. ***Salahuddin v. Harris***, **782 F.2d 1127, 1132 (2d Cir. 1986)** – dismissal is a harsh remedy to be used only in extreme circumstances.

6. ***BE&K Constr. Co. v. NLRB***, **536 U.S. 516 (2002)** – protecting First Amendment right to petition, even if unsuccessful, unless baseless and brought with intent to burden.

7. ***Bill Johnson's Rests., Inc. v. NLRB***, **461 U.S. 731 (1983)** – government may not retaliate against lawsuits absent sham/baseless standard.

8. ***United States v. Jordan*, 915 F.2d 622 (11th Cir. 1990)** – 60(b)(6) may be appropriate where a judgment undermines the fairness or integrity of the judicial process.

Together, these authorities establish that dismissal of claims asserting property rights is not a routine sanction, but an extraordinary deprivation raising constitutional concerns, and warrant vacatur.

## IV. Discussion of Newly Raised Constitutional Issues

The constitutional questions identified above take on heightened significance in light of the Court's September 25, 2025 sanction order (ECF No. 292). That order threatened dismissal of property-based counterclaims, escalating fines, and other coercive sanctions sua sponte, without prior notice or meaningful opportunity to respond. The Court's decision to brand related objections as "frivolous" only underscores the urgency of these constitutional concerns. These new issues, touching again on substantial due process, property rights, and First Amendment protections, demand immediate vacatur of the September 25 order.

### A. Counterclaims are Property Interests Protected by Due Process

The Supreme Court has long recognized that a cause of action is a "species of property" safeguarded by the Due Process Clause. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). Extinguishing ownership claims by procedural sanction, rather than adjudication on the merits, therefore implicates constitutional protections.

Defendant's counterclaims in this action include claims to equity ownership in Cleer LLC, and other damages, documented as exceeding $2 million in value in Defendant's recent sworn declaration submitted to the Court in ECF No. 289-6. In testimony at the preliminary injunction hearing, Plaintiff admitted that Defendant is entitled, at minimum, to the capital value

of her equity interest in the company, a positive sum, which is due to be paid to Defendant by August of 2026, even if Plaintiff prevails on its effort to show her membership interest was terminated for cause. (See Ex. B - PI hearing excerpt)

Yet under this Court's September 25 Order, Defendant's counterclaims will be dismissed automatically if she does not demonstrate transfer of the Cleer.tax domain name by October 7, 2025. Such dismissal would not reflect adjudication of the merits, nor any finding that the counterclaims lack evidentiary support. It would instead extinguish multimillion-dollar ownership claims, including a property right that Plaintiff itself has conceded exists, through collateral sanctions imposed to force Defendant to give up appellate rights.

The constitutional concern is acute: extinguishing valuable, conceded property claims through procedural sanction is neither neutral nor proportionate. Dismissal is an "extreme sanction" available only in the most extraordinary circumstances. *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986). Here, the Court has not merely imposed dismissal, but threatened it as a coercive measure to compel compliance, without any showing that lesser sanctions would be ineffective, or specific analysis of why Defendant's counterclaims are "frivolous" or baseless. This threat of preemptive dismissal is not remedial, but punitive, and falls well outside the boundaries established by *Salahuddin*.

The Supreme Court in *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958), held that dismissal of claims violated due process where noncompliance with a court order was not willful or proportionate. Even where willfulness exists, sanctions must be tailored to the misconduct. *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982). Here Defendant has not refused to comply, she has complied in every way that does not

foreclose her appellate rights or due process challenges. Under *Logan*, the deprivation of a cause of action under these circumstances directly implicates constitutional protections, because it strips Defendant of a recognized property right without trial, or meaningful due process.

Moreover, the Supreme Court has made clear that the government may not deprive individuals of real or personal property without rigorous adherence to due process. In *United States v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993), the Court held that "[t]he right to prior notice and a hearing is central to the Constitution's command of due process" and rejected the government's seizure of a home without first giving the owner an opportunity to contest it. By the same reasoning, this Court cannot extinguish Defendant's multimillion-dollar counterclaims and conceded ownership rights through collateral sanctions without a full hearing on the merits. At minimum, such a hearing would be required to satisfy constitutional standards.

If the Constitution forbids seizing a home without notice and hearing, it certainly forbids extinguishing counterclaims asserting ownership in a business, especially where the deprivation arises not from a trial on the merits but from contempt sanctions enforcing a disputed injunction. To dismiss such claims under the guise of sanctions would itself be "frivolous." This is not merely a procedural misstep; it is a constitutional breach that compels vacatur.

**B. The Sanctions Are Retaliation Against Protected First Amendment Conduct**

The sanctions imposed here also raise a separate constitutional concern: retaliation for Defendant's exercise of her First Amendment right to petition the courts. Defendant's recent filings explicitly raised constitutional objections, including due process and takings issues (ECF No. 288), as well as a motion regarding ex parte communications (ECF No 283). Instead of confining sanctions to remedial measures tailored to noncompliance, such as ordering transfer of

the domain to a neutral third-party escrow agent, the Court imposed escalating daily fines and threatened dismissal of Defendant's counterclaims precisely because she persisted in pressing those objections.

Such sanctions punish the very act of argumentation and deter continued petitioning, creating an impermissible chilling effect. The Supreme Court has held that the right to petition is protected even when claims are unsuccessful. *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 532–33 (2002). Likewise, the government may not retaliate against a lawsuit absent proof that it is a sham or baseless. *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743 (1983).

Defendant's constitutional arguments were neither "frivolous" nor a sham; they were grounded in established precedent such as *Kelo v. City of New London*, 545 U.S. 469 (2005), which addressed judicial deference in takings claims, and *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702 (2010), where the Court recognized that courts themselves can effect a taking by extinguishing established property rights. To dismiss such arguments without discussion of the merits is not only to sidestep constitutional scrutiny, it implies that the United States Supreme Court's interpretations of the Fifth Amendment are themselves "frivolous."

By tying dismissal of counterclaims and daily monetary penalties to vilify Defendant's insistence on raising constitutional defenses, the sanction functions less as a coercive remedy and more as punishment for engaging in protected petitioning activity. In that respect, Defendant's filings served the very role of judicial whistleblowing: alerting the Court to constitutional defects in its own process. Punishing such conduct does not protect the integrity of the judicial system; it

corrodes it. This form of retaliation compounds existing due process violations and independently warrants vacatur.

### C. The Threatened Dismissal Is Disproportionate and Constitutionally Suspect

The sanction here is neither proportional nor narrowly tailored. It conditions preservation of Defendant's ownership claims on compliance with an order concerning entirely different property (the Cleer.tax domain). Such a penalty is punitive rather than remedial, and would extinguish substantive property rights without trial on the merits.

Under *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), a cause of action is itself a protected property interest. And under *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958), to treat preservation of appellate rights as willfulness would create a dangerous precedent: that a litigant must forfeit her appeal or be punished with claim dismissal — a doctrine antithetical to due process. Here, the threatened dismissal bears no direct relation to the alleged failure to transfer a disputed domain name and risks the unconstitutional deprivation of valuable property rights.

The disproportionality is underscored by the record. Plaintiff has never substantiated any damages of its own, despite repeated opportunities, and at the preliminary injunction hearing admitted that Defendant is entitled at minimum to the capital value of her equity interest in the company—a positive amount. By contrast, Defendant has documented over $2 million in counterclaims arising from her ownership interest, as reflected in her recent settlement memorandum submitted to the Court. Extinguishing those multimillion-dollar claims while leaving Plaintiff's "frivolous" allegations intact highlights the imbalance of the sanction.

This imbalance reveals the sanction as punitive rather than neutral, particularly when imposed against protected property interests. This creates not only a due process concern but also another appearance of bias.

For these reasons, the Court should vacate the portion of the September 25, 2025 Order that conditions dismissal of Defendant's counterclaims on contempt sanctions, and instead resolve the underlying ownership dispute through proper adversarial process. The Constitution requires no less.

### V. Grounds for Reconsideration or Vacatur Under Rule 60(b)(6)

Rule 60(b)(6) permits relief from judgment for "any other reason that justifies relief." Relief is warranted under this catch-all provision when "extraordinary circumstances" exist, particularly where the integrity or fairness of the proceeding is reasonably called into question. See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988); *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).

Extraordinary circumstances are present here. The Court's ruling in ECF No. 292 appears to adopt arguments never briefed on the public docket, but instead advanced by Plaintiff's counsel in off-record correspondence. As detailed in Defendant's pending Second Motion to Compel Disclosure of Ex Parte Communications (ECF No. 294), the language of the Court's order tracks that correspondence verbatim. This raises a reasonable question whether the Court's decision-making was influenced by material outside the adversarial process.

Furthermore, the Court repeatedly references a 'full-blown evidentiary hearing' as if that moots all subsequent objections. But due process is not satisfied by the mere occurrence of a hearing. It requires meaningful opportunity to be heard, effective representation, and the chance

to present evidence. Here counsel's COVID-related incapacity and the Court's denial of a requested continuance rendered that hearing structurally deficient.

The Court repeatedly refuses to analyze the Constitutional implications of proceeding with visibly ill counsel, who was unable to object, examine witnesses, or present Defendant's case. Instead of analyzing these due process violations, the Court relies on conclusory rulings that label Defendant's arguments as "frivolous" or "specious." As discussed previously, such labels do not substitute for constitutional analysis. They function instead as a form of judicial gaslighting, a rhetorical tactic that dismisses substantive objections by reframing them as irrational or disingenuous.

The order imposes escalating sanctions for failing to comply with a previous order that was never adequately justified or clarified. The Court now punishes the absence of "proof of transfer" while refusing to acknowledge the procedural chokehold it created. Such conduct reverses the constitutional burden: it treats Plaintiff's unsupported allegations as presumptively valid,  while treating Defendant's well-founded objections as presumptively "frivolous."

This order is not an isolated incident. It continues a pattern of selective memory and narrative control, a sleight-of-hand cultured to distract from procedural facts that reasonably contribute to the perception of off-record influence, including: (1) The premature transfer of this small-scale commercial case to the Chief Judge prior to service; (2) The Court's unsolicited elaboration on Plaintiff's legal theories; (3) The timing of the ruling closely following a confidential settlement conference, during which Plaintiff invoked the threat of these coercive sanctions in lieu of any genuine offer; and (4) The Court's denial of relief based not on the arguments briefed by the parties, but on alternative rationales advanced by Plaintiff off-record.

Together, this suggests that the threat of judicial coercion may have been previewed or pre-cleared in private.

While Defendant recognizes that the Court has refused to acknowledge any improper contact, the appearance of partiality, standing alone, can warrant vacatur. See *Liljeberg*, 486 U.S. at 864 ("A violation of § 455(a) is established if a reasonable person... would harbor doubts about the judge's impartiality."). The standard is not actual bias, but the appearance of bias or irregular influence, and that standard has been met here.

## VI. Stay Is Necessary to Prevent Irreparable Harm

The sanction imposed by the Court, dismissal of Defendant's counterclaims absent "proof" of domain transfer by a date certain, represents a de facto merits ruling rendered through a procedural shortcut. This threatens to irreversibly extinguish Defendant's asserted equity interest in Cleer LLC, a recognized property right, without discovery, trial, or adjudication on the merits. If allowed to proceed, this mechanism will foreclose review of live constitutional questions, including whether coercive sanctions can be leveraged to compel surrender of disputed property during an active appeal.

Staying enforcement of this dismissal is not merely necessary to prevent irreparable harm. It is essential to preserve appellate jurisdiction and prevent this Court from effectively stripping Defendant of property and constitutional protections by deadline rather than by lawful judgment. A stay will ensure that reviewable questions—on coercive sanctions, due process, and judicial neutrality—remain live for this Court or a reviewing court to consider.

## VII. Conclusion

The September 25, 2025 Order (ECF 292) raises grave constitutional concerns because it threatens to extinguish substantive property rights without trial, discovery, or meaningful appellate review. The sanction imposes daily financial penalties and the dismissal of counterclaims, not as a function of equity or enforcement, but as punishment for asserting protected rights under the Fifth Amendment and for seeking review of the judicial process itself. When constitutional defenses are labeled "frivolous," and protected claims dismissed absent adjudication, the legitimacy of the judiciary is no longer a background principle. It becomes "frivolous".

For the foregoing reasons, Defendant respectfully requests that this Court:

1. Vacate or reconsider ECF No. 292; and,

2. Issue an order staying enforcement of that ruling pending resolution of Defendant's motion regarding ex parte communications and pending resolution of the constitutional questions herein; or, in the alternative,

3. Should the Court nevertheless impose dismissal of Defendant's counterclaims as a coercive sanction, Defendant respectfully requests entry of final judgment under Fed. R. Civ. P. 54(b) or, in the alternative, certification for interlocutory appeal under 28 U.S.C. § 1292(b), as the order raises controlling constitutional questions over which there is substantial ground for difference of opinion.

Defendant does not seek delay, but only a ruling grounded firmly in the record and adversarial process, not seemingly based in off-the-record agreements. Should the Court conclude the result would be the same, Defendant respectfully requests an opinion restating the

grounds of decision based solely on docketed materials, to ensure transparency and preserve

confidence in judicial impartiality. And before any property rights are extinguished, Defendant

further requests a full hearing on the merits, consistent with the Supreme Court's command that

"[t]he right to prior notice and a hearing is central to the Constitution's command of due

process." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993).

It takes audacity to label constitutional rights "frivolous" when they become

inconvenient. Sadly, there are no whistleblower protections in Article III. Only the cold clarity of

the record, and the hope that someone, somewhere, will read it. If it is "frivolous" to invoke due

process, to demand transparency, or to question bias, then frivolity is no longer the problem. It's

the verdict.

Respectfully submitted,
/s/ Crystal Stranger
Crystal Stranger
Pro Se Litigant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 29, 2025 the foregoing was filed using the Court's electronic filing system which will provide notice to all parties.

*<u>/s/ Crystal Stranger</u>*